CHRISTINA J. BROWN (Cal. Bar. No. 242130)
cbrown5@ftc.gov
DANIEL M. CHOZICK (*Pro Hac Vice*)
dchozick@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

JOHN D. JACOBS (Cal. Bar. No. 134154)
Local Counsel
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4300

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN GLAZER'S WINE AND SPIRITS, LLC,<br><br>Defendant. | **Case No.** 8:24-cv-02684-FWS-ADS<br><br>Judge: Fred W. Slaughter<br><br>**RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT** |

Plaintiff Federal Trade Commission ("FTC") respectfully submits this response to Defendant Southern Glazer's Wine and Spirits, LLC's ("Southern") Application to Permanently Seal Portions of the Complaint ("Application") (Dkt. 40).

Southern seeks to permanently seal portions of more than 150 lines of the FTC's Complaint (Dkt. 41-1), which alleges that Southern has violated the Robinson-Patman Act by selling wine and spirits to small, independent retailers at discriminatory prices that are drastically higher than the prices Southern charges large chain retailers. While the FTC does not take a position on the majority of Southern's proposed redactions, this response addresses three categories of designated material for which Southern has failed to establish compelling reasons that outweigh the strong presumption of public access: (a) the percentage price premia Southern charged disfavored independent retailers relative to prices charged to favored chain retailers for the same products ("price premia percentages") and the percentage of independent retailers in a state that paid such premia ("disfavored retailer percentages"); (b) general statements by Southern employees about Southern's discriminatory pricing practices; and (c) references to the numbers of items and stock keeping units ("SKUs") that Southern distributes.

## I.     Legal Standard

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). Accordingly, when considering a sealing request, a "'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). This presumption is "especially great" where "the material to be sealed goes to the very heart of the suit" and is "critical to establishing [the plaintiff's] claims." *Tevra Brands LLC v. Bayer Healthcare LLC*, 2020 U.S. Dist. LEXIS 46075, at *6-7 (N.D. Cal. Mar. 16, 2020); *Soundgarden v. UMG Recordings, Inc.*, 2021 U.S. Dist. LEXIS 268922, at *10

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

1

(C.D. Cal. Mar. 29, 2021). Thus, within the Ninth Circuit, a party seeking to seal all or portions of a complaint "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quotations omitted); *see also FTC v. Dave, Inc.*, 2024 U.S. Dist. LEXIS 221497, at *3-*4 (C.D. Cal. Dec. 5, 2024); *Soundgarden*, 2021 U.S. Dist. LEXIS 268922, at *11-*12.

Under this stringent standard, the designating party must "articulate compelling reasons supported by specific factual findings," rather than "hypothesis or conjecture," that outweigh "the public policies favoring disclosure . . .." *See Kamakana*, 447 F.3d at 1178-79 (quotations omitted). The simple fact that disclosure "may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179. And while harm to a litigant's competitive standing resulting from the disclosure of confidential business information can constitute a "compelling reason," an "unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Soundgarden*, 2021 U.S. Dist. LEXIS 268922, at *9 (quotations omitted). The compelling reasons standard is unlikely to be met where the designated material is presented "at a reasonably high level of generality." *See Tevra Brands*, 2020 U.S. Dist. LEXIS 46075, at *8; *see also Polaris Innovations, Ltd. v. Kingston Tech. Co.*, 2017 U.S. Dist. LEXIS 77142, at *23-*25 (C.D. Cal. Mar. 30, 2017).

## II. Southern Fails to Satisfy the Compelling Reason Standard for Sealing Certain Complaint Allegations

As detailed below, Southern's purported justifications for keeping Complaint allegations related to (a) the price premia percentages and the proportion of independent retailers that paid those premia, and (b) general statements by Southern employees about Southern's discriminatory pricing practices, do not overcome the heightened presumption of disclosure under the "compelling reason" standard. Additionally, Southern has not

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

1    articulated compelling reasons for maintaining under seal (c) references to the numbers

2    of items and SKUs that Southern distributes. Accordingly, Southern's Application should

3    be denied with respect to these portions of the Complaint.

4        ***A. Price Premia Percentages and Disfavored Retailer Percentages.*** The FTC

5    opposes Southern's request to permanently seal portions of the Complaint disclosing the

6    percentage price premia Southern charged disfavored retailers and the percentage of

7    independent retailers in a given state that paid those premia. *See* Appl. at pp. 7, 10-11.

8    Importantly, the alleged price premia percentages do not disclose any actual price charged

9    by Southern for any product; rather, they simply represent the relative price differential

10    or magnitude of the higher prices paid by disfavored independent retailers compared to

11    favored chain retailers for the same product (*e.g.*, disfavored retailers paid X% more than

12    favored retailers). *See* Compl. at ¶¶ 3, 56, 58-61, 63-64, 75.

13        As a threshold matter, the FTC's Complaint represents the "operative pleading in

14    the case" and—more than any other filing on the docket—"is essential to the public's

15    understanding of the suit." *Tevra Brands*, 2020 U.S. Dist. LEXIS 46075, at *7 (quotations

16    omitted); *see also McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *18

17    (C.D. Cal. Jan. 13, 2014) ("While a complaint is not, per se, dispositive, 'it is the root, the

18    foundation, the basis by which a suit arises and must be disposed of'" and therefore "'must

19    clearly meet the 'compelling reasons' standard and not the 'good cause' standard.'")

20    (quoting *In re NVIDIA Corp. Derivative Litig.,* 2008 U.S. Dist. LEXIS 120077, at *3

21    (N.D. Cal. Apr. 23, 2008)). Moreover, the particular Complaint allegations concerning

22    price premia percentages and the percentage of independent retailers charged those

23    premia that Southern seeks to seal go to the very heart of the unlawful price discrimination

24    claims asserted by the FTC in this action. *See* Compl. at ¶ 8 ("Section 2(a) of the

25    Robinson-Patman Act . . . make[s] it illegal for sellers to reduce competition by charging

26    higher prices to disfavored customers . . . ."); *see also* 15 U.S.C. § 13(a) ("It shall be

27    unlawful for any person engaged in commerce . . . to discriminate in price between

28

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S
APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

1  different purchasers . . .."); *FTC v. Morton Salt Co.*, 334 U.S. 37, 45 (1948) ("[T]he

2  Commission need only prove that a seller had charged one purchaser a higher price for

3  like goods than he had charged one or more of the purchaser's competitors"). Notably,

4  the significant range and enormous magnitude of these price premia also provide

5  important context to explain why the discriminatorily higher prices Southern charged

6  disfavored independent retailers are not cost justified, a statutory defense likely to be

7  asserted by Southern. *See* Appl. at p. 4. Similarly, the percentages of independent retailers

8  that paid those significant price premia demonstrate that Southern's illegal price

9  discrimination is pervasive and represents more than mere "cherry picked pricing

10  examples" or isolated incidents. *See id.*

11       In *Tevra Brands*, the district court rejected a similar request to seal complaint

12  allegations describing "the allegedly anticompetitive practices [plaintiff] challenge[d],"

13  which included descriptions of large differences in prices offered to retailers. *Tevra*

14  *Brands*, 2020 U.S. Dist. LEXIS 46075, at *7. Here, like in *Tevra Brands*, without access

15  to these core Complaint allegations, "the public cannot meaningfully comprehend the

16  subject matter of the suit, let alone its merits." *Id.*; *see also Polaris Innovations*, 2017 U.S.

17  Dist. LEXIS 77142, at *27-*28 ("That balancing would tilt toward disclosure because the

18  information is the core of [defendant's] antitrust claims . . . and is therefore essential to

19  enable the public to understand these proceedings."); *Avocados Plus Inc. v. Freska*

20  *Produce Int'l LLC*, 2019 U.S. Dist. LEXIS 238290, at *4-*5 (C.D. Cal. Oct. 8, 2019).

21       Against this backdrop, Southern has failed to articulate any compelling reason to

22  permanently seal the designated portions of the Complaint concerning price premia

23  percentages and disadvantaged retailer percentages that overcomes this significant public

24  interest. Neither the Application nor the accompanying Declaration of John Wittig (Dkt.

25  41, "Wittig Declaration") explain with any specificity how the publication of price premia

26  percentages alone (*i.e.*, without disclosure of any actual price tied to any specific product)

27  or disadvantaged retailer percentages (without disclosure of any specific customer name)

28  RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S
APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

4

could be used by competitors to gain an advantage or could otherwise lead to competitive harm. *See, e.g.*, *Tevra Brands*, 2020 U.S. Dist. LEXIS 46075, at \*7-\*8 (distinguishing between general allegations related to pricing differentials and contract terms that are less likely to meet the compelling reasons standard and product- or customer- specific pricing terms that "pose a greater risk of competitive harm."); *Dave*, 2024 U.S. Dist. LEXIS 221497, at \*7-\*8.

Southern's Application instead lumps the price premia percentages into its broader request to seal actual and specific product price information, without addressing the price premia percentages directly. *E.g.*, Appl. at pp. 7, 10-11. The Wittig Declaration likewise does not explain how the publication of price premia percentages could lead to competitive harm; indeed, the price premia percentages alone lack the very level of granularity that the Wittig Declaration suggests would cause such harm. *See* Wittig Decl. at ¶¶ 9-13.[1] Such "blanket claims that 'their competitive standing[s] could be significantly harmed' by disclosure are not only conclusory and vague" but also improperly generalize across fundamentally different types of information sought to be sealed. *See Tevra Brands*, 2020 U.S. Dist. LEXIS 46075, at \*7; *see also Dave*, 2024 U.S. Dist. LEXIS 221497, at \*9 (denying request to seal material based on "vague and conclusory assertions

---

[1] The price premia percentages alone lack the level of granularity involved in many of the cases cited by Southern. *See, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (specific pricing terms, royalty rates, and guaranteed minimum payment terms); *Southwest Carpenters Pension Trust v. Paramount Scaffold, Inc.*, 2018 WL 6016134, at \*1 (C.D. Cal. Jan. 12, 2018) (amount billed and collected for specific customers); *Roadrunner Intermodal Services, LLC v. T.G.S. Transportation, Inc.*, 2018 WL 432654, at \*2-3 (E.D. Cal. Jan. 16, 2018) (revenue and pricing attributed to specific customers); *TVIIM, LLC v. McAfee, Inc.*, 2015 WL 4448022, at \*3 (N.D. Cal. July 19, 2015) (product-specific financial information including profit margins and sales prices).

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

about competitive advantage" which "fail to identify any specific facts pertaining to the actual information at issue here.").[2]

Accordingly, Southern's Application should be denied with regard to the following portions of the Complaint concerning price premia percentages and disfavored retailer percentages:

| Table 1: Price Premia Percentages and Disfavored Retailer Percentages |
|---|
| Page 1, portions of line 20 |
| Page 15, portions of lines 4, 6, 27 (numbers immediately preceding % symbols) |
| Page 16, portions of lines 2, 3, 12, 14, 24, 26, 27 (same) |
| Page 17, portions of lines 12, 14, 15 (same) |
| Page 18, portions of lines 1, 3, 4 (same) and 12-16 (numbers under "Percent Difference" header) |
| Page 20, portions of line 24 |

**B. *General Statements by Southern Employees About Pricing Practices***. Southern also cannot satisfy the compelling reasons standard to permanently seal seven passages in the Complaint that reflect general, high-level statements by Southern employees about Southern's discriminatory pricing practices, including Southern's rationale for implementing certain pricing practices and the intended consequences of such practices.

---

[2] Southern also cites to *Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, 2018 WL 10758114 (N.D. Cal. Aug. 28, 2018) for the proposition that courts "can and do seal information" of the sort contemplated by the Application in price discrimination cases. But the deposition excerpts and three specific customer contracts filed under seal by the defendant in *Nicolosi* in the context of a motion to dismiss were much more detailed than the designated material challenged in this response and included actual prices and exact contract terms tied to specific customers. *Id.* at *2-3. In contrast, the operative complaint in *Nicolosi* was not redacted and publicly disclosed the discount percentage rates and value of monetary upfront payments paid to favored retailers that were challenged as unlawful price discrimination under the Robinson-Patman Act. *See* First Am. Compl. at ¶¶ 79-85, 101, Case No. 18-cv-03587-BLF, Dkt. No. 50 (N.D. Cal. Nov. 19, 2018).

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

1   *E.g.*, Appl. at p. 7 (citing Compl. at p. 1, lines 25-28; p. 2, lines 1-3 and 7-9). First, like
2   the price premia percentages, this material relates directly to the underlying price
3   discrimination claims asserted in the Complaint. In addition, these statements provide
4   important context for how and why Southern allegedly resorts to unlawful discriminatory
5   pricing practices. Thus, the presumption in favor of public access is especially great. *See,*
6   *e.g.*, *Polaris Innovations*, 2017 U.S. Dist. LEXIS 77142, at *25-*28; *Ehret v. Uber Techs.,*
7   *Inc.*, 2015 U.S. Dist. LEXIS 161896, at *4-*5 (N.D. Cal. Dec. 2, 2015) (requiring emails
8   "relevant to the merits of the case" to be unredacted under both the "compelling reasons"
9   and more lenient "good cause" standards).

10         Second, the designated materials reflect generalized statements about Southern's
11   pricing practices that are devoid of any specific pricing details or other product or
12   customer specific information. *See, e.g.*, Compl. at ¶¶ 4-5. Courts routinely reject sealing
13   for such general statements. *See, e.g., Polaris Innovations*, 2017 U.S. Dist. LEXIS 77142,
14   at *25 ("The broad strokes of defendant's business strategy . . . are not remotely akin to
15   trade secrets . . .."); *Dave*, 2024 U.S. Dist. LEXIS 221497, at *8 ("Fraser testifies that
16   Dave uses a 'complex algorithm' to determine whether and how much credit to offer
17   customers . . .. Fraser does not sufficiently explain how the redacted portions [of the
18   complaint] reveal the confidential 'inputs, parameters, and outputs' of Dave's
19   algorithm."); *U.S. v. Adobe, Inc.*, 2024 U.S. Dist. LEXIS 130076, at *4 (N.D. Cal. July
20   23, 2024) (compelling reasons standard not met for general statement devoid of any
21   specific profit, cost, pricing, trade secret, product-specific, or other information).

22         Third, against this framework, neither the Application nor the Wittig Declaration
23   provides compelling reasons to justify sealing the designated references to Defendant's
24   generalized pricing discussions. The Application asserts that the designated material
25   "describe[s] SGWS's confidential business and pricing strategies," *see* Appl. at p. 7
26   (Compl. at p.1, lines 25-28) and "describe[s] confidential information involving pricing
27   and business strategy, including reasons for and structures of deals," *see* Appl. at p. 7

28   RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S
     APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

(Compl. at p.2, lines 1-3). However, the Application does not explain how the disclosure of such material—not tied to specific product, pricing, or customer information—would cause Southern competitive harm. *See, e.g., Dave*, 2024 U.S. Dist. LEXIS 221497, at *8; *In re Apple Inc. Device Performance Litig.*, 2019 U.S. Dist. LEXIS 68121, at *20-*25 (N.D. Cal. Apr. 22, 2019) (denying request to seal generalized allegations regarding defendant's conduct and general factual allegations underlying claims).

The Wittig Declaration similarly fails to articulate any concrete facts explaining how the general statements by Southern employee's about Southern's pricing practices, without any connection to specific products, prices, or customers, could be used by a rival to gain a competitive advantage. Indeed, the designated materials include general statements by Southern employees showing that Southern utilizes a pricing structure described in the Wittig Declaration as "generally known" in the market. *See* Appl. at pp. 7 (Compl. at p. 2, lines 7-9), 9 (Compl. at p. 13, lines 17-19), 11 (Compl. at p. 19, lines 2-3); Wittig Decl. at ¶ 10. The Wittig Declaration claims that competitive harm could result from customers or competitors understanding *how* the pricing structure is implemented, yet the designated material does not contain such level of detail; it only identifies that Southern utilizes the "generally known" practice. *See Dunbar v. Google, Inc.*, 2012 U.S. Dist. LEXIS 177058, at *71 (N.D. Cal. Dec. 12, 2012) (disclosure of "mere fact" that defendant took specific action did not compel redaction where "mechanisms" for taking such action were not available to competitors).

Accordingly, the Application should be denied with regard to the following portions of the Complaint reflecting general statements by Southern employees about pricing practices:

| Table 2: General Statements by Southern Employees About Pricing Practices |
| --- |
| Page 1, portions of lines 25-28 |
| Page 2, portions of lines 1-3, and 7-9 |
| Page 13, portions of lines 17-22 |
| Page 18, portions of line 28 |
| Page 19, portions of lines 1-3 |

**C. *Numbers of Items and SKUs.*** Finally, Southern asks the Court to permanently seal references in the Complaint to the numbers of items and SKUs that Southern distributes. In one instance, the designated material merely references the total number of items that Southern distributes throughout the U.S. *See* Compl. at ¶ 14. In other instances, the Complaint allegations identify the number of items sold in specific states. *See* Compl. at ¶¶ 21 (identifying the number of different items sold to off-premise retail customers in California), 26 (identifying the number of vodka products distributed by Southern in Texas and Washington and the number of suppliers of those products). Courts routinely hold that compelling reasons do not exist to seal this type of information. *See, e.g.*, *Iglesias v. For Life Prods., LLC*, 2024 U.S. Dist. LEXIS 162845, at *15 (N.D. Cal. Sept. 10, 2024) (denying motion to redact rough estimates of number of units sold); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 176248, at *21 (N.D. Cal. Dec. 10, 2012) ("[Defendant] has provided no explanation for *how* the total number of sales it has made in recent months could possibly cause Samsung competitive harm.") (emphasis in original).

Neither the Application nor the Wittig Declaration provides "compelling reasons supported by factual findings" for permanently sealing this basic commercial information. *See Kamakana*, 447 F.3d at 1178-79. The Application merely states that the designated materials "describe the number of items and stock keeping units ("SKUs") that SGWS distributes," Appl. at p. 7 (Compl. at p. 4, portions of line 26), "describe confidential

financial information regarding SGWS's sales quantities and revenue information," Appl. at p. 7 (Compl. at p. 6, portions of lines 4-5), and "describe confidential information regarding the quantities of different products sold by SGWS and number of suppliers in different states," Appl. at p. 8 (Compl. at p. 7, portions of lines 17-18). While the Wittig Declaration explains that information regarding the quantities of sales is confidential, it does not provide a factual explanation of how disclosure of the mere number of products distributed by Southern would lead to competitive harm. *See* Wittig Decl. at ¶¶ 6-9. Southern's request is especially puzzling given that the identity of products and SKUs that Southern distributes is publicly available to all on Southern's internet platform, Proof, which can easily be sorted by state and product category using the platform's filtering function.[3]

Accordingly, the Application should be denied for failure to satisfy the compelling reasons standard with respect to the following portions of the Complaint concerning the number of items and SKUs sold by Southern:

| Table 3: Numbers of Items and SKUs |
| --- |
| Page 4, portions of line 26 |
| Page 6, portions of line 4 |
| Page 7, portions of lines 17-18 |

For the foregoing reasons, the FTC respectfully requests that the Court deny Defendant's Application as to the proposed redactions identified above in Tables 1-3.

---

[3] *See* Southern Glazer's Wine and Spirits, LLC, Proof, *https://shop.sgproof.com/* (last visited Jan. 15, 2025).

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT

Dated: January 15, 2025                        Respectfully submitted,

                                               /s/ *Daniel M. Chozick*
                                               CHRISTINA J. BROWN (Cal. Bar. No. 242130)
                                               cbrown5@ftc.gov
                                               DANIEL M. CHOZICK (*Pro Hac Vice*)
                                               dchozick@ftc.gov
                                               FEDERAL TRADE COMMISSION
                                               600 Pennsylvania Avenue, N.W.
                                               Washington, DC 20580
                                               Tel: (202) 326-2125

                                               JOHN D. JACOBS (Cal. Bar. No. 134154)
                                               Local Counsel
                                               jjacobs@ftc.gov
                                               FEDERAL TRADE COMMISSION
                                               10990 Wilshire Blvd., Ste. 400
                                               Los Angeles, CA 90024
                                               Tel: (310) 824-4300

                                               *Attorneys for Plaintiff*
                                               *Federal Trade Commission*

RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S
APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT
11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on January 15, 2025, a copy of the foregoing RESPONSE OF PLAINTIFF FEDERAL TRADE COMMISSION TO DEFENDANT'S APPLICATION TO PERMANENTLY SEAL PORTIONS OF THE COMPLAINT was served electronically through the court's electronic filing system upon all parties appearing on the court's ECF service list.

Dated: January 15, 2025

*/s/ Daniel M. Chozick*
DANIEL M. CHOZICK (*Pro Hac Vice*)
dchozick@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

*Attorney for Plaintiff*
*Federal Trade Commission*