**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Telephone: 310-552-4200

Craig S. Primis, P.C. (*pro hac vice*)
cprimis@kirkland.com
Matthew S. Owen, P.C. (*pro hac vice*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice*)
tj.mccarrick@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

Daniel K. Zach (*pro hac vice*)
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800

*Counsel for Defendant*
*Southern Glazer's Wine and Spirits, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CASE NO. 8:24-cv-02684-FWS-ADS |
| Plaintiff, | Judge: Fred W. Slaughter |
| v. | **DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S NOTICE OF MOTION TO DISMISS** |
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, | |
| Defendant. | Date:  April 24, 2025 |
| | Time:  10:00 a.m. |
| | Dept.:  Courtroom 10D |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as this Motion may be heard by the Honorable Fred W. Slaughter in Courtroom 10D of the United Stated District Court for the Central District of California, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Santa Ana, CA 92701, Defendant Southern Glazer's Wine and Spirits, LLC ("SGWS"), will and hereby does move for an order dismissing the Complaint filed by the Federal Trade Commission ("FTC" or "Plaintiff") (Dkt. 1).

Plaintiff's claims against SGWS should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This motion is based on the Notice of Motion and Motion, this Memorandum of Points and Authorities, the arguments of counsel, and any other matter that the Court may properly consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 20, 2024. Plaintiff opposes this motion.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

Dated this 3rd day of February, 2025

*/s/ Tammy A. Tsoumas*

**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Telephone: 310-552-4200

Craig S. Primis, P.C. (*pro hac vice*)
cprimis@kirkland.com
Matthew S. Owen, P.C. (*pro hac vice*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice*)
tj.mccarrick@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

Daniel K. Zach (*pro hac vice*)
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

LEGAL STANDARD.............................................................................................4

ARGUMENT .........................................................................................................5

I.      Plaintiff Does Not Allege That Any Discriminatory Transactions Took Place "In Commerce."....................................................................6

II.     The Complaint Fails To Allege Harm To Competition Because It Does Not Identify Any Pair Of Reasonably Comparable Transactions Between Competing Purchasers. ........................................................9

      A.      The Complaint Cannot Allege Competitive Injury Without Identifying Competing Retailers. ........................................10

      B.      The Complaint Cannot Allege Competitive Injury Without Identifying Specific, Reasonably Comparable Transactions. .............16

III.    Plaintiff's Claim Under The Federal Trade Commission Act Fails Because It Depends On Plaintiff's Deficient Robinson-Patman Claim........21

CONCLUSION.....................................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adcom, Inc. v. Nokia Corp.*,
    812 F. Supp. 81 (E.D La. 1993)............................................................................11

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) .....................................................................17, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................20

*Barrett v. Saint-Gobain Glass Corp.*,
    2024 WL 4828715 (C.D. Cal. Nov. 18, 2024) ..........................................4, 5, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................4

*Bendfeldt v. Window World, Inc.*,
    2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) ..........................................10, 12

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*,
    842 F.2d 578 (2d Cir. 1987) ..............................................................................11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).................................................................................9, 10, 16

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)............................................................................................12

*Cal. Beer Wholesalers Ass'n, Inc. v. Alcoholic Beverage Control App.
    Bd.*,
    5 Cal. 3d 402 (1971) ............................................................................................8

*Callahan v. A.E.V., Inc.*,
    1994 WL 682756 (W.D. Pa. Sept. 26, 1994)...........................................7, 8, 11

*Card v. Ralph Lauren Corp.*,
    2021 WL 4427433 (N.D. Cal. Sept. 27, 2021), *aff'd*,
    2022 WL 14936344 (9th Cir. Oct. 26, 2022) ....................................................10

*Card v. Ralph Lauren Corp.*,
   2022 WL 14936344 (9th Cir. Oct. 26, 2022) ...................................................17

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
   799 F.3d 202 (2d Cir. 2015) ...........................................................13, 14

*Chawla v. Shell Oil Co.*,
   75 F. Supp. 2d 626 (S.D. Tex. 1999).........................................................6, 7

*Coal. For A Level Playing Field, L.L.C. v. AutoZone, Inc.*,
   737 F. Supp. 2d 194 (S.D.N.Y. 2010) ............................................18, 19, 20, 21

*Day v. Henry*,
   686 F. Supp. 3d 887 (D. Ariz. 2023) .........................................................8

*E.I. du Pont de Nemours & Co. v. F.T.C.*,
   729 F.2d 128 (2d Cir. 1984) ...............................................................21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...........................................................4, 5, 20

*F.T.C. v. Simplicity Pattern Co.*,
   360 U.S. 55 (1959)........................................................................16

*Falls City Indus., Inc. v. Vanco Beverage, Inc.*,
   460 U.S. 428 (1983).................................................................14, 15

*FTC v. Freeman Hosp.*,
   69 F.3d 260 (8th Cir. 1995) ...........................................................11, 12

*FTC v. Morton Salt Co.*,
   334 U.S. 37 (1948).................................................................13, 14, 15, 16

*Gulf Oil Corp. v. Copp Paving Co.*,
   419 U.S. 186 (1974)........................................................................6

*Hiram Walker, Inc. v. A&S Tropical, Inc.*,
   407 F.2d 4 (5th Cir. 1969) ...................................................................7

*Liu v. Unum Life Ins. Co.*,
   2024 WL 4720885 (C.D. Cal. Oct. 11, 2024) ............................................4, 20

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

*Major Mart, Inc. v. Mitchell Distrib. Co.*,
   46 F. Supp. 3d 639 (S.D. Miss. 2014) ................................................................. 7

*Mkt. Choice, Inc. v. New England Coffee Co.*,
   2009 WL 2590651 (W.D.N.C. Aug. 18, 2009) ................................................. 12

*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*,
   2019 WL 8883851 (N.D. Cal. Aug. 26, 2019) ........................................... *passim*

*Rutledge v. Elec. Hose & Rubber Co.*,
   511 F.2d 668 (9th Cir. 1975) ............................................................................. 17

*Sw. Paper Co. v. Hansol Paper*,
   2013 WL 11238487 (C.D. Cal. Apr. 15, 2013) ........................................ *passim*

*Sylling v. Westinghouse Corp.*,
   1993 WL 339959 (9th Cir. Sept. 3, 1993) ....................................... 17, 18, 19, 21

*Taggart v. Rutledge*,
   1988 WL 79483 (9th Cir. July 19, 1988) ............................................................ 8

*Texaco Inc. v. Hasbrouck*,
   496 U.S. 543 (1990) ........................................................................................... 17

*Texas Gulf Sulphur Co. v. J.R. Simplot Co.*,
   418 F.2d 793 (9th Cir. 1969) ........................................................................ 17, 20

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
   89 F.4th 1126 (9th Cir. 2023),
    *cert. denied*, No. 23-1099 (Oct. 7, 2024) ................................................. 11, 12

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
   546 U.S. 164 (2006) ...................................................................................... *passim*

*Water Craft Mgmt., L.L.C. v. Mercury Marine*,
   361 F. Supp. 2d 518 (M.D. La. 2004), *aff'd*,
   457 F.3d 484 (5th Cir. 2006) ............................................................................. 10

*Zoslaw v. MCA Distrib. Corp.*,
   693 F.2d 870 (9th Cir. 1982) ............................................................................... 8

**Statutes**

15 U.S.C. § 13 ..................................................................................*passim*

15 U.S.C. § 13(a) ..............................................................................*passim*

15 U.S.C. § 13(b) .....................................................................................17

15 U.S.C. § 45 ....................................................................................21, 22

15 U.S.C. § 45(n) ......................................................................................22

1991 Ariz. Sess. Laws, Ch. 52, § 1 ............................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................4

**Other Authorities**

P. Areeda & D. Turner,
  *Antitrust Law* § 233b (1978) ................................................................7

R. Bork,
  THE ANTITRUST PARADOX (2d ed. 1993) ................................................1

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

### **INTRODUCTION**

In this case, the Federal Trade Commission seeks to "revive" a statute it has not enforced in a quarter century.  There is reason to doubt the wisdom of that revival, based on widespread academic and judicial criticism of the "wholly mistaken economic theory" underlying the relevant statute, the Robinson-Patman Act, 15 U.S.C. § 13.  *See* R. Bork, THE ANTITRUST PARADOX 382 (2d ed. 1993).  But there is even greater reason to doubt the Commission's selection of *this case* for that project.  As the unusual and lengthy published dissents of two Commissioners persuasively explain, the Complaint represents a legally flawed, factually unsupported waste of the agency's resources.  It should be dismissed for several independent reasons.

At the outset, the Complaint ignores the Act's explicit limitation—long recognized in caselaw—that it applies only to transactions "in commerce."  15 U.S.C. § 13(a).  Unlike jurisdictional elements in other federal statutes, this stringent requirement is not satisfied by transactions that *affect* interstate commerce: at least one of the sales in any pair of allegedly discriminatory transactions must *itself* cross state lines.  But the Complaint's allegations uniformly focus on *intrastate* sales.  Indeed, the Commission could not allege otherwise, since the legally mandated structure of the liquor industry and the numerous state-by-state regulations together *require* distributors to sell wine and spirits to retailers only from warehouses within the same state.  The Complaint's allegations are therefore categorically beyond the Act's reach.

Moreover, the Robinson-Patman Act "proscribes price discrimination only to the extent that it threatens to injure competition."  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (internal quotations omitted).  It forbids a seller from charging different prices to different buyers only where the transactions are otherwise comparable in all material respects.  A plaintiff therefore

cannot allege a violation of the Act merely by pointing to price differences alone, shorn of their competitive context. For the Court to assess whether unlawful price discrimination has taken place, the plaintiff must identify pairs of comparable transactions in which a favored purchaser and disfavored purchaser were charged different prices. Yet the Complaint does not specify *even a single pair* of comparable transactions. Nor does it name even one pair of competing purchasers. The Commission has therefore failed to allege the competitive injury required to state a claim.

Finally, this suit asks the Court to interfere with the competitive process in innumerable local markets for wine and spirits—already heavily regulated by state and local laws—by invoking the blunt instrument of a nationwide injunction. But the Complaint seeks such relief without so much as sketching the competitive landscape in any of the markets that would be affected.

In short, disregarding the Act's well-established jurisdictional limitations and substantive requirements, the Commission asks this Court to perform market surgery with a blindfold and a sledgehammer. The Complaint should be dismissed.

## **BACKGROUND**

SGWS is an independent wholesale distributor that purchases alcohol beverages from suppliers, and sells those beverages to retailers for ultimate sale to consumers. *See* Compl. ¶¶ 12-14, 26, 29. SGWS serves retailers of all sizes, from independent retailers to so-called "chain stores" like Costco, Kroger, and Albertson's. *See id.* ¶¶ 29-31.

Plaintiff, the Federal Trade Commission, alleges that SGWS engaged in unlawful price discrimination by charging lower prices to chain stores than it charged to independent retailers. *See, e.g., id.* ¶¶ 32-34. The Complaint alleges that SGWS charged these differing prices through various discounts that SGWS provided

to retailers, such as discounts for high-volume purchases and "scan rebates" funded by the suppliers from whom SGWS purchases the products it then sells.  *See id.* ¶¶ 35-54.

The Complaint does not allege, however, that any of the allegedly discriminatory transactions crossed state lines.  The Complaint does not define any geographic market in which it alleges that competition has been harmed.  Nor does it identify any pair of transactions in which an allegedly favored chain store was charged less than an allegedly disfavored independent retailer in a transaction that was otherwise materially comparable.  Indeed, the Complaint does not identify the timing, material non-price terms, or cost to SGWS of any such transactions.  In fact, the Complaint does not identify any independent retailer *at all*.

Instead, to support its theory, the Complaint points to generalized pricing and sales data aggregated across entire states over periods ranging from one to five years.  *See id.* ¶¶ 55-64.  Based on that generalized data, the Complaint seeks a nationwide injunction that would regulate SGWS's prices for the tens of thousands of different products it distributes across more than 30 states.  Compl. at 23.

Two of the five FTC Commissioners dissented from the FTC's decision to authorize the filing of this Complaint.  Then-Commissioner (now FTC Chairman) Ferguson and Commissioner Holyoak each filed thorough dissents that, over the course of a combined 118 single-spaced pages, explain the numerous problems with the Complaint's legal theories, identify gaps in the evidence the Commission gathered through its lengthy pre-suit investigation, and highlight defects with this lawsuit.  *See* Ex. 1 (Dissenting Statement of Commissioner Andrew N. Ferguson ("Ferguson Dissent")); Ex. 2 (Dissenting Statement of Commissioner Melissa Holyoak ("Holyoak Dissent")).  Both observed that the Commission is unlikely to prevail and concluded that this suit does not serve the public interest.  *See* Holyoak Dissent at ii (explaining that the Complaint "condemns conduct that is plainly

innocuous or even procompetitive" and "is inconsistent with the statute Congress has written"); *see also id.* at ii-iii ("Beyond the legal failings of the Complaint, the lack of harm to competition—and the remedy's potential to harm competition—suggests today's action certainly is not 'in the interest of the public,' which is required before we bring an enforcement action."); Ferguson Dissent at 1 ("The Commission exercises its discretion poorly by bringing this case. The Commission is unlikely to prevail even on its own theory of the Act, and it would be an imprudent use of the Commission's enforcement resources even if it were likely to prevail.").

Because those dissents were correct, SGWS now moves to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "must provide 'more than labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' such that the factual allegations 'raise a right to relief above the speculative level.'" *Barrett v. Saint-Gobain Glass Corp.*, 2024 WL 4828715, at *2 (C.D. Cal. Nov. 18, 2024) (Slaughter, J.) (quoting *Twombly*, 550 U.S. at 555). Put differently, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Liu v. Unum Life Ins. Co.*, 2024 WL 4720885, at *3 (C.D. Cal. Oct. 11, 2024) (Slaughter, J.) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

Additionally, the Complaint's factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Liu*, 2024 WL 4720885, at *3 (quoting *Eclectic Props.*, 751 F.3d at 996). This standard "asks for

more than a sheer possibility that a defendant has acted unlawfully." *Barrett*, 2024 WL 4828715, at *3 (quotation omitted).  Indeed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability," it must be dismissed.  *Id.* (quoting *Eclectic Props.*, 751 F.3d at 996).

## ARGUMENT

This is a "secondary-line" Robinson-Patman Act case.  That means Plaintiff's allegations focus on purported harm to competition between allegedly "favored" and "disfavored" customers who purchase wine and spirits from SGWS.  *See Volvo*, 546 U.S. at 176.  Section 2(a) of the Robinson-Patman Act provides, in relevant part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, … and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition….

15 U.S.C. § 13(a).  Later language within the same provision exempts price differentials "which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered" and price changes made "in response to changing conditions affecting the market for or the marketability of the goods concerned." *Id.*

To establish secondary-line price discrimination under the Act, Plaintiff must establish: (1) that "the relevant … sales were made in interstate commerce"; (2) that the commodities sold "were of like grade and quality"; (3) that SGWS "discriminate[d] in price between" a favored and disfavored purchaser of the commodities; and (4) that "'the effect of such discrimination may be ... to injure,

destroy, or prevent competition' to the advantage of a favored purchaser." *Volvo*, 546 U.S. at 176 (quoting 15 U.S.C. § 13(a)).

Plaintiff's Complaint does not adequately allege those elements, and it suffers from two glaring defects: ***First***, because the Complaint's allegations exclusively focus only on *intrastate* sales, the Complaint flunks the Act's especially stringent in-commerce requirement. ***Second***, because the Complaint does not identify any pair of retailers that actually compete—much less any specific transactions involving those retailers—it fails to allege the requisite injury to competition.

The Complaint must therefore be dismissed.

## I. PLAINTIFF DOES NOT ALLEGE THAT ANY DISCRIMINATORY TRANSACTIONS TOOK PLACE "IN COMMERCE."

Plaintiff's allegations regarding SGWS's wholly intrastate transactions do not (and cannot) state a claim under the Robinson-Patman Act. By its terms, the Act applies only to instances of alleged price discrimination occurring "in commerce." *See* 15 U.S.C. § 13(a). That language creates a "stringent interstate commerce requirement." *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 645 (S.D. Tex. 1999). As the Supreme Court has explained, the Act "applies only where at least one of the" challenged "transactions … cross[es] a state line." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974). That is not the case here.

The transactions alleged in the Complaint lack any interstate component, but rather involve sales to retailers *within* a state. *See, e.g.*, Compl. ¶ 56 (alleging that in 2022, SGWS provided certain discounts to a chain store "*in California*" while providing higher prices to independent stores "*in California*" (emphasis added)); *id.* ¶ 59 (alleging aggregated pricing information "*in Illinois* in 2022" (emphasis added)). Nowhere does the Complaint allege that sales to any specific paired retailers crossed state lines. *See generally id.* (Nor could it, as it does not identify

any paired retailers to begin with—an independent defect in the Complaint discussed in Section II, *infra*.)

In similar cases, courts have rejected Robinson-Patman Act claims based on intrastate sales of alcohol for failure to satisfy the "in commerce" requirement. For example, in *Hiram Walker, Inc. v. A&S Tropical, Inc.*, 407 F.2d 4, 9 (5th Cir. 1969), the Fifth Circuit held that, where a distributor sold alcohol in Florida to Florida retailers the sales were, "as a matter of law … not within the scope of the Robinson-Patman Act." *Id.*; *see also Major Mart, Inc. v. Mitchell Distrib. Co.*., 46 F. Supp. 3d 639, 667-68 (S.D. Miss. 2014) ("Once the beer came to rest in Mitchell's warehouses, it ceased to be in interstate commerce. Any sale to retailers, therefore, was an intrastate sale.") (internal citation omitted).

To the extent Plaintiff suggests that SGWS's transactions are within the "flow of interstate commerce" and therefore "in commerce," Plaintiff is mistaken. *See* P. Areeda & D. Turner, *Antitrust Law* § 233b (1978) ("In the typical case, the interstate sale from the manufacturer to the wholesaler is in the flow, while the wholesaler's resale of the goods within the state is not."). Under the Robinson-Patman Act, any "flow of commerce is broken once the goods [at issue] are sold to an independent distributor." *See Callahan v. A.E.V., Inc.*, 1994 WL 682756, at *6-7 (W.D. Pa. Sept. 26, 1994) (collecting cases); *Hiram Walker*, 407 F.2d at 9 ("When the supplier himself does not engage in sales transactions across state lines—by deploying his franchised distributors or bona fide independent subsidiaries so that each satisfies only local market demands—Robinson-Patman liability may be minimized. For any price differentials made by an autonomous local subsidiary or distributor solely as between customers within the state would arise from a sale on the part of the intrastate distributor or subsidiary rather than of the supplier, beyond the commerce criteria of the Robinson-Patman Act.") (alterations and quotations omitted); *Chawla*, 75 F. Supp. 2d at 647 ("Retail goods delivered from out of state to an in-state buyer

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

who then re-sells the goods to retail customers generally cease to be in the flow of interstate commerce when the goods reach the in-state retailer.") (quotations omitted); *Taggart v. Rutledge*, 1988 WL 79483, at *4 (9th Cir. July 19, 1988) ("The flow of commerce ends when goods reach either their intended destination or an independent distributor.").

That independent distributors would break the flow of commerce makes sense.  The state-imposed three-tier system, with its complex at-rest and warehousing requirements, is *designed* to break the flow of alcohol products from producers to consumers—"to prevent suppliers from dominating local markets through vertical integration and to prevent excessive sales of spirituous liquor produced by overly aggressive marketing techniques." *Day v. Henry*, 686 F. Supp. 3d 887, 890 (D. Ariz. 2023) ("This system requires, as the Arizona State Legislature has said, 'a separation between manufacturing interests, wholesale interests and retail interests in the production and distribution of spirituous liquor.'") (citing 1991 Ariz. Sess. Laws, Ch. 52, § 1); *Cal. Beer Wholesalers Ass'n, Inc. v. Alcoholic Beverage Control App. Bd.*, 5 Cal. 3d 402, 407 (1971) ("In short, business endeavors engaged in the production, handling, and final sale of alcoholic beverages were to be kept distinct and apart.").  The operations of independent distributors, who must sell from intrastate warehouses to intrastate retailers, are central to this complex and deliberately fragmented structure.

SGWS is such an independent distributor.  Compl. ¶ 13.  This is not "a situation in which the distributor is" alleged to be "a subsidiary of the out-of-state supplier," and there is no allegation that the out-of-state manufacturers have an ownership interest in SGWS such that SGWS would be a "sham" distributor.  *See Callahan*, 1994 WL 682756, at *6; *see also Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 880 (9th Cir. 1982).  Thus, SGWS's independent purchases of alcohol from out-of-state suppliers break the flow of commerce.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS CASE NO. 8:24-cv-02684 FWS-ADS**

But even if SGWS's independent-distributor status did not break the flow of commerce (and it does), the Complaint's threadbare allegations about SGWS's demand planning would not satisfy the flow-of-commerce test. The Complaint contains no allegation that suppliers instruct SGWS to sell specific products to specific retailers. Instead, Plaintiff makes a few conclusory statements to the effect that SGWS anticipates its customers' needs when ordering inventory and suggests that is enough to put SGWS's sales within the flow of commerce. But "[i]f the flow-of-commerce test could be satisfied based on such general planning of anticipated inventory, businesses that exclusively make intrastate sales from inventory purchased from out-of-state manufacturers would face dramatically increased legal exposure under the Act, undermining the text's 'in commerce' language." Holyoak Dissent at 25. Exactly so. This Court should not open floodgates that Congress chose to keep closed.[1]

## II. THE COMPLAINT FAILS TO ALLEGE HARM TO COMPETITION BECAUSE IT DOES NOT IDENTIFY ANY PAIR OF REASONABLY COMPARABLE TRANSACTIONS BETWEEN COMPETING PURCHASERS.

Because the Act requires "harm to competition," a buyer "cannot establish that a seller has violated the Robinson–Patman Act merely by showing that the seller has charged different prices for the same type of goods." *Sw. Paper Co. v. Hansol Paper*, 2013 WL 11238487, at *3 (C.D. Cal. Apr. 15, 2013). The Act "could not, and does not, ban all price differences charged to different purchasers of commodities of like grade and quality." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993) (quotation omitted). Instead, it "condemns

---

[1] Because Plaintiff's Complaint does not allege any interstate sales of alcohol to paired retailers, it must be dismissed in its entirety for lack of jurisdiction. But even if the Court concludes that some interstate sales have been adequately alleged, the Court should confine this case to such sales.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS CASE NO. 8:24-cv-02684 FWS-ADS**

price discrimination only to the extent that it threatens to injure competition." *Id.*; *Volvo*, 546 U.S. at 176.

The Complaint fails to allege a substantial competitive injury because it fails to identify any pair of competing purchasers or reasonably comparable transactions.

## A. The Complaint Cannot Allege Competitive Injury Without Identifying Competing Retailers.

To adequately allege competitive injury, the Complaint must identify specific favored and disfavored purchasers that compete with one another. This is because a plaintiff in a secondary-line case "cannot establish the competitive injury required under the Act" "[a]bsent actual competition with a favored [purchaser]." *Volvo*, 546 U.S. at 177. Indeed, "to establish the requisite competitive injury in a secondary-line case, [the] plaintiff must first prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential." *Card v. Ralph Lauren Corp.*, 2021 WL 4427433, at *7 (N.D. Cal. Sept. 27, 2021), *aff'd*, 2022 WL 14936344 (9th Cir. Oct. 26, 2022). A complaint will not adequately allege competitive injury unless it alleges facts sufficient to show "actual competition for the same dollar." *Bendfeldt v. Window World, Inc.*, 2017 WL 4274191, at *3 (W.D.N.C. Sept. 26, 2017) (quotation omitted); *see also* Holyoak Dissent at 25 (explaining that the Act "requires identifying both the favored retailer (*i.e.*, the retailer receiving the discount) and that retailer's disfavored competitor (*i.e.*, the retailer harmed by the discriminatory practice)").

Based on this "actual competition" requirement, several courts have recognized that showing competitive injury requires a secondary-line plaintiff to define the relevant market by identifying a relevant product market and a corresponding geographic market in which the parties compete. *See, e.g.*, *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 541 (M.D. La. 2004) ("Plaintiffs also failed to prove a prima facie Robinson-Patman claim because they

failed to offer testimony or other evidence that adequately defined the relevant geographic and product markets as well as the product itself."), *aff'd*, 457 F.3d 484 (5th Cir. 2006); *Callahan*, 1994 WL 682756, at *3 ("A prerequisite to establishing secondary line injury is that the favored and disfavored customers must be competing in the same geographic and product markets…." (citation omitted)). That requirement makes sense, and this Court should adopt it. "Without a well-defined relevant market, an examination of" challenged conduct's "competitive effects is without context or meaning." *FTC v. Freeman Hosp.*, 69 F.3d 260, 268 (8th Cir. 1995).

Other courts have relaxed the standard required to infer "actual competition" between competing purchasers in secondary-line cases—but the Complaint flunks that test too. Even that relaxed standard requires establishing: (1) that the two purchasers operate in the same geographic market; (2) that the two purchasers "purchased goods of the same grade and quality from the seller within approximately the same period of time"; and (3) that "the two customers are operating on a particular functional level such as wholesaling or retailing." *See U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1142 (9th Cir. 2023) (quotations omitted) (interpreting "customers competing" in Section 2(d) of the Act), *cert. denied*, No. 23-1099 (Oct. 7, 2024); *see also Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584-85 (2d Cir. 1987). This sort of "competitive nexus" is a "*basic predicate*" of showing competitive injury. *Best Brands*, 842 F.2d at 584-85; *Adcom, Inc. v. Nokia Corp.*, 812 F. Supp. 81, 83 (E.D La. 1993); *see also Volvo*, 546 U.S. at 177. Thus, at a minimum plaintiff must identify the relevant competitors and allege facts suggesting they are in competition.[2]

---

[2]  SGWS respectfully submits that the more relaxed standard for "actual competition" has no basis in the Act's text and contradicts the foundational principle—widely accepted in other antitrust cases—that "determination of the relevant market is a necessary predicate" to evaluating any conduct's competitive

1    Courts "routinely dismiss[] Robinson-Patman Act claims for failing to allege
2    these very elements." *Bendfeldt*, 2017 WL 4274191, at *3 (W.D.N.C. Sept. 26,
3    2017) (collecting cases). In *Bendfeldt*, the plaintiffs alleged that "Plaintiffs
4    competed against other window sales and installation businesses who purchased the
5    same AMI windows, but on superior terms," and that "Plaintiffs and their
6    competitors each competed for the same customers within the market area." *Id.*
7    (quotations omitted). But the court rejected these vague allegations: "Plaintiffs
8    allege that retailers in locations that are unidentified, or identified only as being
9    somewhere 'in the Midwest,' or 'throughout the United States,' allegedly received
10    lower prices …. But nowhere do the Plaintiffs identify any Bendfeldt retailer that
11    actually competed with or lost sales to any favored retailer." *Id.* at *2; *see also, e.g.*,
12    *Mkt. Choice, Inc. v. New England Coffee Co.*, 2009 WL 2590651, at *11-12
13    (W.D.N.C. Aug. 18, 2009) ("The Amended Complaint lacks any factual allegations
14    identifying the particular goods involved, the retailers affected, the actual injury to
15    affected retailers, or the circumstances of the sales transactions involved.").

16    The Complaint here relies on similarly vague allegations and therefore fails
17    to allege facts showing "actual competition." It makes no attempt to identify a
18    relevant product market and corresponding geographic market—indeed, it
19    "conspicuously avoids using standard antitrust tools to define the relevant antitrust
20    markets." *See* Holyoak Dissent at 27. Nor does it point to a pair of retailers that
21    operated on the same functional level in the same geographic market and purchased
22    the same goods "within approximately the same period of time." *See U.S.*
23    *Wholesale*, 89 F.4th at 1142. In fact, the Complaint does not identify even a single

24
25
26
27
28

impact. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962)
(quotation omitted); *see also, e.g.*, *Freeman Hosp.*, 69 F.3d at 268. But even
under such a relaxed standard, Plaintiff's Complaint fails to allege "actual
competition" because it does not identify any competing purchasers.

independent retailer that was disfavored or a single geographic market in which competition was harmed.

That omission is fatal: Without identifying any retailers in "actual competition," a Robinson-Patman complaint does not plausibly allege competitive injury. Plaintiffs "generally have two routes available" to establish secondary-line competitive injury: "showing substantial discounts to a competitor over a significant period of time, known as the *Morton Salt* inference, or proof of sales lost to favored purchasers." *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 210 (2d Cir. 2015). As explained below, Plaintiff can follow neither route without identifying any pair of favored and disfavored retailers that actually compete.

First, Plaintiff plainly cannot allege that sales were diverted from a disfavored purchaser to a favored purchaser. Such diverted sales are the "hallmark" of secondary-line competitive injury. *See id.*; *Volvo*, 546 U.S. at 177. But without identifying a favored retailer and disfavored retailer that actually compete, Plaintiff cannot allege facts suggesting that sales were diverted from the disfavored retailer to the favored retailer. Moreover, diverted sales will establish competitive injury only when they are "substantial"; "*de minimis*" losses will not suffice. *Cash*, 799 F.3d at 210; *Volvo*, 546 U.S. at 179-80. Yet it is similarly impossible to assess whether any diverted sales were "substantial" without identifying a disfavored retailer and comparing any diverted sales to its total sales. *See Cash*, 799 F.3d at 210-11 (loss of 3% of customers was not "substantial"); *Volvo*, 546 U.S. at 179-80 (loss of $30,000 in profits from one sale of 12 trucks was "not of such magnitude as to affect substantially competition" between Volvo dealers). The Complaint therefore cannot establish competitive injury through diverted sales.

Second, Plaintiff's failure to identify any pair of competing retailers also precludes reliance on the *Morton Salt* inference. That inference—originating in the Supreme Court's decision in *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)—provides

a rebuttable, "prima facie" inference of competitive harm when a plaintiff presents "proof of a substantial price discrimination between competing purchasers over time." *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435 (1983); *see also Cash*, 799 F.3d at 212.  By its own terms, this inference is triggered only by a price difference that is "substantial" and that exists between "competing purchasers." *Falls City*, 460 U.S. at 435.  Thus, in *Volvo*, the plaintiff's comparisons of different sales "d[id] not support an inference of competitive injury" under *Morton Salt* because the plaintiff failed to show that the purchasers who received a lower price were its "competitors."  546 U.S. at 179; *see also id.* (emphasizing that the *Morton Salt* inference "arises from 'proof of a substantial price discrimination between *competing purchasers* over time'" (quoting *Falls City*, 460 U.S. at 435) (emphasis added in *Volvo*)).

The vague generalizations in Plaintiff's Complaint therefore cannot trigger *Morton Salt*.  Plaintiff conjures an illusion of specificity by quoting various prices, discounts, and net sales figures throughout its Complaint, but every figure quoted in Plaintiff's Complaint is a generalization.  *See, e.g.*, Compl. ¶ 44-45, 56-58, 64.  The figures are broad aggregations of sales volume, average prices, and total discounts offered on a statewide basis across periods as long as five years.  *Id.*  They are not tethered to any pair of competing retailers, any geographic market, or any competitively meaningful timeframe.  While the Complaint sometimes ties an aggregated data point to a single allegedly favored chain store, it never provides a single price, discount value, or any other numeric figure for a specific, allegedly disfavored independent retailer.  Instead, it consistently lumps together all "independent retailers" as if they were one, unified business empire.  Indeed, the Complaint frequently alleges that a supposedly-favored retailer paid "approximately" or "as little as" $X for a given product, while unidentified

"independent retailers" paid "up to" or "as much as" $Y for the same product that year. *See, e.g.*, Compl. ¶¶ 56, 61, 63.

But there is no basis for blending all *independent* retailers together. In fact, the Complaint itself makes clear that different independent retailers have different business models: "They include neighborhood grocery stores, local convenience stores, and local wine and spirits shops." Compl. ¶ 31. "Some operate a single store and others a handful of locations." *Id.* Some purchase directly from an SGWS sales rep, others place orders online, and still others purchase through "co-ops." *Id.* Moreover, the inherently local nature of these independent retailers means that Plaintiff's statewide, aggregated data is drastically overbroad: the Complaint does not aver, for example, that discounts offered to grocery stores in Chula Vista change the competitive landscape for a corner store in Crescent City—of course they do not. Instead, the Complaint glosses over these geographic and economic differences, attempting to trigger an inference of competitive injury with an amalgamated mass of data stripped of competitive context. Underscoring the inadequacy of Plaintiff's allegations, the Complaint alleges that SGWS distributes products across 44 states and seeks a *nationwide* injunction, but it provides no information whatsoever about any states beyond California, Arizona, Illinois, Texas, and Washington. Plaintiff plainly cannot obtain nationwide relief based on vague aggregations of data from just five states.

Plaintiff's inference-by-generalization approach to *Morton Salt* has no basis in law. Without tying its allegations to any specific retailers, the Complaint cannot show "substantial price discrimination between *competing purchasers* over time." *Volvo*, 546 U.S. at 179 (quoting *Falls City*, 460 U.S. at 435); *see also see also* Holyoak Dissent at 26 ("Today's Complaint pleads no facts to demonstrate any pairings of retailers. Sure, it alleges that Costco and other large retailers receive favored pricing, and that small or independent retailers do not receive the same

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

favored pricing. But never does it allege that a favored retailer such as Costco competes with a specific disfavored retailer and that competition between those retailers was harmed. Nor am I aware of any such evidence."). Because Plaintiff has not identified any pair of favored and disfavored retailers in "actual competition," Plaintiff has not plausibly alleged competitive injury under the Act.[3]

### B. The Complaint Cannot Allege Competitive Injury Without Identifying Specific, Reasonably Comparable Transactions.

Even if the Complaint identified a pair of competing retailers, it still would not plausibly allege competitive injury because it does not identify any pair of reasonably comparable transactions in which discrimination occurred.

Again, "a buyer cannot establish that a seller has violated the Robinson–Patman Act merely by showing that the seller has charged different prices for the same type of goods." *Sw. Paper*, 2013 WL 11238487, at *3. The Act and caselaw recognize that price differences often arise for perfectly legitimate reasons, "confirm[ing] that Congress did not intend to outlaw price differences that result from or further the forces of competition." *Brooke Grp.*, 509 U.S. at 220. Indeed, Section 2(a) "is hedged with qualifications" and "built-in defensive matter." *F.T.C. v. Simplicity Pattern Co.*, 360 U.S. 55, 64-65 (1959). Moreover, "[s]ome price differences can reflect pro-competitive forces, and price discrimination reflecting competition in a market is lawful." *Southwest Paper*, 2013 WL 11238487, at *3.

The Act and caselaw carve out, for example, price differentials that:

- "[M]ake only due allowance for differences in the cost of manufacture, sale, or delivery," *Simplicity*, 360 U.S. at 64;

- are attributable to "changing market conditions," *id.*;

- are "made in good faith to meet an equally low price of a competitor," *id.* at 66;

---

[3] Even if *Morton Salt* could apply to Plaintiff's Complaint—and it cannot—SGWS respectfully preserves for appeal the argument that *Morton Salt* should be overruled or substantially cabined. *See* Holyoak Dissent at 36-58.

- result from "materially different terms" in the transactions, such as short-term vs. long-term sales structures or substantial non-price contractual obligations, *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1188 (9th Cir. 2016);

- "arise due to a 'functional discount'"—that is, a "discount 'given to a purchaser based on its role in the supplier's distributive system, reflecting … the services performed by the purchaser for the supplier'"—*Sw. Paper*, 2013 WL 11238487, at *3 (quoting *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 554 n.11 (1990));

- are charged at different times—since the transactions must be "contemporaneous" to ensure that the price differential is not a lawful response to changing market conditions—*Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975);[4] or

- are charged to buyers that "have different business models and serve distinct markets," *Card v. Ralph Lauren Corp.*, 2022 WL 14936344, at *1 (9th Cir. Oct. 26, 2022) ("One Kings Lane is a large retailer that deals in a higher volume of Defendants' products, so transactions between Defendants and One Kings Lane would not be 'reasonably comparable' to transactions with Pacific Heights Place such that price discrimination between the retailers would have an anticompetitive effect.").[5]

To allege competitive injury, therefore, the plaintiff must identify pairs of transactions that are "reasonably comparable" in all material respects: "[t]he prohibitions of the statute presuppose discriminatory treatment of customers in analogous transactions involving similar goods under comparable market conditions at approximately the same time." *Texas Gulf Sulphur Co. v. J.R. Simplot Co.*, 418 F.2d 793, 806-07 (9th Cir. 1969) (quotation omitted); *see also Aerotec*, 836 F.3d at

---

[4]   *See also Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 8883851, at *4 (N.D. Cal. Aug. 26, 2019) ("A key requirement for a Robinson-Patman section 2(a) claim is a showing that there have been at least two completed, substantially contemporaneous sales by the same seller.") (quotation omitted); *Sylling v. Westinghouse Corp.*, 1993 WL 339959, at *1 (9th Cir. Sept. 3, 1993);

[5]   SGWS's discounts are cost-justified and are good-faith attempts to meet the prices of competitors. *See* Ferguson Dissent at 24-25 ("Southern appears likely to succeed on a cost-justification defense."); Holyoak Dissent at 28-32 (arguing that SGWS's price differences are cost-justified based on discounts SGWS receives from the suppliers that sell to it); *id.* at 32-35 (arguing that SGWS's prices are a good-faith attempt to meet competition). That said, SGWS does not seek dismissal on this basis because the Act designates those justifications as affirmative defenses. *See* 15 U.S.C. § 13(b). The same is not true for the other lawful explanations, however, as explained further below.

1188 ("Unlawful secondary-line price discrimination exists only to the extent that the differentially priced product or commodity is sold in a 'reasonably comparable' transaction." (citation omitted)).    Put differently, the Complaint must compare apples to apples.

*Nicolosi* highlights the necessity of alleging specific pairs of comparable transactions.  *See* 2019 WL 8883851, at *4.  There, a distributor of automotive supplies alleged that a manufacturer offered benefits to a competing distributor that were never offered to the plaintiff, including a 10% discount on high-volume sales. *Id.* at *1-2.  The plaintiff alleged that it was "constantly purchasing paint" from the manufacturer, "including concurrently with the discounted purchases" of the competing distributor.  *Id.* at *2.  Nevertheless, the court dismissed the complaint because the plaintiff "fail[ed] to plausibly allege two contemporaneous sales" at different prices.  *Id.* at *4.  "Without details of any specific purchase by [the plaintiff,] the court [could] not compare the prices/terms" offered to the allegedly favored retailer with those offered to the plaintiff.  *Id.*  Thus, it was "equally plausible that [the plaintiff] did not receive the 10% discount because it never attempted to purchase the necessary amount of goods."  *Id.*; *see also Sylling*, 1993 WL 339959, at *1 (dismissing complaint because it failed to "allege contemporaneous sales by the same seller at different prices"); *Sw. Paper*, 2013 WL 11238487, at *5-6 (dismissing complaint because it failed to "plead facts giving rise to a plausible inference that any alleged price differentials [we]re not the result of" functional discounts or differing terms of sale); *Coal. For A Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 215-18 (S.D.N.Y. 2010) (similar).

So too here.  Plaintiff seeks a *nationwide* injunction without identifying *even one* pair of comparable transactions.  Instead, the Complaint relies on a series of aggregated figures divorced from any competitive context.  Despite purporting to reference millions of transactions across a period of at least five years, the Complaint

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS CASE NO. 8:24-cv-02684 FWS-ADS**

never once identifies a pair of "reasonably comparable," and "contemporaneous" transactions. *See Aerotec*, 836 F.3d at 1188; *Sylling*, 1993 WL 339959, at *1. Instead, the only facts tying together even the vaguely referenced sales are that they were made somewhere within the same state during the same one-to-five-year period. *See, e.g.*, Compl. ¶¶ 57-58 (alleging ranges of "approximate[]" prices paid by certain favored retailers and unidentified independent retailers in Arizona "from September 2018 to at least October 2023").

That is not even close to what the statute requires. For all the detail the Complaint provides, the chain store might have purchased 1,000 cases in Flagstaff on January 1, 2022 as part of a long-term relationship, while the independent retailer rush-ordered half a case in Yuma on the following New Year's Eve. Although these allegations may "look[] like contemporaneous sales at different prices, [they are] not." *Sylling*, 1993 WL 339959, at *1. Such apples-to-oranges comparisons cannot establish injury to competition. "Without details of any specific purchase," the Court "cannot compare the prices/terms" SGWS offered to allegedly favored and disfavored retailers. *Nicolosi*, 2019 WL 8883851, at *4. And because the Complaint alleges no facts suggesting that any two transactions were reasonably comparable, it provides no basis to infer that any price differentials resulted from unlawful price discrimination rather than one of the numerous lawful and pro-competitive explanations for price differentials. *See Sw. Paper*, 2013 WL 11238487, at *5-6; *AutoZone*, 737 F. Supp 2d at 215-18.

Nor can Plaintiff fulfill its pleading obligations by merely pointing to so-called "mechanisms" through which Plaintiff alleges that SGWS provides differential prices. *See* Compl. ¶¶ 35-54. When describing these "mechanisms," the Complaint points to certain discounts that were provided to chain stores—generally in aggregated form. *See, e.g., id.* ¶ 44 (alleging the total quantity discounts provided to certain chain stores and all independent retailers in California in 2022); *id.* ¶ 49

(alleging the total value of "scan rebates" provided to certain chain retailers in Arizona and Illinois across nine-to-twelve-month periods). But like the rest of Plaintiff's allegations, these figures are provided without the context necessary to support any inference of injury to competition. As the Complaint itself makes clear, these various discounts are just one component of SGWS's pricing in any given transaction. Yet the Complaint alleges no facts indicating that any discount led to a price differential between two transactions that were otherwise "reasonably comparable" and "contemporaneous." *See Texas Gulf*, 418 F.2d at 806-07; *Nicolosi*, 2019 WL 8883851, at *4-5.

Instead, the Complaint vaguely refers to "the same pool of end consumers," and "millions of transactions over multiple months and years." Compl. ¶¶ 74-75. And for its attempt to paint the competitive landscape of the entire Nation in broad strokes, the Complaint includes a single paragraph in which it alleges, unencumbered by any details, that:

> In reasonably contemporaneous transactions, Southern charged significantly higher prices for identical bottles of wine and spirits to disfavored independent retailers than to favored large chain retailers that are in proximity to and in active competition with the disfavored retailers for the resale of wine and spirits to the same pool of end consumers. The favored large chain store and the disfavored independently owned store are often located within just a few blocks to a few miles of each other.

Compl. ¶ 32. These "formulaic recitation[s] of the elements of a cause of action," *Barrett*, 2024 WL 4828715, at *2 (quotation omitted), are no more than "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court should not credit them. *See Liu*, 2024 WL 4720885, at *3 (A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" (quoting *Eclectic Props.*, 751 F.3d at 996)); *AutoZone*, 737 F. Supp 2d at 216

(rejecting "conclusory allegations" that sought to negate lawful explanations for price differentials because "[a]bsent a more particularized factual basis for drawing this broad-ranging legal conclusion, the allegations in the complaint [we]re insufficient to state a § 2(a) claim").

Because Plaintiff does not identify any pair of reasonably comparable transactions between competing retailers, Plaintiff has not adequately alleged competitive injury. *See Nicolosi*, 2019 WL 8883851, at *4-5; *Sw. Paper*, 2013 WL 11238487, at *5-6; *AutoZone*, 737 F. Supp. 2d at 215-18; *Sylling*, 1993 WL 339959, at *1. The Complaint must therefore be dismissed.

### III. PLAINTIFF'S CLAIM UNDER THE FEDERAL TRADE COMMISSION ACT FAILS BECAUSE IT DEPENDS ON PLAINTIFF'S DEFICIENT ROBINSON-PATMAN CLAIM

Plaintiff fails to state a claim under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Plaintiff's Section 5 claim depends on Plaintiff's Robinson-Patman Claim. For the reasons described above, Plaintiff does not adequately plead that SGWS has violated the Robinson-Patman Act. *See* Sections I-II, *supra*. Nor does Plaintiff allege a violation of any other antitrust law. Any Section 5 claim premised on a violation of the antitrust laws therefore fails for the same reasons.

Absent "proof of a violation of the antitrust laws" or "evidence of collusive, coercive, predatory, or exclusionary conduct," "business practices are not 'unfair' in violation of § 5 unless those practices either have an anticompetitive purpose or cannot be supported by an independent legitimate reason." *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 140 (2d Cir. 1984). That is consistent with the text of Section 5, which states that an act or practice is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by

consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).

Here, Plaintiff makes no attempt to allege that SGWS's business practices are "collusive, coercive, predatory, or exclusionary." Nor does Plaintiff allege any facts to suggest that SGWS's pricing causes substantial injury to consumers. *See* Ferguson Dissent at 2 (noting that the complaint "does not allege that the price discrimination injured any consumer by leading to higher prices, lower output, diminished product quality, less product choice, a reduction in services, or a decline in product innovation"); Holyoak Dissent at ii ("Not only does the Complaint fail to identify harm to competition or consumers, the proposed remedy would likely impede price competition and harm consumers."). Indeed, it is Plaintiff that may harm consumers by bringing this meritless lawsuit that threatens to chill cost-justified and market-responsive pricing and to encourage price uniformity. Plaintiff also does not plausibly allege that any effect SGWS's pricing has on an independent retailer outweighs the benefits to consumers or competition. Plaintiff therefore fails to state a Section 5 claim. *See* 15 U.S.C. § 45(n). Plaintiff's Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

1
2
3   Dated this 3rd day of February, 2025
4
5   */s/ Tammy A. Tsoumas*
    **KIRKLAND & ELLIS LLP**
6   Tammy A. Tsoumas (SBN 250487)
7   tammy.tsoumas@kirkland.com
    2049 Century Park East, Ste. 3700
8   Los Angeles, CA 90067
9   Telephone: 310-552-4200
10
    Craig S. Primis, P.C. (*pro hac vice*)
11  cprimis@kirkland.com
12  Matthew S. Owen, P.C. (*pro hac vice*)
    matt.owen@kirkland.com
13  T.J. McCarrick (*pro hac vice*)
14  tj.mccarrick@kirkland.com
    1301 Pennsylvania Ave, NW
15  Washington, D.C. 20004
16  Telephone: 202-389-5000
17  Daniel K. Zach (*pro hac vice*)
18  dan.zach@kirkland.com
    601 Lexington Avenue
19  New York, NY 10022
20  Telephone: 212-446-4800
21  *Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*
22
23
24
25
26
27
28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Southern Glazer's Wine and Spirits, LLC, certifies that this brief contains 6,859 words, which complies with the word limit of L.R. 11-6-1.

DATED: February 3, 2025                    /s/ Tammy A. Tsoumas
                                           Tammy A. Tsoumas

                                           *Counsel for Defendant Southern Glazer's
                                           Wine and Spirits, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2025, a copy of the foregoing Notice of Motion to Dismiss was served electronically through the court's electronic filing system upon all parties appearing on the court's ECF service list.


DATED: February 3, 2025

*/s/ Tammy A. Tsoumas*

Tammy A. Tsoumas

*Counsel for Defendant Southern Glazer's Wine and Spirits, LLC*