Christina Brown (S.B. # 242130)
cbrown5@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

John D. Jacobs (S.B. # 134154)
Local Counsel
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4300

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN GLAZER'S WINE AND SPIRITS, LLC,<br><br>Defendant. | CASE NO. 8:24-cv-02684-FWS-ADS<br><br>Judge: Fred W. Slaughter<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION TO DISMISS**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 10D |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................1

COMPLAINT ALLEGATIONS ......................................................................2

LEGAL STANDARD......................................................................................3

ARGUMENT ..................................................................................................4

I.  The Complaint Adequately Alleges Southern's Discriminatory
Sales Were In Commerce .....................................................................5

A. Southern's *Interstate* Distribution of Certain Wine and
Spirits Satisfies the In-Commerce Criteria ....................................5

B. Southern's Discriminatory Sales Were Made in the "Flow of
Commerce".....................................................................................6

II.  The Complaint Adequately Alleges Southern's Price
Discrimination Threatens To Injure Competition ...............................11

A. The Complaint's Detailed Harm to Competition Allegations
Satisfy the Pleading Standard .......................................................11

B. The Complaint Plausibly Alleges Favored and Disfavored
Retailer Pairings Are in Actual Competition ................................15

C. The Complaint Adequately Alleges Facts Supporting Both
the *Morton Salt* Inference and the Diversion of Sales and
Profits ...........................................................................................18

III.  The Complaint States A Claim For Violation Of Section 5 Of
The FTC Act.......................................................................................21

CONCLUSION .............................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*ABC Distrib., Inc. v. Living Essentials LLC*, 2016 WL 8114208
(N.D. Cal. Jan. 25, 2016) ........................................................ 4, 14, 17, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 3, 4, 18, 20

*Bendfeldt v. Window World, Inc.*, 2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) ....... 17

*Best Effort First Time, LLC v. Southside Oil, LLC*, 2018 WL 1583465
(D. Md. Mar. 30, 2018) ...................................................................... 14

*Callahan v. A.E.V., Inc.*, 1994 WL 682756 (W.D. Pa. Sept. 26, 1994) ................. 10, 16

*Card v. Ralph Lauren Corp.*, 2021 WL 4427433 (N.D. Cal Sept. 27, 2021) ............... 12

*Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626 (S.D. Tex. 1999) ........................... 10

*Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653 (9th Cir. 1997) ................... 11, 19

*Coastal Fuels, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182 (1st Cir. 1996) .... 19-20

*E.I. Du Pont de Nemours & Co. v. FTC*, 729 F.2d 128 (2d Cir. 1984) ....................... 21

*Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428 (1983) ..................... 18

*Fast & Easy Food Stores, Inc. v. Greene Beverage Co.*, 2013 WL 12136610
(N.D. Ala. Nov. 4, 2013) ................................................................. 8, 9, 10

*Food Basket, Inc. v. Albertson's Inc.*, 383 F.2d 785 (10th Cir. 1967) ....................... 7

*Foremost Dairies, Inc. v. FTC*, 348 F.2d 674 (5th Cir. 1965) ............................... 6, 19

*Fred Meyer, Inc. v. FTC*, 359 F.2d 351 (9th Cir. 1966) ..................................... 22

*FTC v. Freeman Hospital*, 69 F.3d 260 (8th Cir. 1995) ..................................... 16

*FTC v. Morton Salt Co.,* 334 U.S. 37 (1948) ........................................... *passim*

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972) ..................................... 21

*Genesee Vending Inc. v. R.J. Reynolds Tobacco Co.*, 2005 WL 1048753
(E.D. Mich. May 2, 2005) .................................................................. 14

*Granholm v. Heald*, 544 U.S. 460 (2005) ..................................................... 10

*Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186 (1974)..................................................5

*Hampton v. Graff Vending Co.,* 516 F.2d 100 (5th Cir. 1975)...........................6, 7, 9, 10

*Hiram Walker, Inc. v. A&S Tropical, Inc.*, 407 F.2d 4 (5th Cir. 1969).........................10

*House of Materials, Inc. v. Simplicity Patterns Co.,* 298 F.2d 867 (2d Cir. 1962).......15

*In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 240537
      (N.D. Ill. May 26, 1994) ........................................................................................15

*In re Morton Salt Co.*, 40 F.T.C. 388 (1943) .................................................................14

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)..............................................................4

*L&L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113 (5th Cir. 1982) ................................10

*L.A. Int'l Corp. v. Prestige Brands Holdings*, 2024 WL 2272384
      (C.D. Cal. May 20, 2024) ..............................................................................11, 16

*Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639 (S.D. Miss. 2014)........11

*Manning Grp. LLC v. Neudesic LLC*, 2024 WL 4875450
      (C.D. Cal. Sept. 11, 2024) ..............................................................................4, 12

*Mathew Enter., Inc. v. Chrysler Grp. LLC*, 2014 WL 3418545
      (N.D. Cal. July 11, 2014)................................................................................4, 20

*McGahee v. N. Propane Gas Co.*, 858 F.2d 1487 (11th Cir. 1988) ...............................6

*Millcraft Paper Co. v. Veritiv Corp.*, 2016 WL 6902358
      (N.D. Ohio July 14, 2016) ...................................................................................16

*Nagler v. Admiral Corp.*, 248 F.2d 319 (2d Cir. 1957) .........................................15, 17

*Nat'l Ass'n of Coll. Bookstores v. Cambridge Univ. Press*,
      990 F. Supp. 245 (S.D.N.Y. 1997) ..........................................................13, 14, 15

*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 8883851
      (N.D. Cal. Aug. 26, 2019) ....................................................................................12

*Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338
      (W.D. Pa. 1998) ......................................................................................................9

*Satnam Distribs. LLC v. Commonwealth-Altadis, Inc.*, 140 F. Supp. 3d 405
      (E.D. Pa. 2015) ..........................................................................................14, 15, 16

*Standard Oil Co. v. FTC*, 340 U.S. 231 (1951) .........................................................5, 6

FTC'S OPPOSITION TO MOTION TO DISMISS

*Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267
(3d Cir. 1995) ................................................................................ 11, 15, 16

*Sw. Paper Co. v. Hansol Paper*, 2013 WL 11238487 (C.D. Cal Ap. 15, 2013) ........... 12

*Taggart v. Rutledge*, 1988 WL 79483 (9th Cir. July 19, 1988) .................................... 10

*Texaco, Inc. v. Hasbrouck*, 496 U.S. 543 (1990) ........................................................ 18

*Times Mirror Co. v. FTC*, 1979 WL 1651 (C.D. Cal. June 13, 1979) ......................... 22

*Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694 (9th Cir. 1964) ................................. 19

*Tube-Alloy Corp. v. Homco Int'l, Inc.*, 1986 WL 15238 (E.D. La. Dec. 30, 1986) ........ 9

*U.S. Wholesale Outlet & Distrib. Inc. v. Innovation Ventures, LLC*,
89 F.4th 1126 (9th Cir. 2023) .................................................... 4, 15, 16, 18

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006).. 11, 16, 18

*Walker Oil Co. v. Hudson Oil Co. of Mo.*, 414 F.2d 588 (5th Cir. 1969) .................... 10

*Water Craft Mgmt. v. Mercury Marine*, 361 F. Supp. 2d 518 (M.D. La. 2004) ........... 16

*Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*,
970 F. Supp. 2d 1162 (D. Colo. 2013) ........................................................ 6

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) .............................. 14

*Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870 (9th Cir. 1982)................................*passim*

## Statutes

15 U.S.C. § 13(a) ..........................................................................................*passim*

15 U.S.C. § 45 ................................................................................ 1, 3, 5, 21

## Other Authorities

P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles
and Their Application* (2024) .............................................................. 6, 9

## Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................... 4

Fed. R. Civ. P. 8(a)(2)....................................................................................... 3

Ninth Cir. R. 36-3(c) ...................................................................................... 10

## **INTRODUCTION**

Southern is the largest distributor of wine and spirits in the United States. For many years, Southern has engaged in a sustained course of unlawful price discrimination by selling wine and spirits to small, independent "mom and pop" businesses at drastically higher prices than it charges nearby favored large chain customers like ████, ██████, ████████ and ████. Southern's price discrimination is widespread, spanning millions of transactions, manifold products, and multiple states. With price differentials of as much as 78% that exceed any real cost efficiencies for sales of the same bottles of wine and spirits, Southern's pricing practices affected thousands of independently owned wine and spirits shops, neighborhood grocery stores, and local convenience stores, and harmed competition between nearby favored and disfavored retailers. The FTC's Complaint alleges that this conduct violates Section 2(a) of the Robinson-Patman Act ("RPA") and Section 5 of the FTC Act.

Southern has moved to dismiss both Complaint counts for failure to plausibly state a claim. Southern's motion misapprehends applicable case law, ignores key allegations, and overstates the factual detail required under the pleading standard. First, Southern asserts that the Complaint disregards the RPA's "in-commerce" element. Yet, the FTC alleges—explicitly and in detail—that Southern's discriminatory sales: (1) were made in interstate commerce; and, separately, (2) took place in the "flow of commerce," where Southern acquired products from out-of-state to serve specific chain retailers' actual, understood, and anticipated needs. Controlling precedent makes clear that such facts satisfy the in-commerce criteria.

Second, Southern contends that the Complaint cannot plausibly allege a reasonable possibility of competitive injury without identifying particular favored and disfavored retailer pairings and transactions. This is incorrect and, in any event, ignores the allegations of Southern's widespread price discrimination—which are supported by specific examples and exact prices Southern charged specific favored chains for specific products as compared to independent retailers. The Complaint further alleges that these

FTC'S OPPOSITION TO MOTION TO DISMISS

favored and disfavored retailers compete for the same customers, and that there is a reasonable likelihood of competitive harm given both Southern's substantial price discrimination over multiple years and the lost sales and profits suffered by disfavored independent retailers.

Nothing more is required at the pleading stage. The FTC's extensive, well-pleaded factual allegations plausibly state a claim for unlawful price discrimination. Southern's motion to dismiss should therefore be denied.

## COMPLAINT ALLEGATIONS

As a national distributor with operations in forty-six states, Southern sells one out of every three bottles of wine and spirits in this country and functions as the gatekeeper for many top-selling brands. Compl. ¶¶1-2, 13-15. Since at least 2018, Southern has repeatedly violated the RPA by selling identical bottles of wine and spirits to disfavored independent retailers at far higher prices than it charged nearby favored chains. ¶32. These discriminatory sales often occurred within the same day, week, or month. *Id.*

Southern's price discrimination involved substantial price differences between competing retailers in millions of transactions over multiple years. ¶75. Southern routinely charged independent retailers 12% to 67% more than competing chains; in certain transactions, independent retailers paid as much as 78% more. ¶¶3, 56-63, 75. In addition to describing Southern's broad pricing policies, the Complaint details specific examples of Southern's discriminatory conduct, including the exact prices Southern charged specific chains as compared to independent retailers for specific products and the percentage of independent retailers that paid price premia in a state. ¶¶55-63.

In each instance of price discrimination alleged, disfavored independent retailers competed with the favored chain in the same geographic area for sales to the same pool of end consumers. ¶74. These favored and disfavored retailers are often located within just a few blocks to a few miles of each other. ¶32. Southern's executives confirmed that large chain stores compete with small independent businesses when located in the same geographic areas. ¶74. The Complaint delineates multiple urban and rural areas in

FTC'S OPPOSITION TO MOTION TO DISMISS

which Southern discriminated in price, including Newport Beach, California, Austin, Texas, and Omak, Washington. ¶¶32, 53.

As a result of Southern's price discrimination, disfavored independent retailers lost sales and customers to favored chains, were unable to be price-competitive with favored chains, sold lower volumes of wine and spirits than they would have sold in the absence of price discrimination, and made lower profits on products they did sell. ¶78. In many instances, Southern's price discrimination was so significant that favored chains were able to profitably resell Southern products at retail prices below the wholesale prices that disfavored independent retailers paid Southern for the identical products. ¶76.

Southern's discriminatory sales were made in interstate commerce, as Southern typically takes ownership and control of products purchased from out-of-state suppliers when the products leave the suppliers' warehouses, and then ships those products across state lines to Southern's warehouses. ¶82. Additionally, Southern often purchases products from out-of-state suppliers to serve the actual, understood, or anticipated needs of specific large chain customers. ¶¶56-63, 83-84.

The FTC brings two distinct claims against Southern: one under Section 2(a) of the RPA and one under Section 5 of the FTC Act. Both counts involve "secondary-line" price discrimination, which means the challenged conduct threatens to injure competition among the seller's customers.

## **LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets the standard for assessing the adequacy of a complaint. The rule requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need "detailed factual allegations," just something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

complaint is sufficient if it gives the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint against the Rule 8 standard. *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 2014 WL 3418545, *3, *7 (N.D. Cal. July 11, 2014). In deciding whether a claim has been stated, the court must "consider the complaint in its entirety," *Manning Grp. LLC v. Neudesic LLC*, 2024 WL 4875450, *4 (C.D. Cal. Sept. 11, 2024), and "accept all factual allegations in the complaint as true," drawing all reasonable inferences "in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A motion to dismiss should be denied when the complaint contains facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009); *Twombly*, 550 U.S. at 570 (2007). A claim is plausible if its factual allegations are enough to "raise a right to relief above the speculative level." *Manning*, 2024 WL 4875450, *4.

## **ARGUMENT**

To state a prima facie claim for secondary-line price discrimination under Section 2(a) of the RPA, a plaintiff must allege: (1) two or more reasonably contemporaneous sales by the same seller to different purchasers; (2) of commodities of like grade and quality; (3) that the seller discriminated in price between the disfavored and favored buyers; (4) at least one of the sales was made in interstate commerce; and (5) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser. *See U.S. Wholesale Outlet & Distrib. Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134, 1136 (9th Cir. 2023); *see also ABC Distrib., Inc. v. Living Essentials LLC*, 2016 WL 8114208, *3-5 (N.D. Cal. Jan. 25, 2016).

Southern contends that the FTC's Section 2(a) RPA claim should be dismissed for failure to adequately allege the "in-commerce" and "injury to competition" elements. Southern is wrong on both counts. Southern also wrongly

FTC'S OPPOSITION TO MOTION TO DISMISS

contends that the FTC's Section 5 claim should be dismissed because it is dependent on the RPA claim. However, price discrimination is properly challenged under the RPA and Section 5, both separately and concurrently.

## I.    The Complaint Adequately Alleges Southern's Discriminatory Sales Are In Commerce

Jurisdiction under the RPA extends only to discriminatory sales that take place in interstate commerce—that is, where at least one of the compared transactions (*i.e.*, the sale to the disfavored retailer, to the favored retailer, or both) crosses a state line. *See* 15 U.S.C. 13(a); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200-01 (1974). Southern contends that the in-commerce requirement cannot be met in this case because its sales of wine and spirits to retailers are wholly *intrastate* transactions. (Mot. at 1, 6.) This is incorrect.

### A.    Southern's *Interstate* Distribution of Certain Wine and Spirits Satisfies the In-Commerce Criteria

Notwithstanding Southern's argument to the contrary, the Complaint alleges that most of Southern's sales are *interstate*. ¶¶79-83. That is, Southern typically takes ownership and control of purchased goods when they leave the out-of-state suppliers' warehouses. ¶82. Southern then ships those goods across state lines to Southern's own warehouses for resale to same-state retail customers. *Id.* In other words, Southern acquires products in State A, ships the products across state lines to its warehouses in State B, and then sells the products to retailers in State B.

Numerous courts have found discriminatory sales to be in commerce where firms engaged in national distribution practices akin to Southern's. In *Standard Oil Co. v. FTC*, the Supreme Court ruled that, where defendant shipped gasoline across state borders, "temporary storage" of goods within the state of eventual sale for several months did not deprive the goods of their "interstate character." 340 U.S. 231, 237-38 (1951) (defendant refined gasoline in Indiana then shipped it to its own storage facilities in Michigan for eventual sale to Michigan customers); *see also Zoslaw v. MCA Distrib.*

FTC'S OPPOSITION TO MOTION TO DISMISS

*Corp.*, 693 F.2d 870, 879 (9th Cir. 1982); *Foremost Dairies, Inc. v. FTC*, 348 F.2d 674, 675-80 (5th Cir. 1965) (dairy company purchased milk from Colorado suppliers and shipped to New Mexico warehouse for in-state distribution); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 970 F. Supp. 2d 1162, 1171-73 (D. Colo. 2013) (applying *Standard Oil* to firm that acquired gasoline from out-of-state supplier and sold to in-state customers).

The reasoning of these cases applies equally to Southern's interstate distribution activities—here, Southern transports goods that it owns and controls from one state to another, where the goods are then sold in-state at discriminatory prices. There is no intermediate sale between Southern's purchase in State A and resale in State B to break interstate commerce. *See Zoslaw*, 693 F.2d at 879 ("no intermediate sale to break the flow of commerce" where firm moved products across states for resale). Any other conclusion would allow interstate firms to escape RPA liability by distributing through state-specific warehouses. *Cf.* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* § 267b (2024) (*Standard Oil* prevents "[i]nterstate sellers [from] immuniz[ing] their anticompetitive activities by placing storage…facilities in many of the states in which they sell products.").

Accordingly, the Complaint satisfies the in-commerce requirement having alleged that in most transactions Southern acts as an interstate distributor. ¶82.

## B.  Southern's Discriminatory Sales Were Made in the "Flow of Commerce"

To the extent Southern assertedly acts as an independent, *intrastate* distributor, (Mot. at 1, 6), the Complaint also sufficiently alleges facts demonstrating that in-commerce jurisdiction is satisfied under the "flow of commerce" doctrine. This doctrine, sometimes called the "intent test," has long been applied by the Ninth Circuit and numerous other courts. *See Zoslaw*, 693 F.2d at 877-79 & n.10; *Hampton v. Graff Vending Co.*, 516 F.2d 100, 102-03 (5th Cir. 1975); *see also McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1506 n.46 (11th Cir. 1988); *Food Basket, Inc. v. Albertson's*

*Inc.*, 383 F.2d 785, 788 (10th Cir. 1967). Under this doctrine, goods shipped from an *out-of-state* supplier to an independent, *intrastate* distributor for resale to local customers (*e.g.*, sales of out-of-state goods from a distributor's warehouse to in-state customers) remain in the "practical economic continuity" of the interstate transaction at the time of the *intrastate* sale, and "in commerce" in the following situations:

> (1) the distributor purchased goods to fill a specific "order of a customer with the definite intention that the goods are to go at once to the customer;"
>
> (2) the distributor purchased goods "to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery;" or
>
> (3) the distributor purchased goods "based on anticipated needs of specific customers…."

(hereinafter "'flow of commerce' scenarios"). *Hampton*, 516 F.2d at 102-03; *see also Zoslaw*, 693 F.2d at 877-79.[1] In contrast, goods may leave the flow of commerce when stored by an independent, intrastate distributor "for general inventory purposes…with no particular customer's needs in mind." *See Zoslaw*, 693 F.2d at 878.

Here, the Complaint alleges that each instance of Southern's price discrimination falls within at least one of these "flow of commerce" scenarios. ¶¶79-84. Specifically, Southern purchased wine and spirits from out-of-state suppliers:

[1] In *Zoslaw*, the Ninth Circuit recognized two separate ways to establish jurisdiction, both of which are present in this case. First, jurisdiction is proper where "the intended destination" of out-of-state goods acquired by an independent, intrastate distributor is to "respond to a particular customer's order or anticipated needs." *Zoslaw*, 693 F.2d at 877-79 (recognizing the "flow of commerce" scenarios). The *Zoslaw* court found all defendants stocked their warehouses for general inventory purposes, *id.* at 878, so this test was not met. Second, jurisdiction is proper where the goods are sold by an out-of-state firm or by subsidiaries controlled by that firm. *Id.* at 878-80; *see supra* I.A. Disputed issues of material fact existed as to whether two defendants were controlled or independent subsidiaries of the out-of-state record producers. *Id.*

- • to fulfill existing orders from specific large chain customers—including Costco, Total Wine, and Walmart—with the intent that the purchased cases were for delivery to that particular retailer;
- • to meet purchase commitments made by specific large chains like Costco, Kroger, Albertsons, and Binny's, pursuant to Southern's understanding with those retailers, whether for immediate delivery or not; and
- • to meet the "anticipated needs" of specific large chains, including Costco, Total Wine, Albertsons, and Binny's.

¶¶83-84. The Complaint is replete with specific, detailed examples of discriminatory sales supporting the plausibility of these allegations. *See* ¶¶56-63. For instance, Southern purchased ████████████ from ████████████ in 2021 and 2023 specifically to fulfill purchase orders placed by ████████ in Arizona; Southern purchased ████████████████ from out-of-state supplier ████████████ in 2022 to meet ████████ anticipated needs in Illinois; and Southern purchased ████████████ from ████████████████████ ████ in 2022 specifically to fulfill ████████ purchase order commitments in California. ¶¶ 56, 57-59, 63. In each instance, Southern's purchases were made with the intent that the goods would go to the specific identified large chain retailer and were "not for holding in general inventory." ¶¶56-63, 84. These allegations show that Southern's discriminatory sales to retailers plausibly occurred in the flow of interstate commerce.

Southern advances three main arguments that the challenged transactions nevertheless "lack any interstate component." (Mot. at 6.) None has merit.

First, Southern characterizes the flow of commerce allegations as "threadbare" and "conclusory." (Mot. at 9 & n.1.) But Southern ignores the totality of facts and specific product examples in the Complaint. Indeed, the FTC's allegations are more detailed than similar cases where courts found in-commerce pleadings sufficient. For example, in *Fast & Easy Food Stores, Inc. v. Greene Beverage Co.*, plaintiff claimed that an independent beer distributor engaged in illegal price discrimination between

FTC'S OPPOSITION TO MOTION TO DISMISS

retailers. The complaint alleged that defendant purchased beer from out-of-state manufacturers and included factual allegations tracking *Hampton's* "flow of commerce" scenarios. 2013 WL 12136610, *4 (N.D. Ala. Nov. 4, 2013). Those allegations were sufficient to withstand a motion to dismiss. *Id.* The same result should obtain here. *See Zoslaw*, 693 F.2d at 878-80 ("Such threshold issues of jurisdiction are normally questions of fact for the jury to resolve."); *Tube-Alloy Corp. v. Homco Int'l, Inc.*, 1986 WL 15238, *6 (E.D. La. Dec. 30, 1986) (denying motion to dismiss on in-commerce grounds despite allegations not identifying specific transactions that crossed state lines); *see generally infra* at 14-15 (discussing sufficiency of pleading).[2]

Second, Southern claims that the flow of commerce is always broken when goods are sold to a distributor that is "independent" of the manufacturer. (Mot. at 7-8.) This is wrong. As explained above, jurisdiction confers under the "flow of commerce" doctrine when goods are transported across state lines in response to the actual, understood, or anticipated needs of the independent distributor's specific customers. *See Fast & Easy,* 2013 WL 12136610, *1-4 (applying "flow of commerce" doctrine to independent beer distributor's sales); *Precision Printing Co. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 347-48 (W.D. Pa. 1998) (independent paper distributor); s*ee also Hampton*, 516 F.2d at 102-03 (independent gum distributor); *see generally Zoslaw*, 693 F.2d at 877-80.

Southern's cited cases are inapposite or, in fact, support the FTC's position.[3] *Callahan* and *Chawla* both recognized the "flow of commerce" doctrine as a means of

---

[2] As these cases demonstrate, Southern's contention that this case should be pruned to particular transactions, (Mot. at 9 n.1), is incorrect. Southern offers no contrary authority.

[3] Southern also cites the Areeda and Turner *Antitrust Law* treatise from 1978. (Mot. at 7.) The current edition recognizes the "flow of commerce" doctrine and that intrastate distributors may be within reach of the RPA. *See* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* § 267b (2024).

FTC'S OPPOSITION TO MOTION TO DISMISS

9

establishing jurisdiction over an intrastate distributor but found the test was not satisfied on the facts of each case. *See Callahan v. A.E.V., Inc.*, 1994 WL 682756, *7 (W.D. Pa. Sept. 26, 1994) (applying "flow of commerce" doctrine but finding, based on uncontroverted evidence, that both defendant beer distributors purchased beer for general inventory); *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 647 n.25 (S.D. Tex. 1999) (recognizing "flow of commerce" doctrine but finding "[n]one of these exceptions [were] alleged to apply in this case"). And *Hiram Walker* pre-dates the flurry of Fifth Circuit cases that first applied the "flow of commerce" doctrine. *Compare Hiram Walker, Inc. v. A&S Tropical, Inc.*, 407 F.2d 4, 9 (5th Cir. 1969), *with Walker Oil Co. v. Hudson Oil Co. of Mo.*, 414 F.2d 588, 590 (5th Cir. 1969), *Hampton*, 516 F.2d at 102-03, *L&L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1116 (5th Cir. 1982), and *Fast & Easy*, 2013 WL 12136610, *3-4 (applying flow of commerce doctrine post-*Hiram Walker*, Fifth Circuit precedent in alcohol distribution case).[4]

Third, to the extent Southern suggests that the existence of state-imposed three-tiered distribution systems or "at-rest" warehousing requirements evince a statutory design "to break the flow of alcohol products" for RPA purposes, Southern is wrong. (Mot. at 7-8.) Such state regulations do not insulate alcohol distributors from the RPA. *Cf. Fast & Easy,* 2013 WL 12136610, *2-4 (jurisdiction over independent beer distributor notwithstanding Alabama's mandated three-tier system).[5] And courts have repeatedly held that temporary storage of products in the state of ultimate sale, like the storage purportedly required under state "at rest statutes," (Mot. at 8), does not break

---

[4] Southern also cites *Taggart*, an unpublished Ninth Circuit opinion, which, under Ninth Cir. R. 36-3(c), is not precedential and should not be cited in this circuit. With its citation to *Zoslaw, Taggart* is properly read as standing for the proposition that where the flow of commerce scenarios are *not present*, the independent, intrastate distributor's sales are not in commerce. *See Taggart v. Rutledge*, 1988 WL 79483, *4 (9th Cir. July 19, 1988) (citing *Zoslaw*, 693 F.2d at 878, 880). Here, facts supporting all three flow of commerce scenarios are alleged.

[5] *Cf. Granholm v. Heald*, 544 U.S. 460, 487 (2005) (rejecting argument Twenty-first Amendment repealed Commerce Clause).

FTC'S OPPOSITION TO MOTION TO DISMISS

10

the flow of commerce if, as alleged here, the goods were purchased in response to the actual, understood, or anticipated needs of a specific customer. *See, e.g., id.* ("Greene will maintain an inventory of the Beer based on its customers' anticipated needs"); *Zoslaw,* 693 F.2d at 878.[6]

For these reasons, the Complaint allegations support a plausible inference that Southern's price discrimination satisfies the in-commerce requirement.

## II.    The Complaint Adequately Alleges Southern's Price Discrimination Threatens To Injure Competition

To establish secondary-line competitive injury, plaintiff must allege first that favored and disfavored purchasers were in "actual competition." *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.,* 63 F.3d 1267, 1271-72 (3d Cir. 1995); *see also L.A. Int'l Corp. v. Prestige Brands Holdings*, 2024 WL 2272384, *8-9 (C.D. Cal. May 20, 2024). Second, a plaintiff must allege that there is a reasonable possibility of harm to competition via either of two means: (i) indirectly, through the *Morton Salt* inference, by alleging that a favored purchaser received a "substantial price difference over time," *Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653, 654 (9th Cir. 1997); or (ii) directly, by alleging the "diversion of sales or profits from a disfavored purchaser to a favored purchaser," *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).

### A.    The Complaint's Detailed Harm to Competition Allegations Satisfy the Pleading Standard

As a threshold matter, and consistent with the relevant pleading standard, Southern's contention that a complaint invariably must identify by name specific pairings of retailers and specific transaction dates and terms is erroneous. Rather, in

---

[6] Southern also cites *Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639, 667-68 (S.D. Miss. 2014). (Mot. at 7.) But that court neither substantively analyzed the "flow of commerce" nor commented on whether alcohol distribution poses unique RPA concerns.

assessing the level of detail needed to plausibly allege harm to competition under the RPA, courts must consider the complaint as a whole and take into account the context and nature of the asserted price discrimination claims. *Iqbal*, 556 U.S. at 679 ("[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); *see also Manning*, 2024 WL 4875450, *4.

Notably, the RPA cases relied upon by Southern, (Mot. at 10-21), typically involve narrow challenges brought by a single or small group of disfavored purchasers complaining about a handful of discriminatory transactions. *See, e.g.*, *Card v. Ralph Lauren Corp.*, 2021 WL 4427433 (N.D. Cal Sept. 27, 2021), *aff'd*, 2022 WL 14936344 (9th Cir. Oct. 26, 2022) (unpublished); *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 8883851 (N.D. Cal. Aug. 26, 2019); *Sw. Paper Co. v. Hansol Paper*, 2013 WL 11238487 (C.D. Cal Ap. 15, 2013). In contrast, this action challenges long-running and widespread price discrimination by a national distributor of thousands of wine and spirits products, involving millions of paired transactions, spanning several years and many states. ¶¶1, 4-5, 32, 75. Of necessity, the pleadings will differ.

Here, the Complaint plausibly and adequately alleges the existence of substantial price differences between Southern customers sufficient to support a reasonable inference of harm to competition. ¶¶35-54, 56-65, 74-78. As the Complaint explains, Southern uses several pervasive pricing policies that, on their face, make different pricing available to large chains as compared to small independent customers. ¶¶35-54. These pricing mechanisms include: "channel pricing" that "profiled" large chains for special pricing unavailable to other customers and regardless of the quantity the chain purchased, ¶¶50-51; cumulative quantity discounts that allowed only large chains to combine purchases over a specified time period to qualify for higher discounts, ¶¶42-45; and large quantity discounts set at volume levels only a few specific chains could attain, ¶¶38-41. The cumulative consequence of these strategies is that Southern routinely charged smaller independent businesses significantly higher prices than

FTC'S OPPOSITION TO MOTION TO DISMISS

favored large national and regional retailers. ¶¶37, 75-76. *See, e.g., Nat'l Ass'n of Coll. Bookstores v. Cambridge Univ. Press*, 990 F. Supp. 245, 252-53 (S.D.N.Y. 1997) ("*NACB*") (holding it unnecessary for plaintiffs to identify specific independent retailers when alleged pricing policies indicated on their face that different prices were charged to different purchasers of identical books).

These pricing mechanism allegations are bolstered by at least eight specific product examples demonstrating the substantial and sustained differences in prices paid by specific large chain customers and nearby independent retailers for the identical product, including exact, actual prices drawn from Southern's sales invoice data. *See, e.g.*, ¶¶55-65. For instance:

- ██████████████: in Arizona, Southern charged ████ (2018 to 2023) and ████████ (2021 and 2023) $██ per bottle; ██% of independent retailers paid at least $██ per bottle (██% more) during the same time period. ¶¶57-58.

- ██████████████: in California throughout 2022, Southern charged ████████ stores $██ per bottle; ██% of nearby independent retailers in California paid at least $██ per bottle (██% more). ¶60.

- ██████████████: in Illinois throughout 2022, Southern charged ████████ at most $██ per bottle (and often just $██); ██% of nearby independent retailers paid at least $██ per bottle (██% more). ¶61.

Despite the detailed allegations describing these policies and examples, Southern peppers its brief with false claims that the FTC's pricing allegations are "broad aggregations" and "vague generalizations," (Mot. at 14-15), and the competitive injury allegations are deficient because specific names of favored and disfavored purchasers and individual transactions are not identified. (Mot. at 10, 16.) This is specious: favored retailers are large national and regional chains, including ████, ████████, ████████, and ████. ¶¶55-65; *see also* ¶¶39, 44, 49, 52, 54 (identifying ████ ████, ████, ████████, and ████). Disfavored retailers are also sufficiently identified, *e.g.*, ██% of independent retailers that purchased ████ in Arizona; ██% of

independent retailers that purchased ███████ in California. ¶¶58, 60. Specific time periods and exact (not aggregated) transaction prices—taken from Southern's own sales invoice data—are likewise alleged. ¶¶56-65.

This far exceeds what is required at this stage. *See, e.g.*, *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 801 (6th Cir. 2012) (rejecting argument that plaintiff's failure to allege the identity of purchasers warranted RPA claim dismissal); *Best Effort First Time, LLC v. Southside Oil, LLC*, 2018 WL 1583465, *11 (D. Md. Mar. 30, 2018) (rejecting argument that complaint failed to sufficiently identify favored purchasers); *Satnam Distribs. LLC v. Commonwealth-Altadis, Inc.*, 140 F. Supp. 3d 405, 413 (E.D. Pa. 2015) (holding that identity of product brands and transaction dates were not required at the pleading stage at "the level of specificity proposed by Defendants"); *Genesee Vending Inc. v. R.J. Reynolds Tobacco Co.*, 2005 WL 1048753, *3-4 (E.D. Mich. May 2, 2005) ("Contrary to Defendant's suggestion, Plaintiffs need not make reference to specific transactions or promotional programs in their complaint."); *NACB*, 990 F. Supp. at 252-53 ("Plaintiff is not required to plead the date, time, amount and cost of the purportedly unlawful transactions" to avoid "mindless formalism").

Even in the seminal RPA case, *FTC v. Morton Salt*, challenging broad and discriminatory policies, the names of specific favored and disfavored customers and individual transaction details were not included in the complaint. *In re Morton Salt Co.*, 40 F.T.C. 388, 390-91 (1943). "[A]t the pleading stage, plaintiffs need not allege the kind of 'systematic study' of prices offered to different competitors that will be necessary at trial." *See ABC Distrib.*, 2016 WL 8114208, *3-5 (denying motion to dismiss).

Significant practical and policy considerations militate against identifying specific disfavored retailers in the Complaint. Given the breadth of Southern's illegal price discrimination, it would be impractical to identify all disfavored retailers and relevant transactions at the pleading stage without adding several volumes to the Complaint; nor would doing so add to Southern's ability to respond to the Complaint.

*See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 240537, *6-7 (N.D. Ill. May 26, 1994) (denying motion to dismiss even though complaint did not identify specific products or favored competing customers because this was not necessary to provide "notice of the claims alleged" and would simply double the complaint's length "with no resulting 'gain in useful information'").

Additionally, identifying a subset of exemplar independent retailers in the Complaint could expose small businesses to potential retaliation. *See, e.g., House of Materials, Inc. v. Simplicity Patterns Co.,* 298 F.2d 867 (2d Cir. 1962) (describing seller's termination of business relations with disfavored small fabric store customers allegedly to impede and discourage actions to enforce RPA). The disclosure of specific independent retailers harmed by the challenged price discrimination is appropriately a matter for the discovery process after the entry of a protective order governing the treatment of, and persons permitted access to, sensitive non-party information. *See Nagler v. Admiral Corp.*, 248 F.2d 319, 323, 325-26 (2d Cir. 1957) (reversing dismissal of RPA claims and holding "such pleading of the evidence is surely not required and is on the whole undesirable" because "[i]t is a matter for the discovery process, not for allegations of detail in the complaint").

## B.    The Complaint Plausibly Alleges Favored and Disfavored Retailer Pairings Are in Actual Competition

As Southern acknowledges, in the Ninth Circuit, two customers are presumed to compete when "(1) one customer has outlets in 'geographical proximity' to those of the other; (2) the two customers 'purchased goods of the same grade and quality from the seller within approximately the same period of time'; and (3) the two customers are operating 'on a particular functional level such as wholesaling or retailing.'" *U.S. Wholesale*, 89 F.4th at 1142 (such factors indicate that the customers are "directly after the same dollar"); *see also Stelwagon*, 63 F.3d at 1271.

Actual competition is a fact-specific inquiry that does not require precision at the pleading stage. *See, e.g.*, *Satnam*, 140 F. Supp. 3d at 414; *NACB*, 990 F. Supp. at 253.

And, contrary to Southern's assertion, there is no requirement that plaintiffs plead a precise relevant product or geographic market in a secondary-line price discrimination case under the RPA. (Mot. at 10-13.) *See Millcraft Paper Co. v. Veritiv Corp.*, 2016 WL 6902358, *3 (N.D. Ohio July 14, 2016) (holding applicable pleading standard for RPA claim "does not require that a relevant market be plead in the [c]omplaint"); *see also Stelwagon*, 63 F.3d at 1271-73 (finding RPA liability without defining relevant market); *L.A. Int'l*, 2024 WL 2272384, *8-9 (same); *Satnam*, 140 F. Supp. 3d at 414 (denying motion to dismiss RPA claim without defined relevant market).[7]

As the Complaint expressly alleges, each instance of Southern's challenged price discrimination involves (i) disfavored independent retailer and favored chain pairings in geographical proximity that were directly after the same dollar (ii) that purchased identical bottles of wine and spirits in approximately the same period of time, and (iii) operate on the same functional level, *i.e.*, as retailers. Thus, this case concerns the very "chainstore paradigm" of actual competition recognized by the Supreme Court in *Volvo Trucks*. 546 U.S. at 178.

***Geographical Proximity:*** Southern's claim that the Complaint "glosses over" geographic differences and the only facts tying together referenced sales are that "they were made somewhere within the same state," (Mot. at 15, 19), disregards key factual allegations. First, as the Complaint explicitly avers, each alleged instance of Southern's price discrimination involves "nearby" favored and disfavored retailers that are "in proximity to" or "in the same geographic area" as each other and are "in active competition" with each other for "the same pool of end consumers." ¶¶3, 32, 65, 74-75; *see also* ¶56 (describing price premia paid by independent retailers compared to

---

[7] Southern's cited cases regarding a relevant market are inapposite to a 12(b)(6) motion and contrary to the Ninth Circuit's test for actual competition in *U.S. Wholesale*. *See Water Craft Mgmt. v. Mercury Marine*, 361 F. Supp. 2d 518, 541 (M.D. La. 2004) (post-trial decision relying on Sherman Act cases); *Callahan*, 1994 WL 682756, *3 (dicta in summary judgment decision on other grounds); *FTC v. Freeman Hospital*, 69 F.3d 260, 268 (8th Cir. 1995) (merger challenge decided under different section of the Clayton Act).

FTC'S OPPOSITION TO MOTION TO DISMISS

competing "*nearby* ███████ *locations*" for ████████████ ), ¶61 (alleging independent retailers "*with locations near* ████████ *stores in Illinois*" paid from ███ % to ███ % per bottle more than ████████ for ████████████ ) (emphasis added).

The Complaint further explains that "nearby" favored and disfavored competitors are "often located within just a few blocks to a few miles of each other," ¶32, and that large retail chains draw customers from as far as ten miles away. ¶29. Although retailers operating 500 miles away from each other may be too far, Southern's cited cases recognize that retailers in closer proximity may compete "for the same dollar." *Bendfeldt v. Window World, Inc.*, 2017 WL 4274191, *2 & n.3 (W.D.N.C. Sept. 26, 2017).

Finally, contrary to Southern's assertion, the Complaint identifies 27 specific exemplar urban and rural locations in which Southern "repeatedly discriminated in price," including Tucson, Arizona, Lakeside, California, and Chicago, Illinois. ¶¶32, 53. Courts have found even broader geographic allegations sufficient. *See Nagler*, 248 F.2d at 325 (allegation that price discrimination that occurred in the "Greater New York area" was sufficient to state a claim); *ABC Distrib.*, 2016 WL 8114208, *3 (inferring complaint's geographic scope was California).

***Contemporaneous Purchases of the Same Products:*** The Complaint makes clear that each instance of Southern's alleged price discrimination involved purchases of identical bottles of wine and spirits, ¶¶32, 55-65, and that these bottles were purchased by disfavored and favored retailers within the same time period. ¶32, ¶56-65 (specific examples involved purchases by favored and disfavored retailers at "the same time"). Southern's hypothetical of a chain store in Flagstaff making a purchase on January 1, 2022, versus an independent retailer in Yuma placing an order the following New Year's Eve is thus a fabricated distraction. (Mot. at 19.) As the Complaint explains, the transactions giving rise to the challenged instances of price discrimination were reasonably contemporaneous, often occurring within the same day, week, or month. ¶32.

FTC'S OPPOSITION TO MOTION TO DISMISS

17

***Same Functional Level:*** Finally, the Complaint plainly alleges that the favored and disfavored retailers all operate at the same functional level of the alcohol distribution system—namely, as retailers that purchase wine and spirits at wholesale from Southern and resell those products to consumers for off-premise consumption. ¶¶24, 27. Southern hypothesizes that some retailers may "have different business models and serve distinct markets." (Mot. at 17.) But this type of operational difference is "not significant" in determining whether favored and disfavored retailers are in actual competition; the RPA "was enacted to protect small businesses from the harm to competition caused by the large chain stores, notwithstanding the well-understood operational differences between the two." *U.S. Wholesale*, 89 F.4th at 1143. Indeed, Southern's "own executives have confirmed that large chain retailers compete directly with small, independent businesses in the same geographic areas." ¶74.

Combined, the Complaint's detailed allegations of actual competition provide ample factual support to satisfy the plausibility and notice standard under *Twombly* and *Iqbal*.

## C.    The Complaint Adequately Alleges Facts Supporting Both the ***Morton Salt*** Inference and the Diversion of Sales and Profits

Since *Morton Salt*, the Supreme Court has repeatedly and consistently recognized that a reasonable possibility of harm to competition may be inferred from significant price discrimination between competing purchasers over a substantial period of time. 334 U.S. 37, 46-51 (1948); *Volvo Trucks*, 546 U.S. at 177 ("a permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time"); *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 559 (1990) ("injury to competition may be inferred from evidence that some purchasers had to pay their supplier substantially more for their goods than their competitors had to pay") (quotation omitted); *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435-36 (1983) ("injury to competition is established prima facie by proof of a substantial price discrimination between

FTC'S OPPOSITION TO MOTION TO DISMISS

competing purchasers over time"); *see also Chroma Lighting*, 111 F.3d at 658 (holding "the *Morton Salt* inference that competitive injury to individual buyers harms competition generally may not be overcome by proof of no harm to competition").

Southern's contention that the Complaint contains only "vague generalizations" and takes an "inference-by-generalization approach to *Morton Salt*," (Mot. at 14-15), once again ignores the FTC's detailed factual allegations. The Complaint describes enormous price differentials between competing retailers in millions of transactions over multiple years. ¶¶3, 75. Southern routinely charges independent retailers from 12% to 67% more than competing chains, and in certain transactions, independent retailers have paid as much as 78% more. *Id.* The Complaint details specific examples of Southern charging ██████ price premia to independent retailers compared to competing chain retailers for sales of ████████, ██████████████, ██████████████, ████████████████, ██████████████, ██████, ████████████, ████████████, ██████, and ██████████. ¶¶52, 53, 56-64. Southern's sales data shows that such price differentials are pervasive across geographic locations. In 2022, independent retailers located in Arizona, California, Illinois, Texas, and Washington paid materially higher prices than nearby chain retailers for the exact same products in the vast majority of transactions. ¶34. These price differentials plainly qualify as "significant" under *Morton Salt*. *See Morton Salt*, 334 U.S. at 41-42 (price differentials of 5-10% were sufficient to infer competitive injury as a matter of law); *Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694, 702-04 n.14 (9th Cir. 1964) (2-10% differentials judged sufficient); *Foremost Dairies,* 348 F.2d at 675-80 (approximately 5% differential judged sufficient).

The Complaint also alleges that competing independent retailers paid these large price premia over long periods of time, ranging from multiple months to five years. ¶¶32, 34, 56-64, 75. Far shorter periods of price discrimination have been found sufficient to plead the *Morton Salt* presumption. *See, e.g.*, *Foremost Dairies*, 348 F.2d at 675-80 (two years); *Coastal Fuels, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182,

193 (1st Cir. 1996) (eighteen months); *Mathew Enter.*, 2014 WL 3418545, *5-7 (periods of four months and twelve months).

In addition, the Complaint alleges directly that disfavored retailers were harmed by losing sales and profits to competing favored retailers. ¶¶1, 9, 78 ("independent retailers have lost sales and customers to favored large chain retailers, have been unable to be price-competitive with favored large chain retailers so as to attract customers, have sold lower volumes of wine and spirits than they would have sold in the absence of price discrimination, and have made lower profits on the products they did sell"). This is the foreseeable consequence of price discrimination "so significant that the favored chain stores were able profitably to resell Southern products at retail prices below the wholesale prices paid by disfavored independent retailers to procure from Southern the exact same bottle of wine or spirits." ¶76.

The Complaint thus alleges a reasonable possibility of harm to competition both indirectly, through the *Morton Salt* inference, and directly, through allegations of lost profits and sales suffered by disfavored independent retailers as the result of Southern's price discrimination.

Southern advances two last-ditch arguments, suggesting first that a plaintiff must allege the discriminatory pricing was done without justification and does not reflect "pro-competitive forces." (Mot. at 16-17.) But as Southern acknowledges, a defendant bears the burden of proving statutory defenses, (*id.* at n.5)—including changed market conditions, 15 U.S.C. §13(a)—and there is no requirement that a complaint preemptively plead and disprove all potential alternative explanations. *See ABC Distrib.*, 2016 WL 8114208, *4 ("under…*Twombly* and *Iqbal*, Plaintiff is not required to disprove Defendant's explanations"). In any event, the Complaint clearly alleges that the challenged transactions are not justified. ¶¶5, 33, 71-73.

Second, Southern argues that the FTC alleges no facts suggesting that the challenged transactions were "'reasonably comparable' in all material respects." (Mot. at 17, 19.) But as explicitly alleged in the Complaint, disfavored retailers had the same

FTC'S OPPOSITION TO MOTION TO DISMISS

non-price contract terms and, in numerous instances, purchased or wanted to purchase at the same volume levels or deal terms as the favored chains. ¶¶ 28, 40, 52, 57-58, 70. These allegations are sufficient to support a plausible inference of price discrimination and a reasonable possibility of harm to competition.

### III.    The Complaint States A Claim For Violation Of Section 5 Of The FTC Act

Southern argues that the FTC's Section 5 claim depends on the Complaint's RPA claim and therefore should be dismissed on the same grounds. (Mot. at 21.) For the reasons above, the FTC's RPA allegations are sufficient. This moots Southern's attack on the Section 5 count.

But even a failure to plead a sufficient RPA claim would not warrant dismissal of the Section 5 unfair methods of competition claim. Section 5 reaches beyond the other antitrust laws to practices that conflict with the basic policies of the antitrust laws even if they do not violate them. *See, e.g., FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972) (FTC may act under Section 5 based on "public values beyond simply those enshrined in the letter or encompassed in the spirit of the antitrust laws"). Injury to competitors stemming from price discrimination is one such public value. *See id.* at 244 n.5.

Southern's contention that methods of competition can be unfair only if accompanied by "evidence of collusive, coercive, predatory, or exclusionary conduct," (Mot. at 21), is based on a misreading of *E.I. Du Pont de Nemours & Co. v. FTC*, discussing the applicability of Section 5 to "consciously parallel pricing." 729 F.2d 128, 139 & n.10 (2d Cir. 1984). And Southern's assertion that an unfair practice must cause "substantial injury to consumers…," (Mot. at 21), misreads 15 U.S.C. § 45(n). This provision applies only to unfair "acts or practices" and not unfair "methods of competition" as challenged in the Complaint. Courts have allowed unfair methods of competition claims under Section 5 to proceed alongside RPA claims without any such allegations. *See, e.g., Fred Meyer, Inc. v. FTC*, 359 F.2d 351, 367-68 (9th Cir. 1966),

*rev'd on other grounds*, 390 U.S. 341 (1968); *Times Mirror Co. v. FTC*, 1979 WL 1651, \*7 (C.D. Cal. June 13, 1979).

### **CONCLUSION**

For the foregoing reasons, Southern's motion to dismiss should be denied.

Dated: March 10, 2025                    Respectfully submitted,

/s/ Christina J. Brown
Christina J. Brown (S.B. # 242130)
  cbrown5@ftc.gov
Dana F. Abrahamsen *(pro hac vice)*
  dabrahamsen@ftc.gov
Daniel R. Blauser *(pro hac vice)*
  dblauser@ftc.gov
Daniel M. Chozick *(pro hac vice)*
  dchozick@ftc.gov
Kathleen M. Clair *pro hac vice)*
  kclair@ftc.gov
Stephanie A. Funk *(pro hac vice)*
  sfunk@ftc.gov
Geoffrey M. Green *(pro hac vice)*
  ggreen@ftc.gov
Jordan T. Klimek *(pro hac vice)*
  jklimek@ftc.gov
Patricia M. McDermott *(pro hac vice)*
  pmcdermott@ftc.gov
Ross E. Steinberg *(pro hac vice)*
  rsteinberg@ftc.gov

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

John D. Jacobs (S.B. # 134154)
Local Counsel
  jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4300

*Attorneys for Plaintiff Federal Trade Commission*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Federal Trade Commission, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 10, 2025

/s/ Christina J. Brown
Christina J. Brown (S.B. # 242130)
cbrown5@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

*Attorney for Plaintiff*
*Federal Trade Commission*