**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Telephone: 310-552-4200

Craig S. Primis, P.C. (*pro hac vice*)
cprimis@kirkland.com
Matthew S. Owen, P.C. (*pro hac vice*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice*)
tj.mccarrick@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

Daniel K. Zach (*pro hac vice*)
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800

*Counsel for Defendant*
*Southern Glazer's Wine and Spirits, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, <br><br> Defendant. | CASE NO. 8:24-cv-02684-FWS-ADS <br><br> Judge: Fred W. Slaughter <br><br> **DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:  April 24, 2025 <br> Time:  10:00 a.m. <br> Dept.:  Courtroom 10D |

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

ARGUMENT .......................................................................................................2

I.    Plaintiff's Robinson-Patman Act Claim (Count I) Should Be Dismissed For Lack Of Jurisdiction. ................................................2

    A.    Plaintiff's Interstate-Distributor Theory Fails......................................3

    B.    Plaintiff's Flow-of-Commerce Theory Fails.........................................7

II.   Plaintiff's Robinson-Patman Act Claim (Count I) Should Be Dismissed For Failure To State A Claim.......................................10

    A.    Plaintiff Does Not Plausibly Allege Actual Competition Between Favored and Disfavored Retailers..................................10

    B.    Plaintiff Does Not Plausibly Allege the Alcohol Sold to Favored and Disfavored Retailers Was "Of Like Grade And Quality." ...............................................................................16

    C.    Plaintiff Does Not Plausibly Allege That Any Price Discrimination Threatens A Substantial Competitive Injury..................................................................................................19

III.  Plaintiff's FTC Act Claim (Count II) Should Be Dismissed For Failure To State A Claim. ........................................................21

CONCLUSION.................................................................................................22

i

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
5       881 F.2d 1396 (7th Cir. 1989) ................................................................16

6

*ABC Distrib., Inc. v. Living Essentials LLC*,
7       2016 WL 8114208 (N.D. Cal. Jan. 25, 2016) ........................................15

8

*N.Y. ex rel. Abrams v. Anheuser-Busch, Inc.*,
9       811 F. Supp. 848 (E.D.N.Y. 1993) ........................................................15

10

*Adcom, Inc. v. Nokia Corp.*,
11       812 F. Supp. 81 (E.D. La. 1993) ............................................................16

12

*Aerotec Int'l, Inc. v. Honeywell, Inc.*,
        836 F.3d 1171 (9th Cir. 2016) ...............................................................16
13

14

*Aggarwal v. Sikka*,
        2012 WL 12870349 (E.D. Va. June 12, 2012) ...............................11, 15
15

16

*Ashcroft v. Iqbal*,
        556 U.S. 662 (2009)..........................................................................12, 20
17

18

*Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007)..........................................................................12, 14
19

20

*Bendfeldt v. Window World, Inc.*,
        2017 WL 4274191 (W.D.N.C. Sept. 26, 2017) .......................10, 11, 15
21

22

*Best Effort First Time, LLC v. Southside Oil, LLC*,
        2018 WL 1583465 (D. Md. Mar. 30, 2018) ...................1, 11, 15, 20
23

24

*Best Effort First Time, LLC v. Southside Oil, LLC*,
        2019 WL 1427741 (D. Md. Mar. 29, 2019) ..........................................16
25

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
        509 U.S. 209 (1993).........................................................................1, 19
26

27

28

*Cal. Beer Wholesalers Ass'n, Inc. v. Alcoholic Beverages Control*
     *App. Bd.*,
     487 P.2d 745 (Cal. 1971) ....................................................................5

*Callahan v. A.E.V., Inc.*,
     1994 WL 682756 (W.D. Pa. Sept. 26, 1994)...................................8, 16

*Card v. Ralph Lauren Corp.*,
     2021 WL 4427433 (N.D. Cal. Sept. 27, 2021),
     *aff'd*, 2022 WL 14936344 (9th Cir. Oct. 26, 2022.......................11, 17

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
     799 F.3d 202 (2d Cir. 2015) .................................................10, 19, 20

*Chawla v. Shell Oil Co.*,
     75 F. Supp. 2d 626 (S.D. Tex. 1999)..............................................10, 11

*Clemente v. Mercedes-Benz USA, LLC*,
     2021 WL 4539041 (C.D. Cal. June 3, 2021) ......................................14

*Conley v. Gibson*,
     355 U.S. 41 (1957)............................................................................12

*Day v. Henry*,
     686 F. Supp. 3d 887 (D. Ariz. 2023),
     *aff'd*, 129 F.4th 1197 (9th Cir. 2025 ...................................................5

*Dickerson v. Bailey*,
     336 F.3d 388 (5th Cir. 2003) ...............................................................5

*E.I. du Pont de Nemours & Co.*,
     729 F.2d 128 (2d Cir. 1984) ...............................................................22

*Falls City Indus., Inc. v. Vanco Beverage, Inc.*,
     460 U.S. 428 (1983).........................................................14, 15, 19, 20

*Fast & Easy Food Stores, Inc. v. Greene Beverage Co.*,
     2013 WL 12136610 (N.D. Ala. Nov. 4, 2013).....................................7

*Foremost Dairies, Inc. v. FTC*,
     348 F.2d 674 (5th Cir. 1965) ...............................................................7

*FTC v. Indiana Fed'n of Dentists*,
  476 U.S. 447 (1986)..................................................................................21

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948)......................................................................18, 20, 21

*FTC v. Qualcomm Inc.*,
  2017 WL 2774406 (N.D. Cal. June 26, 2017)........................................22

*Granholm v. Heald*,
  544 U.S. 460 (2005)....................................................................................5

*Great Atl. & Pac. Tea Co. v. FTC*,
  440 U.S. 69 (1979)......................................................................................1

*Hampton v. Graff Vending Co.*,
  516 F.2d 100 (5th Cir. 1975) .....................................................................8

*Hiram Walker, Inc. v. A&S Tropical, Inc.*,
  407 F.2d 4 (11th Cir. 1969) ....................................................................7, 8

*Luzerne v. Lackawanna Supply Co. v. Peerless Indus., Inc.*,
  855 F. Supp. 81 (M.D. Pa. 1994)...............................................................8

*Major Mart, Inc. v. Mitchell Distrib. Co.*,
  46 F. Supp. 3d 639 (S.D. Miss. 2014) .......................................................8

*McPherson's, Ltd. v. Never Dull, Inc.*,
  1990 WL 238812 (D.N.J. Dec. 26, 1990)................................................11

*Mkt. Choice, Inc. v. New England Coffee Co.*,
  2009 WL 2590651 (W.D.N.C. Aug. 18, 2009) .......................................11

*Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*,
  990 F. Supp. 245 (S.D.N.Y. 1997) ..........................................................12

*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*,
  2019 WL 8883851 (N.D. Cal. Aug. 26, 2019) ...................................17, 20

*Realcomp II, Ltd. v. FTC*,
  635 F.3d 815 (6th Cir. 2011) ...................................................................22

iv
**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

*Southwest Paper Co. v. Paper*,
  2013 WL 12138669 (C.D. Cal. Jan. 28, 2013) .................................................17

*Standard Oil Co. v. FTC*,
  340 U.S. 231 (1951) ...........................................................................................4

*Taggart v. Rutledge*, 657 F. Supp. 1420 (D. Mont. 1987),
  *aff'd* 852 F.2d 1290 (9th Cir. July 19, 1988) ....................................................8

*Two Brothers Distrib. Inc. v. Valero Mktg. & Supply Co.*,
  270 F. Supp. 3d 1112 (D. Ariz. 2017),
  *aff'd*, 769 Fed. App'x 408 (9th Cir. 2019) ........................................................16

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
  89 F.4th 1126 (9th Cir. 2023),
  *cert. denied*, 145 S. Ct. 141 (2025) ..................................................................19

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
  546 U.S. 164 (2006)................................................................ 10, 14, 19-21

*W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*,
  970 F. Supp. 2d 1162 (D. Colo. 2013)................................................................7

*Walker Oil Co. v. Hudson Oil Co. of Mo.*,
  414 F.2d 588 (5th Cir. 1969) ..............................................................................8

*Water Craft Mgmt., L.L.C. v. Mercury Marine*,
  361 F. Supp. 2d 518 (M.D. La. 2004),
  *aff'd*, 457 F.3d 484 (5th Cir. 2006)...................................................................16

*Williams v. Duke Energy Int'l, Inc.*,
  681 F.3d 788 (6th Cir. 2012) .............................................................................12

*Wine & Spirits Merchandisers, Inc. v. Ill. Liquor Control Comm'n*,
  432 N.E.2d 1013 (Ill. App. 1982)........................................................................5

*Zoslaw v. MCA Distrib. Corp.*,
  693 F.2d 870 (9th Cir. 1982) .........................................................3, 4, 6, 8, 9

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

**Statutes & Constitutions**

U.S. Const. amend. XXI ................................................................................. 1

15 U.S.C. § 13 ................................................................. 1, 2, 4, 7-22

15 U.S.C. § 13(a) ............................................................................ 2, 16, 18

15 U.S.C. § 45 ............................................................................ 2, 21, 22

235 Ill. Comp. Stat. Ann. 5/6-8 ................................................................. 6, 9

Ariz. Rev. Stat. § 4-243.01 .......................................................................... 6, 9

Cal. Bus. & Prof. Code § 23672 .................................................................. 6, 9

**Other Authorities**

62 Cal. Op. Att'y Gen. 824 (1979) ............................................................. 6

*In re Morton Salt Co.*,
    5 Fed. Reg. 3774-75 (Sept. 24, 1940).......................................... 12, 18

## **INTRODUCTION**

Plaintiff's opposition confirms why the Robinson-Patman Act, 15 U.S.C. § 13, has been left unused by government antitrust enforcers for nearly a quarter century. In Plaintiff's view, a federal agency gets a ticket to discovery without ever alleging the identity of a single retailer harmed by SGWS's pricing practices, the geographic proximity of a single pair of competing retailers, the terms or conditions of a single pair of transactions between favored and disfavored retailers, or the existence of a single transaction between SGWS and a retailer that crossed state lines. That is not the law, and Plaintiff fails to read the Robinson-Patman Act "consistently with broader policies of the antitrust laws," *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993), with an appropriate respect for state alcohol policies, *see* U.S. Const. amend. XXI, and in a manner that avoids "price uniformity and rigidity," *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 80 (1979). As the only current FTC commissioners have acknowledged, federal antitrust statutes and pleading standards do not support Plaintiff's sweeping request for relief. *See* Ex. 1 (Comm'r Ferguson Dissent); Ex. 2 (Comm'r Holyoak Dissent). SGWS therefore respectfully requests that the Complaint be dismissed.

*First*, Plaintiff fails to allege that SGWS's sales meet the Robinson-Patman Act's stringent "in-commerce" requirement. Plaintiff ignores the three-tier structure of alcohol distribution in the United States, as well as laws mandating that wine and spirits "come to rest" in a state before they are sold to retailers. These laws, if nothing else, remove out-of-state alcohol from the "flow of commerce," making it inappropriate to stretch the Robinson-Patman Act to reach purely intrastate liquor sales. Because Plaintiff has failed to meet the statute's in-commerce requirement, Plaintiff's Robinson-Patman Act claim should be dismissed for lack of jurisdiction.

*Second*, Plaintiff fails to plausibly allege the merits of a Robinson-Patman Act claim. Because the Complaint does not identify a single disfavored retailer, Plaintiff

cannot establish that favored and disfavored purchasers are competing for the same dollar. It makes no difference that Plaintiff describes the retailers as being "nearby" one another—a term that Plaintiff says can mean anything from a few blocks to up to 500 miles. Plaintiff likewise has not alleged the specifics of even a single exemplar transaction showing that the terms and conditions on which SGWS sells to independent retailers are materially the same as for chain retailers. Without these details, it is impossible to evaluate the potential competitive effects of SGWS's pricing practices in actual areas of competition for local alcohol retailers. Thus, separate and apart from the jurisdictional defects, Plaintiff's Robinson-Patman Act claims should be dismissed.

*Third*, Plaintiff's tag-along claim under § 5 of the FTC Act also should be dismissed. The allegations supporting Plaintiff's § 5 claim are entirely duplicative of the allegations supporting its Robinson-Patman Act claim. For that reason, the claims rise and fall together, and Plaintiff cannot use § 5 as backstop to enforce unspecified "values" that run counter to traditional antitrust principles.

## ARGUMENT

### I. Plaintiff's Robinson-Patman Act Claim (Count I) Should Be Dismissed For Lack Of Jurisdiction.

The Robinson-Patman Act does not reach all instances of alleged price discrimination. The statute applies only to "purchases … in commerce," 15. U.S.C. § 13(a), jurisdictional language that Plaintiff concedes "extends only to discriminatory sales … where at least one of the compared transactions … crosses a state line." Opp. at 5. Yet Plaintiffs do not actually allege a single instance in which SGWS sold alcohol from a facility in State A to a retailer in State B. To the contrary, Plaintiff admits that SGWS ships alcohol to "warehouses in State B" and "then sells the products to retailers in State B." *Id*. That should be the end of the matter, and Plaintiff's characterization of SGWS as an interstate distributor that sells alcohol "in

the flow of commerce" disregards the statutory text, the dispositive effect of state alcohol laws, and settled precedent narrowly construing the jurisdictional reach of the statute.

## A. Plaintiff's Interstate-Distributor Theory Fails.

Plaintiff's contention that SGWS's sales are "interstate" because SGWS buys alcohol out-of-state, then ships and resells alcohol to in-state retailers as an interstate distributor, is meritless.  As an initial matter, Plaintiff did not plead a standalone interstate-distributor theory of jurisdiction in the Complaint, alleging only that SGWS's sales were "in commerce" because the alcohol at issue "remain[ed] in the flow of interstate commerce."  *See* Compl. ¶ 84; *see also id.* ¶ 80 ("Southern purchases wine and spirits from out-of-state or overseas producers, and then re-sells the wine and spirits to retailers in other states … in a continuing flow of interstate commerce across state boundaries.").  But even so, Plaintiff's interstate-distributor theory wrongly focuses on the location of SGWS's ***purchases*** rather than its ***sales***. In a secondary-line price discrimination case like this one, "the only relevant sales are those between the competing buyers"—*i.e.*, favored and disfavored alcohol retailers in a state. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 880 n.13 (9th Cir. 1982).  "Out of state sales made by" SGWS "are irrelevant … since they were not made to stores competing with" local retailers. *See id*. (rejecting the proposition that "*any* interstate sales by the record distributors here satisfy the Robinson-Patman jurisdictional requirements") (emphasis in original).  So, although SGWS in some instances[1] is an interstate buyer of alcoholic beverages, it indisputably is an intrastate

---

[1] Although Plaintiff alleges that SGWS "[i]n most instances" "obtains ownership over the products that it distributes as soon as the products leave the supplier's warehouse," the Complaint contains no allegations whatsoever as to the locations of those supplier warehouses on a supplier-by-supplier basis, product-by-product basis, or even state-by-state basis. *See* Compl. ¶ 82.  This not only concedes that some portion of SGWS's sales do not fit Plaintiff's jurisdictional theory, but also confirms that the Complaint as pled cannot support Plaintiff's request for nationwide injunctive relief.  At a minimum, Plaintiff should be required to amend its pleadings

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CASE NO. 8:24-cv-02684 FWS-ADS**

seller of alcohol to retailers. Because that is what matters for the jurisdictional analysis, and because none of the sales in the Complaint is alleged to involve wine or spirits that physically crossed state lines in a transaction between SGWS and a retailer, Plaintiff's Robinson-Patman Act claim must be dismissed.

Plaintiff—relying on cases involving vertically integrated supply relationships—argues that SGWS's "interstate distribution activities" mean any in-state sale of alcohol by SGWS meets the Robinson-Patman Act's in-commerce requirement. *See* Opp. at 5-6. As the former FTC commissioners who authorized this lawsuit acknowledge, this approach is unprecedented. *See* Ex. 3 (Statement of Comm'r Bedoya) at 19 (conceding that "*Zoslaw* and *Standard Oil* have not yet been applied to a national, interstate distributor like Southern"). Perhaps that is because it makes no sense. In cases involving vertically integrated supply and distribution relationships, courts look past the temporary in-state storage and sale of goods by local subsidiaries of an interstate manufacturer to determine whether "the initial sale from the out of state producer bears sufficient relationship to the subsequent allegedly discriminatory sale" to an in-state retailer. *See Zoslaw*, 693 F.2d at 879 (explaining further that "WEA and Polygram did not themselves manufacture records, but they were wholly owned subsidiaries of companies engaged in record and tape production."); *Standard Oil Co. v. FTC*, 340 U.S. 231, 237 (1951) ("Gasoline delivered to customers in Detroit, upon individual orders for it, is taken from the gasoline at the terminal in interstate commerce en route for delivery in that

---

to identify: (i) the supplier locations where SGWS purchases at-issue alcohol; (ii) the location where SGWS purportedly takes title and possession of those at-issue products; and (iii) the retail locations where SGWS ultimately sells at-issue products. This information is necessary to exclude sales of products that even Plaintiffs would concede are beyond the scope of the statute—for example, wine manufactured in California that is sold to SGWS in California and then resold to retailers in California, or bourbon manufactured in Kentucky that is sold to SGWS in Kentucky and then to retailers in Kentucky.

4

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

area."). This prevents interstate manufacturers from creating and using sham distributors to avoid application of the statute.

But there is no suggestion that local SGWS warehouses are "sham" distributors, nor could there be. State law generally imposes a three-tier alcohol distribution system, where suppliers sell alcohol to independent distributors, and those distributors in turn make intrastate sales of alcohol to local retailers. *See Granholm v. Heald*, 544 U.S. 460, 489 (2005) ("[T]he three-tier system itself is unquestionably legitimate.") (quotations omitted). The legally mandated independence of alcohol distributors thus eliminates the risk that distributors are using vertical integration to set up sham facilities in each state that are effectively engaging in interstate sales. *See, e.g.*, *Day v. Henry*, 686 F. Supp. 3d 887, 890 (D. Ariz. 2023), *aff'd*, 129 F.4th 1197 (9th Cir. 2025) (explaining that the "separation" between manufacturing, wholesale, and retail interests is designed to "prevent suppliers from dominating local markets through vertical integration"); *Dickerson v. Bailey*, 336 F.3d 388, 397 (5th Cir. 2003) ("The vertical integration of the manufacture, distribution or sale of alcoholic beverages is strictly prohibited. And, with rare exceptions, manufacturers are permitted to sell only to wholesalers; wholesalers only to retailers; and retailers only to consumers. This tripartite functional division … prevents companies with monopolistic tendencies from dominating all levels of the alcoholic beverage community.") (quotations omitted); *Wine & Spirits Merchandisers, Inc. v. Ill. Liquor Control Comm'n,* 432 N.E.2d 1013, 1014 (Ill. App. 1982) ("The purpose of [tied-house] statutes is to keep liquor distilling separate from liquor distribution, thus preventing horizontal and vertical integration of the industry."); *Cal. Beer Wholesalers Ass'n, Inc. v. Alcoholic Beverages Control App. Bd.*, 487 P.2d 745, 748 n.8 (Cal. 1971) ("The purpose of tied-house prohibitions was to prevent the integration of retail and wholesale outlets and to remove retail dealer[s] in intoxicating liquors from financial or business

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

obligations to [the] wholesaler, with the exception of ordinary commercial credit for liquors sold.") (quotations omitted).

On top of that, SGWS generally has no choice as to whether to ship wine or spirits to in-state warehouses for resale—state "come to rest" laws often mandate that alcohol become part of a distributor's in-state inventory before any sale to retailers. *See, e.g.*, Ariz. Rev. Stat. § 4-243.01 ("All spirituous liquor shall be unloaded and remain at the wholesaler's premises for at least twenty-four hours."); Cal. Bus. & Prof. Code § 23672 ("[D]istilled spirits imported into California shall come to rest at the warehouse for the account of such licensed importer or an authorized warehouse of the licensed importer, before sale and delivery to a retail licensee."); 62 Cal. Op. Att'y Gen. 824 (1979) (noting the "legislative intent to limit the storage of alcoholic beverages by a licensee at locations controlled by the licensee to (1) licensed premises within the state, (2) an approved private warehouse within the state or (3) in the case of tax-paid beer and wine, 'elsewhere in this [s]tate'" and stating there is "no authority … to issue a license for premises outside the state's territorial jurisdiction"); 235 Ill. Comp. Stat. Ann. 5/6-8 ("The alcoholic liquor shall be stored at the licensed premises of the importing distributor before sale and delivery to licensees in this [s]tate."). For this reason, even assuming an "interstate-distributor" theory of jurisdiction existed (and, separate from general flow-of-commerce principles, it does not), it would fail here, because SGWS's in-state warehouses and shipment practices are the function of state laws that require alcohol distributors to accept wine and spirits into SGWS's inventory and then sell those products in purely in-state transactions. *See Zoslaw*, 693 F.2d at 878 ("[G]oods leave the stream of commerce when they are stored in a warehouse or storage facility for general inventory purposes, that is, with no particular customer's needs in mind.").

**B.    Plaintiff's Flow-of-Commerce Theory Fails.**

Plaintiff's flow-of-commerce theory fails for similar reasons.  Plaintiff argues that the "state-imposed three-tiered distribution system[]" and "'at-rest' warehousing requirements" "do not insulate alcohol distributors" from Robinson-Patman Act liability.  *See* Opp. at 10.  But the only authority cited for that proposition—*Fast & Easy Food Stores, Inc. v. Greene Beverage Co.*, 2013 WL 12136610 (N.D. Ala. Nov. 4, 2013)—did not even consider state laws addressing the three-tier system or come-to-rest requirements.[2]  The jurisdictional allegations in that case do, however, highlight what is missing here.  In *Fast & Easy*, the plaintiff alleged that a distributor sent "a representative to the stores of its customers to inspect their" beer stock, "then order[ed] the appropriate [b]eer amount to meet the anticipated needs of each customer," "subsequently distribut[ing] it, without transformation, to its specific customers based on their anticipated needs."  *See* Compl. ¶12, *Fast & Easy Food Stores, Inc. v. Greene Beverage Co.*, No. 7:11-cv-1929-PWG (N.D. Ala.) (filed Dec. 16, 2011).  This sort of earmarked "go-get" purchase allegation is absent from the Complaint, and the notion that Plaintiff—a federal agency with the benefit of years of one-sided compulsory process and discovery—would need "discovery to further develop the facts bearing upon whether the transactions at hand are in interstate commerce" falls flat.  *Fast & Easy*, 2013 WL 12136610 at *4.

SGWS's intrastate sales instead fit into the paradigm for most cases involving alcohol sales to retailers, which have rejected Robinson-Patman Act jurisdiction.  *See, e.g.*, *Hiram Walker, Inc. v. A&S Tropical, Inc.*, 407 F.2d 4, 9 (11th Cir. 1969)

---

[2] Plaintiff's cases involving products other than alcohol also did not consider come-to-rest laws or industries that are regulated in the same manner as alcohol.  *See Foremost Dairies, Inc. v. FTC*, 348 F.2d 674, 676-78 (5th Cir. 1965) (distribution of dairy products); *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 970 F. Supp. 2d 1162, 1171-73 (D. Colo. 2013) (distribution of gasoline).

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

("South Florida and Florida Beverage sold only to retail customers within the State of Florida. … Thus, as a matter of law, the sales made by South Florida and Florida Beverage to the appellee and other retailers were not within the scope of the Robinson-Patman Act."); *Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639, 667-68 (S.D. Miss. 2014) ("Once the beer came to rest in Mitchell's warehouses, it ceased to be in interstate commerce.  Any sale to retailers, therefore, was an intrastate sale." (citation omitted)); *Callahan v. A.E.V., Inc.*, 1994 WL 682756, at *7 (W.D. Pa. Sept. 26, 1994) ("Luther and Fuhrer are autonomous, independent distributors whose participation in the distribution process breaks the flow of interstate commerce between the out-of-state beer manufacturers and the local retailers.").[3]  This result is consistent with settled law holding that "the flow of commerce is broken once the goods are sold to an independent distributor." *Callahan*, 1994 WL 682756, at *6; *see also Luzerne v. Lackawanna Supply Co. v. Peerless Indus., Inc.*, 855 F. Supp. 81, 87 (M.D. Pa. 1994) ("Cases elaborating on the parameters of 'stream of commerce' have held that the stream of commerce ceases once goods are sold to an independent distributor." (citing *Zoslaw*, 693 F.2d at 878 and *Taggart v. Rutledge*, 657 F. Supp. 1420, 1439 (D. Mont. 1987), *aff'd*, 852 F.2d 1290 (Table) (9th Cir. July 19, 1988)).

---

[3]  Plaintiff argues that *Hiram Walker* "pre-dates the flurry" of later cases recognizing the flow-of-commerce doctrine.  But even those cases recognize that sales that "themselves do not cross a state line" "are not 'in commerce' within the meaning of the Robinson-Patman Act," and that the flow-of-commerce doctrine is inapplicable where "[t]he demands and identity of the indefinite members of the consuming public were unascertainable prior to the time of sale" and where "the flow of interstate commerce ended and the goods came to rest within the state."  *See Walker Oil Co. v. Hudson Oil Co. of Mo.*, 414 F.2d 588, 589-90 (5th Cir. 1969); *see also Hampton v. Graff Vending Co.*, 516 F.2d 100, 103 (5th Cir. 1975) ("[W]e are not shown from what location Oakland received Leaf gum, under what circumstances or for what purposes the gum was shipped to Oakland, nor to whom it was or was to be sold. … Similarly, nothing in the record shows that the intrastate sales made by Graff in Texas were still in the flow of commerce.  While it is clear that Graff received the gum from Illinois, this is not determinative of whether a later sale by Graff to a retailer is in interstate commerce.").

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

It is no answer to say that SGWS's intrastate sales remain in the flow of commerce because it purchased alcohol from out-of-state suppliers "in response to the actual, understood, or anticipated needs" of its customers. *See* Opp. at 9; *see also* Compl. ¶¶ 83-84. Of course, every distributor tries to fulfill existing customer orders and meet customers' anticipated needs. But that is true for all a distributor's customers, not just particular large-chain retailers. Plaintiff's allegations related to SGWS's efforts to meet "large chains'" inventory needs thus are illustrative at best, *see* Opp. at 8 (citing Compl. ¶¶ 83-84)); the exact same could be said about SGWS's efforts to meet independent retailers' needs, and nothing suggests that particular bottles or cases were earmarked for, and then physically sold and delivered to, any particular customer. Although Plaintiff baldly asserts that SGWS's out-of-state purchases "were not in holding for general inventory," Opp. at 8, Plaintiff does not engage with the legal effect of state come-to-rest requirements, which generally require that alcohol become part of a distributor's in-state inventory prior to sale to a local retailer, *see* Ariz. Rev. Stat. § 4-243.01; Cal. Bus. & Prof. Code § 23672; 235 Ill. Comp. Stat. Ann. 5/6-8.

In any event, SGWS's general demand planning is not what matters under the flow-of-commerce analysis. The relevant question is whether "the initial sale from the out of state producer bears sufficient relationship to the subsequent allegedly discriminatory sale"—*i.e.*, from SGWS to retailers. *Zoslaw*, 693 F.2d at 879. It does not. As explained by one of the current FTC commissioners, "[i]f the flow-of-commerce test could be satisfied based on such general planning of anticipated inventory, businesses that exclusively make intrastate sales from inventory purchased from out-of-state manufacturers would face dramatically increased legal exposure under the" Robinson-Patman Act, *see* Ex. 2 (Comm'r Holyoak Dissenting Statement) at 25, which is inconsistent with the "stringent" jurisdictional

requirement that the statute imposes, *see Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 645 (S.D. Tex. 1999).

Because the sales in this case involved in-state retailers that buy alcohol from in-state SGWS facilities, and state law mandates that wine and spirits "come to rest" before sale to in-state retailers, Plaintiff cannot meet the Robinson-Patman Act's "in commerce requirement," and its claim must be dismissed for lack of jurisdiction.

## II. Plaintiff's Robinson-Patman Act Claim (Count I) Should Be Dismissed For Failure To State A Claim.

Plaintiff's Robinson-Patman Act claim also fails on the merits.  In applying the Robinson-Patman Act, courts must "resist interpretation[s] geared more to the protection of existing **competitors** than to the stimulation of **competition**."  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 181 (2006) (emphasis in original).  Instead, courts must "construe the Act consistently with the broader policies of the antitrust laws."  *Id.* (quotations omitted).  "To establish secondary line injury," a plaintiff must show that: (i) "the seller discriminated in price [or services] as between the two purchasers"—*i.e.*, purchasers in actual competition with each other; (ii) "the product or commodity sold to the competing purchasers was of the same grade and quality"; and (iii) the price or services discrimination "had a prohibited effect on competition."  *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 209-10 (2d Cir. 2015).  The Complaint fails to plausibly allege all of these required legal elements, and nothing in Plaintiff's opposition salvages its claim.

### A. Plaintiff Does Not Plausibly Allege Actual Competition Between Favored and Disfavored Retailers.

A plaintiff bringing a secondary-line Robinson-Patman Act claim cannot establish competitive injury "[a]bsent actual competition" between favored and disfavored purchasers—that is, "actual competition for the same dollar."  *Volvo*, 546 U.S. at 177; *Bendfeldt v. Window World, Inc.*, 2017 WL 4274191, at *3 (W.D.N.C.

10

Sept. 26, 2017); *see also Card v. Ralph Lauren Corp.*, 2021 WL 4427433, at *7 (N.D. Cal. Sept. 27, 2021), *aff'd*, 2022 WL 14936344 (9th Cir. Oct. 26, 2022). Plaintiff does not plausibly allege actual competition between chain retailers and unspecified independent retailers here, and its request for a watered-down pleading standard that "does not require precision" confirms dismissal is appropriate. *See* Opp. at 15.

   ***First***, Plaintiff fails to allege the identity of a ***single*** disfavored retailer allegedly harmed by SGWS's pricing practices. According to Plaintiff, the law does not require identification of specific disfavored retailers, and the "disclosure of specific independent retailers harmed by the challenged price discrimination is appropriately a matter for the discovery process." Opp. at 14-15. That is wrong as a matter of law. Courts routinely dismiss claims under the Robinson-Patman Act for failure to identify favored and disfavored retailers. *See, e.g.*, *Bendfeldt*, 2017 WL 4274191, at *2 ("[N]owhere do the Plaintiffs identify any Bendfeldt retailer that actually competed with or lost sales to any favored retailer."); *Aggarwal v. Sikka*, 2012 WL 12870349, at *6 (E.D. Va. June 12, 2012) ("Plaintiffs have failed to allege a *prima facie* case because, while they do recite the elements, they do not identify a single favored purchaser with whom they are in direct competition."); *Mkt. Choice, Inc. v. New England Coffee Co.*, 2009 WL 2590651, at *11-12 (W.D.N.C. Aug. 18, 2009) ("The Amended Complaint lacks any factual allegations identifying," among other things, "the retailers affected"); *Chawla*, 75 F. Supp. 2d at 654 (requiring plaintiffs to amend their pleading to identify, among other things, "the identity and location of the particular jobber(s) and/or other retail station(s) that received an allegedly unlawful favorable price"); *McPherson's, Ltd. v. Never Dull, Inc.*, 1990 WL 238812, at *4 (D.N.J. Dec. 26, 1990) ("[D]efendants do not in Count Two identify those buyers who have allegedly been favored by plaintiffs' pricing policies.").

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

Plaintiff's authorities do not suggest otherwise.  Most of Plaintiff's cases involved complaints that *did* identify at least one favored and disfavored purchaser, confirming that "identification of [ ] relevant competitors" is required to "sufficient[ly] [ ] notify [a] defendant[] of the facts on which" a plaintiff "intend[s] to establish" an inference of harm to competition.  *See Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*, 990 F. Supp. 245, 253-54 (S.D.N.Y. 1997) ("The Complaint at issue here, on the other hand, does identify products that were subject to discriminatory treatment, favored purchasers and disfavored purchasers." (record citations omitted)); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 801 (6th Cir. 2012) ("Plaintiffs have identified General Motors as one of the favored companies in their pleadings.").[4]  And the only complaint cited as a comparator—the pleading from *In re Morton Salt Co.*, 5 Fed. Reg. 3774-75 (Sept. 24, 1940)—cannot save Plaintiff's Robinson-Patman Act claim.  That complaint, which was filed before the United States entered World War II, not only pre-dates modern pleading standards by almost three quarters of a century, *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it also pre-dates by over a decade the notice pleading standards that the modern cases overruled, *see Conley v. Gibson*, 355 U.S. 41 (1957).  In short, nothing in Plaintiff's opposition excuses its failure to identify disfavored retailers.

Plaintiff's policy arguments do not support a different conclusion.  Plaintiff argues that "it would be impractical to identify all disfavored retailers and relevant transactions at the pleading stage without adding several volumes to the Complaint,"

---

[4] At least one of Plaintiff's cases did not require identification of *all* favored and disfavored retailers because "discovery ha[d] not taken place and th[e] information rests in the hand of the [d]efendants." *See Williams*, 681 F.3d at 801.  But here, Plaintiff had the benefit of nearly two years of investigative discovery and acknowledges that it knows the identity of the disfavored retailers. *See* Opp. at 15. Although the law requires Plaintiff to identify all disfavored retailers, Plaintiff at a minimum should be required to amend in order to identify exemplar transactions involving specific retailers in each state identified in the Complaint.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

and that such information would not "add" to SGWS's ability to defend itself. *See* Opp. at 14-15. Not so. Plaintiff easily could attach an appendix identifying on a state-by-state basis the retailers that Plaintiff alleges were harmed by SGWS's pricing practices and the corresponding "nearby" chain retailer(s) with whom those disfavored purchasers competed. Indeed, Plaintiff already has this information and has used it to calculate purported price differentials for certain products on a statewide basis, allegedly based on "exact, actual prices drawn from [SGWS's] sales invoice data." *See* Opp. at 13 (citing Compl. ¶¶ 55-65). Far from "expos[ing] small businesses to potential retaliation"—a salacious statement that Plaintiff supports with zero factual allegations—additional detail is needed for SGWS to allege its cost-justification or meeting-competition defenses as to particular retailers, to help identify the relevant zones of competition for favored and disfavored retailers, and to guide third-party discovery in the event the case moves forward. *See id.* at 15.[5] But for now, Plaintiff's Robinson-Patman Act claim must be dismissed because it does not identify specific (or even exemplar) retailers that compete with the chain retailers referenced in the Complaint. *See* Ex. 2 (Holyoak Dissent) at 26 ("Today's Complaint pleads no facts to demonstrate any pairings of retailers. … [N]ever does it allege that a favored retailer such as Costco competes with a specific disfavored retailer and that competition between those retailers was harmed.").

---

[5] Plaintiff's retaliation argument also fails on its own terms. On the one hand, Plaintiff claims, without a shred of support, that identifying disfavored retailers may expose businesses to retaliation. *See* Opp. at 15. On the other hand, Plaintiff argues that "[d]isfavored retailers are also sufficiently identified" by its statewide allegations. *See* Opp. at 13. In any event, Plaintiff's argument makes no sense. Plaintiff does not explain why SGWS would "retaliate" against purportedly disfavored retailers that Plaintiff allegedly identified through SGWS's ***own*** sales data and that would be involved in this litigation solely because of ***Plaintiff's*** decision to file suit. As Plaintiff—and the Court—knows, a small number of individual retailers have filed Robinson-Patman Act claims against SGWS, and none has alleged any instance of retaliation since filing suit. *See Roma Mikha, Inc. v. Southern Glazer's Wine and Spirits, LLC*, Case No. 8:22-cv-01187 (FWS) (C.D. Cal.). Plaintiff's insinuation of retaliation is entirely invented.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

*Second*, Plaintiff also fails to allege sufficient facts to identify disfavored retailers through geographic proximity. Plaintiff asserts that disfavored retailers are "in proximity to" or "in the same geographic area as" favored retailers, and that they are "in active competition" for "the same pool of end consumers." *See* Compl. ¶¶ 3, 32, 63, 74, 77. But that is all legal conclusion, no factual support. *See Twombly*, 550 U.S. at 545 ("[A] formulaic recitation of a cause of action's elements will not do."); *Clemente v. Mercedes-Benz USA, LLC*, 2021 WL 4539041, at *2 (C.D. Cal. June 3, 2021) (a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Plaintiff's description of retailers as "nearby" is similarly inadequate. According to Plaintiff, "nearby" can mean "a few blocks," "a few miles," "as far as ten miles," and up to "500 miles away," though Plaintiff admits this last figure "may"—but only may—"be too far." Opp. at 17. This does not allege a plausible competitive reality in which alcohol retailers do business. It does not take much to see that a small retailer in Carlsbad does not compete with a Costco in Carmel-by-the-Sea for the same dollar. Plaintiff's reference to "nearby" retailers thus is meaningless, leaving a host of questions unanswered. For example, does the zone of nearby retailers vary based on whether purchasers are in rural or urban areas? And when exactly do retailers stop being "nearby" in the cities Plaintiff fleetingly mentions (Tucson, AZ, Lakeside, CA, and Chicago, IL)—after a few blocks, after ten miles, or some other figure? *See id.*

These are not idle questions, and they necessarily inform whether Plaintiff is entitled to a rebuttable inference of harm to competition based on "proof of a substantial price discrimination *between competing purchasers* over time." *See Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435 (1983) (emphasis added); *accord Volvo*, 546 U.S. at 179. Because Plaintiff's vague and shifting allegations about geographic proximity do not provide a means of adequately identifying competing retailers, its Robinson-Patman Act claim should be dismissed.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

*See Bendfelt*, 2017 WL 4274191, at *2 (rejecting allegation that "retailers in locations that are unidentified, or identified only as being somewhere 'in the Midwest' or 'throughout the United States,' allegedly received lower prices from AMI than did the Bendfeldt retailers").

Plaintiff's argument that courts have "found even broader geographic allegations sufficient" at the pleading stage badly misses the mark. *See* Opp. at 17. It is of course true that, in **some** markets, competition between favored and disfavored buyers happens on a statewide basis. *See, e.g.*, *ABC Distrib., Inc. v. Living Essentials LLC*, 2016 WL 8114208, at *1 (N.D. Cal. Jan. 25, 2016) (alleging price discrimination in sales to wholesalers); *Best Effort First Time, LLC v. Southside Oil, LLC*, 2018 WL 1583465, at *1 (D. Md. Mar. 30, 2018) (gasoline sales to gas stations). But that does not mean any Robinson-Patman Act claim alleging a statewide market gets a ticket past the pleading stage. Whether or not retailers are in actual competition depends on the nature of the products they are selling, and with respect to alcohol, courts have recognized the existence of "numerous" smaller markets for alcohol sales in a given state or region. *See N.Y. ex rel. Abrams v. Anheuser-Busch, Inc.*, 811 F. Supp. 848, 871 (E.D.N.Y. 1993) ("[N]umerous conditions contributed to the State's failure to prove its proposed market boundaries," including "evidence and expert testimony endorsing the existence of numerous markets within the State of New York."); *see also Falls City*, 460 U.S. at 443-44 (noting "a common retail market along the border"). It "is not plausible" that small alcohol retailers "are in actual competition with" chain retailers up to "500 miles" away, or, in truth, retailers much closer than that. *See Aggarwal*, 2012 WL 12870349, at *6.[6] Plaintiff's Robinson-Patman Act claim should be dismissed.

[6] Plaintiff is wrong to suggest that pleading a precise geographic market is necessarily inconsistent with this circuit's test for determining "actual competition" between favored and disfavored purchasers. *See* Opp. at 16. "A competitive injury requires the existence of a 'competitive nexus' between the favored and disfavored

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

**B.      Plaintiff Does Not Plausibly Allege the Alcohol Sold to Favored and
Disfavored Retailers Was "Of Like Grade And Quality."**

Plaintiff also gives short shrift to the requirement that retailers purchase products "of like grade and quality." *See* 15 U.S.C. § 13(a).  Price discrimination under the Robinson-Patman Act "generally refers to a difference in price for the same goods." *Two Brothers Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1133 (D. Ariz. 2017), *aff'd*, 769 Fed. App'x 408 (9th Cir. 2019).  Although Plaintiff alleges that SGWS sold physically "identical bottles of wine and spirits" to independent and national chain retailers, *see* Compl. ¶¶ 32, 55-65, "physically identical products are not always 'of like grade and quality' for purposes of the" Robinson-Patman Act.  *Best Effort First Time, LLC v. Southside Oil, LLC*, 2019 WL 1427741, at *5 (D. Md. Mar. 29, 2019).  Goods sold under "materially different terms" are not products "of like grade and quality" within the meaning of the statute, *see id.*, and "'a seller is not obligated to charge the same prices for a commodity if its sales contracts with different buyers contain materially different terms,'" *Two Brothers*, 270 F. Supp. 3d at 1133 (quoting *Aerotec Int'l, Inc. v. Honeywell, Inc.*, 836 F.3d 1171, 1188 (9th Cir. 2016)).  The reason is simple: although a product "may be physically indistinguishable to the buyer, they are not fundamentally the same good, for the same reason a seat on the 6:00 a.m. flight from Chicago to New York is not the same as a seat on the 5:00 p.m. flight." *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1408 (7th Cir. 1989).  "Materially different terms" exist "if there are significant differences in the length of the contract or the obligations it imposes." *Two Brothers*, 270 F. Supp. 3d at 1133; *see also Aerotec*,

purchasers." *Adcom, Inc. v. Nokia Corp.*, 812 F. Supp. 81, 83 (E.D. La. 1993); *see also Callahan*, 1994 WL 682756, at *3 ("A prerequisite to establishing  secondary line injury is that the favored and disfavored customers must be competing in the same geographic and product markets … ."); *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 541-42 (M.D. La. 2004), *aff'd*, 457 F.3d 484 (5th Cir. 2006) (similar).

16

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

836 F.3d at 1188-89.

The Complaint contains virtually no facts about the material terms and conditions of SGWS's liquor sales other than price. For example, Plaintiff does not allege that SGWS's contracts with chain retailers are "materially the same" as its contracts with independent retailers in terms of deal-level pricing, distribution arrangements (*e.g.*, warehouse vs. in-store drop off), purchase commitments, or the numbers of stores serviced. Federal courts in this circuit have repeatedly rejected Robinson-Patman Act claims for nearly identical pleading defects. In *Southwest Paper Co. v. Paper*, 2013 WL 12138669 (C.D. Cal. Jan. 28, 2013), for example, the district court dismissed a claim for failure to plausibly allege price discrimination, reasoning: "[t]here are no allegations addressing the similarities or differences between the terms and conditions of the sales to plaintiff and [its competitor]," "[n]or are there allegations setting out whether plaintiff and [its competitor] perform similar marketing, warehousing, or promotional services … that might explain price differences." *Id.* at *3. Without such allegations, the district court was left only with plaintiff's "infer[red]" claim of price discrimination "based solely on allegations that [its competitor] sells [the relevant] commodity coated paper at $49 per hundredweight within the southwestern United States, which is the same price plaintiff pays to acquire [the product]." *Id.* This precedent—and other cases like it—requires dismissal here. *See id.*; *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 8883851, at *4 (N.D. Cal. Aug. 26, 2019) ("Without details of any specific purchase by Nicolosi, the Court cannot compare the prices/terms Axalta offered to FinishMaster with prices/terms it offered to Nicolosi."); *Card*, 2022 WL 14936344, at *1 ("One Kings Lane is a large retailer that deals in a higher volume of Defendants' products, so transactions between Defendants and One Kings Lane would not be 'reasonably comparable' to transactions with Pacific Heights Place such that price discrimination between the retailers would have an anticompetitive

effect.").

Plaintiff dismisses these cases, saying that they "typically involve narrow challenges brought by a single or small group of disfavored purchasers complaining about a handful of discriminatory transactions." *See* Opp. at 12. But if that argument is designed to justify Plaintiff's lack of transaction-level detail, it cuts the other way. Nothing in the statute suggests that a Robinson-Patman Act plaintiff can get away with pleading *less* by seeking to challenge *more* conduct and *more* transactions than the run-of-the-mill private lawsuit. *See* 15 U.S.C. § 13(a). Nor can Plaintiff rely on the complaint in *In re Morton Salt Co.*, 5 Fed. Reg. at 3774-75, for the proposition that "individual transaction details were not included." *See* Opp. at 14. At least the *Morton Salt* pleading identified the specific discounts at issue. *See In re Morton Salt Co.*, 5 Fed. Reg. at 3774 (alleging discounts of 5¢ per carload, 5% to customers whose annual purchases were $50,000 or greater, 10¢ per case for annual purchases of 5,000 or more 24-pack cases, and 15¢ per case for annual purchasers of 50,000 or more 24-pack cases). The Complaint here does no such thing, leaving SGWS completely in the dark about whether Plaintiff's claim targets hypothetical 100 case discounts, 200 case discounts, or 2,000 case discounts—some of which smaller retailers take advantage of, and others of which smaller retailers do not, based on their own independent business reasons. Plaintiff provides none of the detail needed to compare the terms of SGWS's sales to independent retailers with those of its sales to chain retailers, and although Plaintiff claims that, "[a]part from price and quantity, the terms of sale for independent and chain retailers are not materially different," its own allegations, including discussions of "purchase commitments" and different pricing and distribution arrangements with chain retailers, suggest just the opposite. *See* Compl. ¶¶ 28, 84.

Plaintiff's failure to identify the material terms and conditions of even one pair of reasonably comparable, contemporaneous transactions between a favored and

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

disfavored retailer is dispositive.  For all SGWS knows, Plaintiff's allegations and rolled-up statewide statistics may be comparing a 500-case purchase by a chain retailer on January 3, 2022, with an independent retailer's rush order just a few days earlier on December 31, 2021 (New Year's Eve).  While Plaintiff calls examples like these "fabricated distraction[s]," *see* Opp. at 17, they illustrate the problem with Plaintiff's approach.  Without details of paired transactions, or at least exemplars of such transactions and a list of the specific discounts Plaintiff seeks to enjoin, the claim that reasonably contemporaneous sales can occur "within the same day, week, or month" all but ensure that its allegations contain apples-to-oranges comparisons that do not reflect price discrimination.  *See id.*  Plaintiff thus has failed to plausibly allege purchases of the "same" goods, requiring dismissal of the Complaint.

### C.    Plaintiff Does Not Plausibly Allege That Any Price Discrimination Threatens A Substantial Competitive Injury.

Finally, Plaintiff's Robinson-Patman Act claim fails because Plaintiff does not plausibly allege competitive harm.  The Robinson-Patman Act is not a strict liability statute: it "could not, and does not, ban all price differences charged to different purchasers of commodities of like grade and quality," *Brooke Grp.*, 509 U.S. at 220 (quotations omitted).  Instead, the Act "condemns price discrimination only to the extent that it threatens to injure competition."  *See id.*; *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 141 (2025).

"A hallmark of the requisite competitive injury … is the diversion of sales or profits from a disfavored purchaser to a favored purchaser."  *Volvo*, 546 U.S. at 177; *see also Falls City*, 460 U.S. at 435-37; *Cash*, 799 F.3d at 210.  In the absence of direct evidence of diverted profits or sales, a plaintiff may establish an inference of competitive harm through "proof of a substantial price discrimination between competing purchasers over time."  *Falls City*, 460 U.S. at 435.  This inference—

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

stemming from the Supreme Court's decision in *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)—is rebuttable and will not stand without "the causal connection between a price differential and lost sales or profits." 460 U.S. at 435. This analysis focuses on "the existence and degree of actual competition among different purchasers"—in other words, "the number of instances in which [a disfavored] and a favored purchaser competed head-to-head." *Cash*, 799 F.3d at 210; *see also Volvo*, 546 U.S. at 177. The Complaint falls well short of pleading competitive injury here.

**First**, Plaintiff does not plausibly allege that independent retailers were directly harmed by losing out on sales and customers to chain retailers because of SGWS's pricing. Although Plaintiff uses those words in making its claim, *see* Opp. at 20 (citing Compl. ¶¶ 1, 9, 78), Plaintiff does not support its allegations with any factual detail whatsoever about the identity of any independent retailer that purportedly lost out on customers or sales or the relative proportion of those customers or sales. Such "naked assertion[s] devoid of further factual enhancement" need not be credited, *see Iqbal*, 556 U.S. at 678, and are not enough to allege competitive injury under the Robinson-Patman Act. *See, e.g.*, *Volvo*, 546 U.S. at 180 (holding "loss of only one sale to another [buyer]," which involved "a sale of 12 trucks that would have generated $30,000 in gross profits" did not substantially harm competition); *Cash*, 799 F.3d at 211 (holding that a loss of "only approximately three percent of [ ] customers" did not substantially harm competition); *Nicolosi*, 2019 WL 8883851, at *6 ("Nicolosi fails to satisfy this element because it has not alleged any details with respect to any customers or revenues that Nicolosi allegedly lost based on Axalta's alleged discriminatory discounts. Nicolosi does not identify a single customer it lost because of these discounts that it otherwise may have captured.").

**Second**, Plaintiff does not plausibly allege facts entitling it to an inference of harm to competition, and its effort to point to "pervasive" statewide price differences

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

misses the point. *See* Opp. at 19. To establish an inference of harm to competition under *Morton Salt*, a plaintiff must allege substantial, longstanding price discrimination "**between competing purchasers**." *See Volvo*, 546 U.S. at 179 (emphasis modified). But everyone agrees that alcohol retailers do not compete on a statewide basis. Plaintiff's broad aggregations of sales volume, average prices, and total discounts therefore do not answer the relevant question—that is, whether substantial, longstanding price differences exist between competing purchasers in geographic proximity to one other. Plaintiff cannot establish an inference of harm to competition based on a statewide lens that does not reflect the competitive dynamics for local retail alcohol markets. By lumping all independent retailers and pricing together in each state, Plaintiff paints a distorted picture of competition that does not draw competitive inferences from the deal-level details central to a Robinson-Patman Act claim. Plaintiff's inference-by-generalization approach is unsupported and does not even disclose the specific discounts and volumes at the heart of its claim. For these reasons, Plaintiff has failed to plausibly allege a competitive injury, and its Robinson-Patman Act claim should be dismissed.

## III. Plaintiff's FTC Act Claim (Count II) Should Be Dismissed For Failure To State A Claim.

Plaintiff's parasitic claim under § 5 of the FTC Act, 15 U.S.C. § 45, also fails as a matter of law. This claim depends on the very same allegations as Plaintiff's Robinson-Patman Act claim, with Plaintiff incorporating its other factual assertions by reference and stating that SGWS's "acts and practices … constitute unfair methods of competition." *See* Compl. ¶¶ 85-86. That is all the Complaint says. Where, as here, "the sole basis of the FTC's finding of an unfair method of competition" depends upon a violation of other antitrust laws, the copycat claim rises and falls with the agency's principal antitrust claim. *See FTC v. Indiana Fed'n of*

*Dentists*, 476 U.S. 447, 455 (1986); *see also Realcomp II, Ltd. v. FTC*, 635 F.3d 815, 824 (6th Cir. 2011). Plaintiff's FTC Act claim therefore should be dismissed.

To the extent Plaintiff argues that dismissal of its Robinson-Patman Act claim "would not warrant dismissal" of its claim under § 5 of the FTC Act, that argument also fails. *See* Opp. at 21. For one thing, Plaintiff's pleading says nothing about the "public values" or "spirit" of the antitrust laws (whatever that means) that are supposedly incorporated into § 5 of the FTC Act. *See id.* For another, Plaintiff offers no "standards for determining [what]" is "unfair within the meaning of § 5 … to discriminate between normally acceptable business behavior and conduct that is unreasonable or unacceptable." *See E.I. du Pont de Nemours & Co.*, 729 F.2d 128, 138 (2d Cir. 1984). "[T]he FTC's authority to proscribe 'unfair methods of competition' under § 5 is not unbounded," *FTC v. Qualcomm Inc.*, 2017 WL 2774406, at *8 (N.D. Cal. June 26, 2017), and Plaintiff cites no case permitting a cause of action to proceed under § 5 for generally pro-competitive activity like volume discounts. *See* Ex. 2 (Comm'r Holyoak Dissent) at 80 ("[V]olume discounts increase interbrand competition—that is, competition between suppliers of wine and spirits. As interbrand competition increases, the result is lower prices and more output, again the hallmark of competition."). Plaintiff's claim under § 5 of the FTC Act thus should be dismissed both as a matter of pleading and as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT
OF MOTION TO DISMISS
CASE NO. 8:24-cv-02684 FWS-ADS**

Dated this 7th day of April, 2025

*/s/ Tammy A. Tsoumas*

**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Telephone: 310-552-4200

Craig S. Primis, P.C. (*pro hac vice*)
cprimis@kirkland.com
Matthew S. Owen, P.C. (*pro hac vice*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice*)
tj.mccarrick@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

Daniel K. Zach (*pro hac vice*)
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**
**CASE NO. 8:24-cv-02684 FWS-ADS**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Southern Glazer's Wine and Spirits, LLC, certifies that this brief contains 6,567 words, which complies with the word limit of L.R. 11-6-1.

DATED: April 7, 2025

/s/ Tammy A. Tsoumas

Tammy A. Tsoumas

*Counsel for Defendant Southern Glazer's Wine and Spirits, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 7, 2025, a copy of the foregoing Notice of Motion to Dismiss was served electronically through the court's electronic filing system upon all parties appearing on the court's ECF service list.

DATED: April 7, 2025

/s/ Tammy A. Tsoumas

Tammy A. Tsoumas

*Counsel for Defendant Southern Glazer's Wine and Spirits, LLC*