

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10 **SOUTHERN DIVISION**

11

12 | | Case No. 8:24-cv-02684-FWS-ADS

13 FEDERAL TRADE COMMISSION, | **ORDER DENYING DEFENDANT'S**

14 Plaintiff, | **MOTION TO DISMISS [52]**

15

16 v.

17

18 SOUTHERN GLAZER'S WINE AND
SPIRITS, LLC,

19

20 Defendant.

21

22

23 ///

24 ///

25 ///

26

27

28

In this case, Plaintiff Federal Trade Commission (the "FTC") alleges that Defendant Southern Glazers Wine and Spirits, LLC ("Southern") "has violated the Robinson-Patman Act by selling wine and spirits to small, independent 'mom and pop' businesses at prices that are drastically higher than the prices Southern charges large national and regional chains." (Dkt. 57 ("Complaint" or "Compl.") ¶ 1.)  Before the court is Southern's Motion to Dismiss. (Dkt. 52 ("Motion" or "Mot.").)  The FTC opposes the Motion. (Dkt. 66 ("Opposition" or "Opp.").)  Southern filed a reply in support of the Motion. (Dkt. 69 ("Reply").)  The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute").  Accordingly, the hearing set for April 24, 2025, is **VACATED** and off calendar.  Based on the state of the record, as applied to the applicable law, the Motion is **DENIED**.

## I.    BACKGROUND[1]

Southern "is the largest coast-to-coast distributor of wine and spirits in the United States," selling "one out of every three bottles of wine and spirits purchased in the United States" and making $26 billion in sales in 2023 alone. (Compl. ¶¶ 1-2.) "For years, Southern has violated the Robinson-Patman Act by selling wine and spirits to small, independent 'mom and pop' businesses at prices that are drastically higher than the prices Southern charges large national and regional chains." (*Id.*)  More specifically, Southern offers cheaper prices to large chains through various discounts

---

[1] For purposes of the Motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to [the FTC]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Further, because "portions of the record have been filed under seal, [the court] refer[s] to those sections in general terms." *Beaty v. Ford Motor Co.*, 854 F. App'x 845, 849 n.3 (9th Cir. 2021).

that are not available to small chains. (*Id.* ¶¶ 35-54.)  Large chains pay significantly less than nearby smaller retailers for the same product purchased on the same day, week, or month. (*Id.* ¶¶ 32, 56-65.)  Southern purchases goods from out-of-state suppliers to respond to the understood or anticipated demands of large purchasers. (*Id.* ¶¶ 56-63, 83-84.)

Based on these facts, the FTC brings claims for violation of Section 2(a) of the Robinson-Patman Act amendments to the Clayton Act, 15 U.S.C. § 13(a), and violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("Section 5"). (*See id.* ¶¶ 85-88.)

## II.  LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level."  *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## III.    DISCUSSION

Southern argues the Complaint does not adequately allege that Southern violated either the Robinson-Patman Act or Section 5 of the FTC Act.  (Mot. at 5-21.) The court addresses each claim in turn.

### A.    Robinson-Patman Act

There are "three categories of competitive injury that may give rise to a Robinson-Patman Act claim: primary line, secondary line, and tertiary line." *Volvo Trucks N. Am. Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). "Secondary-line cases, of which this is one, involve price discrimination that injures competition among the discriminating seller's customers … cases in this category typically refer to 'favored' and 'disfavored' purchasers." *Id.*  Put differently, Robinson-Patman "bars a seller from discriminating in price between competing purchasers of commodities of like grade and quality." *U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134 (9th Cir. 2023) (citing 15 U.S.C. § 13(a)).

 "To establish secondary-line discrimination, a plaintiff must show that (1) the challenged sales were made in interstate commerce; (2) the items sold were of like grade and quality; (3) the seller discriminated in price between the disfavored and the favored buyer; and (4) the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser." *U.S. Wholesale*, 89 F.4th at 1134 (cleaned up).  The court finds the Complaint sufficiently alleges each element of a secondary-line discrimination claim.

### 1.  Interstate Commerce

Southern argues that "because the Complaint's allegations exclusively focus on *intrastate* sales, the Complaint flunks [Robinson-Patman's] especially stringent in-

commerce requirement." (Mot. at 6.) The FTC advances two theories to meet the in-commerce requirement: (1) that Southern has a "national distribution" system and (2) that Southern's goods traveled in the flow of interstate commerce. (Opp. at 5-10.) The court focuses on the flow-of-commerce theory and finds it is sufficiently alleged.

Robinson-Patman only covers price discrimination for transactions "in commerce." 15 U.S.C. § 13(a). This jurisdictional requirement "is not as broad as the 'affecting commerce' language in the Sherman Antitrust Act." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 877 (9th Cir. 1982). Rather, at least one of the allegedly discriminatory transactions must cross a state line. *Id.* at 877. But "if goods from out of state are still within the 'practical economic continuity' of the interstate transaction at the time of the intrastate sale, the latter sale is considered 'in commerce' for purposes of the Robinson-Patman Act." *Id.* Goods remain in the practical economic continuity of interstate commerce—also called the flow of commerce—if the "goods coming from out of state respond to a particular customer's order or anticipated needs." *Id.*; *see Hampton v. Graff Vending Co.*, 516 F.2d 100, 102-03 (5th Cir. 1975) (noting that goods remain in the flow of commerce where "they are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that the goods are to go at once to the customer; where the goods are purchased by the wholesaler or retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery; and where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers"). Southern refers to this form of jurisdiction as "demand planning." (Mot. at 9.)

These threshold "issues of jurisdiction are normally questions of fact for the jury to resolve." *Zoslaw*, 693 F.2d at 880. Southern's Reply—in which almost every

case[2] relevant to this issue was decided at summary judgment—supports that point.
(Reply at 7-8); *see Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639, 667
(S.D. Miss. 2014) (granting summary judgment where plaintiff "presented no
evidence that the beer in question was sold or resold in interstate commerce");
*Luzerne v. Lackawanna Supply Co. v. Peerless Indus., Inc.*, 855 F. Supp. 81, 87 (M.D.
Pa. 1994) (granting summary judgment where plaintiff did not put forward evidence
to support their demand-planning theory); *Taggart v. Rutledge*, 657 F. Supp. 1420,
1440 (D. Mont. 1987) (granting summary judgment where the defendant was an
independent, intrastate, distributor outside the flow of commerce); *Hiram Walker, Inc.
v. A&S Tropical, Inc*., 407 F.2d 4, 9 (11th Cir. 1969) (reversing denial of summary
judgment where "the undisputed facts demonstrate[d] that" defendants made only
*intrastate* sales); *Walker Oil Co. v. Hudson Oil Co. of Mo.*, 414 F.2d 588, 589-90 (5th
Cir. 1969) (affirming summary judgment where a customer's "demands and identity"
were "unascertainable prior to the time of sale"); *Hampton v. Graff Vending Co.*, 516
F.2d 100, 103 (5th Cir. 1975) (remanding case for further proceedings on jurisdiction
where "testimony in the record indicate[d]" that goods were stored "for whatever
customers happened by").

The court finds the Complaint, which alleges Southern purchased specific
products to fulfill the anticipated demands of favored purchasers in several states,
sufficiently alleges that Southern's goods remained in commerce under a demand-
planning theory.  (Compl. ¶¶ 56, 57-59, 63.)  Southern acknowledges that they try "to
fulfill existing customer orders and meet customers' anticipated needs."  (Reply at 9.)
But Southern disputes that this satisfies the in-commerce requirement.

---

[2] Southern cites *Callahan v. A.E.V., Inc.*, in which the court heard both a motion to
dismiss and motions for summary judgment, and the court considered evidence from
outside the complaint in ruling on the in-commerce requirement.  1994 WL 682756, at
*1, 6 (W.D. Pa. Sept. 26, 1994); (Reply at 8.)

1   Southern argues the flow-of-commerce theory cannot be applied to Southern

2   because "state law mandates that wine and spirits 'come to rest' before sales to in-

3   state retailers." (Reply at 10.)  Southern cites a collection of state laws which all

4   impose the same general requirement that wholesalers let imported alcohol come to

5   rest at a warehouse before the goods continue to a retailer.  *See* Ariz. Rev. Stat. § 4-

6   243.01 ("All spirituous liquor shall be unloaded and remain at the wholesaler's

7   premises for at least twenty-four hours."); Cal. Bus. & Prof. Code § 23672

8   ("[D]istilled spirits imported into California shall come to rest at the warehouse for the

9   account of such licensed importer or an authorized warehouse of the licensed

10  importer, before sale and delivery to a retail licensee."); 235 Ill. Comp. Stat. Ann. 5/6-

11  8 ("The alcoholic liquor shall be stored at the licensed premises of the importing

12  distributor before sale and delivery to licensees in this [s]tate.").  But the court is

13  unpersuaded that these temporary storage requirements prevent the court from

14  applying a demand-planning theory at this stage.  *See generally Standard Oil v. FTC*,

15  340 U.S. 231, 238 (1951) ("Such temporary storage of the [good] as occurs within the

16  [] area does not deprive the [good] of its interstate character.").  Indeed, in *Fast &*

17  *Easy Food Stores, Inc. v. Greene Beverage Co., Inc.*, a district court held that the

18  plaintiff had sufficiently pled the "in-commerce" requirement against an alcohol

19  distributor where the defendant was "able to order an accurate amount of the Beer

20  from its own distributor because of [the defendant's] knowledge of its customers'

21  anticipated needs."  2013 WL 12136610, at *2-4 (N.D. Ala. Nov. 4, 2013).

### 2.  Like Grade and Quality

24  Next, Southern maintains that the Complaint does not plausibly allege that the

25  goods at issue were of "like grade and quality" because the "Complaint contains

26  virtually no facts about the material terms and conditions of [Southern's] liquor sales

27  other than price."  (Mot. at 17; Reply at 16-19.)

Under Robinson-Patman, the alleged price discrimination must occur between products "of like grade and quality." 15 U.S.C. § 13(a). A seller "'is not obligated to charge the same prices for a commodity if its sales contracts with different buyers contain materially different terms.'" *Two Brothers Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1133 (D. Ariz. 2017) (quoting *Aerotec Int'l, Inc. v. Honeywell, Inc.*, 836 F.3d 1171, 1188 (9th Cir. 2016)). A plaintiff must "allege the illegitimacy of any price difference by pleading facts that plausibly show that the discounts are either excessive or were given with the purpose of passing along a price advantage." *Sw. Paper Co., LLC v. Hansol Paper*, 2013 WL 11238487, at *5 (C.D. Cal. Jan. 28, 2013) ("*Sw. Paper Co.*").

The court finds the Complaint creates a plausible inference that Southern discriminated in price between purchases of goods of "like grade and quality." 15 U.S.C. § 13(a). The Complaint alleges that large retailers purchased the exact same good at significantly lower prices than small stores. (*See* Compl. ¶¶ 55-65.) Further, the Complaint alleges that small stores and large chains signed contracts that were materially similar outside of pricing. (*Id.* ¶ 28.) Southern's arguments do not persuade the court that these allegations are insufficient. For example, Southern cites to *Sw. Paper Co.*. (Reply at 17.) There, a court in this district determined that a paper purchaser did not raise a plausible inference of price discrimination because there were "no allegations" explaining why a discount was not "commercially reasonable" due to differing terms of sale. *Sw. Paper Co.*, 2013 WL 11238487, at *5; *see also Nicolosi*, 2019 WL 8883851, at *5 (granting motion to dismiss where the complaint lacked "any attendant allegation that the deals were of the same size or otherwise comparable"). By contrast and as discussed above, the Complaint creates the inference that Southern made deals where the differences in price were not attributable to a difference in the terms of sale. (Compl. ¶¶ 28, 40, 52, 57-58, 70.)

### 3. Price Discrimination Between Favored and Disfavored Buyers

"The third element requires [the FTC] to allege that defendant[] discriminated in price between favored and disfavored purchasers of" wine and spirits. *ABC Distrib., Inc. v. Living Essentials LLC*, 2016 WL 8114208, at *3 (N.D. Cal. Jan. 25, 2016). In this case, the FTC alleges that Southern charged disfavored purchasers significantly more than favored chains, and aggregates data from thousands of transactions. (Compl. ¶¶ 3, 56-63.) The court finds these facts "sufficiently allege, or lead to the inference that, defendants discriminated in prices among their customers." *ABC Distrib.*, 2016 WL 8114208, at *3 (finding evidence sufficient where plaintiffs alleged a 7% discount for some purchasers and that one favored purchaser sold a product at lower prices than plaintiffs could purchase the product from defendants).

### 4. Harm to Competition

Robinson-Patman prohibits price discrimination "where the effect of such discrimination may be substantially to lessen competition." 15 U.S.C. § 13(a). This element "ensures that [Robinson-Patman] does not ban all price differences, but rather proscribes price discrimination only to the extent that it threatens to injure competition." *U.S. Wholesale*, 89 F.4th at 1134 (cleaned up). A "permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." *Volvo Trucks*, 546 U.S. at 177. This is known as the *Morton Salt* inference. (*See* Mot. at 14; Opp. at 11.)

The Complaint alleges that favored purchasers received significant price reductions; in some cases, these reductions were "so significant that the favored chain stores were able profitably to re-sell Southern products at retail prices below the wholesale prices paid by disfavored independent retailers" for the same good. (Compl. ¶ 76.) The Complaint supports this allegation with attendant allegations that some advantageous pricing schemes were not available to small stores. (*Id.* ¶¶ 35-54.) The court finds these allegations are sufficient at this stage of the proceedings. *See*

*ABC Distrib.*, 2016 WL 8114208, at *3 (finding allegation that competitors sold a product "for less than the price" that plaintiffs purchased the product was sufficient for the *Morton Salt* inference). The Complaint also adequately alleges that these price reductions took place "over a substantial period of time," *Volvo Trucks*, 546 U.S. at 177, because it alleges transactions spanning several years. (Compl. ¶¶ 1, 4-5, 32, 75.)

Southern argues that the FTC cannot rely on the *Morton Salt* inference because the Complaint does not show that the larger and smaller customers were in competition. (Mot. at 13.) The Ninth Circuit recognizes that competition is inferred where:

> "(1) one customer has outlets in 'geographical proximity' to those of the other; (2) the two customers 'purchased goods of the same grade and quality from the seller within approximately the same period of time'; and (3) the two customers are operating 'on a particular functional level such as wholesaling or retailing.'"

*U.S. Wholesale*, 89 F.4th at 1142. The court finds the Complaint adequately raises this inference. The Complaint alleges the first element through allegations that favored and disfavored purchasers are "nearby" and are "often located within just a few blocks to a few miles of each other." (¶¶ 3, 32, 65, 74-75.) The second element is met through allegations that Southern discriminated in price between purchases "at the same time." (*Id.* ¶ 32, 56-65.) And, as discussed above in Section III.A.2., the Complaint raises an inference that the goods at issue are of the same grade and quality. The Complaint also satisfies the third element when it alleges that Southern's customers compete on the same level: as retailers that sell to consumers. (*Id.* ¶¶ 24, 27.) Southern's contention that the purchasers "may have different business models and serve distinct markets" (Mot. at 17) is a fact-specific inquiry that is better addressed at a later stage.

Contrary to Southern's assertions, the court finds the Complaint raises an inference of competition without identifying "specific favored and disfavored

purchasers that compete with one another."[3]  (Mot. at 10); *see Nat'l Ass'n of Coll. Bookstores v. Cambridge Univ. Press*, 990 F. Supp. 245, 253 (S.D.N.Y. 1997) (noting that naming each favored purchaser would be an exercise in "mindless formalism"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 240537, *6-7 (N.D. Ill. May 26, 1994) (rejecting the argument that the pleading should have identified individual products because it would not have resulted in any "'gain in useful information'"); *Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 801 (6th Cir. 2012) (denying motion to dismiss where complaint did not identify disfavored purchasers).

"At this early stage of litigation, the Court concludes that Plaintiff has alleged a plausible competitive injury sufficient to survive a motion to dismiss." *Satnam Distributors LLC v. Commonwealth-Altadis, Inc.*, 140 F. Supp. 3d 405, 414 (E.D. Pa. 2015).  Because the court concludes the FTC has adequately alleged each element of a Robinson-Patman claim, Southern's Motion is **DENIED** insofar as it seeks dismissal of the FTC's Robinson-Patman claim.

**B. Section 5 of the FTC Act**

Section 5 of the FTC Act prohibits "[un]fair methods of competition in or affecting commerce."  15 U.S.C. § 45(a).  Southern acknowledges that Plaintiff's "Section 5 claim depends on Plaintiff's Robinson-Patman Claim."  (Mot. at 21.)  Because the court concludes that the FTC adequately alleges a Robinson-Patman claim, the court finds the FTC also adequately alleges a claim under Section 5 of the FTC Act.  *See Sunkist Growers, Inc. v. F.T.C.*, 464 F. Supp. 302, 310 (C.D. Cal. 1979) ("[A]ny violation of either the Sherman Act or the Clayton Act is also a violation of

---

[3] Southern is correct that they are entitled to the identities of the disfavored purchasers during discovery.  (Reply at 13.)   But that does not change the inferences the Complaint raises.

Section 5 of the Federal Trade Commission Act.").  Accordingly, the Motion is **DENIED** insofar as it seeks dismissal of the FTC's Section 5 claim.

## IV.    DISPOSITION

For the reasons set forth above, the Motion is **DENIED.**  Southern shall file an answer to the Complaint on or before **May 15, 2025.**

**IT IS SO ORDERED.**

Dated:  April 17, 2025

_____
Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE