Christina J. Brown (S.B. # 242130)
cbrown5@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

John D. Jacobs (S.B. # 134154)
Local Counsel
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4300

*Attorneys for Plaintiff Federal Trade Commission*
*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 8:24-cv-02684-FWS-ADS |
| Plaintiff, | Judge: Fred W. Slaughter |
| v. | **JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS** |
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, | |
| Defendant. | |

|   |   |
|---|---|
| 1 | Plaintiff Federal Trade Commission ("FTC") and Defendant Southern Glazer's |
| 2 | Wine and Spirits, LLC ("SGWS") submit the following joint status report and alternative |
| 3 | proposed amended case schedules pursuant to the Court's Order Extending Stay of |
| 4 | Proceedings During United States Government Cessation Following October 31, 2025 |
| 5 | Status Report (Dkt. 93). In that Order, the Court extended the stay of this case through |
| 6 | and including December 7, 2025, and ordered the parties to file a proposed amended |
| 7 | scheduling order in the event of changed circumstances, such as an end to the |
| 8 | government shutdown. |
| 9 | Congress enacted an appropriation ending the government shutdown and |
| 10 | restoring the FTC's funding, and the FTC resumed regular operations on November 13, |
| 11 | 2025. The parties therefore request that the stay of proceedings be lifted. |
| 12 | The parties have met and conferred in good faith regarding a proposed amended |
| 13 | case schedule. The parties agree that: (1) the current schedule should be extended both |
| 14 | to reflect the time that proceedings were stayed during the government shutdown, and |
| 15 | to provide some additional time for fact discovery; and (2) the new schedule should |
| 16 | include deadlines for certain additional case events, such as dates for expert reply reports |
| 17 | and summary judgment briefing. However, the parties have not yet reached agreement |
| 18 | on specific dates. The parties therefore submit the following proposed case schedule |
| 19 | alternatives, which are discussed in the respective position statements below and are |
| 20 | reflected in the accompanying [Proposed] Amended Scheduling Order: |

| Event | FTC's Proposal | SGWS's Proposal |
|---|---|---|
| Substantial completion of current custodial productions | December 19, 2025 | N/A |
| Parties to identify expert witnesses and topics | June 11, 2026 | N/A |
| Fact discovery cut-off | June 25, 2026 | September 28, 2026 |
| Initial expert reports exchanged | July 23, 2026 | November 20, 2026 |

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS

| Event | FTC's Proposal | SGWS's Proposal |
|---|---|---|
| Rebuttal expert reports exchanged | September 3, 2026 | January 8, 2026 |
| Reply expert reports exchanged | September 24, 2026 | January 29, 2026 |
| Expert discovery cut-off | October 22, 2026 | March 2, 2027 |
| Deadline to file summary judgment motions and *Daubert* motions | November 19, 2026 | May 6, 2027 |
| Oppositions to summary judgment motions and *Daubert* motions filed | January 14, 2027 | June 18, 2027 |
| Replies to summary judgment and *Daubert* motions filed | February 4, 2027 | July 9, 2027 |
| Hearing on summary judgment and *Daubert* motions | February 25, 2027 | July 17, 2207 |
| Deadline to complete settlement conference | March 11, 2027 | July 20, 2027 |
| Trial filings (first round) | April 22, 2027 | August 13, 2027 |
| Trial filings (second round) | May 6, 2027 | August 27, 2027 |
| Final pre-trial conference (subject to the Court's preference and availability) | May 20, 2027 | September 9, 2027 |
| Trial begins (subject to the Court's preference and availability) | June 15, 2027 | September 13, 2027 |

**FTC's Position**

***Extension of Case Schedule:*** The FTC's proposed amended schedule will keep the case moving expeditiously while providing sufficient additional time needed for fact discovery. The FTC's proposed schedule extends the current February 12, 2026 deadline for completion of fact discovery by approximately four and a half months—to June 25, 2026—both to account for the duration of the stay of case proceedings

implemented due to the government shutdown, and to provide an additional three months needed for the parties to complete fact discovery, including third-party discovery. The FTC's proposed schedule otherwise hews closely to or condenses the periods between later events, resulting in an approximately four-month extension of the current February 2027 trial date and overall case schedule.

In contrast, SGWS's proposed schedule seeks nearly double this extension of both the fact discovery cut-off and overall case schedule, needlessly and unreasonably protracting the proceedings and impeding the prompt end to SGWS's ongoing unlawful price discrimination against and harm inflicted on small, independent businesses. SGWS's position statement is rife with mischaracterizations and inaccuracies concerning the conduct of discovery to date. In addition, SGWS attempts to air a number of issues and live disputes that are neither relevant to nor appropriate for resolution as part of the case scheduling process, and are premature for the Court's consideration. The FTC responds to certain of these issues below.

During the six months of discovery already completed, the FTC has provided information promptly, producing its entire investigative file to SGWS in June 2025, followed by numerous rolling productions of documents responsive to SGWS's requests and documents received from third parties. In response to the first set of interrogatories served by SGWS, the FTC began a rolling production of specific paired transactions reflecting evidence of SGWS's price discrimination (*i.e.*, contemporaneous sales of the same product at different prices to a favored chain retailer and nearby disfavored independent retailer) on June 16, 2025. Based on ongoing discovery, the FTC timely supplemented these responses with additional pairings on September 8 and September 30, 2025, bringing the number of specific transaction pairings identified to date to over 17 million. Notably, all of these transaction pairings are derived from sales data produced by SGWS. Further identification of transaction pairings is subject to ongoing discovery, including

information that SGWS has yet to produce and information that the FTC is in the process of securing from third parties, including SGWS's chain retailer customers.

SGWS's claim that it is unable to begin third-party discovery until the FTC has identified all discriminatory transaction pairings is illogical and incorrect. Indeed, the FTC provided initial disclosures in April identifying a multitude of specific third-party market participants, including 15 wine and spirits suppliers, 15 favored chain retailers, and approximately 300 disfavored independent retailers, likely to have discoverable information supporting the FTC's claims. As of September 30, 2025 (almost six months into the fact discovery period), SGWS had yet to seek discovery from a single identified entity. SGWS's failure to proceed expeditiously with discovery does not justify the protracted schedule it now seeks.

In addition, any suggestion by SGWS that its delay in seeking third-party discovery is attributable to the timing of the FTC's identification of paired transactions evidencing alleged price discrimination is specious. First, SGWS withheld and delayed the production of updated sales and related data necessary for the FTC's identification of additional transaction pairings. Moreover, the FTC's development of evidence supporting its claims, including additional pairings, is ongoing—as is wholly appropriate during the fact discovery period. SGWS's failure to timely provide its own data and to expeditiously pursue third-party discovery based on information already in its possession should not be rewarded by a lengthy delay of the case schedule.

Finally, SGWS's attempt to use its Rule 30(b)(6) deposition of the FTC as a reason to extend the case schedule is baseless. The parties have met and conferred in good faith regarding SGWS's original, extremely broad set of noticed topics, which together address practically every issue involved in this litigation. Many topics appear to be improperly aimed at discovering protected attorney work product and privileged deliberative process material, including analysis and calculations performed by FTC staff—which will be the subject of a forthcoming informal discovery conference request. The FTC's proposed deposition dates of December 22 or 23 and January 7 or

8 are the earliest that the FTC is available and will allow time for resolution of the privilege dispute. SGWS does not, and cannot, explain how a December or January deposition date would prevent it from completing fact discovery in advance of the FTC's proposed June 25, 2026 deadline.

In any event, the FTC's proposed schedule gives the parties over seven more months to conduct additional fact discovery, including additional third-party discovery and party and third-party depositions. Should the parties find that still more time is needed as they near June, they can seek a further extension of the schedule at that time. But SGWS's proposed extension, which contemplates more than ten more months until the end of fact discovery, is neither warranted nor in the public interest in promptly enjoining anticompetitive conduct.

**Substantial Completion of Current Custodial Productions:** Including in the scheduling order a date for both parties to substantially complete their current custodial productions will help ensure that discovery can be completed by the FTC's proposed June 25, 2026 fact discovery cut-off. In particular, the FTC needs custodial documents collected from individual SGWS employees in order to determine which employees to depose and to prepare for their depositions. SGWS does not dispute this; indeed, both parties proposed dates for SGWS to substantially complete its custodial productions in the Joint Rule 26(f) Report (Dkt. 77 at 23-24, 29). In the FTC's current proposed schedule, this date is a reciprocal one, requiring both SGWS and the FTC to substantially complete their pending productions.

The FTC's proposed date of December 19, 2025 is based on SGWS's *own current estimate* of when it expects to substantially complete its custodial productions. Based on communications with SGWS's counsel on November 13 and 17, the FTC understands (and appreciates) that SGWS continued its review of custodial documents during the shutdown period, positioning it to produce the bulk of these documents within two to three weeks and to substantially complete its privilege review by mid-December. The FTC's proposed fact discovery cut-off is based on the expectation that

it will receive SGWS's documents on this timeframe and be positioned to begin depositions early in 2026. Memorializing this timing in the amended case schedule will create accountability and ensure that discovery moves forward as both parties intend.

*Expert Disclosure Deadline:* The FTC's proposed amended schedule also includes a date, shortly before the close of fact discovery, for the parties to identify their affirmative expert witnesses and the topics on which each expert will offer opinions. This preliminary disclosure will allow both parties time to retain any additional experts deemed necessary for rebuttal purposes. Such preliminary expert identification deadlines are common in cases involving government agencies. The FTC must comply with the Federal Acquisition Regulations, which mandate a time consuming, multi-week contract solicitation process before retaining an expert.

The FTC's and SGWS's proposed schedules provide for six weeks and seven weeks, respectively, between initial and rebuttal expert reports. Without a pre-disclosure requirement, these schedules will not allow sufficient time for the FTC to retain potentially necessary expert witnesses and for such witnesses to prepare reports. The mutual exchange of experts' names and topics requested by the FTC does not provide either party with an unfair advantage, nor would it otherwise harm SGWS, whose counsel have no doubt been working with experts for months. The FTC's proposed disclosure date of June 11, 2026, two weeks before its proposed fact discovery cut-off, will facilitate an orderly process for expert discovery and allow the parties to meet the proposed deadlines for exchanging expert reports, without adding any additional time to the overall case schedule

**SGWS's Position**

On December 12, 2024—over the objection of two FTC commissioners, including the current chairman—the FTC filed suit against SGWS, alleging that SGWS violated the Robinson-Patman Act "in millions of transactions over multiple years" in all states subject to open and franchise regulatory schemes. *See* Dkt. 1 ¶ 75. Unbeknownst to SGWS, the FTC at most had only identified approximately 8,000 specific "paired

transactions in three states reflecting alleged price discrimination based on its knowledge and investigation," on top of the handful of exemplars described in the complaint. *See* Dkt. 85 ¶ 5. Nevertheless, the FTC not only pursued sweeping discovery into **all** SGWS sales of **all** wine and spirits products in **all** open and franchise states (33 in total) from 2020-2025, it also requested and received a schedule providing for just nine-and-a-half months of fact discovery and four months of expert discovery. *See* Dkt. 80. Discovery has made clear that the FTC (i) lacked a basis for the overbroad allegations in its complaint, (ii) was not prepared to litigate this case on the timetable it originally proposed in its Rule 26(f) submission, and (iii) remains unprepared to litigate on its current scheduling proposal. The agency's significant delay has been compounded by the government shutdown, which warrants a substantial modification of the current schedule. SGWS's proposed schedule is consistent with schedules in other cases involving antitrust conduct allegations and therefore should be adopted. *See, e.g.*, *FTC v. Amazon*, 2:23-cv-01495, Dkt. 159 (W.D. Wash. Feb. 13, 2024) (approximately 2 years of fact discovery); *Zydus Worldwide DMCC v. Teva API Inc.*, 2:19-cv-17086 (D.N.J.) (2-plus years of fact discovery); *In re Lipitor Antitrust Litig.*, 3:12-cv-02389 (D.N.J.) (1.5 years of fact discovery).

SGWS identifies the following non-exhaustive factors that support its request for a seven-and-a-half month extension and that respond to the agency's position:

> **Delayed Custodian Proposals / Substantial Completion**: Despite conducting a two-year investigation during which the agency received 4.5 million documents totaling 21 million pages from 51 custodians, the FTC spent half the fact discovery period just identifying custodians. The FTC did not provide SGWS a preliminary, non-exhaustive list of 31 document custodians until a little over three months into the fact discovery period on August 4, 2025, or its final additional list of 57 custodians (for a combined total of 88 custodians) until August 22, 2025, nearly four months into the fact discovery period. This followed a period of months during which SGWS provided organizational information and other personnel information at the agency's request. The FTC now seeks to compound the prejudice to SGWS's defensive discovery efforts by requesting a substantial completion deadline of December 19, 2025, which effectively grants SGWS—in total, for the entire

fact discovery period—just two months to substantially complete its products from 88 custodians (approximately one month after receiving the FTC's final custodian list before the government shutdown began and approximately one month after the shutdown). That is an unnecessary and unreasonable burden to impose at this stage, particularly given the FTC's failure to take seriously its own minimal defensive discovery obligations. Indeed, the FTC's proposed substantial completion date is reciprocal in name only: it is SGWS that bears the brunt of discovery in this case, not the agency. Notwithstanding its expression of appreciation, it is also rich for the FTC to rely on SGWS's efforts to continue reviewing discovery during the shutdown as a basis for requesting a *shortened* schedule and imposing an accelerated substantial completion deadline. Even under the agency's proposed schedule, it makes little sense to impose a December 2025 discovery deadline for a June 2026 fact discovery deadline. SGWS has made—and will continue making—rolling productions. To date, during fact discovery, SGWS has produced 3.75 million gigabytes of data and 2.75 million documents, totaling nearly 20 million pages. There is no reason to believe that depositions will not be able to move forward in early 2026, as the agency requests.

- **Delayed Production of The Basis for the Complaint**: The FTC also consistently has delayed providing the basis for the allegations in the complaint. As noted above, although the FTC alleged in the complaint that SGWS supposedly engaged in "millions" of instances in price discrimination in all open and franchise states throughout the country, the agency only identified 8,000 "paired transactions in three states reflecting alleged price discrimination based on its knowledge and investigation to date" in response to an interrogatory served by SGWS on May 15, 2025. *See* Dkt. 85 ¶ 5. Because the identities and locations of the specific retailers involved in the alleged instances price discrimination, as well as the terms of paired sales, were a prerequisite to meaningfully pursuing third-party discovery, SGWS consistently pressed the agency for months to timely supplement its interrogatory response. SGWS made clear that, without an idea of the full set of transactions at issue, it could not meaningfully seek or tailor third-party discovery into, *inter alia*, whether individual retailers actually compete for the same customers geographically or otherwise (the "prima facie case"), the price terms offered to favored retailers for comparable products by other distributors (the "meeting competition defense"), or how much of any alleged price differential was justified by SGWS's costs of sale (the "cost justification defense"). Although the agency supplemented its response with a non-exhaustive list of paired transactions in five states, the FTC still did not provide the specific terms of the "millions" of transactions referenced in the complaint for the overwhelming majority of states. It was not until September

30, 2025—the day before the government shutdown—that the agency finally identified over 17 million transactions in approximately 30 open and franchise states. It remains unclear whether this is the FTC's final list. If the FTC's position statement here is any indication, it is not. As a result, SGWS has not been able to meaningfully pursue third-party discovery, the scope of which is monumental given the number of retailers, transactions, and states at issue. Given the enormous breadth of the FTC's case, and the agency's delay, SGWS's schedule is reasonable and recognizes that the parties are effectively starting from scratch for purposes of third-party discovery in a case covering over thirty states, thousands of retailers, thousands of products, and millions of transactions—the details of which SGWS did not receive until immediately before the government shutdown, and all of which is essential given the nature of the claims and defenses.

- **SGWS Has Not Delayed in Providing Responsive Discovery**: The FTC's effort to excuse its actions by pointing to SGWS's supposed delay in providing certain data is specious. As an initial matter, the FTC has never explained how production of *new* data requested during fact discovery prevented it from using the 2017-2023 retail sales data in its possession from the investigation phase for all open and franchise states to identify paired transactions before September 30, 2025. Moreover, SGWS *did* produce the additional data requested by the FTC in accordance with the stipulation entered into by the parties (by mid- to late-August 2025). *See* Dkt. No. 85. Any suggestion that SGWS's overall data productions were untimely rests on the mistaken premise that SGWS somehow agreed in the parties' Rule 26(f) report to a refresh of all data, for all products, for all open and franchise states by an earlier date. In the same Rule 26(f) report the agency cites for the proposition that SGWS agreed to a universal data refresh, SGWS repeatedly and unequivocally objected to producing discovery beyond the five states specifically discussed in the complaint. *See, e.g.*, 4/23/25 Joint Rule 26(f) Report (ECF No. 77) at 16 ("[B]ecause the FTC's pleading contains specific allegations as to SGWS's pricing practices in only five states. Discovery should be limited accordingly. Nothing in law or logic allows the FTC to use a narrow pleading targeted at pricing differentials in five states as a beachhead for discovery and relief in nearly thirty states."); *see also id.* ("The FTC thus cannot use a pleading making allegations about a handful of states to create a one-size-fits-all basis for discovery in dozens of additional states, sweeping in millions upon millions of SGWS sales to thousands of retailers across the country."); *see id.* at 21 ("SGWS believes the Court should limit discovery to the states for which the FTC provided specific allegations in the Complaint.").

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS
9

- **SGWS Could Not Reasonably Have Pursued Third-Party Discovery Based on Its Own Data or the FTC's Initial Disclosures**: The FTC is equally wrong that SGWS could have pursued third-party discovery because the alleged transactions are reflected in SGWS's own data and based on the agency's initial disclosures. As to the data point, the law is clear that SGWS is not required to guess at the basis for the agency's allegations. *See, e.g.*, *Bathija v. Panoff Pub., Inc.*, 2005 WL 2323298, at *2 (D. Alaska Sept. 21, 2005) ("It is not enough for Celebrity to argue that DIAK already has this knowledge because of its participation in the allegedly illegal actions. Upon being served with the interrogatories, Celebrity must provide the factual detail that it currently possesses underlying its allegations."); *Rogers v. Bank of Am., N.A.*, 2011 WL 612072, at *2 (S.D. Ill. Feb. 15, 2011) (explaining that an interrogatory response that "requires Defendant to make guesses about which transactions Plaintiff is complaining" "is not fair to Defendant" and ordering the plaintiff "to identify transactions responsive to the interrogatory."). There is also nothing in the complaint that SGWS conceivably could have used to extrapolate the 17 million transactions ultimately disclosed by the FTC in its interrogatory response based on the handful of exemplars in the complaint. Indeed, to this day, the FTC has refused to define what qualifies as a small retailer or the case levels at which certain discounts become available to retailers, opting instead to identify individual paired transactions on a rolling basis. Nor could SGWS have meaningfully pursued discovery in response to the agency's initial disclosures. For one thing, it is inefficient and unfair for SGWS to conduct third-party discovery piecemeal, requesting information about a potentially under- or over-inclusive list of states and products that may (or may not) be part of the agency's case. For another thing, the sheer scope of the 17 million transactions later identified by the FTC confirms it would have prejudicial for SGWS to begin third-party discovery into the potentially unrepresentative subset of retailers identified in the agency's disclosures. To put a fine point on it: the FTC's initial disclosures identified hundreds of retailers; its interrogatory responses disclosed thousands. All of this confirms the FTC has it precisely backwards: SGWS should not be expected to burden third parties with overbroad discovery before the agency discloses the basis for and scope of its case.

- **Default and Delayed Production of a 30(b)(6) Witness**: Equally concerning is the FTC's inexcusable default and delay in making a 30(b)(6) witness available in a timely manner. In an effort to move the ball forward and understand the foundation and scope of the agency's allegations, SGWS served a Rule 30(b)(6) notice on the FTC on July 14, 2025, with a requested deposition date of August 7, 2025. Despite SGWS's repeated requests to understand the FTC's position on whether it would put up a witness, or when

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS
10

it could do so, the agency did not deliver its official position until August 5, 2025, just two days before the scheduled deposition.[1] The FTC's proposal, which SGWS rejected, was to answer the proposed topics via interrogatory. Despite not having served written responses or objections to the notice, and without having obtained a protective order, the FTC defaulted and did not appear for the deposition, at which SGWS obtained a certificate of non-attendance. SGWS nevertheless met and conferred in good faith with the agency to move the deposition forward, modified the Rule 30(b)(6) notice, and agreed to a date of October 9, 2025. SGWS specifically did not move to compel or for an order of preclusion based on the FTC's agreement to produce a witness on that date. Because of the government shutdown, that deposition understandably did not move forward; however, SGWS promptly requested the agency's availability on November 24-26 and December 1-3, 2025 once funding was restored. The FTC did not accept those dates and instead indicated that its proposed witness (one of the lawyers on the pleadings in this case) was unavailable to be prepared for and attend a deposition any day between the date of this filing and December 22, 2025 (the Monday before Christmas). It is telling that FTC's view of evenhanded discovery is that SGWS should collect and substantially complete its production of documents for 88 custodians by December 19, 2025, before it produces a witness for a deposition notice issued in July. But even without that, the agency's position is difficult to understand. The government shutdown went into effect just 6 business days before the scheduled Rule 30(b)(6) deposition. The FTC's designated witness—who already had a head start on understanding the issues in the case having been involved in the investigation phase, preparation of the complaint, and the agency's prosecution of this matter—thus already should have been engaged in substantial preparations for a deposition that SGWS requested in July 2025. Through various machinations, the agency has effectively delayed basic discovery into the factual basis underlying its complaint for nearly five months. Having done so, and having avoided disclosing their understanding of the allegations in the complaint or various discovery responses and materials, the agency should not be permitted to secure an aggressive, abbreviated schedule.

---

[1] In late-July 2025, the agency indicated that August 7, 2025 would not work as a deposition date. However, when SGWS asked for alternative dates (or for a basic commitment that it would produce a witness), the agency failed to do so, instead rolling out its substitution-by-interrogatory proposal on August 5, 2025. As of the notice date for the deposition, the agency had not committed to producing a witness and had not offered a single deposition date.

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS

11

- **Refusal to Produce or Delays in the Production of Responsive Discovery**: Despite the FTC's contention that it promptly has provided discovery, in truth, the only actual discovery the FTC has produced is information it had (or has since received) from third parties. The FTC's submission is notably silent on responsive documents produced from its *own* files; respectfully, in touting the volume of discovery it has produced, information collected from other parties, at their expense should not count. In terms of the agency's own discovery, it has refused to produce over 500 documents it admittedly relied upon in formulating allegations in the complaint, including allegations that allowed it to survive a motion to dismiss. These documents are the subject of a forthcoming informal discovery conference request. Even more troubling, the FTC appears to have failed to produce even a single document from its recent case in *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-cv-00347-AN (D. Or. 2024). Although the FTC cited Kroger and Albertsons as purportedly favored retailers in the complaint, *see* Compl. ¶ 44, the agency failed to produce written discovery, expert reports and testimony, or arguments, demonstratives, and document discovery from the Kroger/Albertsons merger litigation. This is not a trivial oversight. The FTC made a series of allegations in that case that are plainly inconsistent with its contention that grocery stores compete with small liquor stores in this one. For example, the FTC previously argued that consumers "would not shift enough of their purchases to non-supermarket retail formats to make a hypothetical monopolist of supermarkets unlikely to undertake" price increases. *See Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-cv-00347-AN, Dkt. No. 1 ¶ 48 (D. Or. 2024). The FTC likewise argued that because of their distinct characteristics, "supermarkets fill customer needs that other formats do not," and that "[c]ustomers looking for a one-stop shop at a neighborhood store can meet those needs at a supermarket," while "[o]ther retail formats service different customer need states or missions." *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-cv-00347-AN, Dkt. No. 490 at 50-51 (D. Or. 2024). Despite listing attorneys that appeared on the pleadings in Kroger/Albertsons as custodians, the FTC does not appear to have produced any discovery from that case. SGWS promptly raised this issue following the end of the shutdown and has not received confirmation on whether—or when—such discovery will be produced.

- **Third-Party Discovery**: In addition to the above, the sheer scope of third-party discovery that must be undertaken is massive. Based on the FTC's paired-transaction analysis, this case covers tens of millions of transactions and thousands of products and retailers. In the parties' Rule 26(f) report, the FTC requested a total of 500 deposition hours per party, which translates to 71 full-length depositions per side. *See* Dkt. 77 at 24. SGWS requested—in the event discovery was not limited to the states referenced in the complaint—

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS

125 depositions per side. *Id.* at 26. Thus, if all available time is used, the parties estimate a minimum of 142 to 250 depositions. There is not adequate time in the FTC's proposed schedule for that sort of discovery. The FTC's schedule allows approximately 146 business days between the date of this filing and the end of fact discovery, excluding holidays and weekends. That means the parties would need to take about ***one deposition per day*** (under the agency's anticipated deposition limit) if they used all 7 hours available per deposition—an impractical estimate given that many depositions may be shorter, the other discovery that is needed, and the reality of third-party scheduling. If the parties use less than the full hours, it is likely that depositions will have to be double tracked for much of the discovery period. Given the scope of third-party document discovery and depositions that will be needed, SGWS's scheduling proposal is eminently reasonable.

- **Government Shutdown**: All of these issues were exacerbated and magnified by the month-and-a-half long government shutdown. Although not the fault of the agency, the shutdown prevented SGWS from undertaking third-party discovery after the FTC disclosed the over 17 million transactions it alleges were unlawful; it also stopped SGWS from moving forward with the Rule 30(b)(6) deposition of the agency, which is designed to understand the basis of the complaint.

- **Expert Disclosure**: SGWS also objects to the FTC's inclusion of a date for parties to identify expert witnesses and topics—a disclosure not required by the Federal Rules of Civil Procedure or this Court's scheduling requirements or prior order. Given the parties' proposals—which include initial reports, rebuttal reports, and reply reports—there is no need for an additional pre-Rule 26 expert disclosure. Nor is the FTC's discussion of its Federal Acquisition Regulation process persuasive. To the extent it takes more time for the agency to conduct a "multi-week contract solicitation process" to identify and engage experts on subject matters that the agency may not have fully anticipated, that warrants a *longer* schedule, not an additional disclosure burden on SGWS that has no basis in law and that would primarily work to the agency's advantage.

In sum, there is no reason to believe the FTC's proposal is achievable in light of the apparent lack of concrete findings from the investigation phase; the pace at which the FTC identified SGWS custodians—despite having conducted a two-year investigation; the FTC's prolonged delay in identifying purportedly discriminatory transactions; the FTC's default and delay in producing a Rule 30(b)(6) witness; and the depth and breadth of impending third-party discovery. If anything, the FTC's proposal

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS
13

underscores that it intends to try this case on the back of legal fictions and presumptions, not the facts. That is inappropriate for any litigant in any case, but is especially improper here, where a federal agency seeking to apply a long-dormant antitrust statute in a manner likely to raise consumer prices. A longer schedule is needed to ensure that SGWS has an appropriate amount of time to test the agency's allegations that certain retailers were actually competition and were sold identical products at the same time; it is also needed for SGWS to meaningfully engage in third-party discovery on its affirmative defenses.

Dated: November 20, 2025    Respectfully submitted,

/s/ Christina J. Brown
Christina J. Brown (S.B. # 242130)
cbrown5@ftc.gov
Dana F. Abrahamsen *(pro hac vice)*
dabrahamsen@ftc.gov
Daniel R. Blauser *(pro hac vice)*
dblauser@ftc.gov
Kathleen M. Clair *pro hac vice)*
kclair@ftc.gov
Joseph M. Conrad *(pro hac vice)*
jconrad2@ftc.gov
Stephanie A. Funk *(pro hac vice)*
sfunk@ftc.gov
Geoffrey M. Green *(pro hac vice)*
ggreen@ftc.gov
Jordan T. Klimek *(pro hac vice)*
jklimek@ftc.gov
Patricia M. McDermott *(pro hac vice)*
pmcdermott@ftc.gov
Karen A. Mills *(pro hac vice)*
kmills@ftc.gov
Ross E. Steinberg *(pro hac vice)*
rsteinberg@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS
14

|   |   |
|---|---|
| 1 | John D. Jacobs (S.B. # 134154) |
| 2 | Local Counsel |
|   | jjacobs@ftc.gov |
| 3 | FEDERAL TRADE COMMISSION |
|   | 10990 Wilshire Blvd., Ste. 400 |
| 4 | Los Angeles, CA 90024 |
| 5 | Tel: (310) 824-4300 |

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Tammy A. Tsoumas
KIRKLAND & ELLIS LLP
Tammy A. Tsoumas (S.B. # 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Tel.: (310) 552-4200

Craig S. Primis, P.C. *(pro hac vice)*
cprimis@kirkland.com
Matthew S. Owen, P.C. *(pro hac vice)*
matt.owen@kirkland.com
T.J. McCarrick *(pro hac vice)*
tj.mccarrick@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Tel.: (202) 389-5000

Dan Zach *(pro hac vice)*
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

/s/ Christina J. Brown
Christina J. Brown

JOINT STATUS REPORT AND PROPOSED AMENDED SCHEDULING ORDERS
15

# CERTIFICATE OF SERVICE

I certify that on November 20, 2025, a copy of the foregoing Joint Status Report and Proposed Amended Scheduling Order was served electronically through the Court's electronic filing system upon all parties appearing on the Court's ECF service list.

Dated: November 20, 2025

/s/ Christina J. Brown
Christina J. Brown (S.B. # 242130)
cbrown5@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

*Attorney for Plaintiff*
*Federal Trade Commission*