1  **KIRKLAND & ELLIS LLP**
   Tammy A. Tsoumas (SBN 250487)
2  tammy.tsoumas@kirkland.com
3  2049 Century Park East, Ste 3700
   Los Angeles, CA 90067
4  Telephone: 310-552-4200

5  *Additional Counsel Listed on Signature Block*
6
7  *Attorneys for Defendant Southern*
   *Glazer's Wine and Spirits, LLC*
8

9          **UNITED STATES DISTRICT COURT**
10         **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  FEDERAL TRADE COMMISSION, | **Case No. 8:24-cv-02684-FWS-ADS** |
| 13         Plaintiff, | **DEFENDANT SOUTHERN** |
| 14         v. | **GLAZER'S WINE AND SPIRITS,** |
| | **LLC'S AND PLAINTIFF** |
| 15 | **FEDERAL TRADE COMMISSION** |
| 16  SOUTHERN GLAZER'S WINE AND | **JOINT STIPULATION RE:** |
|     SPIRITS, LLC, | **SGWS'S MOTION TO COMPEL** |
| 17 | **DISCOVERY** |
|         Defendant. | |
| 18 | **Discovery Document: Referred to** |
| 19 | **Magistrate Judge Autumn D. Spaeth** |
| 20 | |
| 21 | Hearing Date: Feb. 25, 2026 |
| | Time: 10:00 AM |
| 22 | Courtroom: 6B |
| 23 | Judge: Hon. Autumn D. Spaeth |
| 24 | Fact Discovery Cutoff: Sept. 24, 2026 |
| 25 | Pretrial Conference: Sept. 23, 2027 |
| | Trial Date: Oct. 19, 2027 |

26
27
28

JOINT STIPULATION RE SGWS'S MOTION TO COMPEL DISCOVERY

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

    A.    SGWS's Introductory Statement.............................................................. 1

    B.    FTC's Introductory Statement ................................................................. 4

II.    THE PARTIES' CONTENTIONS AND AUTHORITIES ................................. 8

    A.    SGWS's Contentions and Authorities ..................................................... 8

        1. The Parties' Dispute......................................................................... 8

        2. Legal Standard ............................................................................... 11

        3. The FTC Submissions SGWS Seeks from *Kroger* Directly Bear on Core Factual Disputes in this Case. .............................................. 12

        4. SGWS's Discovery Requests Are Not Unduly Burdensome. .......... 24

    B.    The FTC's Contentions and Authorities ................................................ 32

        1. Legal Standard ............................................................................... 33

        2. Materials from the *Kroger* Merger Litigation Are Not Relevant to SGWS's Illegal Price Discrimination at Issue in this Case .......... 34

        3. Production of the Requested *Kroger* Litigation Materials Implicates Sensitive Third-Party Information and Imposes Unjustified Burdens Disproportionate to any *De Minimis* Benefit .................................. 38

        4. Compelling Production of Cloned Third-Party Discovery Materials from an Unrelated Prior Matter Risks Chilling Future Cooperation in FTC Investigations and Litigation .................................................. 41

III.    SPECIFIC REQUESTS AT ISSUE ................................................................. 42

    A.    *REQUEST FOR PRODUCTION NO. 1*................................................ 42

    B.    *REQUEST FOR PRODUCTION NO. 9*................................................ 44

    C.    *REQUEST FOR PRODUCTION NO. 20*.............................................. 46

    D.    *REQUEST FOR PRODUCTION NO. 21*.............................................. 48

IV.    CONCLUSION................................................................................................. 50

1

2

3

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Southern Glazer's Wine and Spirits, LLC ("SGWS") and Plaintiff Federal Trade Commission ("FTC") submit the following:

4

5

6

7

8

9

10

11

12

13

14

15

16

On May 15, 2025, SGWS served its First Set of Requests for Production on the FTC ("RFPs"), including RFP Nos. 1, 9, 20, and 21.  On June 16, 2025, the FTC served its Responses and Objections to the Requests ("R&Os"), including General Objection 7. SGWS served the FTC on November 13, 2025 with a letter seeking materials from the *FTC v. Kroger Co.*, No. 3:24-CV-00347-AN, 2024 WL 5053016 (D. Or. Dec. 10, 2024) litigation, pursuant to RFP Nos. 1, 9, 20, and 21.  In compliance with Local Rule 37-1, the parties met and conferred in good faith on December 11 and December 17, 2025 but were unable to reach agreement.  SGWS therefore brings this motion to compel, which the FTC opposes.  SGWS seeks to compel the production of the following materials from the *Kroger* litigation: (i) the agency's expert reports authored by Dr. Nicholas Hill; (ii) any deposition transcripts involving Dr. Hill; and (iii) the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill.

17 **I.    INTRODUCTION**

18 **A.    SGWS's Introductory Statement**

19

20

21

22

23

24

25

26

27

In this nationwide antitrust case challenging millions of transactions, SGWS moves to compel the FTC to produce a handful of highly relevant documents that speak directly to core disputes in this matter.  The FTC alleges that SGWS—a wholesale distributor of wine and spirits—violated the Robinson-Patman Act by discriminating in the prices that SGWS charged to allegedly "favored" chain retailers and allegedly "disfavored" independent retailers.  As the agency has recognized, the FTC must establish that SGWS discriminated in price between retailers who were in "actual competition" "for the same customer." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006); Ex. 3 (Pls. Opp. to Defs. Mot. to Dismiss, *FTC v.*

28

*Southern Glazer's Wine and Spirits, LLC*, Dkt. No. 63-1) at 11 ("To establish secondary-line competitive injury, plaintiff must allege first that favored and disfavored purchasers were in 'actual competition.'").   Although the agency's positions are opaque and constantly shifting, the FTC has identified over 17 million "paired transactions" reflecting sales of wine and spirits from SGWS to pairs of allegedly favored and disfavored retailers that the FTC claims compete for the same customers.  It does not take much to see that they largely do not.  Sometimes this is facially obvious, such as where the agency pairs a Publix against a nightclub, a Total Wine against a Bed Bath & Beyond, and a Costco against the Holiday Inn Express and an adult-oriented "fantasy hotel."  In other instances, the FTC alleges that supermarkets and club stores compete against convenience stores or premium, natural, and organic stores, even though these stores differ greatly in terms of consumer experience, product selection, and the consumer needs that they fulfill.  One of the core disputes in this case thus will be whether the allegedly favored and disfavored retailers identified by the FTC are in fact in "actual competition" "for the same customer."  *See Volvo*, 546 U.S. at 177.

The documents SGWS seeks speak directly to that dispute.  SGWS seeks a small number of specific documents from the FTC's recent challenge to the merger of supermarket chains Kroger and Albertsons.  Public information from the *Kroger* docket demonstrates the obvious relevance of these documents.  In *Kroger*, the FTC presented fact testimony, argument, and expert economic analyses regarding consumer behavior that squarely addressed whether various retail formats like supermarkets (*e.g.*, Kroger, Albertsons), club stores (*e.g.*, Costco, Sam's Club), premium, natural, and organic stores (e.g., Sprouts Farmers Market), and convenience stores actually compete for sales to the same consumers, including sales of wines and spirits.  Much of this factual analysis involved the very same retailers the FTC is now including in its paired transactions in this case, but to very different effect.  Using that evidence, the FTC in *Kroger* achieved what it called a "historic win" and obtained an injunction that blocked the $24.6 billion

1    merger. *See* Ex. 4 (FTC Kroger, Albertsons Press Statement). That "major victory"

2    came just two days before the FTC filed its complaint in this case. *Id.*

3        Now, having blocked a major merger using evidence that various retailers ***do not***

4    compete, the FTC seeks to sweep its prior assertions under the rug and argues that those

5    very same retailers ***do*** compete in this case. It appears the FTC may argue that retailers

6    should be presumed to compete with one another simply because each sells wine and

7    spirits in some geographic proximity. *See, e.g.*, Ex. 3 at 15 (arguing that "two customers

8    are presumed to compete" under certain circumstances); Ex. 5 (Pls. Supp. Resp. & Objs.

9    to Interrogatories 1, 3, 5, 8, and 11) at 24 (similar). The factual material SGWS seeks

10    from *Kroger*, as well as the FTC's own arguments, clearly show that competition

11    between specific retailers cannot be assumed—and in any case is rebutted.

12        For example, the FTC contends here that Safeway (Albertsons) competes with

13    Sprouts Farmers Market for the same end consumer. But a year ago, the FTC argued the

14    opposite in *Kroger*, claiming that "[p]remium natural and organic stores ('PNOS') (*e.g.*,

15    Whole Foods, Sprouts Farmers Market) focus on a set of customers that is distinct from

16    supermarket customers." *See* Ex. 6, Compl. ¶ 48, *Fed. Trade Comm'n v. Kroger Co.*,

17    No. 3:24-CV-00347-AN (D. Or.) (filed Feb. 26, 2024), Dkt. 1; Ex. 7, FTC's Post-Hearing

18    Brief, Proposed Findings of Fact, and Proposed Conclusions of Law, *Fed. Trade Comm'n*

19    *v. Kroger Co.*, No. 3:24-CV-00347-AN (D. Or.) (filed Oct. 7, 2024), Dkt. 490, FOF ¶ 21

20    ("Natural and organic stores such as Sprouts serve a distinct set of core customers . . . .").

21        The FTC objects that this is irrelevant because *Kroger* applied a different antitrust

22    law and did not focus specifically on wine and spirits. But the legal differences are far

23    smaller than the FTC suggests (both cases involve sections of the Clayton Act and the

24    same section of the FTC Act), and they do not matter because what SGWS seeks is

25    ***factual*** analysis based on consumer behavior and market realities, not on the

26    interpretation of any antitrust law. The FTC can try to argue that the markets for wine

27    and spirits have unique characteristics that undermine the agency's analyses from

28

*Kroger*, but that distinction at most goes to the weight of the evidence, not relevance—especially since much of the public evidence from *Kroger* expressly categorizes liquor stores as a unique retail format or does not limit itself to analyzing the sale of non-alcoholic grocery items.

Nor would producing this handful of documents pose an undue burden. In an effort to avoid this dispute, SGWS narrowed its request to seek a discrete set of documents that the agency can easily pull off the shelf. Nevertheless, the FTC persisted in its vague allusions to unquantified burdens. Whatever minimal burden this production would impose is dwarfed by the vast scope of the case the FTC chose to bring and by the time, effort, and expense SGWS has already expended in producing over 8.5 million documents (totaling over 33.4 million pages) in this litigation. Nor does the agency's concern about any third-party confidential information quoted or summarized in the documents warrant the agency's recalcitrance. The *Kroger* protective order specifically contemplates that materials may be produced in discovery in other matters. Moreover, much of the third-party information in *Kroger* is likely similar to information the FTC has sought via subpoenas to third parties here, and all of it would be adequately protected by this Court's own protective order. Because the requested documents are relevant and not unduly burdensome to produce, the Court should order the FTC to produce them.

## B.    FTC's Introductory Statement

This enforcement action challenges SGWS's pervasive course of unlawful price discrimination—charging small, independent retailers significantly higher prices for wine and spirits than it charges nearby large chain customers—in violation of Section 2(a) of the Robinson-Patman Act ("RPA"). Congress enacted the RPA to level the playing field for small businesses and to prevent powerful buyers from receiving preferential prices that could push community retailers out of the market. As the legislative history shows, Congress sought to prevent a marketplace dominated by a few "Goliath" chains at the expense of small, independent businesses. (*See* Compl. ¶ 6, n.1

(citing Remarks of Rep. Wright Patman introducing H.R. No. 8442, 79 Cong. Rec. 9077 (June 11, 1935)); Remarks of Rep. Sumners, Debate in the House of Representatives on H.R. No. 21 8442, 80 Cong. Rec. 8109 (May 27, 1936)).

Despite the entirely distinct statutory framework and factual issues in this case, SGWS now seeks to compel production of discovery, expert materials, and trial exhibits from an unrelated merger action brought by the FTC in 2024 to block Kroger Company's $24.6 billion acquisition of Albertsons Companies—the two largest supermarket companies and the two largest employers of union grocery store workers in the United States—under Section 7 of the Clayton Act. *FTC v. Kroger Co.*, No. 3:24-cv-00347-AN, 2024 WL 5053016 (D. Or., Dec. 10, 2024).

In its June 16, 2025 Responses and Objections to SGWS's First Set of Requests for Production, the FTC expressly objected to any request seeking documents from other FTC investigations as irrelevant, overbroad, and unduly burdensome. *See* Ex. 9, FTC's R&Os to SGWS's First Set of RFPs, General Objection 7. The FTC made clear that its production would be limited to documents obtained during the pre-Complaint investigation of this case and materials produced by third parties in this litigation. Consistent with that position, the FTC has already produced more than 1.2 million documents and many gigabytes of data—comprising all nonprivileged investigative materials and all third-party productions received in this litigation, including extensive documents regarding competition in the retail sale of wine and spirits. *See* Clair Decl. ¶ 2. The FTC's productions include all materials produced in response to civil investigative demands and subpoenas issued to Kroger, Albertsons, and thirteen other chain retailers (SGWS's largest off-premise retail customers), requiring them to produce all documents relating to competition in the sale of SGWS-distributed wine and spirits, including loyalty card data and documents reflecting competitive positions, strategies, and identification of competitors. *See* Clair Decl. ¶ 2.

Notwithstanding this trove of directly relevant information, on November 13, 2025—after five months of negotiations, four conferences, and thirteen letters—SGWS raised for the first time a demand for materials from the unrelated *Kroger* merger challenge. In this letter, SGWS sought "unredacted copies of the FTC's expert reports and deposition transcripts, discovery responses, pleadings and attached exhibits, and trial presentations and demonstratives," as well as "***all materials provided by the parties and third parties in the Kroger/Albertsons litigation***." (Ex. 11, Nov. 13, 2025 McCarrick Ltr. at 4 (emphasis added).)

Although SGWS's present motion focuses on Dr. Nicholas Hill's expert reports, deposition testimony, and the FTC's trial demonstratives, SGWS has repeatedly acknowledged that this request is only the first cast in its broader fishing expedition to obtain wholesale *Kroger* discovery. During the parties' initial conference, SGWS proposed beginning with expert and demonstrative materials, then using those materials as a springboard to demand additional *Kroger* litigation documents—including third-party data and productions. To date, SGWS has refused to confirm that it will forgo a later bid for full and improper "clone" discovery of the *Kroger* record.

This motion is therefore not a targeted request for discrete, relevant materials. It is an attempt to establish a beachhead for sweeping, irrelevant, and burdensome discovery that would embroil the FTC, this Court, and dozens of third parties in prolonged disputes over millions of documents. The Court should reject this improper effort at its outset.

SGWS's motion should be denied for three reasons: (1) the requested materials are irrelevant, (2) their production would impose undue burden disproportionate to the needs of the case, and (3) ordering disclosure risks chilling critical third-party cooperation in future FTC investigations and litigations.

First, courts permit discovery from prior litigations only where there is "significant factual and legal overlap." *Tristan v. Bank of Am., N.A.*, No. 8:22-cv-01183 DOC (ADS), 2024 WL 5412486, at *4 (C.D. Cal., June 10, 2024) (quoting *Strategic Partners, Inc. v.*

*FIGS, Inc.*, No. 19-2286-GW (KSx), 2020 WL 4354172, at *9 (C.D. Cal., May 18, 2020) (collecting cases and denying motion to compel production of depositions, trial transcripts, declarations, and verified discovery responses from an unrelated lawsuit)). The *Kroger* merger litigation involved different parties, different conduct, different statutory provisions and legal standards, and different products. That case evaluated supermarket competition under Clayton Act merger principles across the full bundle of all grocery and household items sold in a supermarket; it did not address price discrimination, wine and spirits competition, or the RPA standard for evaluating actual competition between purchasers. Indeed, across the roughly 550 pages of requested expert reports, deposition transcripts, and trial demonstratives at issue, the words "alcohol" and "wine" appear just once each; "spirits" and "liquor" are never mentioned. SGWS's request thus seeks to leverage an irrelevant merger record to create confusion and to manufacture a false narrative of inconsistency, rather than obtain evidence probative of any claim or defense here.

Second, producing the requested materials would impose substantial burden with little to no corresponding benefit. The expert reports, testimony, and demonstratives SGWS identifies contain confidential information belonging to 27 companies who are not parties to this lawsuit. Complying would require the FTC to navigate two separate protective orders, to coordinate with each affected third party, to create 27 bespoke redacted versions of the hundreds of pages of expert reports and deposition transcripts to permit third parties to evaluate the requested disclosure of their materials, and to conduct granular confidentiality reviews. At least 13 third parties have already conveyed to the FTC their objections to the potential production of the *Kroger* litigation materials in this matter and may seek protection in this Court or in the District of Oregon. All of this will require the expenditure of significant agency and third-party resources for materials that have little to no bearing on the issues to be tried. *See* Clair Decl. ¶¶ 3-7.

Third, granting SGWS's motion would undermine the FTC's ability to secure cooperation from third parties in future investigations and litigations. The agency regularly depends on the production of highly sensitive business information from industry participants. If companies fear that their confidential materials may later be disclosed in unrelated litigation for years into the future, they may be less cooperative in providing the information the FTC needs to enforce the antitrust laws. This risk is concrete and substantial, as demonstrated by the numerous and vociferous third-party objections to the production of the *Kroger* materials in this case conveyed to the FTC to date. *See* Clair Decl. ¶ 7(b) & Clair Decl. Exs. A-K.

Because the *Kroger* materials are irrelevant, because producing them would impose unjustified burdens on both the FTC and numerous third parties, and because such disclosure risks chilling future cooperation essential to the agency's mission, SGWS's motion to compel should be denied.

## II.    THE PARTIES' CONTENTIONS AND AUTHORITIES

### A.    SGWS's Contentions and Authorities

The FTC submissions SGWS seeks from *Kroger* appear to speak directly to core issues in this case.  Based on publicly available filings from the *Kroger* docket, this handful of documents appears to analyze and discuss competition between various retailers and retail store formats for customers—one of the primary disputes between the parties in this case.  Because these documents are highly relevant and can be produced with minimal burden, the Court should order the FTC to produce them.

#### 1.  The Parties' Dispute

The parties are at an impasse regarding the FTC's objections to SGWS's request for production of a discrete set of documents from the FTC's recent lawsuit that sought—and on December 10, 2024 obtained—an injunction blocking the merger of supermarket chains Kroger and Albertsons. *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN, 2024 WL 5053016 (D. Or. Dec. 10, 2024).

On May 15, 2025, six months after the FTC's victory in *Kroger*, SGWS served its first set of Requests for Production ("RFPs") on the FTC, seeking, among other things, all documents "relating in any way to the factual allegations referenced in the complaint," all documents "relating in any way to" "changes in customer preferences," "[a]ll documents relating in any way to competition between SGWS's retail customers in the sale of wine or spirits for off-premise consumption," and "[a]ll documents relating in any way to the geographic area in which customers compete for the sale of any wine or spirit involved in the allegedly unlaw[ful] price discrimination in the complaint, including the type of customers that retailers serve." Ex. 8 (SGWS's First Set of RFPs) at RFP Nos. 1, 9, 20-21. The FTC provided its responses and objections on June 16, 2025. Ex. 9 (FTC Objs. & Resps. to SGWS's First Set of RFPs).

Over two months later, the FTC identified the self-selected list of custodians it intended to use to identify relevant material to produce in this case. Ex. 10 (Aug. 20, 2025 D. Blauser Ltr.). The custodians the FTC selected included five attorneys who were on the pleadings in *Kroger*. *Id.* at 2-6. But the FTC did not include documents from *Kroger* in its productions in this case.[1]

On November 13, 2025, SGWS sent a letter to the FTC, explaining that the FTC's productions were deficient because "the FTC has failed to produce plainly relevant documents regarding competition between retailers—including retailers at issue in this case—from its recent lawsuit blocking the merger of The Kroger Company and Albertsons Companies, Inc." Ex 11 (Nov. 13, 2025 T.J. McCarrick Ltr.) at 1. As part of its request, SGWS identified a subset of priority documents for initial production,

---

[1]    During the parties' discussions, FTC counsel suggested that these individuals were selected as custodians because they had at one point had some unspecified connection to this matter. But *Kroger* went to trial during the FTC's investigation of SGWS, and the *Kroger* court's decision was published two days before the FTC filed its complaint in this case. *See* Ex. 4.

including "unredacted copies of the FTC's expert reports and deposition transcripts, discovery responses, pleadings and attached exhibits, and trial presentations and demonstratives." *Id.* at 4; Ex. 12 (Nov. 13, 2025 T.J. McCarrick Eml.).

SGWS followed up via email on Nov. 25, 2025, December 2, 2025, and December 8, 2025, asking the agency for its position and offering to meet and confer, including about "a list of low-hanging fruit documents" for initial production. Ex. 13 (Nov. 25, 2025 T.J. McCarrick Eml.); Ex. 14 (Dec. 2, 2025 T.J. McCarrick Eml.); Ex. 15 (Dec. 8, 2025 T.J. McCarrick Eml. 1).

On December 8, 2025, the FTC responded to SGWS's request. Ex. 16 (Dec. 8, 2025 D. Blauser Ltr.). The FTC did not dispute that the requested materials are responsive to SGWS's RFPs but objected that the material SGWS is seeking is irrelevant and that producing the material would pose an undue burden. The agency's letter did not address SGWS's subset of priority documents and merely objected that wholesale reproduction of all documents from *Kroger* was not warranted.

One hour later, SGWS responded via email to ask for the agency's written position on the priority documents and to again seek the agency's availability to meet and confer regarding SGWS's requests. Ex. 17 (Dec. 8, 2025 T.J. McCarrick Eml. 2). Specifically, SGWS had requested that the FTC produce "unredacted copies of the agency's expert report, transcripts of their expert's deposition, [and] trial demonstratives, including opening and closing presentations." Ex. 15; *see also* Ex. 18 (Dec. 9, 2025 T.J. McCarrick Eml.). The FTC's response, provided the following afternoon, did not address whether SGWS's request for a narrower set of documents impacted the agency's objections. Ex. 19 (Dec. 9, 2025 D. Blauser Eml.).

Despite discussions at subsequent meet-and-confers, the parties have been unable to resolve this dispute. SGWS proposed using the Court's informal discovery dispute resolution process to resolve this dispute, but the FTC declined. SGWS therefore brings this motion to compel.

Because the parties' dispute focuses on relevance and alleged burden, rather than on responsiveness, the parties here set forth their primary arguments on those issues. Nevertheless, in Section III below, the parties have reproduced the specific RFPs to which SGWS contends that the requested documents are responsive, followed by the FTC's original response to that RFP and a brief statement from each party.

## 2. Legal Standard

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 801 (C.D. Cal. 2016). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021) (citation and quotation marks omitted); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

When "the discovery sought 'appears relevant on its face,' the burden shifts to the objecting party to 'establish[] lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 10312432, at *10 (C.D. Cal. Nov. 5, 2021) (quoting *Krause v. Nev. Mut. Ins. Co.*, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014)). "The party opposing discovery is required to carry a heavy burden of showing why discovery should be denied" and must "clarify[], explain[] or support[] its objections." *Alves*, 339 F.R.D. at 559 (citation and quotation marks omitted). A party opposing discovery on the grounds of undue burden "must provide sufficient detail regarding the time, money, and procedures required to produce the requested documents." *RG Abrams*, 2021 WL 10312432 at *8 (citation and quotation marks omitted). "[T]his detail must come in the form of evidentiary

1    declarations supporting such objections." *Id.*

2    **3. The FTC Submissions SGWS Seeks from *Kroger* Directly Bear on**

3    **Core Factual Disputes in this Case.**

4    To sustain a Robinson-Patman Act claim, or tag-along FTC Act claim, the FTC

5    must show that SGWS unlawfully discriminated in price between competing retailers

6    and that this alleged discrimination resulted in injury to competition. *See Volvo*, 546 U.S.

7    at 176 (citing 15 U.S.C. § 13(a)). As the FTC has conceded, this requires the FTC to

8    show that the so-called "favored" and "disfavored" retailers actually compete, and that

9    SGWS unlawfully discriminated in price between them in contemporaneous transactions

10   involving the same products and the same material terms. *Id.* at 177 ("[a]bsent actual

11   competition with a favored" retailer, a plaintiff "cannot establish the competitive injury

12   required under the Act"); Ex. 3 at 11 ("To establish secondary-line competitive injury,

13   plaintiff must allege first that favored and disfavored purchasers were in 'actual

14   competition.'"). The documents SGWS seeks from *Kroger* are FTC submissions and

15   expert reports that directly address whether the supposedly favored and disfavored

16   retailers are in "actual competition" with one another "for the same customer," *id.*—and

17   that appear to contradict or undermine the positions the FTC is taking in this suit. These

18   materials are therefore highly relevant to the FTC's claims and SGWS's defenses.

19   The FTC has chosen to prosecute this Robinson-Patman Act case by pairing

20   transactions from two retailers—one favored and one disfavored—and pointing to

21   differences in SGWS's prices to the identified retailers. The FTC has alleged these

22   pairings in the form of a series of spreadsheets in which every row pairs an allegedly

23   favored transaction against an allegedly disfavored transaction. The FTC has now

24   produced 30 spreadsheets that combine to allege approximately 17.3 million pairs of

25

26

27

28

allegedly discriminatory transactions from 2018 through 2024.[2]  These paired transaction spreadsheets are the only submissions the FTC has provided that purport to specifically identify the supposedly unlawful conduct that the FTC is alleging, and the FTC has described them as a "set of instances of and transactions reflecting [SGWS's] prima facie price discrimination."  Ex. 20 (Pls. Resp. & Objs. to Def. First Set of Interrogatories) at 6-7; Ex. 5 at 10; Ex. 21 (Sept. 30, 2025 J. Klimek Ltr.) at 1.  Significantly, in order for any of these pairs of transactions to be actionable, the paired sales must have taken place between SGWS and two different retailers who were in "actual competition" for the same sales to the same customers.  *See Volvo*, 546 U.S. at 177.

SGWS intends to show that, for the vast majority of the FTC's paired transactions, the paired retailers do not actually compete.  In some instances, these mispairings are obvious.  For example, by pairing transactions, the FTC's spreadsheets claim that, when it comes to the sale of wine and spirits, Binny's (a chain liquor store) competes with Bed Bath & Beyond, a nightclub competes with a Publix, and Costco competes with multiple different hotels.  *See* Ex. 22 (Dec. 22, 2025 Green Dep. Tr.) at 240:14-241:15 252:15-254:8, 263:8-264:10.  In one of the few substantive answers the FTC's corporate representative provided in the recent Rule 30(b)(6) deposition of the agency, the FTC confirmed it is alleging that these retailers likely compete.  *Id.* at 119:6-121:21, 240:14-241:15, 252:15-254:8 263:8-264:10.  Even setting aside particularly egregious examples like these, the FTC's spreadsheets purport to pair many retailers that do not actually

---

[2]    The FTC submitted several iterations of these spreadsheets and did not identify ***any*** paired transactions for the vast majority of the at-issue states until it produced the latest versions of its spreadsheets on September 30, 2025.  This months-long failure to identify or disclose purportedly unlawful transactions is difficult to square FTC's factual representation in the complaint that SGWS's "acts of price discrimination involved substantial price differences between competing retailers … in ***millions*** of transactions over multiple months and years" in "many states from at least January 2018 through the present."  Ex. 23 (Compl., Dkt. No. 57) at ¶ 75 (emphasis added).

JOINT STIPULATION RE SGWS'S MOTION TO COMPEL DISCOVERY

13

compete because they provide very different consumer experiences, offer different products or services, and meet different consumer needs. In other words, they attract different customers.

Significantly, less than two years ago, the FTC in *Kroger* elicited testimony, put on evidence, and submitted expert reports that extensively analyzed those issues for several retailers that make up a significant portion of the FTC's alleged paired transactions in this case. In *Kroger*, the FTC challenged—and ultimately succeeded in blocking—a $24.6 billion merger between Kroger and Albertsons, two supermarket chains. The FTC touted this ruling as both a "historic win" and a "major victory." *See* Ex. 4. To support its request for injunctive relief in that case, the FTC submitted arguments, fact testimony, and expert economic analysis regarding which retailers actually compete with supermarkets like Kroger and Albertsons, and which retailers instead operate in different "channels" of commerce because they target different consumers by employing different product selections, offering different services, and meeting different customer needs.

For example, the FTC alleged in the *Kroger* complaint that "[p]remium natural and organic stores ('PNOS') (*e.g.*, Whole Foods, Sprouts Farmers Market) focus on a set of customers that is distinct from supermarket customers." Ex. 6, *Kroger* Compl. ¶ 48. To substantiate that allegation, the FTC at trial elicited testimony from the Chief Merchandising Officer of Sprouts Farmers Market that Sprouts aims to provide a different experience than a traditional supermarket, such as Kroger or Albertsons, because Sprouts functions primarily as a "secondary shop" that offers its target customers—"health enthusiasts" and "selective shoppers"—a "treasure hunt" experience. Ex. 24, *Kroger*, Aug. 27, 2024 (AM Session) Tr. at 374:13-375:19, Dkt. No. 528. The FTC also represented in its proposed findings of fact and conclusions of law that "[n]atural and organic stores such as Sprouts serve a distinct set of core customers" from supermarkets and "focus their product assortment on organic and fresh products to

attract these customers."  Ex. 7, *Kroger*, FOF ¶ 21; *see also id.* (describing natural and organic stores as "offer[ing] a 'secondary' or fill-in shop for healthier items").

Similarly, the FTC also alleged in the *Kroger* complaint that "non-supermarket retail offerings provide a very differentiated customer experience," providing the example of "[c]lub stores (e.g., Costco, Sam's Club)," which "require membership fees, typically offer larger package sizes, [] frequently rotate their product assortments," "have more square footage," and "have fewer store locations than supermarkets, requiring consumers to travel longer distances."  Ex. 6, *Kroger* Compl. ¶ 48.  At trial, the FTC emphasized that "club stores, such as Sam's Club or Costco, also have a fundamentally different experience" because "they require a membership, so you have to pay to go in the store" and "often provide purchases in bulk."  Ex. 25, *Kroger*, Aug. 26, 2024 (AM Session) Tr. at 55:7-13, Dkt. No. 526.  Supermarkets, on the other hand, "offer a convenient one-stop shopping experience where customers can obtain substantially all of their . . . requirements in a single visit."  Ex. 7, *Kroger*, Post-Hearing Br. at 10-11.  "[W]hen a customer's need state requires a one-stop shopping experience, supermarkets are uniquely positioned to best fulfill that need."  *Id.*  Finally, the FTC asserted in its post-trial submission that "***the mere availability of a similar food item in various store formats does not mean that each of those store formats provides a comparable customer experience to, or is a reasonable substitute for, shopping at a supermarket.***"  *Id.* at 17 (emphasis added).

These representations contrast starkly with the positions the FTC is taking in this case.  To give just a few examples:

- The FTC argued in *Kroger* that Sprouts targets different customers than supermarkets like Kroger or Albertsons.  Now, the FTC has paired sales to Sprouts against sales to Costco and Safeway (which is owned by Albertsons).  Ex. 26 (FTC-PROD-200000002A - Highly Confidential - Outside Counsel Only) at rows 365376-365410.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- The FTC's expert economist in *Kroger* took the position that convenience stores operate in a different channel from other store formats like supermarkets or club stores. *See* Ex. 27, *Kroger*, Sept. 3, 2024 (PM Session) Tr. at 1445:1-25, Dkt. No. 536 (excluding convenience stores from the markets in which supermarkets compete). Now, the FTC has paired at least tens of thousands of transactions—if not hundreds of thousands—in which the supposedly disfavored retailer is a convenience store and the favored retailer is a supermarket or club store. As just one example, the FTC's spreadsheet for the state of Texas includes over 23,000 pairs of transactions in which the disfavored retailer is "Lakewood Exxon" in Dallas, TX (a gas station convenience store), including over 7,300 in which the favored retailer is a Kroger and over 10,000 in which the favored retailer is a Tom Thumb (an Albertsons-owned supermarket chain). Ex. 28 (FTC-PROD-200000004A - Highly Confidential - Outside Counsel Only); *see also* Ex. 22 at 213:11-19 (confirming the FTC is alleging that a convenience store called Fast & Cheaper Food and Gas competes with Total Wine for the sale of alcohol).

- The FTC argued in *Kroger*, that "[i]t makes no difference that individual goods available in supermarkets can be purchased at other retail stores," Ex. 30 *Kroger*, Dkt. No. 205 at 24, and claimed that "[c]ustomers' choice of which format to shop is determined by their mission or need state, i.e., what the customer seeks for that shopping trip, and customers typically do not seek out other formats for the same purposes as supermarkets," Ex. 7, *Kroger*, FOF ¶ 21. Now, the FTC is explicitly alleging that allegedly favored and disfavored retailers compete for sales to the same consumer without regard for ***any*** characteristics of the retailers beyond the fact that the two retailers are located within a distance of 3 or 5 miles from one another, that both retailers happened to sell the same wine or spirits product for off-premises consumption, and that both retailers purchased that product from SGWS within 90 or 180 days from one another. *See* Ex. 22 at 177:11-178:5.

- The FTC contended in its proposed findings of fact and conclusions of law in *Kroger* that if a customer were shopping for a banana, the "customer's decision about where to shop will depend on how many and what kind of bananas they want, what else is on their shopping list, and the in-store experience they are seeking (or can afford)." Ex. 7, *Kroger*, Post-Hearing Br. at 17-18. Now, the FTC has alleged that retailers likely compete without even considering the in-store experience offered by those retailers. Ex. 22 at 240:14-241:5, 105:13-106:19, 177:11-178:5 (confirming, among other things, that the FTC paired Publix—a supermarket—against "Truth Restaurant & Lounge"—a nightclub); *id.* at 241:6-15 ("Q. Other than knowing that they purchased liquor from Southern Glazer's, what do you know about Truth Restaurant & Lounge's business? A.

That they sell wine and spirits for off-premises consumption.  Q. Other than that, do you know anything about Truth Restaurant & Lounge's business? . . .  A. No, I don't.").

Because a key issue is whether the allegedly "favored" and "disfavored" retailers compete, the documents SGWS seeks from *Kroger* are highly relevant to—and contradict—a core component of the agency's prima facie case. *Volvo*, 546 U.S. at 177. The FTC itself recognized that testimony and documents regarding competition between retailers will be critical in this case.  The FTC contended in the parties' Joint Rule 26(f) Report that "[t]he FTC expects key documents with respect to the main issues in the case will include . . . Documents and data relating to competition among nearby chain and independent retailers . . . ." Ex. 29, (Joint Rule 26(f) Report, Dkt. No. 77) at 9-10.  Here, these materials are particularly important because the FTC appears to be taking the position that competition between different retailers in this case should simply be assumed.  *See, e.g.*, Ex. 3 at 15; Ex. 22 at 177:11-178:5.  The evidence and FTC submissions SGWS seeks from *Kroger* show such that such an assumption is unwarranted here and is, at a minimum, fair grounds for discovery into the actual facts regarding retailer competition.  *See* Ex. 3 at 15 (arguing that "[a]ctual competition is a fact-specific inquiry").

The examples provided above are drawn from assertions the FTC made in its public filings.  But the FTC's submissions in *Kroger* also included numerous other documents that are likely to contain relevant information but that SGWS cannot currently access, including unredacted copies of the agency's expert reports; unredacted copies of any deposition of the agency's experts; and unredacted copies of the agency's trial demonstratives, including opening and closing presentations.  Courts frequently compel the disclosure of expert reports from prior litigation where it is relevant to the current dispute.  *See, e.g.*, *Whitaker v. ELC Beauty LLC*, No. 8:19-cv-00407-DSF (JDEx), 2020 WL 5834293, at *3 (C.D. Cal. Aug. 20, 2020) ("Plaintiff shall, by September 14, 2020, produce all expert reports authored by Mr. Bishop that were prepared for Plaintiff's prior

lawsuits within the last two years involving allegations concerning clear transactional counter spaces or knee or toe clearances."); *Glob. Music Rts., LLC v. Radio Music License Comm., Inc.*, No. CV 16-9051 TJH (ASx), 2020 WL 7869542, at *2-3 (C.D. Cal. May 22, 2020) (granting a motion to compel a party's "own expert reports and expert depositions and testimony" from a prior case and explaining that these records "are relevant to the issues in this case, such as market definition, market share, and competition between performance rights organizations"); *ConsumerInfo.com, Inc. v. One Techs. LP*, No. CV 09-3783-VBF(MANx), 2010 WL 11507581, at *7 (C.D. Cal. May 4, 2010) (granting a motion to compel "deposition transcripts, documents filed under seal, witness statements and expert reports from any prior litigation" related to "the prior enforcement efforts or litigation involving the [] trademarks, copyrights and trade dress at issue in the present litigation" because the documents sought were "relevant"); *Acosta v. Nuzon Corp.*, No. 8:16-cv-00363-CJC (KESx), 2017 WL 8231048, at *5 (C.D. Cal. Oct. 18, 2017) (similar); *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 8:14-00001 DOC (ADSx), 2019 WL 8755114, at *1 (C.D. Cal. July 30, 2019) (similar).

SGWS cannot obtain those materials on its own, and the FTC has refused to produce them. Because the publicly available documents in *Kroger* make clear that these documents the FTC is withholding contain additional highly relevant information, the Court should compel the FTC to produce them.

The counterarguments the agency raised in the parties' correspondence and discussions do not support a different conclusion. ***First***, the FTC claims that the documents are irrelevant because the "challenge to Kroger's proposed acquisition of Albertsons was brought under Section 7 of the Clayton Act and Section 5 of the FTC Act," rather than the Robinson-Patman Act. Ex. 16 at 2. This argument is meritless. To begin with these legal differences are less significant than the agency suggests. Both cases alleged violations of Section 5 of the FTC Act, as well violations of different sections of the Clayton Act: *Kroger* was brought under Section 7, and this case has been

brought under the Robinson-Patman Act, which amended Section 2(a) of the Clayton Act. *See* Ex. 23 at ¶¶ 16, 87-88; Ex. 6, *Kroger* Compl. at ¶¶ 12, 119-121; *see also, e.g.*, *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 216 (1993) (explaining that § 2(a) of the Clayton Act was amended by the Robinson–Patman Act in 1936). The operative provisions also share substantially similar language. *Compare* 15 U.S.C § 18 ("where . . . the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly") *with* 15 U.S.C § 13(a) ("where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them"). The Supreme Court has instructed that the Robinson-Patman Act be interpreted "consistently with broader policies of the antitrust laws." *Volvo*, 546 U.S. at 181 (citation and quotation marks omitted).

**Second**, and more to the point, the documents SGWS is seeking are relevant regardless of any differences in the FTC's legal claims because the discovery SGWS seeks is ***factual*** analysis. Whether a Costco, a Safeway, and a convenience store compete for the same sale is a question of fact that depends on actual consumer behavior—not on the interpretation of the Clayton Act or any other statute. *See, e.g.*, *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) ("'The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers.'" (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992))); *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 223 F. Supp. 2d 718, 727 (D. Md. 2002) (explaining that the "[r]elevant market cannot be proved through generalizations about any given industry, but instead must be based on the economic and commercial realities of the particular market studied"); *Fed. Trade Comm'n v. Meta Platforms, Inc.*, 775 F. Supp. 3d 16, 36 (D.D.C. 2024) ("[T]he determination of the relevant product market must ultimately 'take into account the

economic and commercial realities' of the social-media landscape.") (citation omitted); *Ralph C. Wilson Indus., Inc. v. Am. Broad. Cos., Inc.*, 598 F. Supp. 694, 703 n.9 (N.D. Cal. 1984) ("It is the facts and realities of the situation that establish the actual market."), *aff'd* 794 F.2d 1359 (9th Cir. 1986). Indeed, in *Kroger*, the FTC expressly argued that its proposed market definitions reflected commercial realities for how retailers compete (or, just as importantly, do not compete). *See, e.g.*, Ex. 7, *Kroger*, Post-Hearing Br. at 16 (arguing about "the commercial realities in the grocery retail space"); Ex. 30, FTC Mem. In Support of P.I. Motion, *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN (D. Or.) (filed July 30, 2024), Dkt. No. 205 at 22 ("Congress prescribed a pragmatic, factual approach to market definition because the market cannot be measured in metes and bounds. In particular, commercial realities reflecting competition between the merging parties can inform market definition.") (internal quotations and citations omitted). The FTC's filings in this case have recognized this as well. *See* Ex. 3 at 15 ("Actual competition is a fact-specific inquiry that does not require precision at the pleading stage.").

The "commercial realities" regarding which retailers compete for the same consumers remain the same regardless of whatever law is ultimately at issue. For example, the publicly available information from *Kroger* shows that the FTC elicited factual testimony from retailer executives about the differing experiences offered by different retailer formats. *See* Ex. 24 at 374:13-375:19; Ex. 31, *Kroger*, Aug. 26, 2024 (PM Session) Tr. at 172:18-174:12, Dkt. No. 527. The agency's proposed findings of fact and conclusions of law included countless relevant assertions like the following:

- "Customers' choice of which format to shop is determined by their "mission" or "need state," i.e., what the customer seeks for that shopping trip, and customers typically do not seek out other formats for the same purposes as supermarkets";

- "[S]upermarkets fill customer needs that other formats do not";

- "[C]lub stores like Costco are 'structurally a different consumer proposition'"; and

- "Natural and organic stores such as Sprouts serve a distinct set of core customers and focus their product assortment on organic and fresh products to attract these customers."

Ex. 7, *Kroger*, FOF ¶¶ 16-21.  Facts such as these are highly relevant to determining whether specific alleged favored and disfavored retailers compete, as well as rebutting any arguments the FTC may make that competition among different types of retailers should be presumed.  Moreover, the FTC's expert whose report SGWS is seeking is an economist, not a lawyer.  Ex. 27 at 1434:16-1559:10 (FTC presenting expert testimony from Dr. Nicholas D. Hill); *see also* Ex. 32, Nicholas D. Hill, PhD Biography, Bates White Economic Consulting, available at https://www.bateswhite.com/professionals/nicholas-hill.  That expert's public testimony indicates that his analysis of competition between different retailers across geographic distances relied on, among other things, economic analysis of customer data that retailers had collected through loyalty-card programs—not on the interpretation of an antitrust law.  Ex. 27 at 1453:21-1460:17.  Significantly, the FTC recently disclosed that it has relied on the same type of data—customer loyalty-card data—in setting the geographic thresholds it used to generate its paired-transaction spreadsheets.  *See* Ex. 22 at 124:2--126:14.  Thus, even assuming there may be some differences between the ultimate legal questions presented in *Kroger* and this case, the factual analysis and evidence the FTC presented in that case about competition between retailers (or the lack thereof) is nevertheless highly relevant to this case.[3]

---

[3]      To the extent that the FTC argues that the *Kroger* materials are irrelevant because they arose from a separate FTC matter, SGWS also notes that the FTC itself negotiated for the inclusion of a provision in the protective order in this case that ensures that the agency is permitted to use information obtained from this case in subsequent lawsuits. *See* Ex. 34, Amended Stipulated Protective Order, Dkt. No. 83, at 19 ("Nothing in this Order shall prevent the FTC from disclosing and using Protected Material, subject to taking appropriate steps to preserve confidentiality, to the extent permitted by Sections (Continued…)

The FTC also claims that the analysis and evidence from *Kroger* is irrelevant because that case was not specifically focused on wine and spirits. Ex. 16 at 2. But publicly available filings show that the FTC's submissions in *Kroger* included evidence and arguments that specifically addressed liquor stores. For example, the FTC introduced data analytics from Nielsen showing that liquor stores operate as a separate channel and do not necessarily compete with other channels, such as supermarkets, club stores, and convenience stores. *See* Ex. 33 (PX6166, *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN (D. Or.) (filed July 30, 2024), Dkt. No. 205-2).

**nielsen**   ENVIRONICS ANALYTICS

**Retail Trade Channel and Sub-Channel Overview**

| Trade Channel | Description | Sub-Channel |
|---|---|---|
| Supermarket | Grocery store with +$2MM/year ACV (FM!) <br> • Includes all Supercenters <br> • Includes all chain and independent stores | • *Conventional Supermarket* <br> • *Limited Assortment* <br> • *Natural/Gourmet Foods* <br> • *Supercenter* <br> • *Cash & Carry Warehouse* <br> • *Military Commissary* |
| Superette | Grocery store with $1MM-$2MM/year ACV | • *Superette* |
| Convenience Store | Small format store selling high convenience items such as beverages, snacks and tobacco plus limited grocery items including milk and bread (NACS) <br> • May also sell gasoline and offer fast food services <br> • 500-1500 SKUs and 800-3000 Square Feet | • *Conventional* <br> • *Military* <br> • *Gas Station/Kiosk* |
| Drug | Health and beauty care (HBC) retailer or independent pharmacy. | • *Conventional* <br> • *Rx Only & Small Independent Drug* |
| Mass, General Merchandiser, and Dollar Stores | High-volume store with large selection of household goods, general merchandise and/or HBC, food and paper products. | • *Mass Merchandiser* <br> • *General Merchandiser* <br> • *Dollar Store* <br> • *Military Exchange* |
| Wholesale Club | Membership store offering a large variety of consumer products. | • *Conventional* |
| Liquor Store | Retailer catering to consumers whose primary destination is alcoholic beverages. | • *Super Store* <br> • *Conventional* <br> • *Military* <br> • *Wine Specialty* <br> • *Beer Specialty* |

In addition to this evidence specifically addressing liquor stores, the FTC's submissions in *Kroger* also contain numerous broader statements about competition

6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f) and 57b-2, or required by any other legal obligation imposed upon the FTC."). Moreover, to the extent that the FTC objects that it agreed to produce documents only from its investigative file for this case, that objection should be overruled—at least for the handful of off-the-shelf documents SGWS is requesting in this motion.

between retailers that are not limited to specific types of products.  The crux of the FTC's case in *Kroger* was its assertion that, even if various retail formats sell the same product, they do not compete for the same sales because each format targets a different consumer occasion.  As the FTC put it, "a customer's 'need state,' or what the customer is seeking to find on a particular shopping trip, determines the customer's reasonable substitutes in terms of choices of stores to visit."  Ex. 7, *Kroger*, Post-Hearing Br. at 2.  Thus, the FTC elicited witness testimony that membership stores like Costco and Sam's Club offer a shopping experience that is "not even close" to that of traditional supermarkets, Ex. 31 at 21:25-22:3, and the agency contended that "[n]atural and organic stores such as Sprouts serve a distinct set of core customers, and focus their product assortment on organic and fresh products to attract these customers."  Ex. 7, *Kroger*, FOF ¶ 21.  None of those statements is limited to groceries.

If the FTC wants to argue in this litigation that these distinctions between different retail formats do not impact consumer behavior when it comes to sales of wine and spirits, the FTC is free to do so.  But that does not mean that the agency's factual evidence and assertions from its recent victory in *Kroger* are irrelevant.  *See Glob. Music Rts.*, 2020 WL 7869542, at *2-3 (granting a motion to compel a party's "own expert reports and expert depositions and testimony" from a prior case explaining that these records "are relevant to the issues in this case, such as market definition, market share, and competition between performance rights organizations"); *ConsumerInfo.com*, 2010 WL 11507581, at *7 (granting a motion to compel "deposition transcripts, documents filed under seal, witness statements and expert reports from any prior litigation" related to "the prior enforcement efforts or litigation involving the [] trademarks, copyrights and trade dress at issue in the present litigation" because the documents sought are "relevant").  They plainly are relevant—especially since many of the assertions from *Kroger* discuss the very same specific retailers that the FTC has identified in paired transactions in this

case.  The FTC therefore should be compelled to produce the requested documents.[4]

### 4.  SGWS's Discovery Requests Are Not Unduly Burdensome.

Contrary to the FTC's position, producing the discrete set of documents SGWS requests from *Kroger* will not pose an undue burden.  The FTC objects that the probative value of the discovery SGWS seeks from *Kroger* is "vastly outweighed by the significant burden" that producing the documents would impose.  Ex. 16 at 3.  But the FTC has failed to identify any meaningful burden imposed by SGWS's request for a handful of specific documents.  SGWS understands the FTC to be objecting that it would burden the FTC to produce the documents and that production would also burden potential nonparties who may have an interest in protecting the confidentiality of information they produced.  Neither argument has merit.

### a)  Producing a Discrete Set of Documents from *Kroger* Would Not Unduly Burden the FTC.

Producing a handful of specific documents will not burden the FTC.  To begin with, the FTC objects that the agency is unsure whether it can produce the requested documents because they are subject to the protective order in *Kroger*.  But a protective order in one case does not categorically prevent the production of documents in another case—particularly where the documents are produced subject to a protective order in the second case.  *See, e.g.*, *Melea Ltd. v. Comm'r*, 118 T.C. 218, 221-26 & n.6 (2002) (collecting cases compelling production notwithstanding a protective order from a

---

[4]    From the parties' discussions, SGWS does not understand the FTC to be disputing that the materials SGWS is seeking are responsive to SGWS's RFPs.  In all events, they clearly are responsive:  For example, RFP 9 requested "[a]ll documents relating in any way to 'conditions affecting the market for or the marketability of the wine or spirits' from 2016 to the present, including inflationary effects, supply chain issues, regulatory changes, demand changes, and changes in customer preferences," and RFP 20 requested "[a]ll documents relating in any way to competition between SGWS's retail customers in the sale of wine or spirits for off-premise consumption."  Ex. 8.  These specific requests are reproduced in Section III below.

1    different proceeding); *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498-502 (D.

2    Md. 2000) (compelling protection notwithstanding a protective order from prior

3    litigation); *Abel v. Mylan, Inc.*, No. 09-CV-0650-CVE-PJC, 2010 WL 3910141, at *2-4

4    (N.D. Okla. Oct. 4, 2010) (same).[5]

5         Here, the *Kroger* protective order facially does not prevent production in other

6    litigation—in fact, it specifically contemplates that the parties to that case may be

7    required to produce information from that case in response to "a discovery request in any

8    investigation or in any other proceeding or matter."  Ex. 35, Stipulated Protective Order,

9    *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN (D. Or.) (filed Apr. 29,

10   2024), Dkt. No. 97, at ¶ 13.  Indeed, it indicates that the FTC may disclose confidential

11   information subject to the order, as long as it is disclosed pursuant to "any legal obligation

12   imposed"—which includes SGWS's discovery requests in this case and which would

13   certainly include an order from this Court compelling production.  *See id.* at ¶ 10

14   (". . . Plaintiffs may, subject to taking appropriate steps to preserve the confidentiality of

15   such material, use or disclose Confidential Material and Highly Confidential Material as

16   provided by the FTC's Rules of Practice; sections 6(f) and 21 of the Federal Trade

17   Commission Act; ***or any legal obligation imposed***.") (emphasis added).  The *Kroger*

18   protective order therefore does not prevent the FTC from producing the documents

19   responsive to SGWS's requests, and it certainly would not obstruct production if this

20   Court were to order the FTC to produce the documents.

21        Instead, all that the *Kroger* protective order requires the FTC to do in this instance

22   is provide notice to any other parties whose information it will be producing as part of

---

[5]    In the parties' discussions, the FTC has referenced (but not cited) cases in which production was compelled, but had not found cases in which the producing party agreed to produce the documents without a court order.  That is not surprising.  If the party in possession of the documents agreed to produce them without a court order, there would of course be no need for an order compelling production.

its productions.  Paragraph 13 of the order provides:

> If any Party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of Confidential Material or Highly Confidential Material submitted by another Party or nonparty, ***the recipient of the discovery request shall promptly notify the submitter of receipt of such request***. Unless a shorter time is mandated by an order of a court, such notification shall be in writing and be received by the submitter at least ten (10) business days before production, and shall include a copy of this Protective Order and a cover letter that will apprise the submitter of its rights hereunder. Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material or Highly Confidential Material, subject itself to any penalties for non-compliance with any such order, or to seek any relief from the Court. The recipient shall not oppose the submitter's efforts to challenge the disclosure of Confidential Material or Highly Confidential Material. In addition, nothing herein shall limit the applicability of Rule 4.11(e) of the Commission's Rules of Practice, 16 C.F.R. § 4.11(e), to discovery requests in another proceeding that are directed to the Commission.

*Id.* at ¶ 13 (emphasis added).  Because this notice requirement is an obligation that the FTC itself agreed to undertake as part of the *Kroger* stipulated protective order, the notice is not even cognizable as a burden.  Moreover, the order makes clear that, regardless of whether the FTC agrees to produce the documents voluntarily, the agency is ***already*** obligated to provide the notice—and should have provided it two months ago when SGWS explicitly requested these documents from *Kroger* in its November 13, 2025 letter. *Id.* ("If any Party receives a discovery request in any investigation or in any other proceeding or matter that may require the disclosure of Confidential Material or Highly Confidential Material submitted by another Party or nonparty, the recipient of the discovery request shall ***promptly*** notify the submitter of receipt of such request.")

(emphasis added).[6]  Since the FTC is already obligated to provide the notice, it would not pose an undue burden for the agency to provide a follow-up notice ten days before producing the documents.

In any event, providing notice would impose only the slightest burden:  It would essentially require the FTC to send an email before making its production.  In an effort to minimize even that negligible burden, SGWS offered to draft (and even serve) the notice for the FTC.  At the parties' December 17, 2025 meet and confer, SGWS also offered that SGWS would be willing to entertain limited redactions to the produced materials for irrelevant information—if the FTC proposed them—so that the FTC could reduce the number of third parties whose data it must produce and could avoid producing information that all agree would be of minimal, if any, relevance here (e.g., certain information that solely related to the alleged labor market in *Kroger*).  Twenty-seven days later, the FTC still has not responded with any sort of proposal.  The FTC also has not provided—despite SGWS's repeated requests—any concrete information about the agency's burden objection beyond suggesting that the number of third parties whose confidential information is implicated may number two- to three-dozen.  Nor has the agency disclosed how many of those third parties are retailers that the FTC has already put at issue in this case by issuing direct subpoenas to them, naming them in the agency's paired-transaction spreadsheets, or both.  The FTC therefore has not established that the notice requirement to which the agency agreed in *Kroger* would render SGWS's request for a handful of documents unduly burdensome.

The FTC suggested that producing documents may also require the FTC to meet with or call various other parties or non-parties from *Kroger* to discuss or alleviate concerns regarding the production of those other parties' confidential information.  But

---

[6]    At the parties' last meet and confer on December 17, 2025, FTC counsel confirmed the agency had not yet provided the required notice.

nothing requires the agency to undertake those efforts. The *Kroger* protective order merely requires the FTC to provide notice. Nothing within the order requires the FTC to further engage with any parties whose information it is producing. If any of those parties have concerns, the notice period provides them with time to reach out to SGWS or to seek relief from the Court. And in any event, even if the FTC were to undertake such discussions itself, the agency has provided no reason to believe that they would be unduly burdensome in light of the scale of this case and the highly probative nature of the materials SGWS is seeking.

Beyond the notice requirement, there is virtually no burden associated with the actual process of gathering and producing the requested documents is minimal. At this stage, all SGWS seeks is unredacted copies of the agency's expert reports; unredacted copies of any deposition of the agency's experts; and unredacted copies of the agency's trial demonstratives, including opening and closing presentations. SGWS's request is therefore effectively just a "go-get" request—and a very narrow one at that. That is by design. Although SGWS may well be entitled to a broader set of documents from the *Kroger* litigation, SGWS narrowed its request to initially seek only the enumerated documents in an effort to minimize any burden on the agency and to avoid the need to file this motion. Yet, somehow, that generated a ***new*** objection from the FTC—the agency then objected that SGWS has not promised that it would not later seek more documents from *Kroger*. This objection makes no sense. Nothing requires SGWS to identify every last document it may seek all at once. Such a rule would discourage parties from tailoring their discovery requests more narrowly to minimize any burdens— precisely the sort of effort SGWS attempted to undertake here. While SGWS understands that the FTC would prefer not to go through multiple rounds of related productions, the agency cannot have it both ways. Unless the FTC is willing to produce a broader subset of materials to begin with, it needs to accept the risk that narrower discovery requests such as this one may reveal a need for follow-up discovery. That is

1    not a burden; it is the natural consequence of the discovery process for any civil litigant.

2    The burden of producing the requested set of documents is especially insignificant

3    when viewed in light of the massive discovery SGWS has already produced in this

4    litigation and the extremely broad nature of the relief the FTC is itself seeking.  *See*

5    *generally* Ex. 29.  The FTC has asked for a nationwide injunction affecting millions of

6    transactions involving tens of thousands of products, has identified 17.3 million

7    transactions across 30 different states that the FTC alleges reflect prima facie price

8    discrimination, and has requested that each side in this case be permitted to take 500

9    hours of depositions.  *Id.* at 24-25.  SGWS's own productions in this litigation so far have

10   included over 8.5 million documents totaling over 33.4 million pages—including the

11   one-sided discovery SGWS produced to the agency during the course of the agency's

12   two-year pre-complaint investigation.  McCarrick Decl. at ¶ 3.  Any burden imposed by

13   producing a handful of documents from the *Kroger* case is therefore vanishingly small

14   compared to the scale of the case the FTC decided to bring and the weight of the burden

15   the FTC has imposed on SGWS.  *See Wilkinson v. F.B.I.*, 111 F.R.D. 432, 443 (C.D. Cal.

16   1986) (rejecting undue burden argument in part due to the "massive discovery and

17   document production" that occurred "on both sides").

18   Finally, the agency's failure to articulate and support its assertions of burden

19   provides an independent basis for overruling the agency's objections.  Although the FTC

20   objects broadly based on undue burden the agency does not provide any detail "regarding

21   the time, money, and procedures required to produce the requested documents."  *RG*

22   *Abrams*, 2021 WL 4974618, at *10.  Courts in this district consistently reject vague,

23   formulaic burden arguments like the agency's.  *ML Prods., Inc. v. Aster Graphics, Inc.*,

24   No. 5:23-CV-02094-MEMF (DTB), 2025 WL 2995106, at *19 (C.D. Cal. Oct. 8, 2025)

25   ("Defendant also fails to offer any factual basis for its burden objection, nor has it

26   explained why a request limited to its email domains used by its employees would be

27   unduly burdensome."); *United States ex. rel. Hernandez v. Scribe Am., LLC*, No. CV 21-

28

04324-CV (ASx), 2025 WL 3248963, at *2 (C.D. Cal. Sept. 19, 2025) ("Relators also assert that compliance with the requests would be unduly burdensome due to the need to log responsive documents and list oral communications on a privilege log.  However, Relators have not explained how each request is overbroad or burdensome or provided any evidence describing the nature of the burden.  The undue burden objection is overruled.") (internal citation omitted).

### b) Third-Party Confidentiality Concerns Do Not Pose an Undue Burden.

To the extent the FTC objects that producing the requested FTC submissions and expert analyses from *Kroger* would burden third parties whose information is included in the materials, this concern is not a basis for withholding production.[7]  Assuming third-party concerns constitute a cognizable burden for the FTC, the third parties would have no reason to be concerned because any sensitive information could be designated as "outside counsel only" under the existing protective order in this case.  *See* Ex. 34 at 4. To be clear, this motion does not seek the public dissemination of third-party information; SGWS merely seeks production of that information to SGWS, subject to the protective order in this case.  Courts generally hold that confidentiality concerns "are adequately protected by [protective orders], and are not sufficient to prevent production." *In re Heritage Bond Litig.*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004).  Federal courts in California have not hesitated to reject undue burden arguments where a protective order is in place.  *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C 05-00334 RMW, 2007 WL 9653194, at *6 (N.D. Cal. Sept.

---

[7]   It is far from clear that the FTC even has standing to object to discovery on the basis of the burden it may pose to third parties.  The interests of any impacted third parties are already accounted for by the notice provision in Paragraph 13 of the *Kroger* protective order, which provides those third parties with the opportunity to defend their own interests if they believe it is necessary to do so.

25, 2007) (rejecting an argument that discovery was unduly burdensome where an "outside counsel only" protective order was in place); *eDirect Publ'g, Inc. v. LiveCareer, Ltd.*, No. C 14-80125 WHA, 2014 WL 2527401, at *3 (N.D. Cal. June 4, 2014) ("Here, Individual Software has identified no concrete undue burden. In the underlying action, there is a protective order in place.").

Moreover, the FTC's concern about third-party disclosures rings especially hollow since the FTC's own discovery requests and proposed alternatives would require sensitive information from these third parties regardless. The FTC in this case already served subpoenas on both Kroger and Albertsons requesting similar confidential information, including detailed pricing information, sales data, customer data, and documents related to competition. *See* Ex. 36 (July 10, 2025 FTC Rule 45 Subpoena on Kroger); Ex. 37 (July 10, 2025 FTC Rule 45 Subpoena on Albertsons). And the FTC's proposed alternative to producing this information would not even address the agency's instead of the FTC just producing a handful of documents that already exist, SGWS should itself subpoena the nonparties whose data was used in Kroger, provide that data to SGWS's own set of expert economists, and direct those economists to redo the FTC's analyses from scratch. This would obviously be inefficient and needlessly duplicative. It also would not prevent discovery of third-party information—it would instead require SGWS to obtain a broader set of underlying data directly from the third parties. Third-party interests in confidentiality therefore do not justify the FTC's failure to produce these documents.

### c) Production by the FTC is the Most Efficient Method of Obtaining this Relevant Information.

SGWS's request is far more efficient than the alternative course of discovery that the FTC suggested SGWS should undertake to avoid the purported burdens to the agency. As noted above, the FTC suggested that, to avoid the burden of producing this subset of documents, SGWS must subpoena all of the relevant retailers itself, obtain their data,

provide that data to expert economists, and have those experts redo the FTC's expert's analysis from scratch.  Courts strongly disfavor this type of needless duplication.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-32 (9th Cir. 2003) ("This court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation.  Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery.") (citation omitted).  And in any event, even if SGWS could somehow recreate the FTC's analysis using separate third-party data (which is not clear), that would not permit SGWS to fully understand the positions the FTC took in *Kroger* or to identify any inconsistencies between those positions and the positions the FTC is taking in this case. *See Olympic Ref. Co. v. Carter*, 332 F.2d 260, 266 (9th Cir. 1964) ("It is immaterial that Olympic could possibly obtain the same information through the process of propounding its own interrogatories to Standard and General.  It is entitled to know what those companies and the alleged co-conspirators told the Government, and this requires examination of the documents which were exchanged, or exchanged and filed in that action.").

\*      \*      \*

For all the foregoing reasons, the Court should compel the FTC to produce the requested documents from *Kroger*.

### B.    The FTC's Contentions and Authorities

The *Kroger* litigation materials SGWS seeks are not properly discoverable in this case. They concern an unrelated merger challenge applying different legal standards to different products using entirely different economic analysis. SGWS's motion is not a good-faith effort to obtain relevant evidence; it is an attempt to blur distinct issues and create the false impression that the FTC has been inconsistent across matters. This is an improper purpose for discovery.

1
2
3
4
5

Moreover, SGWS's request would sweep in highly confidential information belonging to numerous parties and third parties in the *Kroger* litigation and impose significant, unwarranted burdens on both the FTC and those third parties. Allowing sensitive third-party materials to be repurposed in unrelated litigation may also deter companies from cooperating with the FTC in future investigations.

6

For all of these reasons, the Court should deny SGWS's motion.

7

## 1.    Legal Standard

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Tristan*, 2024 WL 5412486, at *4. When a party seeks materials from a prior litigation, it must show "significant factual and legal overlap[s]" with the present case. *Id.* at *4 (quoting *Strategic Partners*, 2020 WL 4354172, at *9 (collecting cases and denying motion to compel production of depositions, trial transcripts, declarations, and verified discovery responses from an unrelated lawsuit)). Rule 26(b)(2)(C) requires the Court to balance the "costs and potential benefits of the requested discovery" and to limit discovery that is not "proportional to the needs of the case." *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV 05-8444-DDP (PLAx), 2012 WL 12875772, at *2 (C.D. Cal., Aug. 29, 2012); *see also Tristan,* 2024 WL 5412486, at *4. In resolving discovery disputes, the Court may exercise its discretion in "determining the relevance of discovery requests, assessing oppressiveness, and weighing those facts in deciding whether discovery should be compelled." *Tristan,* 2024 WL 5412486, at *4; *Strategic Partners,* 2020 WL 4354172, at *9.

27
28

## 2.    Materials from the *Kroger* Merger Litigation Are Not Relevant to SGWS's Illegal Price Discrimination at Issue in this Case

Despite SGWS's assertions, the discovery it seeks from the prior *Kroger* merger litigation is not relevant to the claims or defenses in this RPA price discrimination case. Courts in this district permit discovery of materials from prior litigation only where there is "significant factual and legal overlap" with the present case. *Tristan v. Bank of Am.*, 2024 WL 5412486, at *4; *Strategic Partners*, 2020 WL 4354172, at *9 (denying motion to compel production of depositions, trial transcripts, declarations, and verified discovery responses from an unrelated lawsuit); *see also Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG (KAW), 2017 WL 1101799, at *4 (N.D. Cal., Mar. 24, 2017). No such overlap exists here.

The Kroger merger litigation and this RPA action involve different products, different parties, different conduct, different statutory provisions, and fundamentally different legal standards. This case concerns alleged price discrimination by SGWS—the nation's largest wine and spirits distributor—against off-premise retail purchasers of like grade wine and spirits. 15 U.S.C. § 13. It is focused on the sale of wine and spirits. As the Court held in denying SGWS's motion to dismiss, "actual competition" under the RPA may be inferred when "(1) one customer has outlets in 'geographical proximity' to those of the other; (2) the two customers 'purchased goods of the same grade and quality from the seller within approximately the same period of time'; and (3) the two customers are operating 'on a particular functional level such as wholesaling or retailing.'" *See* Dkt. 72, Order Denying Def.'s Mot. to Dismiss at 11 (citing *U.S. Wholesale Outlet & Distrib. Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134, 1142 (9th Cir. 2023) (holding such factors indicate that the customers are "directly after the same dollar")); *see also Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1271-72 (3d Cir. 1995). This binding Ninth Circuit authority governs the analysis here, and SGWS offers no basis to disregard it.

By contrast, the *Kroger* merger evaluated whether a proposed merger between the two largest supermarket chains in the United States would substantially lessen competition under Clayton Act Section 7 merger principles both across the full basket of food, grocery, and household items sold in a supermarket and in the labor market for grocery store workers. *Kroger*, 2024 WL 5053016, at *1, *3. That analysis turned on whether the merged firm could profitably impose a small but significant non-transitory increase in price ("SSNIP"), *i.e.*, whether the merged firm could profitably raise prices above competitive levels. *Id.* at 13. This inquiry simply has no bearing on a secondary-line price discrimination claim under the RPA. Indeed, unlike merger cases, RPA plaintiffs need not plead or prove a defined relevant product or geographic market. *See Millcraft Paper Co. v. Veritiv Corp.*, 2016 WL 6902358, at *3 (N.D. Ohio, July 14, 2016) (holding applicable pleading standard for RPA claim "does not require that a relevant market be plead in the [c]omplaint"); *see also Stelwagon*, 63 F.3d at 1271-73 (finding RPA liability without defining relevant market); *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, No. 18-6809-MWF (MRWx), 2024 WL 2272384, at *8-9 (C.D. Cal., May 20, 2024) (same); *Satnam Distrib. LLC v. Commonwealth-Altadis, Inc.*, 140 F. Supp. 3d 405, 414 (E.D. Pa. 2015) (denying motion to dismiss RPA claim without defined relevant market). As leading antitrust commentators explain, "[i]n determining that the favored and disfavored purchasers are 'competitors,' . . . the Robinson-Patman inquiry typically differs from the general relevant market inquiry in that . . . [whether one seller's competition is sufficient to restrain the other's ability to set price above the competitive level] is unnecessary. As a general matter, it need be shown only that the two sellers compete for the same customers." *See* Herbert Hovenkamp & Phillip E. Areeda, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, §2333.b.1. These distinctions are significant and demonstrate that the requested Kroger litigation materials lack probative value here.

SGWS's attempt to suggest that the FTC has taken inconsistent or contradictory positions on competition issues in this case versus *Kroger* also fails. S*ee supra* at 14-16. A relevant product market is simply an "area of effective competition," and antitrust law has long recognized that multiple markets or submarkets may coexist. *See United States v. Continental Can Co.*, 378 U.S. 441, 457-58 (1964) ("[A] broader product market . . . does not necessarily negative the existence of submarkets . . . which, in themselves, constitute product markets for antitrust purposes.") (internal citation and quotation omitted); *Kroger*, 2024 WL 5053016, at *11 ("[T]hat a different market could be drawn does not change the conclusion that the supermarket submarket is an appropriate and relevant market for this case."); *United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1, 28 (D.D.C. 2022) ("[E]ven if alternative submarkets exist at other advance levels, or if there are broader markets that might be analyzed, the viability of such additional markets does not render the one identified by the government unusable." (citation omitted)). Nor do the *Kroger* materials address the relevant competitive question here. Dr. Hill did not opine on or address competition among retailers selling wine and spirits to the same end consumers, and the district court's 37-page decision mentions "wine" only once, in passing, with no discussion of "spirits" or "alcohol." And as previously noted, Dr. Hill's reports and deposition testimony are virtually silent on those products. That supermarkets sell wine and spirits does not render a supermarket merger analysis relevant to this case.

Southern' reliance on isolated *Kroger* exhibits—such as a Nielsen trade channel list and loyalty card data used for geographic distance analysis—adds nothing. *See supra* at 22. The FTC has already produced more than 1.2 million documents and many gigabytes of data, including all nonprivileged investigative file materials and all third-party productions in this case. These productions include extensive discovery from Kroger, Albertsons, and thirteen other major off-premise chain retailers (comprising SGWS's largest customers) concerning competition in the retail sale of SGWS

distributed wine and spirits, including loyalty card data specific to wine and spirits purchases and documents identifying competitors, and competitive positions. *See* Clair Decl. ¶ 2. Southern therefore already possesses extensive discovery directly relevant to the issues in this case.

SGWS's cited authorities do not compel a different conclusion. Those cases involved either the *same expert* as the prior litigation, or situations where prior case materials were affirmatively placed at issue. *See, e.g.*, *Global Music Rights, LLC v. Radio Music License Comm., Inc.*, No. CV 16-9051 TJH (ASx), 2020 WL 7869542, at *2 (C.D. Cal., May 22, 2020); *ConsumerInfo.com, Inc. v. One Techs. LP*, No. CV 09-3783-VBF(MANx), 2010 WL 11507581, at *6-8 (C.D. Cal., May 4, 2010); *Whitaker v. ELC Beauty LLC*, No. 8:19-cv-00407-DSF (JDEx), 2020 WL 5834293, at *2-3 (C.D. Cal., Aug. 20, 2020); *Acosta v. Nuzon Corp.*, No. 8:16-cv-00363-CJC (KESx), 2017 WL 8231048, at *4-5 (C.D. Cal., Oct. 18, 2017). None of those scenarios applies here. Dr. Hill is not an FTC expert in this matter, nor has the FTC put materials from the *Kroger* litigation at issue in this case.

Ultimately, SGWS's motion appears designed not to obtain evidence but to conflate unrelated litigation in an effort to manufacture the appearance of inconsistency. Tellingly, SGWS's arguments largely focus on the FTC's litigation positions in *Kroger*—not on facts relevant to this case. *See supra* at 14-16. Not only is such an effort substantively misplaced given the nature of market definition analysis and plain differences between the two cases, but neither can such discovery be justified for this improper purpose. *See Strategic Partners,* 2020 WL 4354172, at *6 (rejecting argument that discovery of documents pertaining to another unrelated lawsuit was appropriate for impeachment purposes). Neither should SGWS be permitted to leverage this motion as the opening move in a broader effort to obtain disfavored "cloned" discovery from an unrelated case. Courts routinely reject such attempts. *See, e.g.*, *King Cnty. v. Merrill Lynch & Co.*, No. C10–1156–RSM, 2011 WL 3438491, at *3 (W.D. Wash., Aug. 5,

2011); *TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 5:18-cv-153-RWS-CMC, 2020 WL 698538, at *6-7 (E.D. Tex., Jan. 16, 2020); *Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2023 WL 3751797, at *7 (N.D. Cal., May 31, 2023) (quoting *Schneider*, 2017 WL 1101799, at *4); *Strategic Partners*, 2020 WL 4354172, at *9.

Because the *Kroger* materials concern different conduct, different statutory provisions, and different products —and because SGWS seeks them for an improper purpose—the motion should be denied. Should the Court have any remaining questions regarding relevance, the FTC is amenable to submitting the expert materials and trial demonstratives for *in camera* review to assist the Court in resolution of this motion.

**3.    Production of the Requested *Kroger* Litigation Materials Implicates Sensitive Third-Party Information and Imposes Unjustified Burdens Disproportionate to any *De Minimis* Benefit**

SGWS attempts to downplay the burden of the *Kroger* litigation materials it seeks by calling it a "small number" or "handful" of documents. *See supra* at 1, 4, 8, 24, 27, 29, 31. That characterization is incorrect and misleading.

First, because the materials are irrelevant to this case, *any* burden is undue. *See* Fed. R. Civ. P. 26(b)(1); *In re Subpoena to Kingswood Cap. Mgmt., L.P.*, 2024 WL 5423804, at *2 (C.D. Cal., Dec. 16, 2024) ("[I]f the sought-after documents are not relevant . . . then any burden whatsoever imposed would be by definition undue.") (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)); *see also Tristan*, 2024 WL 5412486, at *4 (denying motion to compel discovery based on movant's failure to demonstrate that it sought "relevant information that is proportional to the needs of this case and described with reasonable particularity" without reaching any analysis of burden); *id.* at *2 ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery *then* has the burden of showing that the discovery should be prohibited . . . ." (emphasis added)); *Strategic*

*Partners*, 2020 WL 4354172, at *9 (denying motion to compel for lack of relevance without reaching burden).

Second, SGWS's characterization of the requested materials ignores the extraordinary volume of confidential third-party information embedded throughout the requested expert reports, testimony, and demonstratives. These materials quote, summarize, or otherwise incorporate confidential documents, data, and testimony produced by 27 companies—none of which are parties here, most of which have no involvement in this case whatsoever, and all of which provided that information subject to the protective order in the *Kroger* litigation. *See* Clair Decl. ¶ 3. These confidential materials cover a wide range of food, grocery, and household products, well beyond wine and spirits, as well as wide ranging, highly sensitive topics such as divestiture buyer plans and capabilities, merger efficiencies, labor issues, and integration plans that are irrelevant to this case. *See* Clair Decl. ¶ 3(e). Complying with SGWS's demand would require the FTC to navigate two separate protective orders, coordinate with each affected company, and prepare 27 tailored redacted versions of the roughly 550 pages of expert reports and transcripts and 668 footnotes—documents the third parties themselves have never seen in full (or, for most of the third parties, at all) due to *Kroger's* confidentiality restrictions. *See* Clair Decl. ¶ 3. It also requires 27 sets of in-house and outside counsel to then review these materials, evaluate the risks of disclosure, consult internally, and determine whether to seek protection in this Court or the District of Oregon.

On or around January 15, 2026, after SGWS further clarified the universe of "initial" materials it planned to seek via this motion, the FTC provided each of the 27 companies with an initial notification that SGWS seeks the production of highly confidential *Kroger* litigation materials that quote, summarize, or otherwise cite to materials the company produced in connection with that matter. *See* Clair Decl. ¶ 7(a). This initial process alone required multiple communications with each company and consumed approximately 45 hours of FTC staff time. *See* Clair Decl. ¶ 7(c). In response,

sixteen companies have expressly objected, another has indicated it is likely to object, and others have requested additional information that would require preparation of the bespoke redacted versions of the expert reports and testimony for their review. *See* Clair Decl. ¶ 7(b). Preparing these materials, fielding questions, and ensuring each third party can meaningfully exercise its rights is not—contrary to SGWS's suggestion—a matter of "send[ing] an email." *See supra* at 27. It is a resource intensive process that the FTC undertakes with appropriate care given the highly sensitive nature of the information involved. *See* Clair Decl. ¶¶ 5-6.

SGWS's suggestion that its request focuses the burden on the FTC elides that it also creates heavy burdens for third parties. If SGWS genuinely believed additional third-party discovery were necessary, it could have sought narrowly tailored subpoenas from the specific entities whose information it wants—instead of attempting to sweep 27 companies into this case.

Because SGWS's expansive request would impose substantial and unwarranted burdens on the FTC and numerous third parties, while providing little to no probative value, it is disproportionate to the needs of the case and improper under Rule 26(b)(1).[8]

Finally, granting this motion would not end the burden: SGWS has explicitly "reserve[d] the right to seek additional materials" after reviewing any production. Its own correspondence confirms this request is only the opening move in a broader and improper fishing expedition into improper cloned discovery of the *Kroger* record. Ex. 18 (Dec. 9,

---

[8] Cases that granted motions to compel materials from prior cases are inapposite. For example, in *Glaukos Corp. v. Ivantis, Inc.*, No. SACV 18-620 JVS (JDEx), 2019 WL 12536180, at *4-5 (C.D. Cal., Sept. 4, 2019), the court granted a defendant's motion to compel where the plaintiff had tacitly acknowledged the relevance of the prior litigation by producing many litigation documents from that case; where the plaintiff failed to offer evidence as to the size of the materials at issue or evidence that those materials contained confidential third party information; and where the court was aware of no objections from any third parties as to the production of the information at issue. That is not the case here.

2025 T.J. McCarrick Eml.) ("SGWS has identified this subset of materials *in the first instance* to avoid burdening the agency with a wholesale re-production request; SGWS, however, reserves the right to seek additional materials if appropriate and *after its review of the above*.") (emphasis added).

For these reasons, SGWS's burden arguments fail and the motion to compel should be denied.

### 4. Compelling Production of Cloned Third-Party Discovery Materials from an Unrelated Prior Matter Risks Chilling Future Cooperation in FTC Investigations and Litigation

Permitting SGWS's fishing expedition into the *Kroger* materials would also have broader consequences for the FTC's law enforcement mission. The agency depends on the cooperation of third parties to obtain the confidential documents and data necessary to conduct investigations and bring enforcement actions. The FTC makes every effort to protect such information and to address the concerns of businesses that provide sensitive material, whether voluntarily or in response to compulsory process. But companies are already cautious about sharing proprietary information. *See, e.g.*, *In re Caremark Rx, LLC*, FTC Docket No. 9437, 2025 WL 711513, at *5 (FTC Jan. 27, 2025) (noting that third parties who provide highly confidential information "expect . . . [their] confidentiality will be maintained wherever possible" (citation omitted)); *see also* Clair Decl. Exs. A-K.

That hesitation would only increase if third parties believed their confidential materials could be produced years later in an unrelated litigation involving entirely different parties. This concern is reflected in the FTC's Rules of Practice, which limit discovery in Part 3 adjudications to "materials that were collected or reviewed in the course of the investigation of the matter or prosecution of the case," and permit broader discovery only in rare circumstances upon a special showing of need. 16 C.F.R. § 3.31(c)(2). Compelling production here would risk a chilling effect on third party

cooperation, undermining the FTC's ability to gather the information it needs to detect, investigate, and remedy violations of the antitrust laws.

\* \* \*

Given the clear irrelevance of the *Kroger* materials, the substantial burden their production would impose on both the FTC and numerous third parties, and the likely chilling effect on future cooperation, SGWS's motion to compel should be denied.

## III.    SPECIFIC REQUESTS AT ISSUE

As discussed above, the parties' dispute as to the materials SGWS seeks is not focused on whether those materials are responsive to SGWS's RFPs, but rather on whether those materials are relevant and can be produced without imposing an undue burden or chilling third-party cooperation in future FTC investigations.  Because these issues apply equally across all RFPs to which these documents are responsive, the parties have set forth their primary arguments in Section II above.  Nevertheless, for the Court's convenience, the parties have reproduced below the specific RFPs to which SGWS contends that the requested documents are responsive, followed by the FTC's response to that RFP and a brief statement from each party.

### A.    *REQUEST FOR PRODUCTION NO. 1*

*All documents referenced, relied upon, used to support, or relating in any way to the factual allegations referenced in the complaint.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 1*

*The FTC incorporates by reference its General Objections.  The FTC further objects to this Request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, the deliberative process privilege, the law enforcement investigative privilege, or any other applicable privilege, protection, or immunity.  The FTC further objects to this Request to the extent it seeks information exempt from discovery pursuant to the Amended Stipulated Protective Order, Section X (Dkt. 83).*

*The FTC further objects to this Request on the grounds that it is vague, ambiguous, and unduly burdensome, including as to documents "relating in any way to the factual allegations referenced in the complaint." The FTC further objects to this Request to the extent that it seeks documents that are already in Defendant's possession, custody, or control, including Defendant's own documents and communications, or otherwise available from other sources to which Defendant has access.*

*Subject to the foregoing General and Specific Objections, the FTC responds as follows: the FTC produced responsive, non-privileged investigative materials, not otherwise exempt from discovery to Defendant on June 3, 4, and 16, 2025. In addition, the FTC directs Defendant to the transcripts of the investigational hearings of Defendant's executives conducted during the FTC's investigation and to the documents and data produced by Defendant during the FTC's investigation, which have been deemed produced in this action by agreement of the parties. See Joint Rule 26(f) Report at 19 (Dkt. 77). Any additional responsive, non-privileged documents not otherwise exempt from discovery and obtained by the FTC during the course of ongoing post-Complaint discovery will be produced in accordance with the Amended Stipulated Protective Order (Dkt. 83), the Scheduling Order (Dkt. 80), or other operative order of the Court. The FTC is willing to meet and confer with Defendant to discuss an appropriate reciprocal agreement for the production of post-Complaint third-party communications and documents.*

**SGWS's CONTENTIONS REGARDING REQUEST NO. 1**

In the parties' correspondence and discussions, the FTC has not disputed that the requested materials are responsive to RFP No. 1. The FTC's only bases for refusing to produce the *Kroger* materials are the FTC's arguments that the discovery is irrelevant and unduly burdensome. As discussed in Section II.A above, those objections are unavailing and do not justify the agency's refusal to produce the requested discovery. Therefore, the Court should order the FTC to produce the following documents from

*Kroger*:

- Unredacted copies of the agency's expert reports authored by Dr. Nicholas Hill;

- Unredacted copies of any deposition of Dr. Hill; and

- Unredacted copies of the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill.

**FTC's CONTENTIONS REGARDING REQUEST NO. 1**

As discussed in Section II.B above, the *Kroger* litigation materials are not properly discoverable in this case. They concern an unrelated merger challenge applying different legal standards to different products using an entirely different economic analysis. These materials are not only wholly irrelevant to the matters at issue in this case, but would sweep in highly confidential information belonging to numerous third parties and impose significant burdens on both the FTC and those third parties. Permitting such sensitive third-party materials to be disclosed in unrelated litigation would deter companies from cooperating with the FTC in future investigations. The Court should deny SGWS's motion.

**B.** ***REQUEST FOR PRODUCTION NO. 9***

*All documents relating in any way to "conditions affecting the market for or the marketability of the wine or spirits" from 2016 to the present, including inflationary effects, supply chain issues, regulatory changes, demand changes, and changes in customer preferences. See Compl. ¶ 73.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 9***

*The FTC incorporates by reference its General Objections. The FTC further objects to this Request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, the deliberative process privilege, the law enforcement investigative privilege, or any other applicable privilege, protection, or immunity. The FTC further objects to this Request to the extent it seeks*

JOINT STIPULATION RE SGWS'S MOTION TO COMPEL DISCOVERY
44

*information exempt from discovery pursuant to the Amended Stipulated Protective Order, Section X (Dkt. 83).*

*The FTC further objects to this Request on the grounds that it is vague, ambiguous, and unduly burdensome, including as to documents "relating in any way" to conditions affecting the market for or the marketability of the wine or spirits. The FTC further objects to this Request as overly broad, unduly burdensome, and irrelevant to the extent it seeks documents "from 2016 to the present." As noted in General Objection 8, the FTC will limit its searches, collections, and productions in response to this and every other Request to documents generated, prepared, created, sent, or received during the period from January 1, 2018, to the present.*

*The FTC further objects to this Request to the extent it seeks documents that are already in Defendant's possession, custody, or control, including Defendant's own documents and communications, or otherwise available from other sources to which Defendant has access.*

*Subject to the foregoing General and Specific Objections, the FTC directs Defendant to its production of investigative materials on June 3, 4, and 16, 2025, to the transcripts of the investigational hearings of Defendant's executives conducted during the FTC's investigation, and to the documents and data produced by Defendant during the FTC's investigation, which have been deemed produced in this action by agreement of the parties. See Joint Rule 26(f) Report at 19 (Dkt. 77). Any additional responsive, non-privileged documents not otherwise exempt from discovery and obtained by the FTC during the course of on-going post-Complaint discovery will be produced in accordance with the Amended Stipulated Protective Order (Dkt. 83), the Scheduling Order (Dkt. 80), or other operative order of the Court.*

**SGWS's CONTENTIONS REGARDING REQUEST NO. 9**

In the parties' correspondence and discussions, the FTC has not disputed that the requested materials are responsive to RFP No. 9. The FTC's only bases for refusing to

produce the *Kroger* materials are the FTC's arguments that the discovery is irrelevant and unduly burdensome.  As discussed in Section II.A above, those objections are unavailing and do not justify the agency's refusal to produce the requested discovery. Therefore, the Court should order the FTC to produce the following documents from *Kroger*:

- Unredacted copies of the agency's expert reports authored by Dr. Nicholas Hill;

- Unredacted copies of any deposition of Dr. Hill; and

- Unredacted copies of the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill.

**FTC's CONTENTIONS REGARDING REQUEST NO. 9**

As discussed in Section II.B above, the *Kroger* litigation materials are not properly discoverable in this case. They concern an unrelated merger challenge applying different legal standards to different products using an entirely different economic analysis. These materials are not only wholly irrelevant to the matters at issue in this case, but would sweep in highly confidential information belonging to numerous third parties and impose significant burdens on both the FTC and those third parties. Permitting such sensitive third-party materials to be disclosed in unrelated litigation would deter companies from cooperating with the FTC in future investigations. The Court should deny SGWS's motion.

C.    ***REQUEST FOR PRODUCTION NO. 20***

*All documents relating in any way to competition between SGWS's retail customers in the sale of wine or spirits for off-premise consumption.*

***RESPONSE TO REQUEST FOR PRODUCTION NO. 20***

*The FTC incorporates by reference its General Objections. The FTC further objects to this Request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, the deliberative process*

*privilege, the law enforcement investigative privilege, or any other applicable privilege, protection, or immunity. The FTC further objects to this Request to the extent it seeks information exempt from discovery pursuant to the Amended Stipulated Protective Order, Section X (Dkt. 83).*

*The FTC further objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information irrelevant to the parties' claims or defenses, including to the extent it calls for "all documents" without any time limitation "relating in any way" to competition between Defendant's retail customers in the sale of wine or spirits for off-premise consumption.*

*The FTC further objects to this Request to the extent it seeks documents that are already in Defendant's possession, custody, or control, including Defendant's own documents and communications, or otherwise available from other sources to which Defendant has access.*

*Subject to the foregoing General and Specific Objections, the FTC directs Defendant to its production of investigative materials on June 3, 4, and 16, 2025, to the transcripts of the investigational hearings of Defendant's executives conducted during the FTC's investigation, and to the documents and data produced by Defendant during the FTC's investigation, which have been deemed produced in this action by agreement of the parties. See Joint Rule 26(f) Report at 19 (Dkt. 77). Any additional responsive, non-privileged documents not otherwise exempt from discovery and obtained by the FTC during the course of on-going post Complaint discovery will be produced in accordance with the Amended Stipulated Protective Order (Dkt. 83), the Scheduling Order (Dkt. 80), or other operative order of the Court.*

**SGWS's CONTENTIONS REGARDING REQUEST NO. 20**

In the parties' correspondence and discussions, the FTC has not disputed that the requested materials are responsive to RFP No. 20.  The FTC's only bases for refusing to produce the *Kroger* materials are the FTC's arguments that the discovery is irrelevant

and unduly burdensome.  As discussed in Section II.A above, those objections are unavailing and do not justify the agency's refusal to produce the requested discovery. Therefore, the Court should order the FTC to produce the following documents from *Kroger*:

- Unredacted copies of the agency's expert reports of Dr. Nicholas Hill;

- Unredacted copies of any deposition of Dr. Hill; and

- Unredacted copies of the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill.

**FTC's CONTENTIONS REGARDING REQUEST NO. 20**

As discussed in Section II.B above, the *Kroger* litigation materials are not properly discoverable in this case. They concern an unrelated merger challenge applying different legal standards to different products using an entirely different economic analysis. These materials are not only wholly irrelevant to the matters at issue in this case, but would sweep in highly confidential information belonging to numerous third parties and impose significant burdens on both the FTC and those third parties. Permitting such sensitive third-party materials to be disclosed in unrelated litigation would deter companies from cooperating with the FTC in future investigations. The Court should deny SGWS's motion.

**D.    *REQUEST FOR PRODUCTION NO. 21***

*All documents relating in any way to the geographic area in which customers compete for the sale of any wine or spirit involved in the allegedly unlaw price discrimination in the complaint, including the type of customers that retailers serve.*

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**

*The FTC incorporates by reference its General Objections. The FTC further objects to this Request to the extent it seeks information that is protected from discovery by the attorney client privilege, the work product doctrine, the deliberative process*

*privilege, the law enforcement investigative privilege, or any other applicable privilege, protection, or immunity. The FTC further objects to this Request to the extent it seeks information exempt from discovery pursuant to the Amended Stipulated Protective Order, Section X (Dkt. 83).*

*The FTC further objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information irrelevant to the parties' claims or defenses, including to the extent it calls for "all documents" without any time limitation "relating in any way" to the geographic area in which customers compete and the type of customers that retailers serve.*

*The FTC further objects to this Request to the extent it seeks documents that are already in Defendant's possession, custody, or control, including Defendant's own documents and communications, or otherwise available from other sources to which Defendant has access.*

*Subject to the foregoing General and Specific Objections, the FTC directs Defendant to its production of investigative materials on June 3, 4, and 16, 2025, to the transcripts of the investigational hearings of Defendant's executives conducted during the FTC's investigation, and to the documents and data produced by Defendant during the FTC's investigation, which have been deemed produced in this action by agreement of the parties. See Joint Rule 26(f) Report at 19 (Dkt. 77). Any additional responsive, non-privileged documents not otherwise exempt from discovery and obtained by the FTC during the course of on-going post-Complaint discovery will be produced in accordance with the Amended Stipulated Protective Order (Dkt. 83), the Scheduling Order (Dkt. 80), or other operative order of the Court.*

**SGWS's CONTENTIONS REGARDING REQUEST NO. 21**

In the parties' correspondence and discussions, the FTC has not disputed that the requested materials are responsive to RFP No. 21. The FTC's only bases for refusing to produce the *Kroger* materials are the FTC's arguments that the discovery is irrelevant

and unduly burdensome.  As discussed in Section II.A above, those objections are unavailing and do not justify the agency's refusal to produce the requested discovery. Therefore, the Court should order the FTC to produce the following documents from *Kroger*:

- Unredacted copies of the agency's expert reports authored by Dr. Nicholas Hill;

- Unredacted copies of any deposition of Dr. Hill; and

- Unredacted copies of the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill.

**FTC's CONTENTIONS REGARDING REQUEST NO. 21**

As discussed in Section II.B above, the *Kroger* litigation materials are not properly discoverable in this case. They concern an unrelated merger challenge applying different legal standards to different products using an entirely different economic analysis. These materials are not only wholly irrelevant to the matters at issue in this case, but would sweep in highly confidential information belonging to numerous third parties and impose significant burdens on both the FTC and those third parties. Permitting such sensitive third-party materials to be disclosed in unrelated litigation would deter companies from cooperating with the FTC in future investigations. The Court should deny SGWS's motion.

**IV.    CONCLUSION**

For the reasons set forth above, SGWS respectfully seeks an order directing the FTC to produce the following materials from *Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN, 2024 WL 5053016 (D. Or. Dec. 10, 2024):

- Unredacted copies of the agency's expert reports authored by Dr. Nicholas Hill;

- Unredacted copies of any deposition of Dr. Hill;

- Unredacted copies of the agency's trial demonstratives, including opening and closing presentations, related to competition between retailers, including those used with Dr. Hill; and

The FTC opposes SGWS's request, as discussed in Section II.B above. Given the clear irrelevance of the *Kroger* materials, the substantial burden their production would impose on both the FTC and numerous third parties, and the likely chilling effect on future cooperation, the FTC maintains that SGWS's motion to compel should be denied.

JOINT STIPULATION RE SGWS'S MOTION TO COMPEL DISCOVERY
51

| 1 | Dated: January 23, 2026 | Respectfully submitted, |

/s/ *T.J. McCarrick*
KIRKLAND & ELLIS LLP
Tammy A. Tsoumas (S.B. # 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Tel.: (310) 552-4200

Craig S. Primis, P.C. *(pro hac vice)*
cprimis@kirkland.com
Matthew S. Owen, P.C. *(pro hac vice)*
matt.owen@kirkland.com
T.J. McCarrick *(pro hac vice)*
tj.mccarrick@kirklanDd.com
Ross Powell (*pro hac vice*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Tel.: (202) 389-5000

Dan Zach *(pro hac vice)*
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

/s/ *Christina J. Brown*
Christina J. Brown (S.B. # 242130)
cbrown5@ftc.gov
Dana F. Abrahamsen *(pro hac vice)*
dabrahamsen@ftc.gov
Daniel R. Blauser *(pro hac vice)*
dblauser@ftc.gov
Kathleen M. Clair *(pro hac vice)*
kclair@ftc.gov
Joseph M. Conrad *(pro hac vice)*
jconrad2@ftc.gov

JOINT STIPULATION RE SGWS'S MOTION TO COMPEL DISCOVERY
52

Stephanie A. Funk *(pro hac vice)*
sfunk@ftc.gov
Geoffrey M. Green *(pro hac vice)*
ggreen@ftc.gov
Jordan T. Klimek *(pro hac vice)*
jklimek@ftc.gov
Patricia M. McDermott *(pro hac vice)*
pmcdermott@ftc.gov
Karen A. Mills *(pro hac vice)*
kmills@ftc.gov
Ross E. Steinberg *(pro hac vice)*
rsteinberg@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel: (202) 326-2125

John D. Jacobs (S.B. # 134154)
Local Counsel
jjacobs@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd., Ste. 400
Los Angeles, CA 90024
Tel: (310) 824-4300

*Attorneys for Plaintiff Federal Trade Commission*

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

/s/ *T.J. McCarrick*
T.J. McCarrick