1

**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas (SBN 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste 3700
Los Angeles, CA 90067
Telephone: 310-552-4200

*Additional Counsel Listed on Signature Block*

*Attorneys for Defendant Southern*
*Glazer's Wine and Spirits, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN GLAZER'S WINE AND SPIRITS, LLC,<br><br>Defendant. | **Case No. 8:24-cv-02684-FWS-ADS**<br><br>**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S AND NON-PARTY DISTRIBUTORS' JOINT RULE 37 STIPULATION**<br><br>**Discovery Document: Referred to Magistrate Judge Autumn D. Spaeth**<br><br>Hearing Date: March 11, 2026<br>Time: 10:00 AM<br>Courtroom: 6B<br>Judge: Hon. Autumn D. Spaeth<br><br>Fact Discovery Cutoff: Sept. 24, 2026<br>Pretrial Conference: Sept. 23, 2027<br>Trial Date: Oct. 19, 2027 |

JOINT RULE 37 STIPULATION

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................2

    A.    SGWS's Introductory Statement .............................................2

    B.    The Distributors' Introductory Statement ..............................4

II.    THE PARTIES' CONTENTIONS AND AUTHORITIES...........................7

    A.    SGWS's Factual Background....................................................7

    B.    SGWS's Contentions and Authorities....................................11

    C.    The Distributors' Factual Background....................................23

    D.    The Distributors' Contentions and Authorities.....................34

III.    SPECIFIC REQUESTS AT ISSUE ...............................................53

    A.    *REQUEST FOR PRODUCTION NO. 1* ...............................54

    B.    *REQUEST FOR PRODUCTION NO. 2* ...............................61

    C.    *REQUEST FOR PRODUCTION NO. 4* ...............................67

    D.    *REQUEST FOR PRODUCTION NO. 5* ...............................70

    E.    *REQUEST FOR PRODUCTION NO. 6* ...............................76

    F.    *REQUEST FOR PRODUCTION NO. 7* ...............................81

    G.    *REQUEST FOR PRODUCTION NO. 8* ...............................87

    H.    *REQUEST FOR PRODUCTION NO. 9* ...............................92

    I.    *REQUEST FOR PRODUCTION NO. 10* ...............................98

    J.    *REQUEST FOR PRODUCTION NO. 11* .............................103

    K.    *REQUEST FOR PRODUCTION NO. 12* .............................108

    L.    *REQUEST FOR PRODUCTION NO. 13* .............................114

    M.    *REQUEST FOR PRODUCTION NO. 14* .............................120

IV.    CONCLUSION.......................................................................125

1    Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant

2  Southern Glazer's Wine and Spirits, LLC ("SGWS") and Non-Parties Republic National

3  Distributing Company ("RNDC"), Reyes Holdings, LLC ("Reyes"), Breakthru Beverage

4  Group, LLC ("Breakthru"), Johnson Brothers Liquor Company ("Johnson Brothers"), and

5  Winebow, Inc. ("Winebow") (collectively "Distributors") submit the following[1]:

6    On August 14 and 18, 2025, SGWS served identical subpoenas duces tecum on the

7  Distributors.  *See e.g.,* Ex. 3 (Aug. 18, 2025 SGWS Subpoena to Reyes).  On or around

8  October 2, 2025, SGWS served amended subpoenas, which are identical to the original

9  subpoenas except the relevant states at issue are amended.[2]  Ex. 4 (Oct. 2, 2025 Amended

10  SGWS Subpoena to RNDC); Ex. 5 (Oct. 2, 2025 Amended SGWS Subpoena to Reyes);

11  Ex. 6 (Oct. 2, 2025 Amended SGWS Subpoena to Breakthru); Ex. 7 (Oct. 2, 2025

12  Amended SGWS Subpoena to Johnson Brothers); Ex. 8 (Oct. 2, 2025 Amended SGWS

13  Subpoena to Winebow).  All subpoenaed parties replied with responses and objections,

14  objecting to all 14 of SGWS's document requests.[3]  *See* Ex. 9 (Sept. 16, 2025 Responses

15  and Objections of Reyes); Ex. 10 (Sept. 16, 2025 Responses and Objections of Johnson

16  Brothers); Ex. 11 (Sept. 17, 2025 Responses and Objections of RNDC); Ex. 12 (Sept. 18,

17  2025 Responses and Objections of Breakthru); Ex. 13 (Responses and Objections of

18  Winebow).  On January 15, the Distributors told SGWS that they were at an impasse and

19  that they were prepared to move to quash Southern's subpoenas, but proposed that the

20  parties proceed in the Central District of California, rather than in the various districts

---

[1] Kirkland & Ellis, LLP represents SGWS against Reyes, Breakthru, Johnson Brothers, and Winebow, but not RNDC.  Jackson Walker, LLP, not Kirkland, represents SGWS against RNDC.

[2] Out of an abundance of caution, SGWS has appended, as Ex. 3, one original subpoena as an example and all five of the amended (and operative) subpoenas as Exs. 4-8.

[3] The Distributors served their responses and objections prior to SGWS serving amended subpoenas, but SGWS and the Distributors have agreed their responses and objections to the original subpoenas apply equally to the amended subpoenas.

JOINT RULE 37 STIPULATION

1

where SGWS had served it subpoenas.  Ex. 22 (January 15, 2026 Email from E. Turner to C. Butzer).  The parties then sought guidance from the Court on how to proceed and were directed to follow Local Rule 37.  SGWS met and conferred with the Distributors by videoconference pursuant to Local Rule 37-1 on February 3, 2025 after SGWS sent the Distributors a deficiency letter on January 30, 2025.  Ex. 23 (Email transmission of SGWS's Rule 37-1 Letter from C. Butzer to E. Turner).  The parties have not reached agreement on any of SGWS's requests, except one, where the Distributors represent they do not have responsive information (Request No. 3).  The parties therefore file this joint stipulation under Local Rule 37.

# I.    INTRODUCTION

## A.    SGWS's Introductory Statement

In this nationwide antitrust case challenging millions of transactions, SGWS moves to compel the Distributors to produce highly relevant documents that speak directly to core disputes in this matter.  The documents SGWS seeks are relevant to SGWS's defenses, not unduly burdensome, and proportional to the needs of the case.  The subpoenas seek documents concerning the Distributors' wine and spirits purchases, sales, pricing, and accounting practices in each state identified as at issue by the FTC in which both SGWS and the Distributor operate or have operated in the past.[4]  *See, e.g.,* Ex. 5 (SGWS Amended Subpoena to Reyes).  SGWS expects these documents will support its arguments that (1) any retailers to whom it allegedly charged different prices for the same goods do not compete, (2) SGWS's pricing practices are justified by market conditions, differences in the cost of serving different retailers, and SGWS's legitimate efforts to meet competition, and (3) that alcohol sales from distributors to retailers occur outside of interstate commerce and are not subject to the RPA.  The breadth of SGWS's requests mirrors the wide scope of the FTC's allegations.  To date, in response to an Interrogatory

---

[4] Attached as Appendix A is a table that lists the states "at issue" for each Distributor.

JOINT RULE 37 STIPULATION

2

1  from SGWS, the FTC has identified over 17 million different pairs of allegedly
2  discriminatory sales by SGWS to retailers in 30 states since 2018, each of which the FTC
3  contends is probative of an individual violation of the RPA.

4      The objecting Distributors are among the largest wine and spirit distributors in the
5  United States.  RNDC, until recently, operated in 39 states and was widely reported to be
6  the second largest spirit and wine distributor in the United States.  Reyes is reported to be
7  the sixth largest privately held company in the United States and distributes wine and
8  spirits in 12 states.  Breakthru is another major player, operating in 16 states and Canada.
9  Johnson Brothers operates in 20 states.  And Winebow has operations in all 50 states plus
10  Washington D.C., including serving as a distributor in 18 of them.   Given each
11  Distributor's significant operations across the country, data on their wine and spirits sales
12  will be particularly relevant to SGWS's defenses.

13      In response to SGWS's subpoena, each distributor sent a letter objecting to all 14
14  of SGWS's requests.  *See* Ex. Nos. 9-13.  Since then, SGWS and each of the Distributors
15  have met multiple times. In these meet-and-confers, SGWS has repeatedly offered to
16  negotiate a narrower scope of data production.  SGWS proposed limiting its data requests
17  to the Distributors' top 100 selling wines and top 100 spirits and even offered to withdraw
18  most of its non-data requests if the Distributors agreed to the data proposal.  Four of the
19  five Distributors have refused to make a counteroffer.  Instead, without agreeing to
20  produce a single document, they suggested SGWS propose a different compromise based
21  on the FTC's paired transactions.  SGWS has explained it is impossible to use the FTC's
22  17 million paired transactions to narrow the subpoena because the transactions include
23  thousands of retailers and products, and there is no obvious method SGWS could use to
24  narrow its subpoena.  Worse, the FTC maintains the list is not exhaustive.  The lone
25  distributor who made a counter, Breakthru, proposed producing data for two years for 30
26  commercially significant products in five of the 16 states Breakthru operates in.  This is
27  too narrow and not justified by Breakthru's conclusory burden objections.   Other

28

distributors, far smaller than Breakthru, have agreed to produce data on their top 100 products (50 wine and 50 spirits). Breakthru and the other Distributors can and should do more.

The Distributors have no legitimate basis to refuse SGWS's requests. The only federal appellate court to have addressed the issue held that competitor data was "vital" to defending a Robinson Patman Act claim and therefore discoverable.[5] The FTC agrees: It recently argued that such data is relevant to the meeting competition defense in seeking to enforce a subpoena issued in connection with the investigation that led to this case.[6] Further, none of the Distributors have made a plausible burden argument. Finally, the protective order in the underlying litigation will maintain the confidentiality of the Distributors' information. *See* Ex. 4, Exhibit C (Amended Stipulated Protective Order). SGWS respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 37 and 45, to compel the Distributors to produce all existing documents responsive to the subpoenas.

## B.    The Distributors' Introductory Statement

The Distributors seek to quash SGWS's non-party subpoenas served on each of them under Federal Rules of Civil Procedure 26 and 45. The FTC sued SGWS, the largest beverage alcohol distributor in the United States, alleging that SGWS engaged in "secondary line" price discrimination in violation of the Robinson-Patman Act and Federal Trade Commission Act by charging small, independent retailers higher prices than it did large chain retailers for the same products. Dkt. 1 ¶¶ 74-78. Instead of mounting a justifiable defense, SGWS attempts to improperly treat the FTC's action as a "primary line" price discrimination case and defend itself with generalized (and unsupported)

---

[5] *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965)
[6] Ex. 21 (Reply of FTC for a Show Cause Hearing or Order Enforcing Civil Investigative Demand, *FTC v. Retail Services & Systems, Inc.*, No. 1:23-mc-0028 (E.D. Va.) (filed Nov. 21, 2023)

JOINT RULE 37 STIPULATION

4

assertions that its allegedly unlawful pricing practices are consistent with those of other distributors in the beverage alcohol industry.

To that end, SGWS issued a slew of subpoenas to its competitors demanding six years' worth of their most sensitive transactional and pricing information, among other requests for competitively sensitive materials. *See* Exs. 4-8. SGWS seeks the prices *the Distributors* charge *their customers* for the products *the Distributors* sell, the prices *the Distributors* are charged by *their suppliers* for those *different products*, as well as *the Distributors'* pricing strategies, profit margins, contract terms, negotiations, and accounting practices. But the information SGWS requests is not relevant to the FTC's claims, which is about the prices *SGWS* charges to *SGWS's* customers for the products *SGWS* distributes, or SGWS's defenses, including its meeting competition defense which requires SGWS to have a reasonably good faith basis it met competitors' prices at the time it set the prices, not after the fact. The Court should protect the Distributors' highly confidential competitive information from disclosure for that reason alone.

Further, SGWS's requests are overly broad, not proportional to the needs of the case, SGWS does not make any meaningful attempt to narrowly tailor them to their discovery needs, and producing the requested information would impose a substantial, undue burden on the Distributors. SGWS represents it "has tailored its requests to match the breadth of the FTC's broad case" and contends it cannot use the paired transactions data produced by the FTC to narrow its subpoena, but these statements are clearly wrong. Throughout negotiations, SGWS has refused to limit its requests to the time period, products, retail customers, distributors, or even the states identified from the paired transactions at issue in this case. SGWS has also refused to assess other sources of data produced in this case, like Total Wine's purchase data obtained by the FTC in the course of its investigation, to remove from their requests data that is already in their possession.

Nor does SGWS acknowledge the substantial burden its requests places on Distributors. SGWS suggests that its requests could not possibly impose an undue burden

on Distributors because of their "nationwide operations, advanced IT systems, and thousands of employees." Not so. As outlined in Section II.D.4, the burden on the Distributors to respond to the requests is significant, costly, and cannot be justified. SGWS's delayed proposal to limit its data requests to Distributors' top 100 stock keeping units ("SKUs") for wine and liquor *in each state over the course of 6 years* does nothing to reduce the Distributor's or to focus SGWS's requests to information that is actually relevant.

Absent SGWS's willingness to narrow its requests to information that is *actually relevant* to its case and will not substantially burden the Distributors, the Distributors' position remains the same. The Distributors cannot agree to produce their most sensitive business information for every single transaction over the last six years in every state they conduct business when the majority of that information is likely irrelevant to the case at hand. As an illustration, it may very well be the case that the 17 million paired transactions data includes only a handful of transactions that occurred in Florida during a two-week time period between SGWS and one or two retailers who also bought products (similar or not) from RNDC during that same time period. Yet SGWS's subpoenas would require the Distributors, who all conduct business in Florida, to produce multiple data points from every single sale and purchase they made in the state every day for the last six years. There is no defensible reason for the Distributors to produce their most commercially sensitive data for sales and transactions, let alone for transactions that are not even relevant to the FTC's case.

But even if the Court is inclined to agree with SGWS's insistence that its requests are proportional to the needs of the case and narrowly tailored to meet their discovery needs while minimizing the burden on non-parties, their relevance is, at most, too attenuated to justify requiring the Distributors to disclose their most commercially sensitive information to their largest competitor. This risk of harm is compounded by the fact that SGWS's requests seek *recent* transactional data which has greater value to the

Distributors' competitors than historical data.  SGWS has not shown a substantial need for the Distributors' proprietary information, nor can it.

For these reasons, the Distributors ask the Court to protect them from SGWS's overly broad and unduly burdensome subpoenas.

## II.    THE PARTIES' CONTENTIONS AND AUTHORITIES

### A.    SGWS's Factual Background

To defend the sweeping case brought against SGWS by the FTC, on August 14 and 18, 2025 SGWS sent identical subpoenas to 11 beverage distributors.  On October 2, 2025 SGWS sent the Distributors amended subpoenas that were identical except with updates to the relevant states.  Some of these distributors are large national players like SGWS. Others are smaller but have significant presences in the five exemplar states the FTC focuses on in its complaint (Arizona, Illinois, California, Texas, and Washington).  The Distributors at the center of the present dispute are five of the biggest, each with a sweeping national presence and a robust product portfolio.

Until recently, RNDC was the nation's second largest beverage distributor, operating in 39 states over the relevant period and employing over 13,000 people.[7]  On top of having a large wine and spirit distribution operation, Reyes is the nation's largest beer distributor and the sixth largest privately held company in the U.S.  In total, it has over 10,000 employees, 115,000 customer accounts, and operations in 12 states.[8]

---

[7] Forbes, *Republic National Distributing Company,*
https://www.forbes.com/companies/republic-national-distributing-company/ (last accessed Feb. 3, 2026).

[8] Reyes Beverage Group, *About,* https://reyesbeveragegroup.com/about (last accessed Feb. 3, 2026); Reyes Beverage Group, *Distributors,*
https://reyesbeveragegroup.com/distributors (last accessed Feb. 3, 2026).

Breakthru is the third largest wine supplier in the country.[9]  It operates in 16 states, stocks over 6,000 types of wine and spirits, and employs over 10,000 people.[10]  Johnson Brothers is another of the 10 largest wine and spirits distributors in the U.S.  It operates in 20 states with over 5,000 employees.[11]  Finally, Winebow is a leading importer and distributor of wine and spirits in the United States.  It operates as an importer in all 51 U.S. markets and as an importer and distributer in 18 states.[12]

SGWS has met and conferred, by videoconference, with each Distributor on multiple occasions:

- SGWS met with RNDC four times, on December 5 and 17, 2025 and January 9 and 13, 2026.  *See* Declaration of C. Butzer; Ex. 14 (Email exchanges between C. Butzer and E. Turner).

- SGWS met with Reyes four times, on August 22, October 6, November 21 and December 30, 2025.  Ex. 15 (Email exchanges between R. Powell and W. Mudge).

- SGWS met with Breakthru three times, on September 26, December 4, and December 23, 2025. Ex. 16 (Email exchanges between R. Powell and J. Rist).

- SGWS met with Johnson Brothers four times, on August 22, October 24, and December 1, 2025 and January 5, 2026. Ex. 17 (Email exchanges between R. Powell and J. Alvarez).

---

[9] Sarah Brown, *The State of Distribution in 2024, Interest Rates, Increased Costs Force Some to Cut Operations*, Wire Business Monthly (Feb. 1 2025) available at https://www.winebusiness.com/wbm/article/297351  (last accessed Feb. 3, 2026).

[10] Breakthru Beverage Group, *About,*  https://www.breakthrubev.com/About (last accessed Feb. 3, 2026).

[11] Johnson Brothers, *Our Story*, https://www.johnsonbrothers.com/about/our-story/ (last accessed Feb. 3, 2026).

[12] Winebow Fine Wine + Spirits, *Our Company, Our Story*, https://www.winebow.com/our-company/our-story (last accessed Feb. 3, 2026).

1
2
3

- SGWS met with Winebow three times, on September 17 and December 11, 2025, and January 9, 2026. Ex. 18 (Email exchanges between R. Powell and A. O'Brien & J. Siu).

4
5
6
7
8
9
10
11
12
13
14

The meet and confers with the Distributors have largely gone the same. SGWS provided details on its underlying case against the FTC and explained its need for the requested documents. The Distributors refused to produce any documents arguing that the information sought was irrelevant, the requests were overbroad and unduly burdensome, and expressing concern about confidentiality. Although SGWS disagrees on all counts, in an effort to avoid court intervention, SGWS offered to substantially limit its data requests. SGWS proposed the Distributors produce sales and purchasing data (Request Nos. 1 and 2) only for their top 100 SKUs for wine and top 100 SKUs for spirits in each relevant state. SGWS further offered that, depending on the data fields available, it would drop its other Requests, except for information necessary to understand the data and requests relating to the Distributors' accounting policies.[13]

15
16
17
18
19
20
21

The Distributors rejected this offer, claiming the information sought was irrelevant because it might turn out that the data includes sales with no connection to the FTC's allegations. Four of the five Distributors refused to make any counteroffer—instead insisting that SGWS submit a new proposal based on the 17 million transactions the FDA has identified as potential violations of the Robinson Patman Act. SGWS explained this approach is unworkable because the FTC insists its current list is not final and may be under or overinclusive.[14] It is also unclear what subset of the 17 million transaction the

22

---

23
24

[13] In addition to SGWS's proposal to narrow discovery, it is not moving for production of documents responsive to Request No. 3.

25
26
27

[14] Recently, the FTC indicated it may finalize its list of allegedly discriminatory transactions sometime in or around May 21, 2026. Even assuming this happens, waiting until late May to restart negotiations with the Distributors, using the FTC's final paired
(Continued…)

28

Distributors believed could form a basis for a narrower proposal or how exactly the transactions would be used to narrow the subpoena—the Distributors provided no suggestions, only a demand that SGWS offer a new proposal based on the transactions.

Breakthru offered to produce sales data for 30 "commercially significant SKUs of Breakthru's selection from 5 states that reflect 2 calendar years," for data responsive to Request No. 1 (regarding sales to retailers). *See* Ex. 16 at 2. SGWS responded on the same day, asking Breakthru to "engage further" and informing it that: (1) its counter offer was too narrow; (2) smaller distributors—like Columbia Distributing Company which operates in two states—have agreed to a larger scope of production, and (3) that "we can probably reach agreement" if Breakthru is willing to produce data "on top SKUs with some limitations on time and states," as well as "other documents to understand how that pricing is reflected in the data and set." *Id.* at 1. Breakthru has not responded, instead joining the Distributors in refusing to produce anything.

In stark contrast, SGWS's experience with regional distributors has been collaborative and effective. For example, SGWS and Columbia Distributing—a regional distributor for Washington and Oregon—amicably resolved the subpoena. SGWS served the same subpoena on Columbia as the Distributors and made the same initial offer to narrow Columbia's production obligations. Rather than digging in and refusing to counteroffer, the parties continued to negotiate, and Columbia ultimately agreed to produce data on its top 50 wine and top 50 spirits SKUs in Washington from 2023 through 2025. Ex. 19 (Email exchanges between R. Powell and R. Solomon). Similarly, SGWS has had productive discussions with Empire Merchants, a New York distributor that ranks among the largest in the country by volume. Empire has agreed to produce data on 100 SKUs and the parties are negotiating the specifics of that proposal.

---

transaction list as a framework, would result in severely prejudicial delay. Based on the pace and engagement during current negotiations, starting again in late May would mean, at best, SGWS would not receive any documents from the Distributors until late summer.

Accordingly, SGWS now respectfully moves this Court to compel the Distributors to produce all existing documents responsive to SGWS's requests.

## B.    SGWS's Contentions and Authorities

The parties' dispute focuses on the relevance and alleged burden of all SGWS's subpoena requests, except Request No. 3.  The parties here set forth their primary arguments on those issues.  Nevertheless, in Section III below, the parties have reproduced the RFPs in the subpoena, followed by the Distributors' original response to each RFP and a brief statement from each party.

The Distributors all raise variations of the same arguments: alleging the subpoena requests are irrelevant, overbroad, unduly burdensome, and seek confidential information. *See, e.g.,* Exs. 9 and 10.  These arguments are without basis.  The information sought is relevant and proportional to the needs of the broad case the FTC has brought against SGWS because it will help SGWS rebut the FTC's prima facie case and support SGWS's meeting competition and cost justification affirmative defenses.  Furthermore, the protective order adequately addresses the Distributors' confidentiality concerns.  The Court should compel production.

### 1.  Legal Standard

A Rule 45 subpoena is subject to the same scope of discovery as is permitted under Rule 26.  *See Ceballos v. Banda Maguey Corp.*, 2025 WL 1122079, at *3–4 (C.D. Cal. Feb. 27, 2025); *see also Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, 2024 WL 2106730, at *7 (C.D. Cal. Apr. 29, 2024).  Rule 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  In other words, "Rule 26(b) is to be 'liberally interpreted to permit wide-ranging discovery of information…'"  *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2022 WL 18938246, at *3 (C.D. Cal. Jan. 10, 2022) (quoting *Comcast of Los Angeles, Inc. v. Top End Int'l, Inc.*, 2003 WL 22251149, at *2 (C.D. Cal. July 2, 2003)).

Relevancy for purposes of discovery is defined "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any issue in the case." *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2019 WL 3069009, at *5 (C.D. Cal. Apr. 29, 2019) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). A party objecting to discovery bears the burden to show why a particular discovery request is improper. *Mohamed v. Experian Info. Sols., Inc.*, 2018 WL 6184768, at *1 (C.D. Cal. Aug. 9, 2018). District courts have broad discretion in controlling discovery. *Toman v. Glomboske*, 2021 WL 3503062, at *6 (C.D. Cal. Mar. 25, 2021).

## 2. SGWS's Requests Are Relevant.

At the discovery stage, "the bar for relevance of discoverable information is low." *Heckman v. Live Nation Ent., Inc.*, 2022 WL 19376995, at *1 (C.D. Cal. June 7, 2022). Where relevance is in doubt, a "court should be permissive" in allowing discovery. *WPIX, Inc. v. Broad. Music, Inc.*, 2011 WL 9753912, at *2 (C.D. Cal. July 5, 2011); *Negotiated Data Sols. LLC v. Dell, Inc.*, 2009 WL 733876, at *2 (N.D. Cal. Mar. 17, 2009) ("Where relevance is in doubt … the court should be permissive.") (internal citation omitted); *Linear, LLC v. Brewer*, 2009 WL 10671747, at *3 (S.D. Cal. Aug. 10, 2009) (same) (internal citation omitted). The party resisting discovery carries the "heavy burden of showing why discovery should be denied." *Hereford v. City of Hemet*, 2023 WL 6813740 (C.D. Cal. Sept. 14, 2023) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

The Distributors collectively question the relevance of all 14 of SGWS's requests.[15] As SGWS repeatedly explained during meet and confers, all of its requests are relevant.

*First*, the requested documents are relevant to SGWS's statutory defenses of meeting competition and cost justification. To make out a meeting competition defense,

---

[15] Despite questioning relevance, the Distributors have indicated they have no information responsive to Request No. 3.

SGWS must show "the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 82 (1979) (internal citation omitted). "A good-faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor is sufficient to satisfy the § 2(b) defense." *Id*. (citations omitted); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 454, 470 (1978) ("[G]ood faith is a flexible and pragmatic, not technical or doctrinaire, concept") (citation omitted). Several of SGWS's requests relate to the Distributors' prices to retailers, which will provide the baseline for SGWS to show its prices match competitors'. *See* Ex. 4, Request Nos. 1, 3, 7-9.

The Distributors cannot oppose discovery on the grounds that SGWS must have been aware of its competitors' prices for those prices to be relevant. A good-faith belief that a competitor was offering a lower price is sufficient for a meeting competition defense. *Rsrv. Supply Corp. v. Owens-Corning Fiberglas Corp*., 971 F.2d 37, 44 (7th Cir. 1992); *see also Uinta Oil Refin. Co. v. Cont'l Oil Co*., 36 F.R.D. 176, 180-81 (D. Utah 1964) (stating it "may well be" that the meeting competition "defense does not require a competitor to have actual knowledge of the identity and price of the competitor whose price is being met" and "pricing data…are clearly relevant" to discovery). At best the Distributors' argument is that competitor data alone is not sufficient to make out a meeting competition defense. But regardless of whether SGWS must also prove it was aware of competitor prices, competitor prices are discoverable.

Further, federal courts addressing this exact issue have permitted antitrust defendants to subpoena competitors' purchase, sales, and pricing data to solidify a meeting competition defense. *See, e.g.*, *Covey*, 340 F.2d at 997; *Uinta Oil*, 36 F.R.D. at 180-81 (denying non-party competitor's motion to quash defendant's subpoena seeking purchase and sales prices); *United States v. Am. Optical Co.*, 39 F.R.D. 580, 585-87 (N.D. Cal. 1966) (finding document requests served on defendant's non-party competitors—those

showing sales in units and dollars, price lists, off-list pricing, and profit and loss statements—were "both relevant and necessary" to defendant's meeting competition defense to Sherman Act claim). *Covey Oil* is particularly instructive and, as far as SGWS is aware, the only appellate decision to address this issue. There, an oil company sought proprietary information, including gasoline purchasing and sales data, from third-party competitors to support a meeting competition defense against Sherman Act and Robinson Patman Act claims. 340 F2d. at 997-98. The court found the data sought "directly pertain[s] to… the Robinson-Patman Act charges and to the defenses asserted against those charges," had "substantial value because it is relevant and vital to the defenses asserted," and ordered production. *Id* at 997-99.

It is of no consequence that SGWS and the Distributors offer different products. Generally, because of exclusivity agreements, there is only one distributor of an alcohol product in a given state. But different alcohol products compete[16] and the prices of competing products are relevant. For example, a Texas customer considering tequila at Total Wine & More in College Station can choose between purchasing the Herradura Blanco Reyes distributes (750 ml, $35.99) and the Casamigos Blanco SGWS distributes

---

[16] *See generally* Daniel M. Micu et al., *Competitive Advantage in the World of Wine – An Analysis of Differentiation Strategies Developed by Sectoral Brands in the Global Market*, Foods (May 2025), available at https://www.mdpi.com/2304-8158/14/11/1858 (last accessed Feb. 2, 2026) at 5 (describing how global wine markets are "highly competitive," and providing examples of how wine brands attempt to differentiate to gain a competitive advantage); Bartender Spirits Awards, *Competition in the Spirits Industry: A Primer*, https://bartenderspiritsawards.com/en/blog/insights-1/competition-in-the-spirits-industry-a-primer-603.htm (last accessed Feb. 2, 2026) (describing competition between established, heritage spirits brands and emerging craft distilleries).

(750 ml, $33.99).[17]  Likewise, retailers negotiating with SGWS and other Distributors can pit their products against one another to achieve the best price.

The FTC agrees the Distributors' sales data is relevant to the meeting competition defense.  In 2023, when this matter was still in the civil investigation phase ("CID"), the FTC issued subpoenas to 10 of SGWS's largest chain retail customers, including Total Wine—one of the largest wine and spirits retailers in the United States.  Ex. 20 (Petition of FTC for a Show Cause Hearing or Order Enforcing Civil Investigative Demand, *FTC v. Retail Services & Systems, Inc.*, No. 1:23-mc-0028 (E.D. Va.) (filed Oct. 20, 2023), at ¶¶ 7-8.  The FTC sought, among other things, "data and purchases of relevant products from distributors RNDC and Breakthru."  Ex. 21 at 10.  In response, Total Wine filed a petition to limit the CID, asserting arguments of "overbreadth, irrelevance to the investigation, and unreasonable burden."  Ex. 20 at ¶15.  In moving to compel, the FTC correctly argued, "[i]nformation about Total Wine's purchases from other distributors is relevant to assessing the merits of potential defenses… such as a good faith attempt to meet the comparable price of a competitor, or to match the services furnished by a competitor."[18]  Ex. 21 at 6.

---

[17] Herradura Blanco, Total Wine & More – College Station, TX, https://www.totalwine.com/search/all?text=herruadura (last accessed Feb, 2, 2026) and Casamigos Blanco, Total Wine & More – College Station, TX, https://www.totalwine.com/search/all?text=casamigos (last accessed Feb 2, 2026); Casamigos Blanco, Proof by Southern Glazers Texas https://shop.sgproof.com/search?text=casamigos (last accessed Feb. 2, 2026); Brands, Reyes Beverage https://reyesbeveragegroup.com/brands?category=spirits (last accessed Feb. 2, 2026).

[18] SGWS has access to Total Wine's FTC CID production.  Total Wine's production does not provide sufficient information for SGWS to fully defend itself, primarily because the production is limited to data from just one retailer in only 12 of the 30 states at issue, and SGWS had no role in negotiating the specific data fields produced.

SGWS's requests are also relevant to its cost-justification defense. *See, e.g.*, Ex. 4, Request Nos. 5-6, 10-12. The RPA exempts as legal price "differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered." 15 U.S.C. § 13(a). SGWS seeks to prove the differences in prices it charges to chain retail and independent retailers are justified by cost savings and consistent with industry practice. The data SGWS requests about costs in the industry will support SGWS's argument that its price differentials are justified by the varying costs of goods sold. *See, e.g.*, Ex. 4, Request Nos. 5-6, 10-12.

*Second*, SGWS's requests are relevant to its rebuttal of the FTC's prima facie case. To sustain an RPA claim, the FTC must show that SGWS's pricing practices had an anti-competitive effect on the market. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). The FTC alleges injury by pairing transactions from two retailers—one allegedly favored and one allegedly disfavored—and identifying differences in price SGWS charged those retailers. SGWS believes several of the retailers the FTC pairs are not in competition and therefore any difference in prices charged to them would not violate the RPA. The information SGWS seeks—including information on the array of products sold to retailers, volumes, and prices—will help show various classes of retailers have different business models, order to meet different needs, and do not necessarily compete for the same end customer by virtue of selling alcohol. *See* Ex. 4, Request Nos. 1, 6-8, 12.

The Distributors make no credible argument as to why their documents are not relevant to SGWS's ability to prove the above defenses. Indeed, the Distributors generally make no argument at all beyond generic statements such as that SGWS's requests are "not relevant to any claim or defense." *See, e.g.*, Ex. 9 (objections to SGWS Requests 6-14).

In sum, SGWS and the FTC agree the Distributors' sales and purchasing data is a key piece of the underlying case, and the Distributors have raised no legitimate argument showing otherwise. The Court should find the requested documents are relevant.

### 3. SGWS's Discovery Requests Are Not Unduly Burdensome.

The Distributors cannot refuse to produce documents based on conclusory claims of burden. *See, e.g.,* Ex. 9 at 3 ("[C]ollectively, the burden and expense of complying with the Requests outweigh the likely benefit to the case"). A party resisting discovery must show specifically how the requested discovery was overly broad or unduly burdensome by submitting affidavits or offering evidence to specifically support the nature of the burden. *Baykeeper v. Kramer Metals, Inc.*, 2009 WL 10671577, at *7 (C.D. Cal. Feb. 27, 2009). The Distributors cannot "simply invoke generalized objections without describing, in specific detail, how each request is overbroad and unduly burdensome." *Herbalife Int'l of Am., Inc. v. Kamel*, 2023 WL 6193006, at *4 (C.D. Cal. July 20, 2023); *see also Robinson v. Cnty. of San Bernardino*, 2025 WL 2427980, at *4 (C.D. Cal. July 7, 2025) (finding "non-specific objections as to relevancy and burdensomeness are improper."); *U.S. E.E.O.C. v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1108 (C.D. Cal. 2009) ("the Court cannot find that Respondents met their burden of showing that the subpoena is overbroad or unduly burdensome" where respondents failed to "provide any information on the cost of producing evidence…").

RNDC claims complying with SGWS's subpoena would require it to license additional software and hire an additional worker at an estimated cost of approximately $200,000. Butzer Decl. ¶9. SGWS is skeptical of RNDC's estimate. First, RNDC has not submitted any declarations explaining where these estimates came from. Second, RNDC recently announced it will sell to Reyes its operations in Florida, Hawaii, Illinois,

Maryland, South Carolina, Virginia, and Washington D.C,[19] and it is likely RNDC had to produce sales/purchasing data to facilitate that transaction.  Third, as part of this case, SGWS produced transactional data to the FTC for every state in which it operates over an eight-year period—and did so while expending fewer resources than RNDC claims would be required to comply with SGWS's subpoena. All the above suggest that RNDC has the capacity to produce all purchasing and sales data without undue burden.

The other four Distributors have provided no specifics about the cost or time needed to respond to the subpoena.  They state in generic terms that the subpoena is overly broad, unduly burdensome, and disproportionate to the needs of the case.  *See, e.g.,* Ex. 9 at 3.  But SGWS has limited its request to the time period of the FTC's claims and requests documents only in the relevant states in which each Distributor operates.  *See* Appendix A.  Thus, the subpoena is narrowly tailored.

More developed claims of burden, from any of the Distributors, would still ring hollow given their size and scope.  RNDC is the nation's second largest beverage distributor, operating in 39 states over the relevant period and employing over 13,000 people.[20]  Reyes is the sixth largest privately held company in the U.S., with over 10,000 employees, 115,000 customer accounts, and operations in 12 states.[21]  Breakthru operates

---

[19] Sarah Neish, The Drinks Business, *RNDC to Offload Assets to Reyes Beverage Group*, (Jan. 13, 2026) available at https://www.thedrinksbusiness.com/2026/01/rndc-to-offload-assets-to-reyes-beverage-group/ (last accessed Feb. 3, 2026).

[20] Forbes, *Republic National Distributing Company,* https://www.forbes.com/companies/republic-national-distributing-company/ (last accessed Feb. 3, 2026).

[21] Reyes Beverage Group, *Brands,* https://reyesbeveragegroup.com/brands?category=spirits; https://reyesbeveragegroup.com/distributors; Sarah Neish, The Drinks Business, *RNDC to Offload Assets to Reyes Beverage Group*, (Jan. 13, 2026) available at https://www.thedrinksbusiness.com/2026/01/rndc-to-offload-assets-to-reyes-beverage-group/ (last accessed Feb. 3, 2026).

in 16 states plus Canada and employs over 10,000 people.[22]  Johnson Brothers operates in 20 states and employs over 5,000 people.[23]  Finally, Winebow operates in all 51 U.S. markets, including as a distributor in 18 states.[24]

Unlike the Distributors—who have nationwide operations, advanced IT systems, and thousands of employees, yet still refuse to produce *any* documents in part because of an "undue burden"—other, smaller distributors have agreed to produce data in response to SGWS's subpoenas.

SGWS's experience with Columbia Distributing Company is an instructive example for how this process should work.  Columbia distributes wine and spirits in Washington and Oregon, including some major brands like Captain Morgan and Bogle wine.[25]  Throughout several meet-and-confers with Columbia, it explained that it largely did not have documents responsive to most of SGWS's non-data requests but was willing to produce data if SGWS narrowed its requests.  *See* Ex. 19 at 6.  SGWS proposed that Columbia produce data on its top 100 wine and top 100 spirit SKUs for Washington only. Columbia countered with a proposal to produce data on 50 products for 2023-2025 in Washington.  *Id.* at 4-6.  The parties then agreed to a compromise whereby Columbia will produce its top 50 SKUs for both wine and spirits in Washington for 2023-2025.  *Id.* at 1-

---

[22] Breakthru Beverage Group, *About,*  https://www.breakthrubev.com/About (last accessed Feb. 3, 2026).

[23]Johnson Brothers, *Our Story*, https://www.johnsonbrothers.com/about/our-story/ (last accessed Feb. 3, 2026).

[24] Winebow Fine Wine + Spirits, *Our Company, Our Story*, https://www.winebow.com/our-company/our-story (last accessed Feb. 3, 2026).

[25] Columbia Distributing, *Showing Results for Bogle*, https://products.vtinfo.com/brandbuilder/33291-11/search/bogle (last accessed Feb. 3, 2026); Columbia Distributing, *Capitan Morgan*, https://products.vtinfo.com/brandbuilder/01191/brands/detail/1009991 (last accessed Feb. 3, 2026).

2. Columbia will also produce price books that show list prices and available discounts and has agreed to answer questions SGWS may have about the data after it is produced. *Id*. Both sides acted reasonably, and the negotiations proceeded as SGWS expected.

Columbia is not alone in agreeing to produce data. Another Washington-based distributor, Olympic Eagle, has also agreed to produce data for a subset of SKUs following a constructive series of meet-and-confers and email exchanges to identify what data Olympic Eagle has. Empire Merchants, which operates exclusively in New York but is nonetheless reported to be a top 10 distributor, has proposed producing data on its top 50 wine and top 50 spirit products. SGWS and Empire are discussing the specifics of this proposal.

Each Distributor has had multiple opportunities to engage with SGWS about ways to potentially narrow the requests, but none have seriously done so.

Limiting data production based on a sampling from the FTC's paired transactions spreadsheet is unworkable. As SGWS has repeatedly explained, the FTC maintains that its list of 17 million transaction pairs may be over or underinclusive, meaning SGWS risks selecting only transactions that ultimately prove irrelevant to the FTC's case. Nor do the Distributors' suggestions—such as asking SGWS to submit a new offer based on the FTC's paired transactions—constitute genuine counteroffers. They are merely invitations for further discussion, with no indication of any commitment to produce documents in return. The Distributors cannot continue insisting SGWS "try again" while SGWS waits indefinitely in hopes that one of its proposals bears fruit. The parties have engaged in multiple conversations without making any meaningful progress, despite the fact that the subpoenas were issued nearly six months ago in August 2025. This Court should not reward the Distributors for their unwillingness to engage with SGWS to resolve their concerns about burden and breadth.

### 4. SGWS's Requests Are Proportional To The Needs Of The Case

SGWS's subpoena requests are proportional to the broad case the FTC has brought. Proportionality is determined by several factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *O. T. v. BabyBjorn Inc*., 2022 WL 17219007, at *3 (C.D. Cal. Apr. 4, 2022). SGWS seeks information relevant to key elements of the FTC's case and SGWS's defenses. To the extent the Distributors perceive the Requests as broad, they are proportional to the FTC's allegations, which challenge millions of sales in 30 states, for thousands of different products, over an eight-year period.

Each proportionality factor favors production. The stakes of this case are high: the FTC seeks nationwide injunctive relief, and SGWS's pricing practices are common in the industry. Such an injunction would require SGWS to radically change its business practices and will harm consumers by increasing prices across the country. Discovery from competitors is crucial for resolving key issues in this case, such as whether SGWS's pricing practices are consistent with those of its competitors, pro-competitive, and geared toward meeting competition.

### 5. The Protective Order Alleviates Confidentiality Concerns

Finally, the Distributors cannot refuse to produce documents on the basis that the information sought is confidential. Confidentiality "is not a basis for withholding information in the ordinary course of discovery, especially with a protective order in place to restrict its access and use." *United Artists Corp. v. United Artist Studios LLC*, 2019 WL 9049050, at *5 (C.D. Cal. Oct. 7, 2019); *see also Davis v. Schneider*, 2020 WL 9074713, at *5 (C.D. Cal. Dec. 18, 2020) ("Rule 26(b)(1) exempts from discovery privileged documents—not documents that are confidential.").

The wide latitude of discovery applies with equal weight even in matters involving trade secrets. *See, e.g., RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 10312432, at *13 (C.D. Cal. Nov. 5, 2021) ("[T]here is no absolute privilege for trade secrets and similar confidential information."). Thus, courts in this circuit routinely hold that protective orders are sufficient to address parties' confidentiality concerns. *See, e.g., Bryant v. Mattel, Inc.*, 2007 WL 5416681, at *8 (C.D. Cal. Jan. 26, 2007) (holding that the protective order is sufficient to protect any confidential trade secret information); *In re McKesson Governmental Entities Average Wholesale Price Litig.,* 264 F.R.D. 595, 603 (N.D. Cal. 2009) (same); *Life Fitness, LLC v. Forward Motion Pictures, LLC*, 2025 WL 435834, at *8 (E.D. Cal. Feb. 7, 2025) (A "protective order allowing 'confidential' or 'highly confidential' designations is sufficient to protect a nonparty's trade secrets.") (quoting *AFMS LLC v. United Parcel Serv. Co.,* 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012)).

There is no basis for the Distributors' confidentiality concerns because there is a Protective Order in the underlying case that adequately protects sensitive information. SGWS cannot share the Distributors' sensitive documents, and the FTC cannot use these documents for purposes other than the current litigation. Per the Protective Order, any confidential or proprietary information or trade secrets would only be seen by limited parties. Ex. 4, Exhibit C (Amended Stipulated Protective Order). SGWS's outside counsel cannot show the Distributors' information to in-house counsel unless they "have no involvement in competitive decision-making" at SGWS and "have responsibility for preparation, trial, or resolution of the Action," *id.,* Exhibit C at 14; and the FTC may use information disclosed by the Distributors "only for prosecuting, defending, or attempting to settle this Action," and may not use the information "at any time for any other purpose whatsoever." *Id.*, Exhibit C at 13-14. Thus, the concern that production would be harmful to a Distributor or other third party's business interests is unfounded.

*     *     *

For all the foregoing reasons, the Court should compel production of all documents responsive to SGWS's Requests.

### C.    The Distributors' Factual Background

On December 12, 2024, the FTC sued SGWS under Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.  Dkt. 1 ¶¶ 85-88.  The FTC's lawsuit brings a "secondary line" price discrimination case against SGWS, alleging that SGWS engaged in price discrimination by charging "disfavored" small, independent retailers higher prices than "favored" large chain retailers.  *Id.* ¶ 32.  No other beverage alcohol distributor is a defendant.

On August 14 and 18, 2025, SGWS served identical subpoenas on the Distributors demanding six years' worth of their most sensitive transactional and pricing information, among other requests for competitively sensitive materials.  *See e.g.,* Ex. 3 (Aug. 18, 2025 SGWS Subpoena to Reyes).  On or around October 2, 2025, SGWS served amended subpoenas expanding its requests to two additional states.[26]  Exs. 4-8 (Oct. 2, 2025 Am. SGWS Subpoena to RNDC); Ex. 5 (Oct. 2, 2025 Am. SGWS Subpoena to Reyes); Ex. 6 (Oct. 2, 2025 Am. SGWS Subpoena to Breakthru); Ex. 7 (Oct. 2, 2025 Am. SGWS Subpoena to Johnson Brothers); Ex. 8 (Oct. 2, 2025 Am. SGWS Subpoena to Winebow).

SGWS's subpoenas to the Distributors include fourteen requests and thirty-eight sub-requests for highly competitively sensitive information, including the Distributors' sales, cost, and pricing data.  *Id.*  SGWS's requests ask for:

---

[26] SGWS initially requested data for 44 "Relevant States" and the District of Columbia: Alaska, Arizona, Arkansas, California, Colorado, Delaware, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Washington, D.C., West Virginia, and Wyoming. Southern later served amended subpoenas that added Alabama and Florida as "Relevant States."

- Data reflecting every transaction between the Distributors and any retailer or supplier from the last six years in 46 states and Washington, D.C., including states where the FTC has not challenged SGWS's pricing and states where the Distributors do not even operate[27] (Requests 1-4);

- The Distributors' pricing, cost, and accounting strategies and practices from the last six years in 46 states and Washington, D.C. (Requests 5, 6, and 12);

- Documents relating to whether and how the Distributors price their products in comparison or in response to competitors (Requests 7 and 8);

- Documents relating to the Distributors' strategies in purchasing and selling beverage alcohol from suppliers and to retailers (Requests 9 and 11);

- The Distributors' pricing data, including confidential contractual agreements with its suppliers for the purchase of beverage alcohol (Request 10); and

- Documents relating to differences in the Distributors' pricing in 46 states and Washington, D.C, as well as the impact of "come to rest" laws and other regulations in certain states (Requests 13 and 14).

SGWS has also subpoenaed at least 10 other beverage alcohol distributors seeking similar information. In addition to dispute outlined in this Stipulation, SGWS has moved to compel production from at least three other distributors who challenge SGWS's right to their proprietary information. *See Federal Trade Commission v. Southern Glazer's Wine and Spirits, LLC*, No. 3:26-mc-00001-K-BN (N.D. Tex.) (Favorite Brands); *Southern Glazer's Wine and Spirits, LLC v. Mexcor*, No. 4:26-mc-00285 (S.D. Tex.)

---

[27] SGWS represents to the Court that it is only seeking data in states identified as at issue by the FTC where SGWS and a Distributor have significant presence, citing a document created by SGWS's counsel, Appendix A. This is false. SGWS's subpoenas request from every Distributor information for 46 states and Washington D.C. no matter where they operate, showing SGWS cannot even be bothered to tailor its subpoenas, and amended subpoenas, to the specific distributor from which they are seeking information. As explained further below, SGWS requests information from states not identified in the 17 million paired transactions produced by the FTC.

(Mexcor); and *Federal Trade Commission v. Southern Glazer's Wine and Spirits, LLC*, No. 2:25-mc-00041-SMB (D. Ariz.) (Hensley).

As outlined below, each of the Distributors have worked diligently with SGWS over the past several months to develop a mutually agreeable proposal. Despite the Distributors best efforts to find common ground, the parties reached an impasse.

### **RNDC**

On August 18, 2025, SGWS served its subpoena on RNDC. Declaration of Eliot F. Turner. ¶ 4. Less than a week later, RNDC contacted SGWS requesting to discuss SGWS's document requests. Turner Decl. ¶ 4; Ex. 24 (Email exchanges between E. Turner and R. Powell). RNDC then served its responses and objections to SGWS's subpoena on September 17, 2025 and asked when SGWS would like to discuss them. *Id.* SGWS and RNDC conferred on September 25, during which SGWS indicated that it was willing to try to narrow its data requests, at least to certain retail customers and time periods, after the FTC identified the SGWS transactions it believed to be discriminatory. *Id.* ¶ 5. SGWS served its amended subpoena, along with case citations that it said supported its interpretation of the relevance of its requests, on October 2, 2025. *Id.* ¶ 6.

Following the intervening government shutdown, SGWS contacted RNDC on December 2, 2025 requesting to meet that week. *Id.* ¶ 7; Ex. 25 (Email exchanges between E. Turner and C. Butzer). During their meet and confer on December 5, RNDC asked SGWS to analyze the paired transactions data produced by the FTC to help SGWS narrow its requests to relevant information. *Id.* ¶ 8. SGWS said it couldn't do that because the FTC's production of 17 million transactions did not narrow the scope of the case. *Id.* SGWS proposed that RNDC produce data for its "top" 100 SKUs for wine and liquor to which RNDC requested clarification whether SGWS sought data for RNDC's top SKUs for each state or for its overall business operations. *Id.* SGWS also shared that the discovery period in the case was extended to September 2026 and confirmed its focus was the data requested in Requests 1 and 2. *Id.*

After meeting and conferring on December 5, RNDC agreed to discuss a potential SKU-based resolution with its client, assess and share the burden to collect the requested data, and identify the protective order provisions with which it was concerned. *Id.* ¶ 9. In turn, SGWS agreed gather more details on their proposed SKU-based approach. *Id.* Through additional correspondence on December 15, 2025, RNDC confirmed that they did not have information responsive to RFP No. 3 and provided case citations supporting their position regarding the meeting competition defense. *Id.*

During SGWS's and RNDC's December 17, 2025 meet and confer, RNDC and SGWS discussed their differences of opinion of the relevance of RNDC's data to SGWS's meeting competition defense and the locations of RNDC's data. *Id.* ¶ 10. RNDC confirmed that a SKU-based approach would not work, informed SGWS of the protective order issues, and inquired about the relevance of RNDC's supplier data, to which SGWS said it would respond in writing at a later date. *Id.* On January 8, 2026, SGWS explained it believed RNDC's supplier data would support SGWS's cost justification defense. *Id.* ¶ 12.

On January 5, 2026, RNDC asked SGWS if the FTC produced the information it gathered from the CIDs the FTC issued to SGWS's retail customers over the past year and on January 7, SGWS responded that the FTC had not asked any retailers for pricing-related information for any of SGWS's competitors in the investigation stage or in litigation. *Id.* ¶ 11. On January 9, 2026, RNDC again asked SGWS to look into whether it had possession of the data the FTC gathered through CIDs which requested much of the same information SGWS sought from RNDC, as well as the feasibility of narrowing its requests a representative sample of the 17 paired million transactions identified by the FTC. *Id.* ¶ 13.

On January 12, 2026, SGWS responded that because the FTC could not commit to limiting the transactions at issue to those 17 million produced, SGWS could not narrow its scope accordingly. *Id.* ¶ 14. SGWS also made a formal written proposal to narrow the

scope of SGWS's Requests 1 and 2 which included: 1) RNDC providing SGWS a list of its top 100 SKUs for wine and for liquor in each open or franchise state where both SGWS and RNDC sell, 2) the opportunity for SGWS to review the list and propose substitutions, and 3) after agreeing on the SKUs, RNDC producing the requested information from the last six years. *Id.*

On January 13, 2026, RNDC and SGWS conferred once more. *Id.* ¶ 16. SGWS informed RNDC that SGWS did receive the documents the FTC obtained from the CIDs, which included data related to retailers' purchases from RNDC, but that SGWS did not believe the data was sufficient because SGWS did not negotiate the scope of the data production, retailers will necessarily have different data than RNDC has, data from only the entities that were served CIDs is not comprehensive, the data doesn't cover the full time period, and SGWS has no way to deduplicate what it already has and what it is asking for from RNDC. *Id.* ¶ 15. RNDC informed SGWS that it would face a substantial burden responding to SGWS's proposal because it would require RNDC to purchase new licenses and hire temporary staff to build a program to extract RNDC's current and archived data. *Id.* ¶ 16.

On January 15, 2026, RNDC informed SGWS it believed the parties were at an impasse. *Id.* ¶ 17. RNDC also informed SGWS that RNDC, along with 4 other subpoenaed distributors, were prepared to file a motion to quash SGWS's subpoenas, but proposed the parties attempt to resolve their disputes in the Central District of California rather than in the various districts where SGWS had served it subpoenas. *Id.* The parties then sought guidance from the Court on how to proceed and were directed to follow Local Rule 37. *Id.* ¶ 18. On January 30, 2025, SGWS sent the Distributors a deficiency letter and the parties conferred by videoconference pursuant to Local Rule 37-1 on February 3, 2025. *Id.* ¶ 19.

**<u>Johnson Brothers</u>**

On August 18, 2025, SGWS served on Johnson Brothers a subpoena to produce documents, later serving an amended subpoena on October 2, 2025, which expanded the definition of "Relevant States" (collectively, "Johnson Brothers' Subpoena"). Declaration of C. Scott Lent ¶ 2. Johnson Brothers, through the undersigned counsel, accepted receipt of the subpoenas (Lent Decl. ¶¶ 2, 4) and, as evidenced in its Responses and Objections (Ex. 10), agreed to meet and confer on each request in the Johnson Brothers' Subpoena. Johnson Brothers' and SGWS' counsel met on four separate occasions: August 22, October 24, and December 1, 2025 and January 5, 2026. *See* Ex. 17; Lent Decl. ¶¶ 5, 11, 12, 14. At each meet and confer, Johnson Brothers, through counsel, sought to understand the scope of the Johnson Brothers' Subpoena to reach a common ground. *Id.*

Save for a brief pause during the shutdown of the federal government and concurrent stay of this case from October 2, 2025 until November 13, 2025, Johnson Brothers engaged in good faith with SGWS to attempt to find a common ground regarding the scope of the Johnson Brothers' Subpoena. Lent Decl. ¶¶ 10, 11, 14. Following a meet and confer on December 1, 2025, SGWS requested that Johnson Brothers produce data for the top 100 SKUs for wine and the top 100 SKUs for spirits in each open or franchise state where both SGWS and Johnson Brothers sell to resolve Requests 1, 2, and 4, while reserving the right to seek documents and information in response to the remaining requests. Ex. 17 at 5-6; Lent Decl. ¶¶ 12, 13. In response, Johnson Brothers, through counsel, explained that asking for the top 100 SKUs for each wine and spirits was overbroad because it could tend to cover products or sales to retailers not at issue in the case. Lent Decl. ¶ 14. Instead, Johnson Brothers countered that it would be willing to produce data if SGWS could provide Johnson Brothers with a list of paired transactions at issue in the case. *Id.* Johnson Brothers additionally sought assurances that SGWS would not seek information and documents in response to the remaining Requests, or additional data in response to Requests 1, 2, and 4 at a later stage, and Johnson Brothers sought assurances from SGWS additionally to agree to certain confidentiality protections

not addressed in the case's operative Protective Order, including treating documents and data produced by Johnson Brothers on an outside counsel basis only without the possibility of moving the Court for a de-designation to allow in-house counsel access to such documents and data. *Id.* SGWS refused to acknowledge Johnson Brothers' counteroffer and additionally threatened Johnson Brothers with a Rule 37 motion should Johnson Brothers continue to refuse to produce the data SGWS requested. *Id.*

### Reyes Holdings

SGWS served an initial subpoena on Reyes on August 18, 2025 and amended subpoena on October 2, 2025. Reyes participated in four separate meet-and-confer discussions with counsel for SGWS by videoconference on August 22, 2025 (Declaration of W. Mudge ¶ 2), October 6, 2025 (*id.* ¶ 3), November 21, 2025 (*id.* ¶ 4) and December 30, 2025 (*id.* ¶ 5), as well as email correspondence, including during a temporary stay in this litigation. Throughout these discussions, Reyes engaged in substantive meet-and-confer efforts in an effort to determine if a workable compromise was possible. Reyes consistently explained Reyes' concerns including:

a) overbreadth of SGWS's requests, which even after SGWS eventually agreed to narrow them, included among many other things information on Reyes' costs for its own purchases of wine and spirits as well as sales price and margin data for products and transactions bearing no discernible relationship to the SGWS transactions being litigated in this case (*id.* ¶ 2);

b) burden of collecting and reviewing documents and collecting, compiling, reconciling and filtering data, including data for specific SKUs (*id.* ¶¶ 4, 5);

c) lack of relevance of Reyes' data to SGWS's purported defenses (*id.* ¶¶ 2, 3, 5);

d) extreme commercial sensitivity of the requested data and documents, and related confidentiality concerns about the adequacy of the current protective order (*id.* ¶¶ 2, 3, 5).

Notwithstanding these concerns, Reyes also consistently engaged in good faith discussions about potential subpoena modifications and compromises. This included

providing information on Reyes' wine and spirits operations and beverage distribution footprint, available documents and specific fields of sales data. Reyes repeatedly attempted to explore a data limitation focused on the paired transactions at issue in the case, which is an approach SGWS initially appeared willing to consider, but ultimately rejected. SGWS eventually proposed limiting production by reference to "top" SKUs per state, and Reyes candidly responded that such filtering would not materially reduce collection effort or commercial sensitivity concerns because those SKUs account for a large share of transactions requiring significant processing to identify and compile, and by definition would include the sales Reyes' most commercially important wine and spirits products. Reyes also proposed state geographic limitations and other potential narrowing options. Despite this dialogue, SGWS and Reyes could not reach agreement and are at an impasse. *Id.* ¶¶ 2-5.

### **Breakthru**

The subpoena to Breakthru posed an onerous and unreasonable burden. In the jurisdictions in which Breakthru operates about the Subpoena seeks data and other information, Breakthru's operations in these jurisdictions are not minimal or incidental: in these states, Breakthru distributes many of the most popular and frequently-purchased brands of wine and spirits. Breakthru estimates that a data set reflecting Breakthru's sales to retailers of wine and spirits in these jurisdictions from 2020 through the end of 2025 would reflect over 145 million individual sales of units (e.g., a bottle, case, or pallet), and over 4.6 million purchases of alcoholic beverages from suppliers. Declaration of Elton Martins ¶¶ 10; 17. To simply gather the data related to Breakthru's sales to retailers would require at least 80 man-hours, with an additional 32 man-hours required to compile data related to purchases from suppliers. *Id.* ¶¶ 12; 18.

Moreover, much of the non-data information sought by the subpoena (such as agreements with suppliers and retailers) is not maintained in a centralized location, but rather resides only at the state and local level, requiring that any effort to gather non-data

information would require a harvesting of resources in every state, and likely would necessitate email searches of hundreds of individual custodians' emails and other electronic media.  Declaration of Sabrina Clergé ¶¶ 11-12; 16; 18.

Competition in the alcoholic beverage distribution industry is intense.  As a result, as is the case with the other Distributors, the commercial information the Subpoena seeks is the most valuable and sensitive of Breakthru's assets.  Martins Decl. ¶¶ 5-7.  Producing this information to SGWS would significantly risk Breakthru's critical information from being eventually being disclosed to SGWS's commercial decisionmakers, as well as others in the alcoholic beverage industry.  Under the Protective Order currently in place, even if Breakthru produced information designated as "Highly Confidential – Outside Counsel Only", SGWS could still share Breakthru's critical information with its experts retained in this litigation, whose identities are currently unknown to Breakthru, and who likely work or will work for a number of different competitors in the industry as well.  Dkt. 83, ¶ VIII.d.  SGSW could also later challenge any designation by Breakthru its information as "Highly Confidential – Outside Counsel Only" in this Court, thus risking that information Breakthru thought it was producing with the highest degree of protection could, in fact, ultimately be disclosed to others within SGWS, including its General Counsel, other in-house lawyers, and possibly additional employees.  *Id.* ¶ VII.

Against that background, however, Breakthru did not ignore, or seek to avoid wholly, SGWS's subpoena.  Breakthru timely served Objections and Responses to the Subpoena on September 18, 2025.  Declaration of Jeremy A. Rist ¶ 3.  Counsel for Breakthru and SGWS had a meet and confer call on September 26, 2025 during which SGWS's counsel rejected the possibility of producing a list of specific paired transactions about which SGWS wanted information (purportedly only because the FTC had not yet provided such a list to SGWS that would narrow the scope of the FTC's claims).  *Id.* ¶ 4.  After SGWS served an amended subpoena, during subsequent meet & confer calls on December 4 and December 23, 2025, SGWS's counsel suggested that Breakthru could

satisfy the subpoena by producing sales information reflecting the top 100 SKUs in each of wine and spirits, in each of the relevant jurisdictions, since 2020. *Id.* ¶ 6. But SGWS would not commit that it would not also want some at least of the non-data information SGWS's subpoena seeks. Even as to transactional data, however, ascertaining the identity of the "top 100" SKUs in each state over the relevant time period would pose a substantial challenge, and would not meaningfully reduce the amount of effort required to produce any data, in light of the fact that these top 100 SKUs would constitute a significant percentage of Breakthru's sales and purchases. Moreover, a list of Breakthru's top 100 products in each jurisdiction would, itself, constitute a valuable, sensitive trade secret of Breakthru, and would require substantial effort to calculate and compile.

But to avoid litigation expense and uncertainty about the requirement of future efforts, Breakthru made a meaningful counteroffer to SGWS's subpoena. On January 15, 2026, Breakthru's counsel emailed SGWS' counsel and offered that, to satisfy the Subpoena, Breakthru would produce data reflecting its sales to retailers for 30 SKUs in 5 states for 2 years, with SGWS choosing the jurisdictions and years for which Breakthru would produce. In return, Breakthru would produce nothing else under the Subpoena. But that was not the only material term of Breakthru's offer. Because of the critical commercial importance of this information, and the harm to Breakthru that would result from its broader disclosure and possible use, Breakthru would also require that SGWS commit that the information would be produced on an outside-counsel-only basis that would not be challenged, and, to the extent that SGWS intended to disclose Breakthru's information to retained experts or consultants, that Breakthru be informed of the identity of such persons, the identities of whom Breakthru would also keep confidential. *Id.* ¶ 7.

SGWS's response was essentially an offer to Breakthru to bargain against itself. Without counteroffering with a specific number of SKUs with which it would be satisfied, SGWS ultimately responded that the data offered was insufficient, and that Breakthru should offer to "produce based on top SKUs with some limitations on time and states."

SGWS did not state any more concrete parameters about the amount and nature of data that would satisfy its demands. SGWS also insisted that Breakthru would have to produce "any price books you have that correspond to the time period of the data. And depending on how the data reflects discounts we will want some documentation that would allow us to understand how those discounts are calculated." *Id.* ¶ 8. In short, SGWS reiterated that it would not be satisfied simply with the production of sales data, but instead continued to insist on the production of harder-to-define, potentially much more voluminous pricing and discount-related information that would give Breakthru no certainty whatsoever that any obligation under SGWS's subpoena had concluded.

### **Winebow**

As SGWS noted, SGWS and Winebow met three times to discuss the scope of SGWS's subpoena. During the first meeting on September 17, 2025, Winebow told SGWS that the subpoena was overbroad and overly burdensome on its face, seeking information regarding 44 states and Washington, DC. As just a few examples of the patent overbreadth of the subpoena, this list included states in which Winebow does not have any distribution operations, de minimis distribution volumes of wine and/or spirits, and—as a result—states in which Winebow does not compete with SGWS. To combat the overbreadth, Winebow asked if there was a way SGWS could think of to cull its requests including, possibly, by specific SKUs in the FTC's identified paired transactions, universal product codes (UPCs), or retailer customers. SGWS represented it would talk to its experts and revert—that never happened. Instead, on October 2, 2025, SGWS served an amended subpoena that not only failed to reduce Winebow's burden, it added two additional states to the subpoena's scope.

As a result of the stay in this case, SGWS did not request another meet and confer until December. During the meet and confer on December 11, 2025, SGWS raised for the first time its proposal that Winebow respond to its data requests by producing a list of Winebow's top 100 SKUs for both wine and spirits—i.e. two separate lists, so 200 SKUs

total—for each market of the 46 states and Washington DC in which Winebow operates for a six year period.  The parties did not discuss any of the other document requests in the Subpoena (Requests 4-14) other than SGWS's counsel's nebulous statement that he would consider dropping those document requests conditioned on Winebow producing data.  Though SGWS's offer did not appear to reduce Winebow's burden, Winebow still investigated the burden associated with preparing the bespoke data sets SGWS demanded. *See* Decl. of Michael Manzo.  The burden was substantial.  *See id.*

After determining the scope of burden, Winebow met with SGWS again on January 9, 2026 and again proposed using the paired transactions the FTC provided to SGWS to come up with a list of retailers and products that Winebow could collect data about to the extent they exist.  Had SGWS's counsel engaged on this point, Winebow could have explained that FTC has only identified paired transactions in 30 states, in only nine of which Winebow has distribution operations.  And two of those states have public disclosure laws regarding distributor pricing of beverage alcohol that SGWS has access to.  But SGWS did not engage on this point and pushed for a counter proposal (ignoring Winebow's paired transaction proposal).  SGWS held firm to its position that the starting point for any counter proposal was SGWS's SKU proposal—untethered to any of the transactions that have actually been challenged.

### D.    The Distributors' Contentions and Authorities

#### 1.  Legal Authority

Courts "must limit the frequency or extent of discovery" when it is not "relevant to any party's claim or defense" or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); 26(b)(2)(C).  When dealing with discovery to non-parties, as here, a court "***must*** quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter" or "subjects a person to undue burden . . . ." *Id.* 45(d)(3)(A)(iv) (emphasis added). In particular, a court may quash or modify a subpoena "if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information" and the

requesting party cannot "show a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Id.* 45(d)(3)(B)(i), (d)(3)(C)(i); *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 13108018, at *2 (C.D. Cal. June 24, 2019) (citing *Gonzalez v. Google*, 234 F.R.D. 674, 684 (N. D. Cal. 2006) (internal citations and quotation marks omitted)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Courts have the separate authority under Rule 26 "to issue an order to protect a party or person . . . from whom discovery is sought . . . from annoyance, embarrassment, oppression, or undue burden or expense" including "forbidding the disclosure or discovery" and "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1).

### 2. The Distributors' Information is Not Relevant to the FTC's Claims or SGWS's Defenses

SGWS contends that its requests are relevant to 1) SGWS's statutory defenses of meeting competition and cost justification; and 2) SGWS's rebuttal of the FTC's prima facie showing that SGWS's pricing practices had an anti-competitive effect on the market. Not so. While SGWS's requests may be relevant to a "primary-line" pricing discrimination case—where the competitive injury is to SGWS's competitors like the Distributors—that is not at issue here where the FTC alleges a "secondary-line" claim which injures competition among SGWS's favored and disfavored purchasers.

*First*, SGWS argues its requests are relevant to whether competition has been injured to "the advantage of a favored purchaser." *See U.S. Wholesale*, 89 F.4th at 1134. That is not plausible for SGWS's requests that seek information about the Distributors' relationships with *their suppliers* (e.g., RFP 2 (purchasing data), the Distributors' costs (RFP 6), RFP 10 (supplier contracts and negotiations), RFP 11 (supplier negotiating

strategies)).  Nor is information about the Distributors' sales to *their* customers relevant to whether competition *between SGWS's* customers has been harmed.

Determining whether SGWS's customers compete with each other requires examining whether *those* customers have "outlets in 'geographical proximity'" to one another (something that can be shown without information from the Distributors), that SGWS's customers "purchased goods of the same grade and same quality from [SGWS] within approximately the same period of time," and that the buyers are operating on the same "particular functional level such as wholesaling or retail."  *Southern Glazer's Wine & Spirits*, 2025 WL 1392166, at *5 (quoting *U.S. Wholesale*, 89 F.4th at 1142).  None of that requires information about *the Distributors'* customers or the prices at which the Distributors sell their products.  Indeed, the only information relevant to these elements is information that either SGWS or *its customers* have.

Information from the Distributors likewise would not help show or disprove that competition between SGWS's retail customers was harmed, which is shown through proof that "a favored customer received a significant price reduction over a substantial period of time."  *Id.* at *5 (quoting *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006)).  That can *only* be shown through *SGWS's* sales to *its* customers.  Another way of showing harm to competition is by proving that sales or profits were diverted from a disfavored buyer to a favored buyer, *Volvo Trucks*, 546 U.S. at 177, but that again is not information that the Distributors' sales to their customers would show; it is information that sales by *SGWS* to its customers would show.

*Second*, SGWS argues that the Distributors' data are relevant to its meeting competition defense.  That is wrong.  To make a "meeting competition" defense, SGWS does not have to prove "that in fact [its discounts] met a competitor's price," but instead must show "facts which would lead a reasonable and prudent person *to believe* that [SGWS's] granting of a lower price would in fact meet the equally low price of a competitor."  *United States v. United States Gypsum Co.*, 438 U.S. 422, 451 (1978)

(emphasis added). In other words, when SGWS charged a lower price to one of its customers, SGWS must have had some reason to believe **then** that the lower price it gave was meeting a competitor's price. It is **SGWS's concurrent belief** about its competitors' pricing *at the time* that is relevant to this defense. If SGWS's prices *were* in fact lowered to "meet competition" from the Distributors or other distributors, the information SGWS would need to prove that good faith belief must have been in SGWS's possession *when it offered* a lower price.

Offering lower prices to meet general competition in the marketplace also cannot establish a meeting competition defense. *See Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164–65 (4th Cir. 1999) ("If a seller could prove the meeting competition defense under the Robinson-Patman Act by 'document[ing] competition in the market and the threat of reduced sales as a result of that competition,'" this "would enable nearly all sellers to demonstrate that they price their goods or services in response to competition in the market"); *F.T.C. v. A. E. Staley Co.*, 324 U.S. 746, 753 (1945) (to establish a defendant was meeting competition in good faith, its combative act must be specifically aimed at competitor's lower price in individual competitive situations, rather than in a general system of competition). Therefore, the Distributors' prices to retailers cannot "provide the baseline for SGWS to show its prices match competitors." SGWS has all the information it needs to mount a meeting competition defense without any *post hoc* information from its competitors.

SGWS's steadfast reliance on *Covey*, *Uinta Oil*, and *American Optical Co.*— opinions decided over 60 years ago—is misplaced. While these courts permitted antitrust defendants to subpoena competitors' *limited* purchase, sales, and pricing data, the circumstances of these cases varies considerably from the case at hand: the plaintiffs alleged a "first-line" competitive injury to defendants' competitors from whom they were requesting information, courts operated under a more relaxed standard of the scope of discovery, the antitrust defendants already submitted evidence supporting their

entitlement to a meeting competition defense, the information requested implicated less competitive risk to the subpoenaed competitors, and the subpoenaed competitors failed to meet their burden to show undue burden.

The fact that all three cases involved "primary-line" pricing discrimination supported the courts' findings of relevance because the claims alleged competitive injury *to the competitors from whom discovery was sought*. Thus, a significant reason the *Covey* court held that the competitor data was "vital" to the case was the fact it was relevant to the competitive harm alleged—reduced competition *between defendant's competitor suppliers*. *See Covey*, 340 F.2d at 998 ("The showing of Continental is of competition in the area of the charges made in the complaint . . . Exploration into the business of admitted rivals may well reveal the validity or invalidity of the charge of competition suppression.").

The same is true for *Uinta Oil* and *American Optical Co*. *See Uinta Oil*, 36 F.R.D. at 180-81 (" . . . information concerning the competitive position of independent oil companies with reference to injuries to competition, impact and monopolization appears not irrelevant."); *Am. Optical Co.*, 39 F.R.D. at 583-84 ("*[T]he defendants seek to show that independent ophthalmic wholesalers, including [the subpoenaed party]'s companies, have not only not been forced out of business, but have prospered* . . . [and] to show that [the subpoenaed party], who has never been franchised by either defendant, could, and did, prosper in the absence of such franchise . . . an inquiry into the sales and financial success of the [the subpoenaed party]'s businesses is highly material and relevant to counter the charges of suppression of competition and inability to compete.") (emphasis added). But here, the alleged competitive injury is to SGWS's favored and disfavored *retailers*.

Moreover, other factors warranted production in those cases. In *Covey*, the requesting party had already "submitted proof that it was losing market position in Utah; that its management believed that its wholesale prices were above competitive levels; that

competitive wholesale prices could not be obtained by estimates from observable retail price levels; and that from the available information it concluded that most independent services stations . . . were being charged less for gasoline than [it] was charging its dealers." *Covey*, 340 F.2d at 997.  In *American Optical Co.*, the court found production appropriate because the data sought did not disclose customer identities, was at least four years old and therefore "d[id] not contain any current information", and included "only . . . total sales and profit figures." *American Optical Co.*, 39 F.R.D. at 586.  And unlike here, the *American Optical Co.* court determined the subpoenaed party had made no sufficient showing that compliance with the subpoena would be unduly burdensome or expensive. *Id.* at 587.

Importantly, those cases were also decided under a more liberal discovery standard. *Covey*, 340 F.2d at 998 ("[T]he material sought by the subpoenas is relevant *to the issues of the case*[.]") (emphasis added)); *Uinta Oil*, 36 F.R.D. at 181 ("[D]efendant has the right to make reasonable discovery concerning *the issues of the case*.") (citing FRCP 26(b)). The federal rules have since narrowed the scope of discovery available under Rule 26(b)(1), replacing the "relevant-to-the-subject-matter" standard with the narrower "relevant-to-a-claim-or-defense" standard.  *Compare* Fed. R. Civ. P 26(b), 1964 Edition v.7 Title 28 6075, 6107 (1964) ("[T]he deponent may be examined regarding any matter, not privileged, which is *relevant to the subject matter* involved in the pending action[.]" (emphasis added)) *with* Fed. R. Civ. P 26(b) (amended through February 1, 2026) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*" (emphasis added)).

SGWS's reliance on a statement made by the FTC in a 2023 proceeding to enforce a Civil Investigative Demand ("CID") issued to a retailer is similarly misplaced.  There, the FTC maintained that "[i]nformation about Total Wine's purchases from other distributors is relevant to assessing the merits of potential defenses . . . .such as a good faith attempt to meet the comparable price of a competitor, or to match the services

JOINT RULE 37 STIPULATION
39

furnished by a competitor." Ex. 21 at 6. Information from Total Wine may have been useful to the FTC to anticipate or assess the validity of a meeting competition defense, but the standard for what the FTC may seek as "relevant" to an investigation is unquestionably broader than parties may seek in discovery. *See FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992); Ex. 26 (Memorandum in Support of Petition of the FTC for a Show Cause Hearing and an Order Enforcing Civil Investigative Demand, *FTC v. Retail Services & Systems, Inc.*, No. 1:23-mc-0028 (E.D. Va.) (filed Oct. 20, 2023), at 6 ("The Commission may demand by CID any material "reasonably relevant" to an investigation—a boundary that may be broadly defined by the agency.") (citing *Morton Salt*, 338 U.S. at 642-43, 652; *Invention Submission*, 965 F.2d at 1090)); *id.* at 9 ("Importantly, 'the Commission has no obligation to establish precisely the relevance of the material it seeks in an investigative subpoena by tying that material to a particular theory of violation.'") (citing *Invention Submission*, 965 F.2d at 1090 (citations omitted)).

But for SGWS to establish a meeting the competition defense in this action, as discussed in detail above, SGWS does not require non-party information. To have a good faith belief that a price offered to a favored purchaser was necessary to meet an equal or lower price offered by a competitor, SGWS must have been aware of the competitor's offer at the time it made its own pricing decision. Information from SGWS's own files or employees may establish that awareness. Sales data from the files of a competitor cannot do so.

Even if the Court is inclined to agree with SGWS that some information about the Distributors' relationships with their retailers were relevant to a meeting competition defense, SGWS's requests here are overbroad. They do not seek information *just* about the prices the Distributors charged retailers SGWS is alleged to have favored by offering lower prices, but information about sales to *all* of the Distributors' retail customers, whether those are among those SGWS favored by offering lower prices, disfavored by offering higher prices, or sold to at all. SGWS also seeks highly sensitive information

about the Distributors' profit margins on sales to their retail customers—but the Distributors' profit margins could not be relevant to *whether* SGWS was trying to meet the Distributors' *prices*. SGWS's requests are also not limited to those types of products for which it is alleged to have price discriminated. Beyond that, information about the Distributors' relationships with their suppliers, including the prices that those suppliers charge the Distributors for their products, could not be relevant SGWS's meeting competition defense, which is focused on whether *SGWS's* discounts were in response to lower prices it believed were *offered to retailers* by SGWS's competitors.

*Third*, the Distributors' information cannot support SGWS's cost-justification defense. How the Distributors determine pricing for the beverage alcohol they sell, including how they account for differences in costs of selling it to different retailers or impacts of local regulations—Requests 5, 6, 12, 13, and 14—is irrelevant to the prices *SGWS* charged its customers. So too are documents relating to the Distributors' pricing strategies or the actual prices the Distributors paid to suppliers. *See* Requests 10-11. **SGWS** is the defendant here, not any other distributor. The Distributors' cost accounting methods and pricing strategies are not at issue and would not help SGWS establish that discounts *it* offered were "justified by savings in *the seller's* cost of manufacture, delivery, or sale . . . ." *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 555–56 (1990) (emphasis added).

Because SGWS's requests are not relevant to any of SGWS's defenses, the subpoena must be quashed. *See* Fed. R. Civ. P. 26(b)(2)(C); *VPN.com LLC v. Dikian*, 2023 WL 8304029, at *5 (C.D. Cal. Aug. 4, 2023) (to survive a motion to quash the requesting party "must demonstrate that the information it seeks is 'relevant and material to the allegations and claims at issue in the proceedings.'") (citations omitted).

### 3. SGWS's Requests are Not Proportional to the Needs of the Case

SGWS's requests are not proportional. Third party discovery is limited "to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *see also*

*Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("When discovery is sought from nonparties," the proportionality requirement under Fed. R. Civ. P. 26 "must be limited."). In circumstances where non-party bystanders are dragged into the parties' dispute "a more demanding variant of the proportionality analysis therefore applies." *Jordan*, 921 F.3d at 189. "Concern for the unwanted burden thrust upon nonparties is a factor entitled to special weight in evaluating the balance of competing needs." *Ceballos v. Banda Maguey Corp.*, No. 2:23-CV-10911-CBM (MARX), 2025 WL 1122079, at *4 (C.D. Cal. Feb. 27, 2025) (cleaned up and citation omitted).

None of the proportionality factors cited by SGWS favor production. *See O. T. v. BabyBjorn Inc.*, 2022 WL 17219007, at *3 (C.D. Cal. Apr. 4, 2022) (listing proportionality factors). Although SGWS would have this Court believe otherwise, only SGWS's pricing practices are at issue in this case. The extremely sensitive nature of the commercial and competitive information SGWS requests cannot be overstated. SGWS is asking the Distributors to turn over transaction data and documents that cover not only pricing and discount information, but also the identity of customers, revenue, profit margins, and the Distributors own costs in furnishing their products to their customers. *See, e.g.*, Ex. 3 at 4-8. The Distributors' information is not necessary to resolve the issues presented in this case because, again, only SGWS's pricing practices are at issue, and no matter what the Distributors produce, only SGWS's concurrent belief that it priced to meet competition, or that its offered discounts were justified by its costs, or that it reacted to changed conditions in the market at the time they were occurring, would tend to support its defenses against the FTC's claims.

To showcase the lack of proportionality in SGWS's subpoenas, the Court need not look far. Indeed, SGWS effectively conceded the lack of proportionality of its requests when it sought an extension to the case schedule, underscoring that "SGWS should not be expected to burden third parties with overbroad discovery before the agency discloses the

basis for and scope of its case." *See* Joint Status Rpt. & Prop. Am. Scheduling Order 10, Dkt. 94. SWGS admits such disclosure is not anticipated for months.

But the court need not just take SGWS's word about the lack of proportionality—it is patent on the face of the subpoena. For instance, SGWS requests information for a subset of states that require alcohol prices be posted publicly and/or restrict distributors' discounts, rebates, or other sales terms. *See, e.g.*, New York Alcoholic Beverage Control Law § 101-b; 9 NYCRR 65.2(e) ("There shall be filed with the State Liquor Authority's website a copy of each schedule of prices to wholesalers and each schedule of prices to retailers[.]"); *Wholesale Pricing Practices and Restrictions*, Alcohol Policy Information System, https://alcoholpolicy.niaaa.nih.gov/apis-policy-topics/wholesale-pricing-practices-and-restrictions/3/changes-over-time (last accessed Feb. 15, 2026); *An Analysis of Alcoholic Beverage Price-Posting Laws in License States*, Connecticut General Assembly (Feb. 14, 2000), https://www.cga.ct.gov/2000/rpt/2000-R-0175.htm ("Twelve of the 38 license states, or almost one-third, require wholesalers to post alcoholic beverage prices to retailers. These are: Connecticut, Delaware, Georgia, Indiana, Maryland, Massachusetts, Missouri, New Jersey, New York, Oklahoma, South Dakota, and West Virginia"). Presumably, SGWS would have had access to that data at the time it made pricing decisions yet it makes no concessions for such states, demanding Distributors still produce that data.[28] Such requests are not proportional.

SGWS likewise seeks information about other states not in contention. As SGWS explains, the FTC is challenging certain paired transactions in 30 states,[29] yet SGWS

---

[28] Because of the sensitive financial information SGWS's requests seek (such as costs of goods, margin analyses, markup percentages, etc.) the fact that certain pricing and rebate information is publicly available does not reduce the invasiveness of SGWS's requests, particularly for states where competition is less regulated.

[29] Alaska, Arkansas, Arizona, California, Colorado, Florida, Hawaii, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Missouri, North Dakota, Nebraska, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Washington. Ex. 18 at 4.

JOINT RULE 37 STIPULATION
43

demands information spanning 46 states and the District of Columbia.  *See, e.g.*, Ex. 4 at 3 ("Relevant States" definition).  Even SGWS's attempt in this Stipulation to "narrow" its requests to information in the relevant states in which Distributors operate (itself a departure from its previous proposal seeking information only about open and franchise states where both SGWS and Distributors operates, *see, e.g.*, Ex. 15 at 5-6; Ex. 17 at 5-6, Ex. 18 at 3) leaves open the possibility that Distributors will have to produce information regarding states that are not part of the FTC's case against SGWS.  For example, of the 18 states SGWS requests information from Johnson Brothers, seven (Alabama, Indiana, Mississippi, North Carolina, Rhode Island, Virginia, and West Virginia) are not in contention according to SGWS.  *Compare* Appendix A *with* Ex. 18 at 4.

SGWS's insistence that its hands are tied and needs this information now ultimately falls flat.  For starters, fact discovery does not close until September 24, 2026, four months after the FTC supposedly is to provide SGWS its final set of paired transaction.  Second, SGWS's contention that its dispute with the FTC about the scope of the FTC's case should bear no weight regarding its request to the Distributors or that it needs the transaction data because the FTC may expand its case at a later, unspecified time puts the cart before the horse.  "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party [may] need[]; [SGWS] should have done that before serving it." *Jordan*, 921 F.3d at 190.  The Court should deny SGWS's requests as not proportional to the needs of the case.

### 4.  SGWS's Overly Broad Requests Impose a Substantial Burden on the Non-Party Distributors

A party *must* take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  Fed. R. Civ. P. 45(d)(1).  Courts in the Ninth Circuit routinely quash overbroad subpoenas that impose undue burden on non-parties, even when they request relevant information.  *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014); *Moon v. SCP Pool Corp.*, 232

F.R.D. 633, 638 (C.D. Cal. 2005); *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011); *In re Allergan, Inc. Sec. Litig.*, 2016 WL 5922717, at *3 (C.D. Cal. Sept. 14, 2016).  Because SGWS's need for the requested information cannot outweigh the substantial burden to the Distributors, SGWS's subpoena should be quashed. *See Wahoo Int'l, Inc. v. Phix Dr., Inc.*, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014).

Here, SGWS has demanded that the Distributors produce data from 46 states and D.C., even though the paired transactions the FTC is apparently challenging as unlawful involve only "approximately 30 states."  Dkt. 94 at 8.  SGWS has not tailored its requests to any specific transactions or locations.  Instead, it has broadly demanded 10 data subfields for *every* purchase or sale of beverage alcohol the Distributors have made in almost every state where they have operated over the past six years and at least 14 data subfields for *every* sale and scan rebate or instant redeemable coupon provided to any retailer in those same territories over the same period.  *See e.g.*, Ex. 4, Requests 1-3.  These requests are facially overbroad and should be quashed on this basis alone.  *See Nguyen v. Lotus By Johnny Dung Inc.*, 2019 WL 4570032, at *3 (C.D. Cal. Apr. 12, 2019) (quashing grossly overbroad requests seeking documents regarding all products sold rather than particular products at issue).

Nor has SGWS otherwise tried to narrow down the products at issue, the retail customers at issue, or the potential distributors implicated based on the FTC's further identification of those paired transactions.  Indeed, SGWS issued its distributor subpoenas in August 2025 despite the fact that the FTC did not supplement its paired transactions list until September 2025, demonstrating that SGWS did not account for the further specification of paired transactions when SGWS served its subpoenas.

Moreover, SGWS has expressed to the Court that it could not have meaningfully pursued third-party discovery without the FTC's supplemental disclosure of paired transaction data when seeking its own extension, while simultaneously pushing the Distributors to respond to the subpoenas it issued, which SGWS tacitly admits were

JOINT RULE 37 STIPULATION
45

overbroad.  Dkt. 94 at 10 ("[I]t is inefficient and unfair for SGWS to conduct third-party discovery piecemeal, requesting information about a potentially under- or over-inclusive list of states and products that may (or may not) be part of the agency's case.  For another thing, the sheer scope of the 17 million transactions later identified by the FTC confirms it would have been prejudicial for SGWS to begin third-party discovery into the potentially unrepresentative subset of retailers identified in the agency's disclosures.  To put a fine point on it: the FTC's initial disclosures identified hundreds of retailers; its interrogatory responses disclosed thousands.  All of this confirms the FTC has it precisely backwards: SGWS should not be expected to burden third parties with ***overbroad discovery*** before the agency discloses the basis for and scope of its case.") (emphasis added).

Responding to the requests would impose a significant burden on the Distributors' financial and business resources.  Declaration of Dennis Jensen (RNDC) ¶¶ 4, 13; Declaration of Doug Peters ¶¶ 5, 9; Declaration of Ryan Tate ¶¶ 6, 23; Declaration of Michael Manzo ¶¶ 3, 12; Martins Decl. ¶¶ 11-14, 18; Clergé Decl. ¶¶ 16, 19, 21. The Distributors sell a vast number of products across the multiples states in which they operate.  Jensen Decl. ¶¶ 5-6; Peters Decl. ¶¶ 4, 9; Tate Decl. ¶¶ 5, 7; Manzo Decl. ¶ 7; Martins Decl. ¶¶ 4, 10.  The Distributors do not maintain all the requested data points in a central repository at either the national or state level.  Jensen Decl. ¶ 7; Peters Decl. ¶ 5; Tate Decl. ¶ 9; Manzo Decl. ¶¶ 8-9.

Some of the data points requested are not regularly collected and maintained by the Distributors in the format requested by SGWS, and the mere collection of the source documents needed to obtain these data would create an undue burden.  Jensen Decl. ¶¶ 8-10; Peters Decl. ¶¶ 6-8; Tate Decl. ¶¶ 11-13, 14-19; Manzo Decl. ¶¶ 9-10.  Similarly, the Distributors do not calculate certain cost data in the regular course of business and obtaining these data would require significantly time-consuming manual calculations. Jensen Decl. ¶ 10; Tate Decl. ¶¶ 11-15, 17-18. The Federal Rules do not require the

Distributors to create new documents solely for their production. *Paramount Pictures Corporation v. Replay TV*, 2002 WL 32151632, at *2 (C.D. Cal. May 30, 2002) (citing *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C. 2000); Fed. R. Civ. P. 34(b)(2)(E), 45(e)).

Take RNDC as an example. RNDC's processes of collecting and maintaining what reasonably available data it does possess exacerbates the burden of production. RNDC actively hosts certain data like "revenue in dollars," "profit margin," and "cost of purchase" for only the current year and one year before. Jensen Decl. ¶ 11. To access this data prior to 2024, RNDC would be required to consolidate and export multiple data sets from different databases. *Id.* Because RNDC currently lacks the staff and technical capacity to do so, RNDC would be required to purchase additional licenses, estimated to be at a cost of $100,000 to $200,000, and hire multiple full-time contractors for approximately four weeks at an estimated rate of $200 per hour. *Id.* This exercise would cost a minimum of $200,000 and result in existing staff resources being redirected from normal business operations to responding to this third-party subpoena. *Id.*

Requiring the Distributors to collect and produce just the data points they collect in the ordinary course of business between each Distributor and their retailers and suppliers across multiple states would require them to expend significant resources. *See* Jensen Decl. ¶ 12; Peters Decl. ¶¶ 5, 9; Tate Decl. ¶¶ 10-13, 19, 25-26; Manzo Decl. ¶ 12; Martins Decl. 12-14, 18. Courts regularly quash subpoenas imposing much lesser burdens than SGWS's do here. *See Natera, Inc. v. CareDx, Inc.*, 2023 WL 3763808, at *5 (N.D. Cal. May 31, 2023) (granting motion to quash in part based on declaration that it would require an estimated "24 business hours from multiple team members" to review and compile the information requested).

SGWS's non-data document requests, which are also not maintained in a central repository or managed by a single individual or department, are likewise burdensome and would require the Distributors to expend significant resources to respond to them. Brady Decl. ¶¶ 6-10; Peters Decl. ¶ 13; Tate Decl. ¶¶ 21-23; Manzo Decl. ¶ 13; Clergé Decl. ¶¶

14-16, 20-21.  Multiple individuals serve as points of contact with suppliers and retailers, and the Distributors would need to contact each of these individuals to obtain the requested information.  *Id*.  For example, SGWS's request for "all agreements and negotiations relating to the price paid and relationship between price and volume" for beverage alcohol purchased from suppliers requires RNDC to pull—at minimum—the agreements of RNDC's *current* 1,988 suppliers.  Brady Decl. ¶¶ 5, 7, 11.  The fact that this request asks for agreements ***and negotiations*** related to alcohol beverages purchased ***over the last six years*** further compounds the burden of collecting and producing them.  *Id.* ¶¶ 11-12.

Additionally, because the agreements contain irrelevant, personal identifying and/or confidential information, as well as information potentially protected by attorney-client privilege, the Distributors would be required to review and redact this information for every contract.  Brady Decl. ¶ 14, Tate Decl. ¶ 28.  Separately, many supplier agreements contain provisions requiring the Distributors to provide written notice to the supplier that the terms of the agreement are being disclosed.  Brady Decl. ¶ 13; Peters Decl. ¶ 13; Tate Decl. ¶¶ 27-28; Manzo Decl. ¶ 15.  Accordingly, the Distributors would need to expend substantial time to collect, review, redact, and produce the agreements and negotiation communications.  Brady Decl. ¶¶ 11-15; Peters Decl. ¶ 13; Tate Decl. ¶¶ 27-28; Manzo Decl. ¶ 13.

SGWS represents that it proposed limiting data production to sales and purchasing information for each Distributor's top 100 stock SKUs for wine and spirits in each relevant state, with the possibility of withdrawing its other requests depending on available data fields.  Distributors consistently communicated during meet-and-confer discussions that this proposal did not adequately address their concerns regarding burden or confidentiality.  Mudge Decl. ¶¶ 4–5; Lent Decl. ¶ 14; Rist Decl. ¶ 7; Turner Decl. ¶ 16; O'Brien Decl. ¶ 6.

*First*, limiting production to "top" SKUs does not materially reduce the effort required to collect and produce the requested data.  As some Distributors explained during

JOINT RULE 37 STIPULATION
48

meet-and-confers, identifying and compiling data for top SKUs would still require substantial data extraction, validation, and compilation, often across multiple internal systems and business units. Any reduction in transaction volume is likely offset by the additional work required to determine the correct SKUs by state and product category, construct filtering parameters, and confirm accuracy of the resulting datasets. Mudge Decl. ¶¶ 4-5.

*Second*, the proposal does little or nothing to alleviate concerns about competitively sensitive information and confidentiality. Distributors advised that focusing on "top" SKUs would necessarily target their most commercially significant products and transactions, including core pricing and purchasing data. Mudge Decl. ¶¶ 4–5; Lent Decl. ¶ 13. These data reflect competitively highly sensitive aspects of competition, and as SGWS acknowledged confidentiality issues were raised by multiple distributors during the meet-and-confer process. Mudge Decl. ¶¶ 3–4; Rist Decl. ¶ 7. Producing such information therefore would expose highly sensitive business information without substantially limiting the burden of production.

*Third*, the SKU-based approach is not aligned with SGWS's asserted need to analyze transactions corresponding to the FTC's identified "paired transactions." Distributors suggested that a more targeted framework tied to geographic, product, or customer proximity to the FTC-identified paired transactions would better address relevance and burden concerns. Mudge Decl. ¶ 3; Lent Decl. ¶ 13; Turner Decl. ¶¶ 5, 14; O'Brien Decl. ¶ 7. SGWS instead proposed limiting production by reference to top SKUs by product type and state, and Distributors explained that such an approach would not necessarily result in data relevant to paired transactions while remaining burdensome. Mudge Decl. ¶¶ 4–5; Lent Decl. ¶ 13. A top-SKU methodology risks capturing large volumes of data unrelated to the transactions SGWS purports to want to address, while potentially omitting transactions in proximity with paired transactions but which do not involve "top" SKUs.

For these reasons, Distributors communicated that SGWS's SKU-based proposal does not provide a workable compromise, and that remains the case.

The Distributors should not be forced to respond to SGWS's requests for highly confidential information that is of doubtful relevance. *See Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018) ("[d]iscovery requests seeking irrelevant information are inherently undue and burdensome"); *Pandora Media, LLC v. Spoken Giants, LLC*, 2023 WL 9421132, at *4-5 (C.D. Cal. Dec. 6, 2023), *review denied*, 2024 WL 660244 (C.D. Cal. Feb. 7, 2024) (declining to allow discovery into party's commercial research except in the instance where such information was communicated to plaintiff). The law does not allow such intrusive, burdensome, and costly discovery from non-parties without SGWS making a concrete showing of substantial need for the information, which it cannot do. *See Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N. D. Cal. May 9, 2011) (non-parties should not have to disclose confidential commercial information "without a clear-cut need and a subpoena narrowly drawn to meet that need").

### 5. SGWS's Requests Seek Confidential Business Information That is Not Adequately Protected by The Protective Order

SGWS's subpoena must also be quashed because it imposes an undue burden on the Distributors by asking them to produce competitively sensitive information that is not substantially necessary for SGWS's defense. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017). As explained above, the information that SGWS seeks from the Distributors is not relevant to SGWS's defenses. But even if it had some relevancy, the relevancy would be, at best, tenuous and insufficient to justify requiring the Distributors to disclose such sensitive information.

The information requested is highly confidential commercial information that meets the definition of a trade secret under California law,[30] and the Distributors take great measures to protect the confidentiality of this information. Jensen Decl. ¶ 14, Peters Decl. ¶ 12, Tate Decl. ¶ 28, Manzo Decl. ¶¶ 2, 4, 16; Martins Decl. ¶¶ 5-6, Clergé Decl. ¶¶ 5-6. Indeed, SGWS itself, recognized that information about its prices and strategies "could be used to put SGWS at a competitive disadvantage" if disclosed to SGWS's competitors. Dkt. 40 at 2. Despite SGWS's recognition that *its own* confidential data should be protected from disclosure to others, it has requested that its competitors produce this very same data to SGWS. The disclosure of the Distributors' confidential commercial information to SGWS would likewise be competitively harmful. Jensen Decl. ¶ 16; Peters Decl. ¶ 14; Tate Decl. ¶ 28; Manzo Decl. ¶¶ 3, 5, 16; Martins Decl. ¶¶ 5-6; Clergé Decl. ¶¶ 5-6.

Disclosure of confidential commercial information to a competitor is presumed to be harmful. *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (collecting cases). Courts routinely recognize that the highly confidential commercial and trade secret information sought by SGWS should be protected from disclosure. *See, e.g., Edwards v. California Dairies, Inc.*, 2014 WL 2465934, at *3–4 (E.D. Cal. June 2, 2014) (non-party's invoices showing its service charges qualified as confidential commercial information and non-party would suffer harm from its release); *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 555 n.4 (C.D. Cal. 2007) (holding sales and revenue information qualify as confidential commercial information warranting protection under Rule 26); *Echostar Comm'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394–97 (D. Colo. 1998) (quashing subpoena seeking sales data from non-party). The harm to the

---

[30] *See* Cal. Civ. Code § 3426.1(d) (Defining "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.")

1   Distributors is compounded by the fact that SGWS's requests seek recent commercially
2   sensitive data which has greater value to the Distributors' competitors.  Jensen Decl. ¶ 15,
3   Peters Decl. ¶ 14.  If any of the Distributors' pricing information is shared with SGWS's
4   employees, that disclosure could risk creating the very harms that the antitrust laws are
5   intended to prevent.  *See generally*, *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784
6   F.2d 1325, 1346 (7th Cir. 1986) (Easterbrook, J.) ("Access to the data could turn an
7   antitrust suit into the basis of effective collusion. . . .").

8           SGWS has not shown a substantial need for the Distributors' proprietary
9   information, nor can it.  SGWS's showing of "substantial need" must be concrete and not
10  speculative and requires the court to consider "how relevant the requested documents
11  [really] are." *Tremblay v. OpenAI, Inc.*, 2025 WL 714108, at *2 (N.D. Cal. Mar. 5, 2025)
12  (citing *Cameron v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 2021 WL 485709, *12
13  (N.D. Cal. Jan. 26, 2021)).  SGWS must show why "the essence of this information . . .
14  cannot be [] obtained. . . by any other means that would not involve prying into the
15  confidential commercial information of [] non-parties." *Id.* at *3.

16          As discussed above, SGWS has asked for information that is not relevant to the
17  claims or defenses in the case and thus SGWS cannot have a substantial need for it.  *In re*
18  *Subpoena of DOJ, LLC*, 295 F.R.D. 494, 498 (S.D. Cal. 2014) (employer did not have
19  substantial need for non-party competitor's sales records because they were not relevant
20  to employer's claim employees violated non-solicitation clause).  Therefore, SGWS's
21  subpoena must be quashed.  *See SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL
22  13108018, at *2 (C.D. Cal. June 24, 2019) (quashing request for confidential commercial
23  information that was relevant but not "essential" to the requesting party's case); *Snow v.*
24  *Align Tech., Inc.,* 2023 WL 2823503, at *3 (N.D. Cal. Apr. 6, 2023) (same).

25          Even assuming SGWS could demonstrate a substantial need for the requested
26  information, the court should still quash the subpoenas because the Protective Order in
27  this case is inadequate to protect the Distributors from the competitive harm resulting from
28

disclosing its highly confidential sales and pricing data. *See Philhower v. Philhower*, 2024 WL 4720932, at *4 (C.D. Cal. Oct. 15, 2024) (quashing subpoena where Protective Order in place was inadequate to prevent unauthorized disclosure of such information). The Protective Order allows the parties to share the Distributors' highly confidential information with third parties without any notice or ability for the Distributors to object. Protective Order § VIII(d). Third parties must sign an "Acknowledgement and Agreement to Be Bound," but this is not sent to non-parties. *See id.* The Protective Order also does not provide any mechanism for non-parties to object to the filing of any discovery materials they produce in litigation and argue why those materials should remain under seal. And of course if the case were to be tried, the Distributors' information may become public, or, at a minimum, require burdensome efforts to keep it confidential.

As non-parties, the Distributors also have no knowledge of, or ability to object to, the production of their highly confidential information to experts in the case. This oversight presents significant concerns in a case like this one where the parties may use industry experts. An industry expert retained in the case to explain issues specific to the beverage alcohol industry may consult for or be employed by a competing distributor, retailer, or supplier with whom the Distributor may negotiate a future contract. Facilitating those experts' access to the Distributors' highly confidential pricing information and the terms of its agreements would risk significant competitive harm to the Distributors.

For the reasons outlined above, SGWS's subpoenas to the Distributors should be quashed.

## III.    SPECIFIC REQUESTS AT ISSUE

As discussed above, the parties' dispute as to the materials SGWS seeks focuses on relevance, burden, proportionality, and confidentiality. The parties have reproduced below each of the specific requests in the subpoena (except Request No. 3, for which SGWS is not seeking responsive documents), followed by the Distributors' response and

a brief statement from SGWS and the Distributors collectively.  For each request at issue (Request Nos. 1-2 and 4-14), SGWS seeks only the documents the Distributors have available based on a reasonable search using parameters shared with SGWS.  SGWS further reiterates that if the Distributors are willing to agree to the data requests (Request Nos. 1, 2), SGWS would withdraw the remaining requests, except those seeking accounting policies and any explanation for produced data.  Though SGWS is only seeking data in states identified as at issue by the FTC where SGWS and a Distributor have significant presence, *see* Appendix A, SGWS is amenable to further limiting states at issue for each Distributor.  But SGWS would require a clear commitment to data production, particularly with respect to Request Nos. 1 and 2.

### A.    *REQUEST FOR PRODUCTION NO. 1*

*For all Beverage Alcohol distributed by You to Retailers in the Relevant States, a Data Set or Data Sets sufficient to show the following data, from January 1, 2020, to present:*

*a. date of transaction;*

*b. SKU and UPC;*

*c. store identification number;*

*d. banner name of the Retailer;*

*e. parent company of the Retailer;*

*f. Channel of the Retailer;*

*g. location of the Retailer (including street address and longitude and latitude corresponding to the street address);*

*h. price;*

*i. revenue in dollars;*

*j. profit margin;*

*k. quantity sold;*

*l. quantity sold as expressed in equivalent units;*

*m. ACV (All Commodities Volume);*

*n. the amount of any price support received from a Supplier, such as depletion allowances or post-sale rebates, associated with any transaction; and*

*o. differences in costs or expenses, including differences in operating costs or the costs of goods sold, on a transaction by transaction or retailer by retailer basis.*

### *RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1*

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for 15 data subfields for all Beverage Alcohol distributed by RNDC in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because RNDC's sales data is not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to the ambiguous and undefined term "depletion allowances." RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### *REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 1*

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, the burden and expense

of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce extensive data "[f]or all Beverage Alcohol distributed by [Reyes Holdings]" at the SKU, UPC and store level without reasonable scope limitations. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "distributed," "sufficient," "expressed in equivalent units," "All Commodities Volume," "price support," "depletion allowances," "profit margin," "post-sale rebates," "expenses," "Supplier," and "operating costs." To the extent it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity, including, but not limited to, "ACV," "price support," "post-sales rebates," "costs," "expenses," "depletion allowances," and "operating costs." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. This Request imposes a tremendous burden on Breakthru, in that it demands the production of information regarding virtually every sale of wine and spirits Breakthru has made to

Retailers in 13 of the Relevant States since January 1, 2020. Breakthru further objects to Document Request No. 1 as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. The details concerning Breakthru's sales of wine and spirits in the Relevant States have no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Moreover, even if Breakthru's pricing to Retailers were relevant to the claims and defenses raised in the Action, many of the details sought by this Request would not be. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action. Breakthru further objects to Document Request No. 1 to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

However, subject to the Objections stated herein, Breakthru is willing to meet and confer regarding this Request.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it would purport to require production of data beyond what is required by the Federal Rules of Civil

Procedure, this court's rules, or the applicable Protective Order and ESI Protocol. Johnson Brothers further objects to this Request as vague and ambiguous, including because the terms "depletion allowances" and "ACV" are undefined and open to interpretation. Johnson Brothers also objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent that it seeks data in a format that is not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent that it seeks data not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johnson Brothers also objects to this Request as overly broad, unduly burdensome, and irrelevant to the parties' claims or defenses, including to the extent it purports to request data already in Defendant's custody, control, or possession. Johnson Brothers further objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent it seeks data that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of data in response to this Request because such data is irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

***WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1***

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce extensive data "[f]or all Beverage Alcohol distributed by Winebow" at the SKU, UPC and store level without reasonable scope limitations. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "distributed," "sufficient," "banner name," "expressed in equivalent units," "All Commodities Volume," "price support," "depletion allowances," "profit margin," "post-sale rebates," "expenses," "Supplier," "operating costs," and "transaction." To the extent it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 1**

The Distributors' objections to Request No. 1 relate to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive data. The Distributors' sales data is necessary for SGWS to demonstrate that (1) it prices to meet competition; (2) its prices are cost justified; and (3) to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete.

SGWS's request for sales data in states at issue where the Distributors operate from 2020 to present is tailored to match the breadth of the FTC's broad case (over 17 million allegedly discriminatory transactions including 40,000 retailer locations in 30 states from 2018). In the spirit of compromise, SGWS has proposed limiting Request No. 1 to the top 100 SKUs for each wine and liquor. The Distributors have declined this offer. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce all data responsive to Request No. 1.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 1**

As discussed in Section II.D.2 above, despite SGWS's contentions otherwise, the Distributors' highly confidential and commercially sensitive sales data is not relevant, let alone necessary, to SGWS's showing that it prices to meet competition, its prices are cost justified, or to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete. SGWS falsely claims its request is tailored to match the breadth of the FTC's broad case, but SGWS does not even try to narrow its request to the products, retail customers, distributors, or even the states implicated by the FTC's identified paired transactions. Moreover, SGWS's delayed proposed compromise to limit Request No. 1 to the top 100 SKUs for each wine and liquor *in each state over the course of 6 years* (around 3 months after it first issued its subpoenas to the Distributors) does nothing to reduce the undue burden placed on the Distributors. *See* Lent Decl. ¶ 13; Mudge Decl. ¶¶ 4–5; Rist Decl. ¶ 7; Turner Decl. ¶ 16; O'Brien Decl. ¶ 6.

Because SGWS has made no meaningful attempt to narrow down the states at issue, products at issue, retail customers at issue, or potential distributors implicated based on the FTC's further identification of paired transactions, the Court should quash SGWS's Request No. 1. *See Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N. D. Cal. May 9, 2011) (non-parties should not have to disclose confidential commercial information "without a clear-cut need and a subpoena narrowly drawn to meet that need").

**B.    REQUEST FOR PRODUCTION NO. 2**

*For all Beverage Alcohol purchased by You in the Relevant States, a Data Set or Data Sets sufficient to show the following data from January 1, 2020, to present:*

*a. date of transaction;*

*b. SKU and UPC;*

*c. banner name of the Supplier;*

*d. parent company of the Supplier;*

*e. location(s) of the Supplier;*

*f. cost of purchase;*

*g. quantity purchased;*

*h. quantity purchased as expressed in equivalent units;*

*i. ACV (All Commodities Volume); and*

*j. the amount of any price support received from a Supplier, such as depletion allowances or post-sale rebates.*

*RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2*

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for 10 data subfields for all Beverage Alcohol purchased by RNDC in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because RNDC's purchase data is not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to the ambiguous and undefined term "depletion allowances." RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the

extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 2

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce extensive data "[f]or all Beverage Alcohol purchased by [Reyes Holdings]" at the SKU, UPC and supplier level without reasonable scope limitations. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "cost of purchase," "expressed in equivalent units," "All Commodities Volume," "price support," "depletion allowances," and "Supplier." Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity, including, but not limited to, "ACV," "price support," "post-sale rebates," "depletion allowances," and "post-sale rebates." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. This Request imposes a tremendous burden on Breakthru, in that it demands the production of information regarding virtually every purchase of wine and spirits Breakthru has made from Suppliers of wine and spirits in 13 of the Relevant States since January 1, 2020. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. The details concerning Breakthru's purchases of wine and spirits in the Relevant States have no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Even if Breakthru's sales prices to Retailers were somehow relevant, the price at which Breakthru purchased wine and spirits from Suppliers has no relevance whatsoever, as they are not necessarily linked to Breakthru's sales prices at all. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action.

Breakthru further objects to this Request to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 2

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it would purport to require production of data beyond what is required by the Federal Rules of Civil Procedure, this court's rules, or the applicable Protective Order and ESI Protocol. Johnson Brothers further objects to this Request as vague and ambiguous, including because the terms "depletion allowances" and "ACV" are undefined and open to interpretation. Johnson Brothers also objects to this Request as overly broad and unduly burdensome, especially in light of the status of Johnson Brothers as a non-party, to the extent that it seeks data in a format that is not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent that it seeks data not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johnson Brothers also objects to this Request as overly broad, unduly burdensome, and irrelevant to the parties' claims or defenses, including to the extent it purports to request data already in Defendant's custody, control, or possession. Johnson Brothers further objects to this Request to the extent it seeks data that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of data in response to this Request because such data is irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief

concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

***WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2***

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce extensive data "[f]or all Beverage Alcohol purchased by Winebow" at the SKU, UPC and supplier level without reasonable scope limitations. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "sufficient," "banner name," "cost of purchase," "expressed in equivalent units," "All Commodities Volume," "price support," "depletion allowances," "Supplier," and "post-sale rebates." Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 2**

The Distributors' objections to Request No. 2 relate to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections

are unavailing and do not justify a refusal to produce responsive data. Other Distributors' purchase data is necessary for SGWS to demonstrate that (1) it prices to meet competition; (2) its prices are cost justified; and (3) to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete. The Distributors argue that even assuming their sales prices are relevant, their purchases are not. Not so. What Distributors pay for their products will aid SGWS in identifying what products compete based on the acquisition cost. As explained above, alcohol distributors generally have exclusive rights to distribute certain products in a state. In the spirit of compromise, SGWS proposed limiting Request No. 2 to just the top 100 SKUs for each wine and liquor. SGWS has made further proposals to limit or even withdraw its requests for data on Distributor's purchases if the Distributors would agree to produce data in response to Request No. 1 on their sales. The Distributors declined this offer. With the exception of Breakthru, none of the Distributors engaged with this proposal and Breakthru's proposed production of sales data is too narrow. In the absence of a willingness to compromise, the Court should order the Distributors to produce all data responsive to Request No. 2.

**DISTRIBUTOR'S CONTENTIONS REGARDING REQUEST NO. 2**

As discussed in Section II.D.2 above, despite SGWS's contentions otherwise, the Non-Party Distributors' highly confidential and commercially sensitive purchase data is not relevant, let alone necessary, to SGWS's showing that it prices to meet competition, its prices are cost justified, or to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete. SGWS falsely claims its request is tailored to match the breadth of the FTC's broad case, but SGWS does not even try to narrow its request to the products, retail customers, distributors, or even the states implicated by the FTC's identified paired transactions. Moreover, SGWS's delayed proposed compromise to limit Request No. 2 to the top 100 SKUs for each wine and liquor *in each state over the course of 6 years* (around 3 months

after it first issued its subpoenas to the Distributors) does nothing to reduce the undue burden placed on the Distributors.  *See* Lent Decl. ¶ 13; Mudge Decl. ¶¶ 4–5; Rist Decl. ¶ 7; Turner Decl. ¶ 16; O'Brien Decl. ¶ 6.

Because SGWS has made no meaningful attempt to narrow down the states at issue, products at issue, retail customers at issue, or potential distributors implicated based on the FTC's further identification of paired transactions, the Court should quash SGWS's Request No. 2.  *See Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N. D. Cal. May 9, 2011) (non-parties should not have to disclose confidential commercial information "without a clear-cut need and a subpoena narrowly drawn to meet that need").

## C.    *REQUEST FOR PRODUCTION NO. 4*[31]

*All Data Maps or data dictionaries that correspond to any Data Sets produced pursuant to any Request herein and Documents sufficient to show all available fields in the database from which the Data Set was extracted.*

**RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

RNDC objects to this Request as outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it is not relevant to the claims or defenses in this case and for all the reasons set forth in RNDC's responses to Request Nos. 1, 2 and 3.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

**REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense

---

[31] SGWS is not moving on Request No. 3 of the subpoena on the understanding that none of the Distributors have responsive information.  SGWS reserves the right to move on that request if it learns that they do.

imposed on Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[a]ll Data Maps or data dictionaries" relating to any Data Sets produced. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "correspond," "pursuant to," and "sufficient." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 4

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request to the extent it would have Breakthru create any Data Map or "data dictionary" that does not currently exist. Breakthru also objects to this Request to the extent it calls for the production of a Data Map or data dictionary corresponding to the production of data to which Breakthru has objected to producing. However, if Breakthru produces any data in response to any Request stated in the Subpoena, Breakthru is willing to meet and confer regarding this Request.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 4

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it would purport to require production of data beyond what is required by the Federal Rules of Civil Procedure, this court's rules, or the applicable Protective Order and ESI Protocol. Johnson

Brothers also objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent that it seeks data in a format that is not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request as vague, ambiguous, and disproportionate to the needs of the case to the extent that it seeks data not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johnson Brothers also objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information or data that is duplicative of another Request.

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### *WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 4*

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[a]ll Data Maps or data dictionaries" relating to any Data Sets produced. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "data dictionaries," "correspond," "pursuant to," "sufficient," "available," and "fields." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this

JOINT RULE 37 STIPULATION
69

Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 4**

Information in response to Request No. 4 is critical to help SGWS understand any data or documents produced in response to Request Nos. 1 and 2. SGWS seeks only an opportunity to understand the data: if Data Maps or data dictionaries are not readily available, SGWS would accept an arrangement allowing it to ask clarification questions about data produced in response to Request Nos. 1 and 2. SGWS has noted in meet-and-confers that if the Distributors are willing to share what fields they are willing to produce and explain those fields, SGWS will withdraw this request.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 4**

For the same reasons the Court should deny SGWS's Requests Nos. 1 and 2, it should deny Request No. 4, which is only necessary to facilitate SGWS's understanding of the data requested in Requests Nos. 1 and 2. Because the data SGWS requests is not relevant, let alone necessary, to SGWS's showing that it prices to meet competition, its prices are cost justified, or to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete, so too are any data maps or dictionaries that correspond to the data.

**D.     *REQUEST FOR PRODUCTION NO. 5***

*Documents sufficient to show how You account for costs of goods sold for Beverage Alcohol, including any impact from different Channels, transportation costs, order size, and Supplier price support, including but not limited to depletion allowances and post-sale rebates.*

***RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 5***

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for information relating to RNDC's cost accounting over the past six years, which is not maintained in a central repository but is instead the product of various types of documents maintained by several different departments and individuals. RNDC objects to the ambiguous and undefined terms "account," "impact," and "depletion allowances." RNDC objects to this Request because RNDC's cost accounting is not relevant to any claim or defense in this case. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 5

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce documents "sufficient to show" how Reyes Holdings accounts for costs of goods sold, including numerous categories of potential inputs, without limitation as to time, brand, geography, or format. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "sufficient," "any impact," "Supplier," "price support," "depletion allowances," and "post-sale rebates." To the extent that it produces documents

1  or data, Reyes Holdings will interpret those terms in accordance with their ordinary and

2  customary meanings and/or consistent with how they are used by Reyes Holdings in the

3  ordinary course of its business. Reyes Holdings further objects to this Request to the extent

4  that it seeks highly competitively sensitive confidential, proprietary, or trade secret

5  information. Reyes Holdings reserves the right to seek protection for any confidential,

6  proprietary, or trade secret information it produces in response to this Request beyond that

7  provided by the May 13, 2025, Protective Order entered in this matter.

8      Subject to and without waiver of the foregoing Specific and General Objections,

9  Reyes Holdings is prepared to meet and confer regarding this Request.

10  ***BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 5***

11      Breakthru repeats and restates its General Objections in response to this Request.

12  Breakthru further objects to this Request as vague and ambiguous because numerous terms

13  and phrases used herein are not defined or explained with sufficient clarity, including, but

14  not limited to, "impact," "transportation costs," "Supplier price support," "depletion

15  allowances," and "post-sales rebates." Breakthru further objects to this Request as overly

16  broad and unduly burdensome, and not relevant to the claims in this Action. Information

17  concerning how Breakthru accounts for cost of goods sold has no bearing on the Federal

18  Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus

19  on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any

20  defense SGWS may assert, such as that SGWS was merely "meeting competition," as any

21  such defense must be based on SGWS's contemporaneous alleged good faith belief

22  concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b)

23  ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made

24  by showing that his lower price or the furnishing of services or facilities to any purchaser

25  or purchasers was made in good faith to meet an equally low price of a competitor, or the

26  services or facilities furnished by a competitor"). The focus of the Action is on SGWS's

27  sales prices and practices, not Breakthru's costs and expenses or its internal accounting

28

practices, none of which themselves are necessarily related to the prices at which Breakthru sells to Retailers. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action. Breakthru further objects to this Request to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 5

Johnson Brothers specifically objects to this Request as vague and ambiguous, including because the terms "[d]ocuments sufficient to show," "account," "impact," and "depletion allowances" are undefined and open to interpretation. Johnson Brothers further objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, to the extent that it seeks data in a format that is not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers also objects to this Request as vague, ambiguous, and disproportionate to the needs of the case to the extent that it seeks data not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johnson Brothers also objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information or data that is duplicative of another Request. Johnson Brothers further objects to this Request to the extent it seeks documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting

JOINT RULE 37 STIPULATION
73

competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 5

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed on Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce documents "sufficient to show" how Winebow accounts for costs of goods sold, including numerous categories of potential inputs, without limitation as to time, brand, geography, or format. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "sufficient," "account," "any impact," "Supplier," "transportation costs," "price support," "depletion allowances," and "post-sale rebates." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 5**

The Distributors' objections to Request No. 5 relate to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. SGWS claims that volume discounts and support from alcohol suppliers justify charging different prices to different retailers because it lowers SGWS's cost of goods sold (i.e., a cost justification defense). Other Distributors' accounting practices are critical to SGWS's ability to make its cost justification defense because they will help demonstrate that the ways in which SGWS accounts for costs and savings—and then passes those savings on to certain retailers—are legitimate and common in the industry. SGWS has proposed that the Distributors perform a reasonable search for such documents. Accordingly, the Court should order the Distributors to produce documents responsive to Request No. 5.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 5**

Request No. 5 seeks accounting information from each Distributor that is not reasonably related to any of the FTC's claims, or to any meritorious defense SGWS could offer. It seeks undefined information "sufficient to show" how each Distributor "accounts" for cost of goods sold in its internal accounting, and specifically asks for information about how each Distributor treats a laundry list of vague, undefined concepts that each Distributor might interpret and handle differently in its internal practices. SGSW's offered justification here—that it apparently only seeks information related to how different distributors account for "volume discounts and support from alcohol suppliers"—is narrower than the laundry list of concepts this Request implicates (such as transportation costs, among others.) Regardless, the terms of a distributor's purchases from suppliers has no industry-standard, defined relationship whatsoever to the prices at which distributors sells beverage alcohol to competing customers, which is the focus of the FTC's claims. Even if the manner in which another distributor accounts for certain discounts and supports were somehow relevant to SGWS's defense of its own pricing, the idiosyncratic manner in which one specific distributor addresses them within the larger

context of its internal accounting standards and practices would not provide any good evidence to SGWS. When balanced against the severe burden producing such information would pose to the Distributors (if it were even possible, as the request is no vaguely defined), Request No. 5 is unreasonable.

Accordingly, the Court should quash SGWS's Request No. 5.

## E.    *REQUEST FOR PRODUCTION NO. 6*

*Documents sufficient to show differences in costs or expenses, including differences in operating costs or the cost of goods sold, in distributing Beverage Alcohol to different kinds of Retailers in the Relevant States.*

**RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for information relating to the differences in RNDC's costs and expenses in distributing Beverage Alcohol to different Retailers in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because the costs and expenses RNDC incurs in distributing Beverage Alcohol are not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to the ambiguous and undefined terms "differences," and "different kinds." RNDC further objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 6

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce documents "sufficient to show" Reyes Holdings' accounting treatment of costs, including distinctions among customer types or supplier support. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "sufficient," "differences," "operating costs," "cost," "distributing" and "different kinds." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 6

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity, including, but

not limited to, "differences in operating costs" and "different kinds of Retailers." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Information concerning how Breakthru accounts for cost of goods sold has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). The focus of the Action is on SGWS's sales prices and practices, not Breakthru's costs and expenses or its internal accounting practices, none of which themselves are necessarily related to the prices at which Breakthru sells to Retailers. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action. Breakthru further objects to Document Request No. 6 to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

***JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 6***

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case, especially in light of Johnson Brothers' status as a non-party, to the extent it would purport to require production of documents that are not maintained by Johnson Brothers in the ordinary course of business.

Johnson Brothers further objects to this Request as vague and ambiguous, including because the terms "[d]ocuments sufficient to show," "differences," and "different kinds" are undefined and open to interpretation. Johnson Brothers also objects to this Request to the extent it seeks documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 6

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce documents "sufficient to show" Winebow's accounting treatment of costs, including distinctions among customer types or supplier support. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "sufficient," "differences," "costs," "operating costs," "cost," "distributing" and "different kinds." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to

this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 6**

The Distributors' objections to Request No. 6 relate to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Like Request No. 5, how Distributors account for the expense of serving various retailers is critical SGWS's ability to make its cost justification defense. It will help demonstrate that the ways SGWS serves retailers of different size and scope is legitimate and common in the industry. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 6, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 6**

Request No. 6 is almost so broad and undefined as to either be meaningless, or to implicate almost every item of information related to the Distributors' sales across the United States. For example, no guidance is given to what SGSW intends the terms "differences in costs or expenses" and "different kinds of retailers" to mean. In fact, those phrases are capable of thousands of different meanings. When coupled with the demand that the Distributors produce "documents sufficient to show," Request No. 6 would essentially hand SGSW a tool with which to demand a potentially unlimited amount of information from the Distributors until SGSW is satisfied. SGWS's claim that this

information about "how Distributors account for the expense of serving various retailers" is somehow "critical SGWS's ability to make its cost justification defense" is unavailing. The Distributors' internal accounts practices, in which distribution costs are addressed in specific, Distributor-centric ways and are highly dependent on a host of factors under specific circumstances, would not aid any attempt by SGWS to justify its own pricing. When balanced against the significant burden gathering this type of information would pose to the Distributors – particularly where the Request is undefined and unbounded – Request No. 6 is unreasonable.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 6 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 6.

### F.    *REQUEST FOR PRODUCTION NO. 7*

*Documents comparing the prices of Beverage Alcohol sold by You to Retailers in the Relevant States to the prices available from, or offered by, competing Distributors in the Relevant States for comparable products.*

### RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 7

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it seeks pricing information for Beverage Alcohol sold by RNDC in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because RNDC's or other Distributors' pricing of Beverage Alcohol is not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information.

JOINT RULE 37 STIPULATION
81

1
2
3

RNDC further objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

4
5
6

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

7

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 7

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments comparing the prices of Beverage Alcohol sold by [Reyes Holdings] to Retailers in the Relevant States." Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "comparing," "available," "offered," "competing," and "comparable products." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent it requires Reyes Holdings to obtain or produce information that is not within its possession, custody, or control. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

27
28

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 7

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity, including, but not limited to, "comparing" and "comparable products." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. Documents in Breakthru's possession comparing any pricing between Distributors has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Information comparing prices between Distributors is not relevant to SGSW's good faith belief in competitors' pricing at the time in question. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action.

However, subject to the Objections stated herein, Breakthru is willing to meet and confer regarding this Request.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 7

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case, especially in light of Johnson Brothers' status as a non-party, to the extent it would purport to require production of documents that are not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request to the extent it seeks any documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers further objects to this Request as vague and ambiguous, including because the term "comparable products" is undefined and open to interpretation. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 7

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and

produce "[d]ocuments comparing the prices of Beverage Alcohol sold by Winebow to Retailers in the Relevant States." Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "comparing," "available," "offered," "competing," and "comparable products." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent it requires Winebow to obtain or produce information that is not within its possession, custody, or control. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 7**

The Distributors' objections to Request No. 7 relate to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Documents showing how Distributors assess retail prices are necessary to support SGWS's meeting competition defense—by showing how Distributors analyze and react to differences in pricing for competitive products—and to assess the wine and spirits market as a whole to show the retailers the FTC has paired do not actually compete. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 7, subject to a reasonable search

1

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 7**

2

SGWS argues that Request 7 is relevant to its meeting competition defense because

3

Distributors' internal documents comparing their prices to other distributors' "show[] how

4

Distributors analyze and react to differences in pricing for competitive products—and to

5

assess the wine and spirits market as a whole to show the retailers the FTC has paired do

6

not actually compete." Yet SGWS effectively admits that this request was wholly

7

unnecessary to its defenses by conceding "it would withdraw this request if the

8

Distributors produced the requested pricing data." This admission underscores that

9

SGWS did not "take reasonable steps to avoid imposing undue burden or expense" on a

10

third party, as required by Rule 45(d)(1), by limiting its requests in the subpoena at the

11

outset *or* firmly agreeing to withdraw such requests during meet and confers.

12

Regardless, *Distributors'* analysis of differences in pricing say nothing about

13

*SGWS's* understanding of whether it was meeting competition, which is what matters to

14

establishing a meeting competition defense. To make a "meeting competition" defense,

15

SGWS does not have to prove "that in fact [its discounts] met a competitor's price," but

16

instead must show that Southern was aware of "facts which would lead a reasonable and

17

prudent person to believe that [Southern's] granting of a lower price would in fact meet

18

the equally low price of a competitor." *United States v. United States Gypsum Co.*, 438

19

U.S. 422, 451 (1978) (emphasis added). Offering lower prices to meet general

20

competition in the marketplace is not enough to establish a meeting competition defense.

21

*See Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164-65 (4th Cir. 1999) ("If a seller

22

could prove the meeting competition defense under the Robinson-Patman Act by

23

'document[ing] competition in the market and the threat of reduced sales as a result of that

24

competition,'" this "would enable nearly all sellers to demonstrate that they price their

25

goods or services in response to competition in the market"); *accord Exquisite Form

26

Brassiere, Inc. v. Fed. Trade Comm'n*, 360 F.2d 492, 493 (D.C. Cir. 1965).

27

28

JOINT RULE 37 STIPULATION

SGWS must show that when it charged a lower price to one of its customers it had some reason to believe that the lower price it gave was meeting a competitor's price. If SGWS's prices were in fact lowered to "meet competition" from any Distributor, the information SGWS would need to prove that must have been in SGWS's possession. A fishing expedition through its competitors' most competitively sensitive documents will not establish that SGWS's conduct was justified by a good faith belief it was meeting a competitors' pricing. Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 7 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 7.

## G.  *REQUEST FOR PRODUCTION NO. 8*

*Documents, including agreements and Communications with Retailers, relating to any price available from, or offered by, competing Distributors in the Relevant States for products comparable to Beverage Alcohol sold by You to Retailers in the Relevant States.*

**RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 8**

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it seeks Documents and Communications with Retailers relating to other Distributors' pricing of Beverage Alcohol in 44 states and Washington, D.C. over the past six years. RNDC further objects to this Request because RNDC's possession of other Distributors' pricing of Beverage Alcohol is not relevant to any claim or defense in this case. RNDC objects to the ambiguous and undefined term "relating to." Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC further objects to this Request to the

extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 8

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments . . . relating to any price available from, or offered by, competing Distributors." Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "agreements," "relating to," "price available," "offered by," "competing," and "comparable." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent it requires Reyes Holdings to obtain or produce information that is not within its possession, custody, or control. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents

1  protected by the attorney-client or work-product privileges, or any other applicable

2  privilege, immunity, or exemption.

3         Subject to and without waiver of the foregoing Specific and General Objections,

4  Reyes Holdings is prepared to meet and confer regarding this Request.

5  ***BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 8***

6         Breakthru repeats and restates its General Objections in response to this Request.

7  Breakthru further objects to this Request as vague and ambiguous because numerous terms

8  and phrases used herein are not defined or explained with sufficient clarity, including, but

9  not limited to, "comparable to Beverage Alcohol." Breakthru further objects to this

10 Request as overly broad and unduly burdensome, and not relevant to the claims in this

11 Action. Breakthru further objects to this Request as not reasonably calculated to lead to

12 the discovery of admissible evidence relevant to the Action. Documents in Breakthru's

13 possession comparing any pricing between Distributors has no bearing on the Federal

14 Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus

15 on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any

16 defense SGWS may assert, such as that SGWS was merely "meeting competition," as any

17 such defense must be based on SGWS's contemporaneous alleged good faith belief

18 concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b)

19 ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made

20 by showing that his lower price or the furnishing of services or facilities to any purchaser

21 or purchasers was made in good faith to meet an equally low price of a competitor, or the

22 services or facilities furnished by a competitor"). Information relating to any price

23 available from, or offered by, competing Distributors is not relevant to SGSW's good faith

24 belief in competitors' pricing at the time in question. Breakthru further objects to this

25 Request as it calls for the production of information related to products that are not

26 "commodities of like grade and quality" within the meaning of the Robinson-Patman Act,

27

28

1  or are otherwise not identical to the products SGWS sold during the same time period, and

2  are thus not relevant to the claims and defenses in this Action.

3      However, subject to the Objections stated herein, Breakthru is willing to meet and

4  confer regarding this Request.

5  ***JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 8***

6      Johnson Brothers specifically objects to this Request as overly broad, unduly

7  burdensome, vague, ambiguous, and irrelevant to the claims or defense, especially in light

8  of Johnson Brothers' status as a non-party, including to the extent it would purport to

9  require production of documents that are either not finalized, in draft form, or subject to

10  revision. Johnson Brothers further objects to this Request to the extent it seeks documents

11  that contain Johnson Brothers' commercially or competitively sensitive and confidential

12  information. Johnson Brothers further objects to this Request as vague and ambiguous,

13  including because the term "products comparable to" is undefined and open to

14  interpretation. Johnson Brothers also objects to this Request as not relevant to the parties

15  claims or defenses, including, but not limited to the Federal Trade Commission's claims

16  against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to

17  the production of documents in response to this Request because such documents are

18  irrelevant to any defense SGWS may assert, including, but limited to, the "meeting

19  competition" defense, because any such defense must be based on SGWS's

20  contemporaneous good faith belief concerning its competitors' prices, not those

21  competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b). Johnson Brothers

22  further objects to this Request as vague and ambiguous, including because the term

23  "products comparable" is undefined and open to interpretation.

24      Subject to these specific objections and the general objections above, Johnson

25  Brothers is willing to meet and confer with Defendant regarding this Request.

26  ***WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 8***

27

28

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments . . . relating to any price available from, or offered by, competing Distributors." Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "agreements," "relating to," "price available," "offered by," "competing," and "comparable." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent it requires Winebow to obtain or produce information that is not within its possession, custody, or control. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 8**

The Distributors' objections to Request No. 8 relate primarily to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Documents showing how the Distributors track what competing distributors charge retailers are

critical to support SGWS's meeting competition defense.  Any action a Distributor takes to monitor and/or react to other distributors' prices will show that SGWS's behavior with respect to meeting competition is legitimate and common in the industry.  Nonetheless, SGWS proposed it would withdraw this request if the Distributors produced the requested pricing data.  In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 8, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 8**

SGWS argues that Request 8 is relevant to its meeting competition defense because "[a]ny action a Distributor takes to monitor and/or react to other distributors' prices will show that SGWS's behavior with respect to meeting competition is legitimate and common in the industry."  For the same reasons set forth with regard to Request No. 7, SGWS is incorrect as a matter of law, and Distributors should not be compelled to produce documents on this topic.  Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 8 if the Distributors produced "the requested pricing data" (which itself is undefined).  Accordingly, the Court should quash SGWS's Request No. 8.

### H.    *REQUEST FOR PRODUCTION NO. 9*

*Documents relating in any way to the discounts or other terms that You have offered and/or provided to Retailers in the Relevant States, including but not limited to quantity discounts, cumulative quantity discounts, channel pricing, scan rebates, special or hard coded pricing, retroactive price reductions, and delayed implementation of price increases.*

*RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 9*

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it seeks Documents relating in any way to the terms RNDC has offered its Retailers in 44 states

and Washington, D.C. over the past six years. RNDC objects to this Request because the terms under which RNDC sells its Beverage Alcohol are not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 9

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments relating . . . to the discounts or other terms that [Reyes Holdings] have offered and/or provided to Retailers." Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating in any way," "discounts," "other terms," "offered," "provided," "quantity discounts," "cumulative quantity discounts," "channel pricing," "scan rebates," "special or hard coded pricing," "price reductions," "delayed implementation," and "price increases." To the extent that it produces documents, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with

how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity including, but not limited to, various types of "discounts," "channel pricing," "scan rebates," "special or hard coded pricing," "retroactive price reductions," and "delayed implementation." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. The details concerning any discounts and other terms Breakthru might offer to Retailers has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the

furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action. Breakthru further objects to this Request to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

However, subject to the Objections stated herein, Breakthru is willing to meet and confer regarding this Request.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Johnson Brothers also objects to this Request as overly broad, unduly burdensome, and irrelevant to the parties' claims or defenses, especially in light of Johnson Brothers' status as a non-party, including to the extent it purports to request data already in Defendant's custody, control, or possession. Johnson Brothers further objects to this Request to the extent it seeks any documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as vague and ambiguous, including because the terms "relating in any way" and "hard coded pricing" are undefined and open to interpretation. Johnson Brothers further objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief

concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 9

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments relating . . . to the discounts or other terms that [Winebow] ha[s] offered and/or provided to Retailers." Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating in any way," "discounts," "other terms," "offered," "provided," "quantity discounts," "cumulative quantity discounts," "channel pricing," "scan rebates," "special or hard coded pricing," "price reductions," "delayed implementation," and "price increases." To the extent that it produces documents, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 9**

The Distributors' objections to Request No. 9 relate primarily to relevance, burden, proportionality, and confidentiality.  As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents.  Documents relating to discounts the Distributors offer various retailers are critical to supporting SGWS's meeting competition and cost justification defenses.  These documents will help show that legitimate reasons exist to offer different discounts to different retailers—whether that be to account for a move made by a competitor or due to varying costs of servicing different accounts.  Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data, and that data included information sufficient for SGWS to determine the discounts the Distributors offered and applied to sales.  In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 8, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 9**

SGWS argues that Request 9 is relevant to its meeting competition defense because "Documents relating to discounts the Distributors offer various retailers are critical to supporting SGWS's meeting competition and cost justification defenses.  These documents will help show that legitimate reasons exist to offer different discounts to different retailers—whether that be to account for a move made by a competitor or due to varying costs of servicing different accounts."  For the same reasons set forth with regard to Request No. 7, SGWS is incorrect as a matter of law, and Distributors should not be compelled to produce documents on this topic.  Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 9 if the Distributors produced "the requested pricing data" (which itself is undefined).  Accordingly, the Court should quash SGWS's Request No. 9.

I.    *REQUEST FOR PRODUCTION NO. 10*

*Documents from 2020 to the present relating to the price You paid to Suppliers for Beverage Alcohol in the Relevant States, including all agreements and negotiations relating to the price paid and the relationship between price and volume.*

**RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for Documents relating to the price RNDC paid to Suppliers for Beverage Alcohol in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because the price RNDC pays Suppliers for Beverage Alcohol is not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information, including but not limited to its actual contracts with Suppliers and negotiations of the same, to RNDC's top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

**REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to

the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments . . . relating to the price [Reyes Holdings] paid to Suppliers for Beverage Alcohol . . . including all agreements and negotiations". Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "agreements," "negotiations," and "relationship." To the extent that it produces documents, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 10

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity, including, but not limited to, "agreements," "price paid," and "relationship between price and volume." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. This Request imposes a tremendous burden on Breakthru, in that it demands the production of information regarding virtually every purchase of wine and spirits Breakthru has made from Suppliers of wine and spirits in 13 of the Relevant States since January 1, 2020. Breakthru further objects to this Request as

not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. The details concerning Breakthru's purchases of wine and spirits in the Relevant States has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Even if Breakthru's sales prices to Retailers were somehow relevant to the Action, the price at which Breakthru purchased wine and spirits from suppliers has no relevance whatsoever, as they are not necessarily linked to Breakthru's sales prices at all. Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action.

***JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 10***

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, vague, ambiguous, and irrelevant to the claims or defense, especially in light of Johnson Brothers' status as a non-party, including to the extent it would purport to require production of documents that are either not finalized, in draft form, or subject to further revision. Johnson Brothers further objects to this Request to the extent it seeks documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade

Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 10

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments . . . relating to the price [Winebow] paid to Suppliers for Beverage Alcohol . . . including all agreements and negotiations". Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "price," "agreements," "negotiations," "paid," "relationship," and "volume." To the extent that it produces documents, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 10**

The Distributors' objections to Request No. 10 relate primarily to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Documents showing what the Distributors pay suppliers are necessary to support SGWS's cost justification defense, as they will help demonstrate how the cost of acquiring alcohol folds into the ultimate price charged to retailers. These documents will also help establish SGWS's meeting competition defense because they will help establish what products from different distributors compete. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 10, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 10**

As was the case with Request No. 2 (which asks for information reflecting the Distributors' purchases of wine and spirits from suppliers), no part of Request No. 10 relates to the FTC's claims or SGWS's offered defenses in this Action. Read broadly, "documents relating to the price[s]" Distributors paid to suppliers for Beverage Alcohol implicates literally millions of pages of documents for each Distributor that go beyond structured transactional data, that could include supplier contracts, orders, receipts, reports, forecasts, and planning documents, among others. Because of the decentralized manner in which each Distributor would maintain these documents (including residing in individual custodians' emails), the burden of complying with Request No. 10 would be immense. Moreover, the commercial terms of the Distributors' agreements with suppliers are the most sensitive of all of a Distributors' confidential information. Neither of the justifications offered by SGWS carry any weight. None of this information will "help

demonstrate how the cost of acquiring alcohol folds into the ultimate price charged to retailers," as the prices a Distributor charges to retailers depends on an uncountable and undefinable number of factors, such as the product in question, the Distributor's present financial goals, overarching agreements between a Distributor and a Retailer, time of year, promotional support from a supplier, as well as many other factors. It is equally unclear how any of the information sought by Request No. 10 would highlight "what products from different distributors compete[.]" When balanced against the critical importance to the Distributors for maintaining the absolute confidentiality of supplier-related information and the tremendous burden associated with gathering it, Request No. 10 is unreasonable.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 10 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 10.

## J.    *REQUEST FOR PRODUCTION NO. 11*

*Documents from 2020 to the present relating to any policy used by You to achieve the best price for Beverage Alcohol from Suppliers.*

### *RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 11*

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it seeks Documents relating to RNDC's pricing policies for its business with Suppliers in 44 states and Washington, D.C. over the past six years. RNDC objects to the terms "relating to," "policy," and "achieve the best price" as vague. RNDC objects to this Request because any "policy" utilized by RNDC to achieve the "best price" for Beverage Alcohol from Suppliers is not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC

objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business strategies and policies relating to pricing to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 11

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments . . . relating to" internal supplier negotiation strategies and policies. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "policy," and "best price." To the extent it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks

documents protected by the attorney-client or work product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 11

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity including, but not limited to, various types of "best price." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. As with other Requests, information concerning how Breakthru attempts to obtain certain pricing from Suppliers has no direct bearing on Breakthru's pricing to Retailers (which is itself not relevant to the Action), does not even relate to the pricing Breakthru was able to secure from Suppliers (which is further not relevant to the Action), and thus has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are

otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action.

***JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 11***

Johnson Brothers specifically objects to this Request as vague and ambiguous, including because the terms "relating to," "policy," and "achieve the best price" are undefined and open to interpretation. Johnson Brothers further objects to this Request as overly broad and unduly burdensome, especially in light of Johnson Brothers' status as a non-party, including to the extent it would purport to require the creation of documents not created or maintained in the ordinary course of business. Johnson Brothers also objects to this Request to the extent it seeks any documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

***WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 11***

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and

produce "[d]ocuments . . . relating to" internal supplier negotiation strategies and policies. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "policy," "achieve," and "best price." To the extent it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 11**

The Distributors' objections to Request No. 11 relate primarily to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Distributors' policies on pricing are necessary to support SGWS's meeting competition defense, as policies to achieve the best price from suppliers are highly relevant to market competition. Such policies will also help support SGWS's cost justification defense, as it will show the supplier's role in the price a distributor can ultimately charge a retailer. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 11, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 11**

Because a Distributor almost always seeks the "best price" from a supplier for alcoholic beverages, Request No. 11 essentially demands that the Distributors produce their overall pricing policies to SGSW.  The fact that "best price" and "policies" are undefined only adds to the uncertain and burden this Request poses.  The competitive significance of the Distributors' pricing policies and practices should be obvious, particularly in an industry characterized by vigorous competition among distributors for the often-exclusive rights to carry a supplier's brands.  SGWS's attempt to support this demand herein by claiming "it [sic] will show the supplier's role in the price a distributor can ultimately charge a retailer" is entirely speculative.  Nothing about a Distributor's policies and practices about how to obtain the "best price" from a supplier – policies about a *process* and negotiation practices – will necessarily be related to the prices a Distributor charges to a retailer whatsoever, which *at best* might bear some relationship to the *actual* price a Distributor has negotiated with a supplier, not the manner in which a Distributor arrived at that acquisition price.  When balanced against the critical importance to the Distributors for maintaining the absolute confidentiality of supplier-related information and the tremendous burden associated with gathering it, Request No. 11 is unreasonable.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 11 if the Distributors produced "the requested pricing data" (which itself is undefined).  Accordingly, the Court should quash SGWS's Request No. 11.

**K.    *REQUEST FOR PRODUCTION NO. 12***

*Documents relating in any way to Your practices, strategies, policies, and/or considerations for determining the prices at which you sell Beverage Alcohol to Retailers.*

***RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 12***

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it asks for

Documents "relating in any way" to RNDC's practices and strategies for determining the pricing of its Beverage Alcohol in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because RNDC's pricing of its Beverage Alcohol, and the practices, strategies, and considerations it employs, are not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to the ambiguous and undefined phrase "relating in any way, to Your practices, policies, and/or considerations." RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information relating to pricing to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 12

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments relating . . . to" internal retail pricing "practices, strategies, policies, and/or considerations." Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating," "practices," "policies," "strategies," "considerations," and "determining." To the extent it produces

JOINT RULE 37 STIPULATION
109

documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 12

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity including, but not limited to, "practices" and "considerations." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. The details concerning how Breakthru determines the price at which to sell to Retailers has no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's own sales to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made

by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action.

### *JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 12*

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, vague, and ambiguous, including because the phrase "relating in any way, to Your practices, policies, and/or considerations" is undefined and open to interpretation. Johnson Brothers further objects to this Request to the extent it seeks documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers also objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### *WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 12*

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely

benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments relating . . . to" internal retail pricing "practices, strategies, policies, and/or considerations." Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating," "practices," "policies," "strategies," "considerations," and "determining." To the extent it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 12**

The Distributors' objections to Request No. 12 relate primarily to relevance, burden, proportionality, and confidentiality. As discussed in Section II.B above, those objections are unavailing and do not justify a refusal to produce responsive documents. Distributors' strategies for prices they charge retailers are necessary to support all of SGWS's defenses. How the Distributors analyze price and respond to changes in the market will support SGWS's meeting competition defense by legitimizing pricing decisions SGWS has made in response to competition. They will support SGWS's cost justification defense by helping prove that the varying size and scope of retailers impacts pricing industry-wide. And finally, documents showing how the Distributors treat

retailers of different size and scope will help show that retailers in the FTC's paired transactions do not actually compete. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 12, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 12**

Non-Party Distributors' strategies for prices they charge retailers are not relevant, let alone necessary, to SGWS's showing that it prices to meet competition, its prices are cost justified, or to rebut the FTCs prima facie case by showing the alleged favored and disfavored retailers the FTC has paired do not actually compete. How the Non-Party Distributors determine pricing for their beverage alcohol is irrelevant to the prices SGWS charged its customers. How the Non-Party Distributors analyze price and respond to changes in the market cannot support SGWS's meeting competition defense "by legitimizing pricing decisions SGWS has made in response to competition." A Robinson-Patman defendant may not use the meeting competition defense to justify its unlawful conduct by asserting it merely employs a similar pricing system as others in its industry. *FTC v. A.E. Staley Mfg. Co.*, 324 U.S. 746, 753 (1945) (refuting that the Robinson-Patman Act permits a seller to maintain an otherwise unlawful system of discriminatory prices "as a means of securing the benefits of a like unlawful system maintained by his competitors" and noting the meeting competition defense "does not concern itself with pricing systems."). Nor can it help SGWS establish that discounts *it* offered were "justified by savings in *the seller's* cost of manufacture, delivery, or sale . . . ." *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 555–56 (1990) (emphasis added); *see also Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1047 (N.D. Cal. 2001) (" . . . a 2 percent discount that . . . may be cost-justified, when given by Houghton-Mifflin may not be lawful when given by another publisher who has different costs.").

SGWS provides no explanation for why Non-Party Distributors' pricing strategies will "help show that retailers in the FTC's paired transactions do not actually compete," but here's why they will not: evidence supporting, or rebutting, that the favored and disfavored retailers are in competition logically must come from the retailers themselves. *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987) (to establish favored and disfavored purchasers were engaged in actual competition, a plaintiff must show "competitive contact," that as of the time the price differential was imposed, the favored and disfavored purchasers competed at the same function level and within the same geographic market). Even if the Non-Party Distributors' pricing strategies were relevant and proportional to the needs of the case, their relevance would be, at most, too attenuated to justify requiring the Non-Party Distributors to disclose their most commercially sensitive business information to their largest competitor.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 12 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 12.

## L. *REQUEST FOR PRODUCTION NO. 13*

*Documents relating to differences in pricing in the Relevant States, including the impact of differing laws, policies, or regulations, such as post-and-hold laws or laws regulating the provision of volume discounts.*

**RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

RNDC objects to this Request as vague and ambiguous because it does not identify what "differences in pricing" are the subject of the Request. If Southern means to request "Documents relating to differences in pricing for Beverage Alcohol in the Relevant States," RNDC further objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1) on the grounds that it seeks Documents relating to the differences in pricing generally—not just RNDC's

pricing—of Beverage Alcohol in 44 states and Washington, D.C. over the past six years. RNDC objects to this Request because Documents relating to any differences in pricing of Beverage Alcohol in RNDC's possession are not relevant to any claim or defense in this case. Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC also objects to this Request as vague and ambiguous to the extent that the term "post-and-hold" purports to assert a legal conclusion. RNDC objects to the ambiguous and undefined terms "impact" and "relating to." To the extent this Request asks for RNDC's pricing information, RNDC objects to this Request as asking RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

### REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 13

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments relating to" internal analyses of regulatory regimes in the Relevant States concerning retail pricing. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating

to," "differences," "pricing," "impact," "policies," "regulations," "post-and-hold laws," and "volume discount." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 13

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity including, but not limited to, "policies," "post-and-hold laws," and the "provision of volume discounts." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. Documents and information in Breakthru's possession regarding the impact of state laws and regulations on Breakthru have no bearing on the Federal Trade Commission's claims against SGWS under the Robinson-Patman Act, which focus on the nature of SGWS's actual sales prices to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief

concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Breakthru further objects to this Request as it calls for the production of information related to products that are not "commodities of like grade and quality" within the meaning of the Robinson-Patman Act, or are otherwise not identical to the products SGWS sold during the same time period, and are thus not relevant to the claims and defenses in this Action. Breakthru further objects to this Request to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 13

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case, especially in light of Johnson Brothers' status as a non-party, including to the extent it would purport to require production of documents that are not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks documents not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johson Brothers also objects to this Request as overly broad, unduly burdensome, vague, and ambiguous, including because the term "relating to" is undefined and open to interpretation. Johnson Brothers further objects to this Request as vague and ambiguous to the extent that the term "post-and-hold" purports to assert a legal conclusion. Johnson Brothers also objects to this Request to the extent it seeks documents that contain Johnson Brothers' commercially or competitively sensitive and confidential information. Johnson Brothers further objects to this Request as not relevant to the parties claims or defenses, including, but not limited to the Federal Trade Commission's claims

against SGWS under the Robinson-Patman Act. Specifically, Johnson Brothers objects to the production of documents in response to this Request because such documents are irrelevant to any defense SGWS may assert, including, but limited to, the "meeting competition" defense, because any such defense must be based on SGWS's contemporaneous good faith belief concerning its competitors' prices, not those competitors' actual prices obtained after the fact. 15 U.S.C. § 13(b).

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 13

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments relating to" internal analyses of regulatory regimes in the Relevant States concerning retail pricing. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "differences," "pricing," "impact," "differing," "laws," "policies," "regulations," "post-and-hold laws," and "laws regulating the provision of volume discount." To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to

the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

**SGWS'S CONTENTIONS REGARDING REQUEST NO. 13**

Documents pertaining to Request No. 13 are necessary to support SGWS's jurisdictional argument that demonstrates that its sales fail to trigger the RPA's "in commerce" requirement. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 13, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 13**

Distributors dispute the relevance of this Request. Setting aside that prices are affected by a myriad of variables including the cost of supply, labor, taxes, and many others, the effect of any local laws on the ultimate price charged to consumers weighs on the price charged, not whether the products at issue traveled in interstate commerce. Instead, whether a customer ordered a product that is already at an in-state warehouse instead of a product that must travel to the state from an out-of-state warehouse (and presumably later delivered to the retailers after the product has met the state's "come-to-rest" laws) would. Finally, to the extent the requested information seeks information that would tend to contain the advice of counsel, that information is privileged and shielded from discovery.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 13 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 13.

**M.    *REQUEST FOR PRODUCTION NO. 14***

*Documents relating to the impact of "come-to-rest" laws, policies, or regulations in the Relevant States, which require Beverage Alcohol to "come to rest" at an in-state Distributor before sale to any in-state Retailer.*

***RNDC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14***

RNDC objects to this Request as overly broad, unduly burdensome, and outside the scope of discovery as defined by Fed. R. Civ. P. 26(b)(1). Documents relating to the impact of "come-to-rest" regulations—or any other regulations for that matter—within RNDC's possession are irrelevant to the claims and defenses in this case. RNDC also objects to this Request as vague and ambiguous to the extent that the terms "come-to-rest" and "in-state" purport to assert a legal conclusion. RNDC objects to the ambiguous and undefined terms "impact" and "relating to." Southern also requests information for eight states in which RNDC does not even operate: Delaware, Kansas, Massachusetts, Missouri, Minnesota, Nevada, Rhode Island, and Tennessee. RNDC objects to this Request as it asks RNDC to produce highly confidential, commercially-sensitive business information to its top competitor and the Protective Order is inadequate to prevent disclosure of RNDC's sensitive information. RNDC objects to this Request to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, work-product doctrine, or any other legally recognized privilege, protection, immunity, or exemption from discovery.

Subject to and without waiver of these objections, RNDC will not produce any Documents responsive to this Request, but is willing to meet and confer with Southern in connection with this Request.

***REYES' RESPONSE TO REQUEST FOR PRODUCTION NO. 14***

In addition to and without waiving its General Objections, Reyes Holdings objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely

benefit, and the burden and expense imposed to Reyes Holdings are disproportionate to the needs of the case, in particular to the extent that it purports to require Reyes Holdings to search for and produce "[d]ocuments relating to" internal analyses of regulations in the Relevant States. Reyes Holdings further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "come-to-rest laws," "policies," "impact," and "regulations." To the extent that it produces documents or data, Reyes Holdings will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Reyes Holdings in the ordinary course of its business. Reyes Holdings further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Reyes Holdings reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Reyes Holdings further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Reyes Holdings is prepared to meet and confer regarding this Request.

### BREAKTHRU'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14

Breakthru repeats and restates its General Objections in response to this Request. Breakthru further objects to this Request as vague and ambiguous because numerous terms and phrases used herein are not defined or explained with sufficient clarity including, but not limited to, "impact" and "come to rest." Breakthru further objects to this Request as overly broad and unduly burdensome, and not relevant to the claims in this Action. Breakthru further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence relevant to the Action. Documents and information in Breakthru's possession regarding the impact of state laws and regulations on Breakthru have no bearing on the Federal Trade Commission's claims against SGWS under the

Robinson-Patman Act, which focus on the nature of SGWS's actual sales prices to Retailers. Nor are such details relevant to any defense SGWS may assert, such as that SGWS was merely "meeting competition," as any such defense must be based on SGWS's contemporaneous alleged good faith belief concerning its competitors' prices, not those competitors' actual prices. 15 U.S.C. § 13(b) ("nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor"). Breakthru further objects to this Request to the extent it calls for the production of information that Breakthru does not maintain in the ordinary course of business.

### JOHNSON BROTHERS' RESPONSE TO REQUEST FOR PRODUCTION NO. 14

Johnson Brothers specifically objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case, especially in light of Johnson Brothers' status as a non-party, including to the extent it would purport to require production of documents that are not maintained by Johnson Brothers in the ordinary course of business. Johnson Brothers further objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks data not available to Johnson Brothers after a reasonable search, or not in Johnson Brothers' custody or control. Johnson Brothers also objects to this Request as vague and ambiguous to the extent that the terms "come-to-rest" and "in-state" purport to assert a legal conclusion. Johson Brothers further objects to this Request as overly broad, unduly burdensome, vague, and ambiguous, including because the terms "relating to" and "impact" are undefined and open to interpretation. Johnson Brothers also objects to this Request to the extent it seeks any information and/or data that contain Johnson Brothers' commercially or competitively sensitive and confidential information.

Subject to these specific objections and the general objections above, Johnson Brothers is willing to meet and confer with Defendant regarding this Request.

### WINEBOW'S RESPONSE TO REQUEST FOR PRODUCTION NO. 14

In addition to and without waiving its General Objections, Winebow objects to this Request on the grounds that the Request is overly broad, not relevant to any claim or defense, the burden and expense of complying with the Request outweigh any likely benefit, and the burden and expense imposed to Winebow are disproportionate to the needs of the case, in particular to the extent that it purports to require Winebow to search for and produce "[d]ocuments relating to" internal analyses of regulations in the Relevant States. Winebow further objects to this Request on the grounds that following terms are vague and ambiguous: "relating to," "come-to-rest laws," "policies," "impact," and "regulations." In particular, the term "come-to-rest laws" is undefined by the Subpoena, calls for a legal interpretation by Winebow, and fails to describe the documents sought with reasonable particularity. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005). To the extent that it produces documents or data, Winebow will interpret those terms in accordance with their ordinary and customary meanings and/or consistent with how they are used by Winebow in the ordinary course of its business. Winebow further objects to this Request to the extent that it seeks highly competitively sensitive, confidential, proprietary, or trade secret information. Winebow reserves the right to seek protection for any confidential, proprietary, or trade secret information it produces in response to this Request beyond that provided by the May 13, 2025, Protective Order entered in this matter. Winebow further objects to this Request to the extent it seeks documents protected by the attorney-client or work-product privileges, or any other applicable privilege, immunity, or exemption.

Subject to and without waiver of the foregoing Specific and General Objections, Winebow is prepared to meet and confer regarding this Request.

### SGWS'S CONTENTIONS REGARDING REQUEST NO. 14

Documents pertaining to Request No. 14 are necessary to support SGWS's jurisdictional argument that its sales fail to trigger the RPA's "in commerce" requirement. Nonetheless, SGWS proposed that it would withdraw this request if the Distributors produced the requested pricing data. In the absence of a willingness to compromise by the Distributors, the Court should order the Distributors to produce documents responsive to Request No. 14, subject to a reasonable search.

**DISTRIBUTORS' CONTENTIONS REGARDING REQUEST NO. 14**

Distributors dispute the relevance of this Request. As this Court previously concluded in denying SGWS's motion to dismiss, temporary storage requirements do not prevent a court from applying a demand-planning theory to find an interstate sale occurred. Dkt. 72 at 8. Whether a particular Distributor analyzed the effect of "come-to-rest" laws on their own operations (or the operations of others, if any) will not answer whether SGWS, as alleged, "anticipated [the] demands of favored purchasers," such that its goods "remained in commerce under a demand planning theory." *Id.* at 7. Only SGWS has access to those facts. Additionally, and like Distributors' response to Request 13, to the extent the Request seeks information that would tend to contain the advice of counsel, that information is privileged and shielded from discovery.

Moreover, despite its assertion herein, during meet & confer calls and other written correspondence, SGWS has never affirmatively stated that it would abandon Request No. 14 if the Distributors produced "the requested pricing data" (which itself is undefined). Accordingly, the Court should quash SGWS's Request No. 14.

## IV.    CONCLUSION

For the reasons set forth above, SGWS respectfully seeks an order directing the Distributors to produce all documents responsive to Request Nos. 1, 2, and 4-14 in the Subpoena.

For the reasons set forth above, Distributors respectfully request that the Court squash SGWS's subpoenas in their entirety.

Dated: February 18, 2026          Respectfully submitted,

*/s/ K. Ross Powell*

KIRKLAND & ELLIS LLP
Tammy A. Tsoumas (S.B. # 250487)
tammy.tsoumas@kirkland.com
2049 Century Park East, Ste. 3700
Los Angeles, CA 90067
Tel.: (310) 552-4200

Craig S. Primis, P.C. *(pro hac vice)*
cprimis@kirkland.com
Matthew S. Owen, P.C. *(pro hac vice)*
matt.owen@kirkland.com
T.J. McCarrick *(pro hac vice)*
tj.mccarrick@kirkland.com
K. Ross Powell (*pro hac vice*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Tel.: (202) 389-5000

Dan Zach *(pro hac vice)*
dan.zach@kirkland.com
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

*/s/ Eliot Turner*

NORTON ROSE FULBRIGHT US LLP
Joshua D. Lichtman (S.B. # 176143)
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Telephone:   (213) 892-9200
Facsimile:    (213) 892-9494
joshua.lichtman@nortonrosefulbright.com

JOINT RULE 37 STIPULATION
126

Richard S. Krumholz (*pro hac vice* forthcoming)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
richard.krumholz@nortonrosefulbright.com

Robin D. Adelstein (*pro hac vice* forthcoming)
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 318-3108
Facsimile: (212) 408-5100
robin.adelstein@nortonrosefulbright.com

Eliot F. Turner (*pro hac vice* forthcoming)
eliot.turner@nortonrosefulbright.com
Emma N. Oliver (*pro hac vice* forthcoming)
emma.oliver@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

*Attorneys for Non-Party Republic National Distributing
Company, LLC*

/s/ Wilson Mudge

ARNOLD & PORTER KAYE SCHOLER LLP
Eric Shapland (SBN 193853)
eric.shapland@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  (213) 243-4238
Facsimile:  (213) 243-4199

Wilson Mudge (*pro hac vice* forthcoming)
wilson.mudge@arnoldporter.com
Melvin Kenney III (*pro hac vice* forthcoming)
melvin.kenney@arnoldporter.com

JOINT RULE 37 STIPULATION

127

601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Non-Party Reyes Holdings, LLC*

*/s/ Javier Ortega Alvarez*
ARNOLD & PORTER KAYE SCHOLER LLP
Kristina Iliopoulos (Bar No. 341548)
kristina.iliopoulos@arnoldporter.com
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4160
Facsimile: (213) 243-4199

C. Scott Lent (*pro hac vice* forthcoming)
scott.lent@arnoldporter.com
Javier Ortega Alvarez (*pro hac vice* forthcoming)
javier.ortega@arnoldporter.com
250 W 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Non-Party*
*Johnson Brothers Liquor Company*

*/s/ Jeremy Rist*
BLANK ROME LLP
Harrison Brown (SBN 291503)
harrison.brown@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:        424.239.3400
Facsimile:        424.239.3434

Jeremy Rist (pending admission pro hac vice)

JOINT RULE 37 STIPULATION
128

jeremy.rist@blankrome.com
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:        215.569.5500
Facsimile:        215.569.5555

*Attorneys for Non-Party*
*Breakthru Beverage Group, LLC*


By: */s/ Ann O'Brien*
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Ann O'Brien (*pro hac vice* forthcoming)
aobrien@sheppardmullin.com
2099 Pennsylvania Avenue NW
Suite 100
Washington, DC 20006
Telephone: (202) 747-1900
Facsimile: (202) 747-1901

Joy O. Siu (Bar No. 307610)
jsiu@sheppardmullin.com
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 403-6226

*Attorneys for Non-Party Winebow*


Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

*/s/ K. Ross Powell*
K. Ross Powell



JOINT RULE 37 STIPULATION
129

APPENDIX A

**States At Issue By Distributor**

| Distributor | # States at Issue | States at Issue |
|---|---|---|
| **RNDC** | 33 | Alabama, Alaska, Arizona, California, Colorado, Florida, Hawaii, Idaho, Indiana, Kentucky, Louisiana, Maryland, Michigan, Mississippi, Montana, Nebraska, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, Washington, D.C., West Virginia, Wyoming |
| **Reyes** | 12 | California, Florida, Hawaii, Illinois, Indiana, Maryland, Michigan, South Carolina, Tennessee, Texas, Virginia, Washington, D.C. |
| **Breakthru** | 14 | Arizona, California, Colorado, Delaware, Florida, Illinois, Maryland, Minnesota, Missouri, Nevada, Pennsylvania, South Carolina, Virginia, Washington, D.C. |
| **Johnson Brothers** | 18 | Alabama, Arizona, Colorado, Florida, Hawaii, Indiana, Iowa, Minnesota, Mississippi, Nebraska, Nevada, North Carolina, North Dakota, Rhode Island, South Dakota, Texas, Virgina, West Virginia |
| **Winebow** | 14 | California, Delaware, Florida, Idaho, Illinois, Maryland, Minnesota, New York, North Carolina, South Carolina, Virginia, Washington, Washington, D.C., West Virginia |